MATTHEW DONALD UMHOFER, ESQ., SBN 206607
mumhofer@spertuslaw.com
DIANE H. BANG, ESQ., SBN 271939
**SPERTUS, LANDES & UMHOFER, LLP**
1990 S Bundy Dr., Suite 705
Los Angeles, CA 90025
Telephone: (310) 826-4700
Facsimile: (310) 826-4711

MARTIN P. MOROSKI, ESQ., SBN 98202
moroski@ammcglaw.com
CHASE W. MARTIN, ESQ., SBN 260444
**ADAMSKI MOROSKI MADDEN
CUMBERLAND & GREEN LLP**
Post Office Box 3835
San Luis Obispo, California 93403-3835
Telephone: (805) 543-0990
Facsimile: (805) 543-0980

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW D. VAN STEENWYK, Individually, as Trustee and Beneficiary of The Matthew Van Steenwyk Gst Trust And The Matthew Van Steenwyk Issue Trust, And As Co-Trustee Of The Gretchen Marie Van Steenwyk-Marsh Gst Trust And The Gretchen Marie Van Steenwyk-Marsh Issue Trust and derivatively on behalf of Defendants APPLIED TECHNOLOGIES ASSOCIATES, INC., and ATA RANCHES, INC.<br><br>               Plaintiff,<br><br>  vs. | Case No.:<br><br>**VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT FOR:**<br><br>1. **BREACH OF FIDUCIARY DUTY;**<br>2. **ABUSE OF CONTROL;**<br>3. **CORPORATE WASTE;**<br>4. **UNJUST ENRICHMENT;**<br>5. **ACCOUNTING;**<br>6. **DECLARATORY RELIEF;**<br>7. **INJUNCTIVE RELIEF;**<br>8. **CONSTRUCTIVE TRUST;**<br>9. **PRODUCTION OF CORPORATE RECORDS.**<br><br>**JURY TRIAL DEMANDED** |

1

**COMPLAINT**

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

Spertus, Landes & Umhofer, LLP
1990 South Bundy Dr., Suite 705
Los Angeles, CA 90025
Telephone 310-826-4700; Facsimile 310-826-4711

KEDRIN E. VAN STEENWYK, Individually, as Successor Trustee of the Donald H. Van Steenwyk and Elizabeth A. Van Steenwyk 1996 Revocable Trust; PAMELA PEARCE, Individually; PHILIP GOBE, Individually; PHILIP LONGORIO, Individually; GENE DUROCHER, Individually; JOSEPH MCCOY, Individually; ELIZABETH A. VAN STEENWYK, Individually, and as Original Trustee and as Beneficiary of the Donald H. Van Steenwyk and Elizabeth A. Van Steenwyk 1996 Revocable Trust; ADELAIDA CELLARS, INC., a California Corporation; and DOES 1-25, inclusive,

Defendants,

and

APPLIED TECHNOLOGIES ASSOCIATES, INC., a California corporation; and ATA RANCHES, INC., a Delaware corporation,

Nominal Defendants

Plaintiff Matthew Van Steenwyk, Individually, as Trustee and Beneficiary of The Matthew Van Steenwyk GST Trust and The Matthew Van Steenwyk Issue Trust and as Co-Trustee of The Gretchen Marie Van Steenwyk-Marsh GST Trust and The Gretchen Marie Van Steenwyk – Marsh Issue Trust ("Plaintiff") derivatively on behalf of Defendant Applied Technologies Associates, Inc. ("ATA") and Defendant ATA Ranches, Inc., brings this action against Defendants Kedrin E. Van Steenwyk, Pamela Pearce, Phillip Gobe, Phillip Longorio, Gene Durocher and Joseph McCoy (referred to collectively at times as "Director

2

**COMPLAINT**

Defendants") for violations of California common law setting forth the duties of corporate officers and directors and alleges as follows based upon the investigation of Plaintiff and his counsel.  Plaintiff also brings this action against Defendant Elizabeth A. Van Steenwyk, and Defendant Kedrin E. Van Steenwyk as Trustee and Successor Trustee of the Donald H. Van Steenwyk and Elizabeth A. Van Steenwyk 1996 Revocable Trust, as owner of Class A shares in ATA for violations of their duties as the holder of all voting shares in ATA.  Finally, Plaintiff brings this action against Defendant Adelaida Cellars, Inc. to seek the return of property and money that was improperly transferred to Defendant Adelaida Cellars as a result of the breaches of duties of ATA's Board of Directors, or some of them.

## NATURE AND SUMMARY OF THE ACTION

1.      As with most shareholder derivative actions, this case involves issues of the control over a corporation's governance, the correlative fiduciary duties of the corporate directors who wield that control and the breaches of those duties. What distinguishes this case from most derivative actions is that it involves the control of two corporations by one individual and the abuse of that control for that individual's benefit.

2.      The two corporations are nominal Defendant Applied Technologies Associates, Inc. ("Defendant ATA") and Defendant Adelaida Cellars, Inc. ("Defendant Adelaida").  Defendant ATA's core business involves providing services and equipment to companies and individuals engaged in oil and gas exploration. Defendant Adelaida is engaged in the unrelated business of producing, marketing and selling wines.  While there is some overlap in the beneficial ownership of the two entities, their owners are different.

3.      Defendant Kedrin E. Van Steenwyk ("Defendant Kedrin") effectively controls both Defendant ATA and Defendant Adelaida.  In sum, Defendant Kedrin obtained control of the two corporations as a result of two transactions she

3

**COMPLAINT**

Spertus, Landes & Umhofer, LLP
1990 South Bundy Dr., Suite 705
Los Angeles, CA 90025
Telephone 310-826-4700; Facsimile 310-826-4711

engineered, both occurring in 2016: (1) Kedrin's appointment as Successor Trustee of the Donald H. Van Steenwyk and Elizabeth A. Van Steenwyk 1996 Revocable Trust ("1996 Trust"); and (2) Kedrin being granted a power of attorney over the original Trustee of the 1996 Trust, Defendant Elizabeth A. Van Steenwyk ("Defendant Elizabeth"). The 1996 Trust is the owner of all voting shares in Defendant ATA. The 1996 Trust is also the majority owner of the limited liability company, KMBG LLC ("KMBG"), which owns all shares in Defendant Adelaida. As detailed herein, the circumstances surrounding these two transactions raise serious questions.

4. In addition to her control over the 1996 Trust's voting shares in Defendant ATA, Defendant Kedrin sits as a director on ATA's board. Through her family trusts, she also owns 23.75% of Defendant ATA's outstanding non-voting capital shares. Regarding Defendant Adelaida, Defendant Kedrin owns, through her membership interest in KMBG, an ownership interest in Defendant Adelaida. She also controls the 1996 Trust's majority interest in KMBG and Defendant Adelaida. Finally, as a result of an amendment to the 1996 Trust, Defendant Kedrin, through her trusts, stands to inherit a majority share of the 1996 Trust's ownership interest in KMBG and Defendant Adelaida upon Defendant Elizabeth's death.

5. Defendant Kedrin and the other Director Defendants have breached their fiduciary and statutory duties to Defendant ATA and its shareholders. They have acted and omitted to act in manners that have benefitted Defendant Adelaida, and Defendant Kedrin's current and expectant ownership therein, at the expense of Defendant ATA and its recently discovered subsidiary, nominal Defendant ATA Ranches, Inc. ("Defendant ATA Ranches"). Director Defendants' breaches, detailed in this Complaint, can be summarized as follows:

a. **Breaches of Commission:** authorizing the sale of wine grapes

4

**COMPLAINT**

grown by Defendant ATA on its ranch properties to Defendant Adelaida at less than market value; authorizing the payment of items of operating costs and overhead incurred by Defendant Adelaida in its operation at less than the market value of those items of cost and overhead; and exposing Defendant ATA to civil liabilities;

        b.   **Breaches of Omission:** failing to invest in projects relating to ATA's core business; failing to sell the wine grape growing ranch properties owned by ATA and, thereby, ridding Defendant ATA of admittedly money losing assets and raising admittedly needed capital to fund ATA's core business; and

        c.   **Breaches Involving Non-Disclosure and Cover-up:** forming a Delaware corporation (Defendant ATA Ranches) and transferring ATA assets to the corporation without notice to Defendant ATA's shareholders; moving material transaction detail around on Defendant ATA's financial statements, or making them disappear from the statements altogether; and failing and refusing to produce corporate and financial information to which Plaintiff is entitled.

    6.   Director Defendants, as well as Defendant ATA's majority voting shareholder, owed and owe Defendant ATA, Defendant ATA Ranches, and their shareholders duties of care and loyalty.  The duty of care requires Defendants to act in a prudent manner and in the best interests of the companies, with all of the information available to them.  Said Defendants have breached that duty of care. The duty of loyalty requires said Defendants to put the interests of the companies, ATA and ATA Ranches, above their own personal pecuniary interests.  The Defendants, or some of them, also breached that duty.

    7.   The tortious and unlawful behavior on the parts of Director Defendants and Defendant Kedrin has caused and is causing damage to Defendant ATA, Defendant ATA Ranches, and their shareholders.  In the past six years, Defendant ATA's valuation has dropped from $1.5 billion to approximately $300

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

5

**COMPLAINT**

million. At the same time, Defendants, or some of them, have been and are being enriched.

8. Plaintiff, on behalf of Defendant ATA, Defendant ATA Ranches, and his fellow shareholders, seeks monetary damages from the Director Defendants who breached their fiduciary duties and should now be held to account for the financial harm suffered by ATA, ATA Ranches, and their shareholders.

9. Plaintiff, on behalf of Defendant ATA, Defendant ATA Ranches, and his fellow shareholders, also seeks to impose a constructive trust on assets of Defendant Kedrin and Defendant Adelaida acquired with the money and property of Defendant ATA that has been wrongfully diverted to Defendant Adelaida, or its shareholder KMBG, and Defendant Kedrin.

10. For these reasons, discussed more fully herein, and for the further reason that Defendant Kedrin and a number of her fellow Director Defendants are recidivists,[1] Plaintiff seeks to enjoin the Director Defendants, Defendant Elizabeth and Defendant Kedrin from continuing to manage ATA and ATA Ranches in the manner inconsistent with their fiduciary duties.

## JURISDICTION AND VENUE

11. This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because complete diversity of citizenship exists between Plaintiff, on the one hand, and Defendants, on the other hand, and the amount in controversy, exclusive of interest and costs, exceeds $75,000.00.

12. Venue is proper in this Court because each of the three corporations

---

[1] This is not the first time Plaintiff has had to bring a shareholder derivative action on behalf of ATA. A lawsuit was previously filed in 2009 against Defendant Kedrin and many of the Director Defendants for breach of their fiduciary duty and violation of the Texas Business Corporations Act for failing to provide corporate records, fraud, and negligent misrepresentation. The prior litigation resulted in a settlement agreement between the parties. Clearly, Defendant Kedrin and the ATA's Board of Directors did not learn from this past litigation experience.

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

6

**COMPLAINT**

involved in this case conducts substantial business operations in the Central District of California.  The corporate offices of two of these corporations are located in the Central District of California.

## THE PARTIES

13.     Plaintiff is a citizen of the State of Nevada.  Plaintiff is Trustee of The Matthew Van Steenwyk GST Trust and Trustee and beneficiary of The Matthew Van Steenwyk Issue Trust ("Matt's Trusts").  Plaintiff, through Matt's Trusts, is the owner of 23.75% of the Class B shares of ATA.  Through Matt's Trusts, Plaintiff has continuously owned ATA stock at all times relevant to the allegations of this Complaint, continues to be an ATA shareholder today and intends to remain an ATA shareholder.

14.     Plaintiff is also Co-Trustee of The Gretchen Marie Van Steenwyk-Marsh GST Trust and The Gretchen Marie Van Steenwyk-Marsh Issue Trust ("Gretchen's Trusts") with respect to the shares of ATA Class B stock owned by Gretchen's Trusts.  At all times relevant to the allegations in this Complaint Gretchen's Trusts owned 23.75% of the Class B shares in ATA.  Gretchen's Trusts collectively continue to be an ATA shareholder and intend to remain an ATA shareholder.

15.     Nominal Defendant ATA is a corporation incorporated under the laws of the State of California and having its principal place of business in the State of California.  ATA is a subsidiary of Scientific Drilling International, Inc. ("SDI").  ATA and SDI are engaged in the business of providing services and equipment to individuals and companies involved in oil and gas exploration.   ATA has, historically, researched and developed tools and technologies for its own use and the use of SDI.  ATA is named in this Complaint as a nominal defendant in its derivative capacity, and this shareholders' derivative action is brought on its behalf. ATA is headquartered and conducts substantial operations in the Central District

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

7

of California.

16.    Nominal Defendant ATA Ranches is a corporation incorporated under the laws of the State of Delaware.  On information and belief, ATA Ranches' principal place of business is in the State of California.  ATA Ranches was formed in or about the Summer of 2018, without Plaintiff's knowledge.  ATA Ranches is a wholly-owned subsidiary of ATA.

17.    Defendant Adelaida is a corporation incorporated under the laws of the State of California.  Defendant Adelaida is owned by KMBG, a Colorado limited liability company.  Defendant Adelaida's principal place of business is located in the Central District of California.

18.    Defendant Kedrin is a citizen of the State of South Carolina. Defendant Kedrin is trustee of The Kedrin Van Steenwyk GST Trust and trustee and beneficiary of The Kedrin Van Steenwyk Issue Trust ("Kedrin Trusts"). Defendant Kedrin, through her Trusts, is the owner of 23.75% of the Class B shares of ATA.  Since June 2016, Defendant Kedrin has served as Successor Trustee of the 1996 Trust.  Defendant Kedrin also holds a power of attorney over Defendant Elizabeth and controls Defendant Elizabeth's affairs under that power of attorney. As a Successor Trustee of the 1996 Trust, and as Defendant Elizabeth's attorney-in-fact, Defendant Kedrin controls all issued and outstanding Class A voting shares in ATA, shares that are beneficially owned by Defendant Elizabeth through the 1996 Trust.  Defendant Kedrin also serves as a director of ATA.  Regarding Defendant Adelaida, Defendant Kedrin controls Defendant Adelaida through her control over its only shareholder, KMBG.  Specifically, the 1996 Trust owns the substantial majority membership interest in KMBG. Defendant Kedrin is a Successor Trustee of the 1996 Trust.  In addition to her control over the 1996 Trust, Defendant Kedrin is currently entitled to receive a 51% interest in KMBG upon Defendant Elizabeth's death.  Defendant Kedrin is an officer and managing agent

**COMPLAINT**

1    of Defendant Adelaida.  Defendant Kedrin receives compensation from ATA for

2    her service as an ATA director and from Defendant Adelaida for her service as an

3    officer and managing agent.

4        19.   Defendant Pamela Pearce ("Defendant Pearce") is a citizen of the

5    State of Texas.  Defendant Pearce is a director on ATA's Board of Directors.

6    Defendant Pearce receives compensation from ATA for her service as an ATA

7    Board of Director.  Because it has not been disclosed to Plaintiff, Plaintiff does not

8    currently know Defendant Pearce's relationship to ATA Ranches.

9        20.   Defendant Phillip Gobe ("Defendant Gobe") is a citizen of the State

10   of Texas. Defendant Gobe is a director on the ATA board of directors.  Defendant

11   Gobe receives compensation from ATA for his service on ATA's Board of

12   Directors.  Because it has not been disclosed to Plaintiff, Plaintiff does not currently

13   know Defendant Gobe's relationship to ATA Ranches.

14       21.   Defendant Phillip Longorio ("Defendant Longorio") is a citizen of the

15   State of Texas.  Defendant Longorio is the Chief Executive Officer of ATA and

16   sits on its board of directors.  Defendant Longorio receives compensation from

17   ATA for his service as ATA's President and his service on its board of directors.

18   Plaintiff is informed and believes and on that basis alleges that Defendant Longorio

19   is the Chief Executive Officer of ATA Ranches.

20       22.   Defendant Gene Durocher ("Defendant Durocher") is a citizen of the

21   State of Texas.  Defendant Durocher is a member of the ATA Board of Directors.

22   Defendant Durocher is compensated by ATA for his service on ATA's Board of

23   Directors.  Because it has not been disclosed to Plaintiff, Plaintiff does not currently

24   know Defendant Durocher's relationship to ATA Ranches.

25       23.   Defendant Joseph McCoy ("Defendant McCoy") is a citizen of the

26   State of Texas.  Defendant McCoy is a director on the ATA Board of Directors.

27   Defendant McCoy receives compensation from ATA for his service on ATA's

9

**COMPLAINT**

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

Board of Directors.  Because it has not been disclosed to Plaintiff, Plaintiff does not currently know Defendant McCoy's relationship to ATA Ranches.

24.     Defendant Elizabeth is a citizen of California.  Defendant Elizabeth is the original trustee of the Survivor's Trust of the 1996 Trust.  Defendant Elizabeth, through the 1996 Trust, is the owner of all issued and outstanding Class A voting shares in ATA.  In addition, Defendant Elizabeth is the beneficial owner of a controlling interest in KMBG.  As alleged above, KMBG is the sole shareholder of Defendant Adelaida.

25.     Except as described herein, Plaintiff is ignorant of the true names of Defendants sued as Does 1 through 25, inclusive, and, therefore, Plaintiff sues these Defendants by such fictitious names.    Following further investigation and discovery, Plaintiff will seek leave of this Court to amend this Complaint to allege their true names and capacities when ascertained.    These fictitiously named Defendants are the Company's officers, other members of management, employees and/or consultants who were involved in the wrongdoing detailed herein.    On information and belief, each of these Defendants are citizens of states diverse from that of the plaintiff.  These Defendants aided and abetted and/or conspired with the named Defendants in the wrongful acts and course of conduct or otherwise caused the damages and injuries claimed herein and are responsible in some manner for the acts, occurrences and events alleged in this Complaint.

26.     At all relevant times, each of the Defendants was the agent of the remaining Defendants, and in doing the acts alleged herein, were acting within the course of scope of such agency.  Each Defendant ratified and/or authorized the wrongful acts of each of the other Defendants.  Finally, Defendants, each of them, is individually sued as a participant and as an aider and abettor in the improper acts, plans, schemes, and transactions that are the subject of this Complaint.

27.     In committing the wrongful acts alleged herein, each of the

10

**COMPLAINT**

Spertus, Landes & Umhofer, LLP
1990 South Bundy Dr., Suite 705
Los Angeles, CA 90025
Telephone 310-826-4700; Facsimile 310-826-4711

Defendants has acted in concert and as part of an enterprise with each of the other Defendants, and has pursued, or joined in the pursuit of, a common course of conduct, and has acted in concert with and conspired with each of the other Defendants in furtherance of their common plan or design.  In addition to the wrongful conduct herein alleged which gives rise to their primary liability, the Director Defendants are liable for aiding and abetting and/or assisting the other Defendants in breaching their respective duties.

28.   Plaintiff is informed and believes, and on that basis alleges, that an association-in-fact existed between the Director Defendants, Defendant Kedrin and Defendant Adelaida, that this association-in-fact was engaged in an enterprise that affected interstate commerce, and that the participants in the enterprise utilized the mails and wire communications in engaging in the tortious and unlawful conduct alleged in this Complaint.

## STATEMENT OF FACTS

### A.   ATA's Shareholders and Shareholder Structure

29.   ATA issued two classes of shares to its shareholders – Class A voting shares and Class B capital shares.  Class A shares have voting rights.  Class B shares do not have voting rights.

30.   Defendant Elizabeth, through the 1996 Trust, owns 50,000 Class A shares, the only voting shares issued by ATA.  Accordingly, the 1996 Trust possesses all voting rights in ATA and controls who serves on its board.

31.   The holders of Class B shares in ATA are Defendant Kedrin through Kedrin's Trusts, Plaintiff through Matt's Trusts, Gretchen Marie Van Steenwyk Marsh through Gretchen's Trusts and Brett Van Steenwyk through his GST and Issue Trusts ("Brett's Trusts").

32.   Plaintiff, through Matt's Trusts, owns 237,500 shares of Class B stock in ATA, representing close to a 24% equity ownership in ATA, with no voting

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

11

rights.

33.     Gretchen Marie Van Steenwyk-Marsh, through Gretchen's Trusts, owns 237,500 shares of Class B stock in ATA, representing close to a 24% equity ownership interest in ATA, with no voting rights.

**B.     Kedrin's Control of ATA Since 2016 Through Obtaining Control Over Elizabeth's Class A Shares**

34.     Until June of 2016, Defendant Elizabeth was the Trustee of the 1996 Trust, and as a result, owned all Class A voting shares in Defendant ATA and also a majority ownership interest in Defendant Adelaida through KMBG.

35.     Based upon Defendant Elizabeth's medical records, it was reported to at least one of her examining doctors that she began "to develop the rapid onset of . . . severe cognitive problems" in mid-March of 2016.

36.     Plaintiff is informed and believes, and on that basis alleges, that the foregoing history of the "rapid onset of severe cognitive problems" was communicated to Defendant Elizabeth's examining doctor by Defendant Kedrin, who is a medical doctor and who accompanied Defendant Elizabeth to the medical examination.

37.     Notwithstanding Defendant Kedrin's awareness of her mother Defendant Elizabeth's cognitive problems, in mid-March 2016, Defendant Elizabeth was allowed to execute a significant challenged document in this matter, on behalf of Defendant Adelaida on or about April 1, 2016 (a true and correct copy is attached hereto as **Exhibit 1**).     Pursuant to the Agreement for Services, Defendant ATA agreed to provide substantial services to Defendant Adelaida for significantly less than the value of those services.

38.     During the very next month, May 2016, two doctors wrote reports concluding, respectively, that: (1) Defendant Elizabeth's reported "problems currently deprive her of [ ] capacity"; and (2) Defendant Elizabeth is "no longer

12

**COMPLAINT**

able to adequately monitor and control her finances . . . ."

39.   Plaintiff is informed and believes, and on that basis alleges, that Defendant Kedrin played an instrumental role in obtaining the two medical reports. Based on the conclusions expressed in the reports, Defendant Kedrin was appointed as the Successor Trustee under the 1996 Trust and as Defendant Elizabeth's attorney-in-fact.

40.   Plaintiff is informed and believes and on that basis alleges, that the foregoing timetable and stated facts support two alternative theories relevant to the allegations herein:

a.   Defendant Elizabeth possessed capacity in April 2016 when she executed the Agreement for Services and thereafter, and the conclusions reached by her two examining doctors in May 2016 are flawed because they are based on flawed histories.   Accordingly, the transactions by which Defendant Kedrin assumed control over the 1996 Trust, Defendant Elizabeth her mother, Defendant ATA, and Defendant Adelaida should be examined and set aside; or

b.   Defendant Elizabeth lacked capacity in April 2016, when she signed the Agreement for Services, and that Agreement for Services should be set aside.

## C.   Kedrin's Control of Defendant Adelaida Through Her Control Over Elizabeth's Interest in KMBG

41.   Defendant Kedrin obtained control over Defendant Adelaida by the same two transactions pursuant to which she obtained control over Defendant ATA.

42.   Defendant Kedrin directed, authorized, and/or ratified transactions benefitting herself and/or her interest in Defendant Adelaida, through its shareholder KMBG, at the expense and to the substantial detriment of Defendant ATA, Defendant ATA Ranches, and their shareholders.

**COMPLAINT**

Spertus, Landes & Umhofer, LLP
1990 South Bundy Dr., Suite 705
Los Angeles, CA 90025
Telephone 310-826-4700; Facsimile 310-826-4711

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

**D.    Kedrin's Breach of Her Fiduciary Duties as Director to ATA in Connection With Defendant Elizabeth's Transactions**

43.    Defendant Kedrin exercised undue influence over Defendant Elizabeth by reason of Defendant Kedrin's filial relationship with Defendant Elizabeth, Defendant Kedrin's status as a medical doctor and Defendant Kedrin's knowledge of Defendant Elizabeth's mental vulnerability, if not incompetence. Specifically, Defendant Kedrin unduly influenced Defendant Elizabeth in the two transactions by which Defendant Kedrin obtained control over Defendant ATA and Defendant Adelaida, and also in inducing Defendant Elizabeth to execute the Agreement for Services.  Undue influence potentially constitutes financial elder abuse under California's Welfare & Institutions Code.

44.    Through her actions, Defendant Kedrin has exposed Defendant ATA to potential civil claims for financial elder abuse and Defendant Elizabeth to claims of breach of fiduciary duty.

**E.    Defendants' Breach of Fiduciary Duties in Giving Away ATA Goods and Services for Less Than Market Value**

45.    Defendant Kedrin used the powers as director of ATA, as well as the powers she obtained under the power of attorney over Defendant Elizabeth and as successor trustee of the 1996 Trust, to engage in acts of self-dealing at the expense and to the detriment of Defendant ATA, Defendant ATA Ranches, and their shareholders.

46.    Defendant Kedrin directed and/or authorized, and the Director Defendants authorized and/or ratified, the transactions between Defendant ATA and Defendant Adelaida described below.  Those transactions benefitted Defendant Adelaida and Defendant Kedrin, and damaged Defendant ATA, Defendant ATA Ranches, and their shareholders.

47.    Defendant ATA entered into an Agreement for Services with

14

**COMPLAINT**

1   Defendant Adelaida in April 2016.  Pursuant to the 2016 Services Agreement, ATA
2   has paid for, covered, and/or subsidized Defendant Adelaida's overhead and
3   operating expenses.  Plaintiff is informed and believes and, on that basis, alleges
4   that the services ATA has provided to Defendant Adelaida under the 2016 Services
5   Agreement are worth far more than the flat fee of $2,000 per month.  The services
6   ATA has been providing to Defendant Adelaida under the 2016 Services
7   Agreement include ATA's preparation of Defendant Adelaida's monthly financial
8   statements and income tax returns, legal consultations, human resource inspections
9   and training, construction and maintenance support, repairs of technology and
10   computer IT support, and other services that have yet to be identified.

11        48.   ATA management entered into a Grape Purchase Agreement in or
12   about December 2016 pursuant to which Defendant ATA is obligated to sell its
13   wine grapes, grown on Defendant ATA's property, to Defendant Adelaida for less
14   than their market value.   Defendant Kedrin executed the Grape Purchase
15   Agreement on behalf of Defendant Adelaida, a true and correct copy of which is
16   attached hereto as **Exhibit 2**.  Defendant Adelaida pays less than fair market value
17   for the grapes it purchases under the Grape Purchase Agreement.  Defendant
18   Adelaida resells those grapes to third parties for more than twice the amount that
19   Defendant Adelaida pays ATA for the grapes.  For example, Defendant Adelaida
20   was paid by one of its customers (Opolo Wines LP) $2,750 per ton for zinfandel
21   grapes based on Defendant Adelaida's 2018 Summary of Grape Sales, but
22   Defendant Adelaida paid ATA only $1,299 per ton for the zinfandel grapes based
23   on ATA's summary of grape invoices it recently produced to Plaintiff.

24        49.   Plaintiff is informed and believes and, on that basis, alleges that ATA
25   is also paying for the operating expenses of the Par and Hilltop Ranches, ranches
26   owned by KMBG, the sole shareholder of Defendant Adelaida.  Plaintiff has
27   repeatedly requested documents evidencing ATA's activities relating to these

Spertus, Landes & Umhofer, LLP
1990 South Bundy Dr., Suite 705
Los Angeles, CA 90025
Telephone 310-826-4700; Facsimile 310-826-4711

15

**COMPLAINT**

operating expenses but, as of the date of this Complaint, Defendants have failed to provide the requested information.

**F.     Defendants' Breach of Fiduciary Duties in Authorizing Loans to Company Controlled By Kedrin**

50.     ATA loaned money to Defendant Adelaida to fund its operating costs. Plaintiff is informed and believes and, on that basis, alleges that Defendant Adelaida has borrowed more than $2 million as of April 2016.  Plaintiff has requested that Defendant ATA's Board of Directors provide documents evidencing the financing terms, interest, and/or other fees Defendant Adelaida paid to ATA for the borrowed money but, as of the date of the filing of this Complaint, the Director Defendants have refused to provide the requested information.   Without the requested information, Plaintiff has been unable to determine if the money Defendant Adelaida borrowed from Defendant ATA has been repaid and/or if the loan transactions were "arm's-length" transactions.

51.     Despite the zero amount listed for notes receivable in 2016 and 2017 financial statements, according to a disclosure certificate dated June 30, 2016, and signed by Defendant ATA's Senior Vice President and Chief Financial Officer Dana Armstrong, ATA, "in its ordinary course of business, advances funds to KMBG, LLC and Adelaida Cellars . . . to fund such entities to pay their respective operating costs."   The disclosure certificate goes on to state that the following amounts are owed to ATA as of April 30, 2016:

KMBG                $     552,141.19

Adelaida Cellars    $   2,139,838.68

52.     Plaintiff has requested that the Director Defendants provide documents evidencing the financing terms, interest, and/or other fees Defendant Adelaida paid to Defendant ATA for the borrowed money but, as of the date of the filing of this Complaint, Director Defendants have refused to provide the requested

**COMPLAINT**

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

information.   Without the requested information, Plaintiff has been unable to determine if the money, Defendant Adelaida borrowed from Defendant Director ATA has been repaid, and/or if the loan transactions were "arm's-length" transactions.  Plaintiff also requested similar documents from Director Defendants relating to Defendant ATA's loans to KMBG, but Director Defendants have yet to provide the requested documents to Plaintiff.

53.    Financial statements for Defendant ATA indicates a "notes receivable – ACI," relating to debt owed by Defendant Adelaida to Defendant ATA in the following amounts:

| 2014 | 2015 | 2016 | 2017 |
|------|------|------|------|
| $3,845,896 | $327,489 | - | - |

54.    The Director Defendants have failed to account for Defendant ATA's "notes receivable - ACI" relating to debt owed by Defendant Adelaida from ATA's financial statements.  Plaintiff is informed and believes and, on that basis, alleges that the "notes receivable – ACI" related to Defendant ATA's funding of Defendant Adelaida's winery operation and KMBG's payroll, among other things.  The "notes receivable – ACI" was eliminated from Defendant ATA's balance sheets without adequate explanation, after Plaintiff brought up the subject to Defendant Longorio. Plaintiff has requested that Director Defendants produce documents relating to the "notes receivable – ACI" and to provide an explanation as to why it no longer appears in Defendant ATA's balance sheets.   However, as of this Complaint, Director Defendants have refused to provide the requested explanation and/or information.

**COMPLAINT**

**G.      Kedrin's Breach of Fiduciary Duties by Kedrin Treating ATA's and ATA Ranches Properties as Her Own**

55.     The Director Defendants have allowed Defendant Kedrin to use and treat the real property assets of Defendant ATA as her own.   Specifically, Defendant Kedrin has made proposals to Plaintiff and other shareholders of Defendant ATA in which proposals she offered to purchase Defendant ATA's ranch/wine grape properties, Viking Ranch and HMR Ranch.

56.     Defendant ATA Ranches was created without Plaintiff's knowledge. Real property owned by Defendant ATA was transferred to Defendant ATA Ranches for no consideration and without Plaintiff's knowledge.   Plaintiff is informed and believes that these two transactions were related to Defendant Kedrin's proposal involving the proposed transfer of Defendant ATA's ranches to her.

57.     Defendant ATA was allowed to sustain significant financial losses as a result of Defendant ATA's poorly performing ranching/winery operations.   The losses incurred by Defendant ATA's ranching/wine grape operations resulted in a corresponding benefit to Defendant Kedrin and/or Defendant Adelaida.   The losses incurred by Defendant ATA for 2016, 2017, and 2018 were:

| 2016 | 2017 | 2018 |
|------|------|------|
| ($1,145,441) | ($1,315,451) | ($1,367,571) |

58.     Plaintiff has requested detailed information relating to the losses sustained by Defendant ATA's ranching/winery operation but, as of the date of the filing of this Complaint, the Director Defendants have refused to address Plaintiff's concerns and/or has refused to provide detailed information relating to the losses.

**COMPLAINT**

Spertus, Landes & Umhofer, LLP
1990 South Bundy Dr., Suite 705
Los Angeles, CA 90025
Telephone 310-826-4700; Facsimile 310-826-4711

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

**H.      Breaches of Fiduciary Duties by Omissions and Failures to Act**

59.   Notwithstanding the significant losses Defendant ATA has sustained in its non-core business of owning and operating the Viking Ranch and HMR Ranch, and notwithstanding multiple admissions by members of Defendant ATA's management that the non-core assets should be sold, the Director Defendants have made no effort to market and sell the properties.

60.   While directing and/or allowing Defendant ATA's money, services, and property to be diverted to Defendant Adelaida, and failing and refusing to sell the ranch properties, the Director Defendants have failed to devote their time and attention, and Defendant ATA's resources, to projects critical to the success of Defendant ATA's and SDI's core businesses.  One such project involved Defendant ATA's R&D project developing a tool known as the "Halo" tool.  Defendant ATA's Board scaled back and ultimately slowed down the Halo project for the purported reason that the oil market was in a down-turn.  Plaintiff is informed and believes and on that basis alleges that SDI and Defendant ATA had the necessary cash reserves to continue with the "Halo" tool R&D project at the time it was scaled back and/or slowed down.  However, at the same time, the Director Defendants authorized and/or allowed the diversion of scarce ATA resources to Defendant Adelaida as detailed above.  As a result of the Director Defendants' decision to slow down the "Halo" tool R&D project, Defendant ATA was harmed in two material ways: (1) because the tool was a late entrant to the market, Defendant ATA lost potential market share and sales; and (2) because the "Halo" tool was not completed, tested and ready for market as quickly as it otherwise could have been, the projected revenues on which a potential sale of SDI and Defendant ATA was based were not met and the potential sale was delayed and, ultimately, fell through. The decision negatively impacted the proposed sale of Defendant ATA and its affiliated corporation in 2018 resulting in a substantial financial loss to Defendant

19

**COMPLAINT**

ATA's shareholders.

61.   During the last ATA shareholder meeting on August 1, 2019, Defendant Longorio stated that Defendant ATA's financial situation was tough going and that Defendant ATA needed all the financial resources it could muster to keep it afloat financially.   ATA's recently announced layoffs underscore this reality.   In the face of this reality, the Director Defendants have engaged in, authorized, and/or ratified the acts and omissions detailed above in breach of their fiduciary duties to Defendant ATA and its shareholders.

62.   As a result of the transactions detailed above, and others that have not yet been ascertained, Defendant Kedrin and her fellow Director Defendants have caused Defendant ATA, Defendant ATA Ranches, and their shareholders damages. As a further result of the transactions detailed above, and others that have not yet been ascertained, Defendant Kedrin and her fellow Director Defendants have bestowed unjust benefits on themselves.

## I.   Additional Breaches of Fiduciary Duties by Director Defendants Other Than Kedrin

63.   The Director Defendants, other than Defendant Kedrin, breached and are breaching their individual and collective fiduciary duties to Defendant ATA, Defendant ATA Ranches, and their shareholders in one or more of the following ways: (1) they have authorized the challenged conduct and transactions detailed above without examining the conduct and transactions objectively and thoroughly; (2) they have authorized the challenged transactions detailed above with full knowledge and appreciation that the conduct and transactions have benefitted Defendant Adelaida and Defendant Kedrin, at the expense of Defendant ATA, Defendant ATA Ranches, and their shareholders; (3) they have failed to investigate and/or take action on the challenged conduct and transactions after Plaintiff and his counsel made the Director Defendants aware of that conduct and those transactions;

20

**COMPLAINT**

Spertus, Landes & Umhofer, LLP
1990 South Bundy Dr., Suite 705
Los Angeles, CA 90025
Telephone 310-826-4700; Facsimile 310-826-4711

and (4) they have ratified the challenged conduct and transactions by their inaction, with knowledge, after the fact.

64.     As a result of their actions, and/or their continuing inaction, and their resulting breaches of their fiduciary duties owed to Defendant ATA and its shareholders, the Director Defendants have caused and are causing Defendant ATA, Defendant ATA Ranches, and their shareholders damages.

65.     As a further result of their actions and inactions, which continue, and resulting breaches of their fiduciary duties, the Director Defendants bestowed and are bestowing unjust benefits on Defendant Adelaida, Defendant Kedrin and/or Defendant Elizabeth, and at the expense of Defendant ATA, Defendant ATA Ranches, and their shareholders.

**J.      Unjust Benefits Bestowed on Defendant Adelaida as a Result of Kedrin's Self-Dealing and the Director Defendants' Breaches of Fiduciary Duties to ATA and Its Shareholders**

66.     Defendant Adelaida is in the business of purchasing (and selling) wine grapes, making premium wines, selling premium wines, and operating a winery with a tasting room.

67.     Defendant Adelaida is controlled by Defendant Kedrin as a result of her control over Defendant Elizabeth, by reason of her status as Successor Trustee of the 1996 Trust, the controlling members in KMBG, the sole owner of Defendant Adelaida shares.

68.     Defendant Adelaida has, through Defendant Kedrin and/or her fellow directors and managers at Defendant Adelaida, engaged in non-arm's-length transactions with Defendant ATA that have benefitted Defendant Adelaida, at the expense of Defendant ATA, Defendant ATA Ranches, and their shareholders. Those transactions include the following:

a.      selling ATA wine grapes to Defendant Adelaida for less than

Spertus, Landes & Umhofer, LLP
1990 South Bundy Dr., Suite 705
Los Angeles, CA 90025
Telephone 310-826-4700; Facsimile 310-826-4711

21

**COMPLAINT**

1   market value;

2           b.      paying for, covering, and/or subsidizing Defendant Adelaida's

3   overhead and operating expenses;

4           c.      loaning and/or advancing money to Defendant Adelaida; and

5           d.      without explanation, erasing "interrelated corporate debt"

6   owned by Defendant Adelaida to Defendant ATA from Defendant ATA's financial

7   statements.

8       69.   The transactions detailed above have caused damages to Defendant

9   ATA, Defendant ATA Ranches, and their shareholders.

10      70.   The transactions detailed above have unjustly benefitted Defendant

11  Adelaida, Defendant Kedrin and/or Defendant Elizabeth.

12  **K.    Requests for Corporate Records and Information**

13      71.   Alarmed by the conduct of Defendant Kedrin and the other Director

14  Defendants described above, Plaintiff and a fellow shareholder have made multiple

15  written requests to Director Defendants for Defendant ATA's corporate records

16  and information pursuant to Corporations Code section 1601, including written

17  requests on the following dates: May 3, 2019; July 24, 2019; September 12, 2019;

18  and September 20, 2019 (true and correct copies of the written requests are attached

19  hereto as **Exhibit 3**).

20      72.   Director Defendants initially delayed their response to Plaintiff's

21  statutory requests for corporate records and information.  This delay, in turn,

22  delayed Plaintiff's discovery of facts alleged in this Complaint.

23      73.   Director Defendants, to date, have not produced, or made available for

24  inspection, all records and information requested by Plaintiff, in his capacity as

25  Trustee for both Matt's Trusts and Gretchen's Trusts.  Matt's Trusts and Gretchen's

26  Trusts are two Class B shareholders in Defendant ATA and, Plaintiff is informed

27  and believes, Defendant ATA Ranches.  As a result, Director Defendants have

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

22

breached their statutory and fiduciary duties and prevented the discovery of facts relevant to the Director Defendants' discharge and/or breaches of their fiduciary duties.

74. Director Defendants have failed to comply with their discovery obligations under Corporations Code section 1601. The information they have disclosed was incomplete. This conduct, which constitutes a further breach of the Director Defendants' fiduciary duties has further prevented or delayed discovery of facts relating to Director Defendants' breaches of their fiduciary duties.

75. Other acts constituting breaches of fiduciary duties or fraud may have occurred, Plaintiff is unaware of those acts because he is being denied access to ATA's corporate documents and information.

**L.      Texas Litigation and Lessons Not Learned by Defendant ATA's Board of Directors**

76. As footnoted above, Plaintiff was forced to file a lawsuit in Texas against Defendant ATA and its parent, SDI, alleging breaches of fiduciary duties by the individual directors on ATA's and SDI's Boards of Directors. That Texas litigation was resolved.

77. One negotiated term of the resolution was a requirement that Defendant ATA and its board of directors adopt a corporate Code of Conduct. Attached hereto as **Exhibit 4** is a true and correct unsigned copy of the Code of Conduct.

78. The Code of Conduct was technically adopted, but has not been adhered to by Defendant ATA's Board of Directors.

79. It is clear from the allegations detailed above that Defendant ATA and its board of directors learned nothing from the Texas litigation.

**DEMAND ALLEGATIONS**

80. Plaintiff brings this action derivatively in the right of and for the

23

**COMPLAINT**

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

benefit of nominal Defendants ATA and ATA Ranches to redress injuries suffered and to be suffered by them as a result of the Director Defendants' breaches of fiduciary duty, abuse of control, and gross mismanagement.  Plaintiff and his counsel will adequately and fairly represent the interests of Defendants ATA and ATA Ranches in enforcing and prosecuting their rights.  This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.  Plaintiff was a shareholder of Defendants ATA and ATA Ranches at the time of the transgressions of which he complains and continues to be so.

81.   Prior to filing, Plaintiff, through his counsel, delivered demand letters pursuant to Corporations Code section 800.  True and correct copies of the demand letters are attached hereto as **Exhibit 5**.

82.   Plaintiff is the current Trustee for two Class B shareholders of Defendant ATA and, Plaintiff is informed and believes, Defendant ATA Ranches.

83.   Based upon the Director Defendants' acts and omissions in direct violation of their fiduciary duties of care, good faith, honesty, and loyalty, which continue, a further pre-suit demand on the Defendant ATA's Board to bring the claims asserted in this action is excused as a futile and useless act.

84.   Accordingly, Plaintiff has not made any further demand on the Director Defendants to investigate and prosecute the wrongdoing alleged herein. Specifically, such a demand would be a futile and useless act because a majority of both Defendant ATA's directors are not able to conduct an independent and objective investigation of the alleged wrongdoing.  Under these circumstances, any arguable requirement that a further demand be made on the Director Defendants is excused on the ground of futility.

85.   Because nominal Defendant ATA Ranches is a subsidiary wholly owned by Defendant ATA, Plaintiff, as a shareholder of parent company Defendant ATA, asserts claims on behalf of Defendant ATA Ranches through this Complaint.

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

24

**COMPLAINT**

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

# CAUSES OF ACTION

## FIRST CAUSE OF ACTION

## DERIVATIVE CLAIM FOR BREACHES OF FIDUCIARY DUTY

(Against Director Defendants, Defendant Kedrin, and Does 1-25)

86. Plaintiff incorporates by reference the allegations set forth above as though fully restated herein.

87. Defendants, as Defendant ATA's directors, officers, and majority shareholders were and are required to control and manage Defendant ATA and Defendant ATA Ranches to the best of their abilities in a fair, just, and equitable manner, refrain from abusing their positions of control, and not to favor their own interests at the expense of Defendant ATA, Defendant ATA Ranches, and their shareholders. Defendants violated and are continuing to violate their fiduciary duties to Defendant ATA, Defendant ATA Ranches, and their shareholders, including without limitation their duties of care, good faith, honesty, and loyalty.

88. The wrongful conduct described above was not and is not due to an honest error in judgment, but rather to Defendants' inexcusable inattention, bad faith and/or reckless disregard of the rights and interest of Defendant ATA, Defendant ATA Ranches, and their shareholders. Defendants have acted without the reasonable and ordinary care which they owe Defendant ATA, Defendant ATA Ranches, and their shareholders.

89. As a result of the foregoing, Defendants have caused harm to Defendant ATA, Defendant ATA Ranches, and their shareholders and have breached and are breaching their fiduciary duties by knowingly aiding, encouraging, cooperating, participating in, and/or substantially assisting the other Defendants in the breaches of their fiduciary duties.

90. As a result of the actions and conduct alleged above, Defendant ATA, Defendant ATA Ranches, and their shareholders have sustained and will continue

25

## COMPLAINT

to sustain damages and injuries.  Those amounts will be determined according to proof at trial.

91.   In engaging in the actions and conduct alleged above, Defendants acted with recklessness, oppression, fraud, and malice.  Plaintiff is, therefore, entitled to an award of punitive damages against Defendants.

## SECOND CAUSE OF ACTION

## DERIVATIVE CLAIM FOR ABUSE OF CONTROL

(Against Director Defendants, Defendant Kedrin, and Does 1-25)

92.   Plaintiff incorporates by reference the allegations set forth above as though fully restated herein.

93.   By virtue of their positions of control over and/or ownership interests in Defendant ATA and Defendant ATA Ranches, Defendants exercised control over Defendant ATA, Defendant ATA Ranches, and their operations.  As controlling persons, Defendants owed and owe duties to Defendant ATA and Defendant ATA Ranches not to use their positions of control for their own personal interests and to the detriment of the interests of Defendant ATA, Defendant ATA Ranches, and their shareholders.

94.   Defendants' conduct amounts to an abuse of their control of Defendant ATA and Defendant ATA Ranches, in violation of their continuing obligations to Defendant ATA and Defendant ATA Ranches.  Defendants aided, encouraged, cooperated and/or participated in, and substantially assisted their co-Defendants in this abuse of control.

95.   As a result of the actions and conduct of Defendants alleged above, Defendant ATA, Defendant ATA Ranches, and their shareholders have sustained and will continue to sustain damages and injuries all in amounts to be determined according to proof at trial.

96.   In engaging in the actions and conduct alleged above, Defendants

26

**COMPLAINT**

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

1  acted with recklessness, oppression, fraud, and malice.  Plaintiff is, therefore,

2  entitled to an award of punitive damages against Defendants.

3  ### THIRD CAUSE OF ACTION

4  ### DERIVATIVE CLAIM FOR CORPORATE WASTE

5  (Against Director Defendants and Does 1-25)

6  97.   Plaintiff incorporates by reference the allegations set forth above as

7  though fully restated herein.

8  98.   As a result of the misconduct described above, and by failing to

9  properly consider the interests of Defendant ATA and its shareholders, Director

10  Defendants have caused Defendant ATA to waste valuable corporate assets.

11  99.   Defendant ATA has sustained and will continue to sustain damages

12  and injuries as a direct and proximate result of the misconduct of Director

13  Defendants for which Defendant ATA has no adequate remedy at law.

14  100. Additionally, since Director Defendants engaged in intentional,

15  willful, reckless, oppressive, and/or wanton conduct, Plaintiff is entitled to an

16  award of punitive damages for the benefit of ATA.

17  ### FOURTH CAUSE OF ACTION

18  ### DERIVATIVE CLAIM FOR UNJUST ENRICHMENT

19  (Against Director Defendants, Defendant Kedrin, Defendant Adelaida, and Does

20  1-25)

21  101. Plaintiff incorporates by reference the allegations set forth above as

22  though fully restated herein.

23  102. Director Defendants derived compensation, fees, and other benefits

24  from Defendant ATA and Defendant ATA Ranches, and were unjustly enriched

25  during the time period in which the alleged wrongful conduct occurred, to the

26  detriment of Defendant ATA and Defendant ATA Ranches.   The Director

27  Defendants' enrichment is directly and causally related to the detriment caused to

Spertus, Landes & Umhofer, LLP
1990 South Bundy Dr., Suite 705
Los Angeles, CA 90025
Telephone 310-826-4700; Facsimile 310-826-4711

27

Defendant ATA and Defendant ATA Ranches.

103. Defendant Kedrin and Defendant Adelaida also derived monetary benefits from Defendant ATA and Defendant ATA Ranches and were unjustly enriched during the time period in which the alleged wrongful conduct occurred, to the detriment of Defendant ATA and Defendant ATA Ranches.  Said Defendants' unjust enrichment is directly and causally related to the detriment caused to Defendant ATA and Defendant ATA Ranches.

104. These benefits were accepted by said Defendants under such circumstances that make it inequitable for said Defendants to retain such benefits without payment.  As alleged above, said Defendants breached and continue to breach their ongoing fiduciary duties and/or abused and continue to abuse their positions of control.  Therefore, Defendants are not justified in retaining the benefits conferred upon them.

**FIFTH CAUSE OF ACTION**

**DERIVATIVE CLAIM FOR ACCOUNTING**

(Against Director Defendants and Does 1-25)

105. Plaintiff incorporates by reference the allegations set forth above as though fully restated herein.

106. As part of their ongoing fiduciary, contractual, and statutory duties to ATA, ATA Ranches, and their shareholders, Defendants are required to account for the transactions and occurrences about which Plaintiff complains in this Complaint.

107. Prior to the filing of this Complaint, Plaintiff, as Trustee for both Matt's Trusts and Gretchen's Trusts, demanded that Director Defendants account for the transactions and occurrences about which Plaintiff complains of in this Complaint.

108. Director Defendants failed and refused to provide the requested

Spertus, Landes & Umhofer, LLP
1990 South Bundy Dr., Suite 705
Los Angeles, CA 90025
Telephone 310-826-4700; Facsimile 310-826-4711

28

**COMPLAINT**

accounting of the transactions and occurrences about which Plaintiff complains, thereby forcing Plaintiff to file this Complaint seeking the Court's order compelling the requested accounting.

**SIXTH CAUSE OF ACTION**

**DERIVATIVE CLAIM FOR DECLARATORY RELIEF**

(Against All Defendants)

109.   Plaintiff incorporates by reference the allegations set forth above as though fully restated herein.

110.   An actual controversy exists between Plaintiff and Defendants regarding the validity and enforceability of the Agreement for Services (**Exhibit 1**) and the Grape Purchase Agreement (**Exhibit 2**) purportedly entered into between representatives of Defendant ATA and Defendant Adelaida.

111.   Plaintiff contends that that the contracts were and are invalid and unenforceable or, at least, voidable.

112.   Plaintiff is informed and believe and, on that basis alleges, that Defendants dispute Plaintiff's contention and contend that the contracts are valid.

113.   Plaintiff desires a judicial determination of and declaration on these contract issues.

114.   A judicial declaration is necessary and appropriate at this time in order to allow Plaintiff and Defendants to ascertain their rights and obligations with respect to the contracts and to avoid a multiplicity of actions.

**SEVENTH CAUSE OF ACTION**

**DERIVATIVE CLAIM FOR INJUNCTIVE RELIEF**

(Against Director Defendants, Defendant Kedrin, and Does 1-25)

115.   Plaintiff incorporates by reference the allegations set forth above as though fully restated herein.

116.   Plaintiff seeks an injunction enjoining the Director Defendants from

29

**COMPLAINT**

Spertus, Landes & Umhofer, LLP
1990 South Bundy Dr., Suite 705
Los Angeles, CA 90025
Telephone 310-826-4700; Facsimile 310-826-4711

engaging in and authorizing further non-arm's-length transactions between Defendant ATA and Defendant Adelaida.

117. Plaintiff seeks an injunction enjoining Defendant Kedrin from serving as a director and/or officer of Defendant ATA and Defendant ATA Ranches for so long as she also serves as an officer of Defendant Adelaida.

118. Plaintiff seeks an injunction enjoining Defendants Kedrin, as the Successor Trustee of the 1996 Trust and Defendant Elizabeth's attorney-in-fact, from voting the Class A shares in Defendant ATA until this lawsuit has been resolved.

119. Plaintiff has no adequate remedy at law.

120. The injunctive relief requested is necessary to prevent further irreparable harm to Defendant ATA and its shareholders.

## EIGHTH CAUSE OF ACTION
## DERIVATIVE CLAIM FOR CONSTRUCTIVE TRUST

(Against Defendant Kedrin, Defendant Adelaida, and Does 1-25)

121. Defendants have been unjustly and unfairly enriched as a result of the breach and abuse of the fiduciary relationships as alleged above.

122. Plaintiff requests that this Court impose a constructive trust on the assets, including real property, personal property, and money, attributable to or having been derived from Defendant ATA's and/or Defendant ATA Ranches' property, services, and money, which were improperly diverted to Defendant Adelaida and Defendant Kedrin as a result of the breaches and abuses of the fiduciary relationships alleged above.

//
//
//
//

**COMPLAINT**

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

# NINTH CAUSE OF ACTION

# DERIVATIVE CLAIM FOR ORDER COMPELLING PRODUCTION OF CORPORATE RECORDS

### (Against Director Defendants and Does 1-25)

123. Plaintiff incorporates by reference the allegations set forth above as though fully restated herein.

124. Plaintiff made his written request for corporate records and information to Defendant Longorio, the President of ATA, on May 3, 2019.

125. Defendant Longorio, belatedly produced some of the requested Defendant ATA corporate information, but not all of the requested information.

126. Plaintiff made his follow-up written request for Defendant ATA corporate information on July 9, 2019, to Defendant Longorio, the President of Defendant ATA.

127. Defendant Longorio failed to produce all of the Defendant ATA corporate information requested by Plaintiff.

128. Plaintiff was forced to retain legal counsel to assist him in enforcing his statutory inspection rights under Corporations Code section 1601.

## PRAYER FOR RELIEF

Plaintiff, on behalf of himself, Defendant ATA, and Defendant ATA Ranches prays for judgment as follows:

A.    Declaring that Director Defendants have breached and/or aided and abetted the breach of their fiduciary duties to Defendant ATA and Defendant ATA Ranches;

B.    Determining and awarding to Defendant ATA and Defendant ATA Ranches the damages sustained by them as a result of the violations set forth above from each of the Director Defendants, jointly and severally, together with interest thereon;

Spertus, Landes & Umhofer, LLP
1990 South Bundy Dr., Suite 705
Los Angeles, CA 90025
Telephone 310-826-4700; Facsimile 310-826-4711

31

**COMPLAINT**

C. Directing Defendant ATA, Defendant ATA Ranches, and Director Defendants to take all necessary actions to reform and improve their corporate governance and internal procedures to comply with applicable laws and to protect ATA, ATA Ranches, and their shareholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for shareholder vote resolutions for appropriate amendments to Defendants ATA's and ATA Ranches' Bylaws or Articles of Incorporation;

D. Determining and awarding to Defendant ATA and Defendant ATA Ranches exemplary damages against Director Defendants in an amount necessary to punish Director Defendants, including but not limited to Defendant Kedrin, and to make an example of said Defendants to the community;

E. Attaching, impounding, imposing a constructive trust on or otherwise restricting Defendants' assets so as to assure that Plaintiff, on behalf of Defendant ATA, Defendant ATA Ranches, and their shareholders, has an effective remedy;

F. Declaring Director Defendants, Defendant Kedrin, and Defendant Adelaida liable under the common law of unjust enrichment;

G. Compelling the production of requested corporate records, information from Director Defendants;

H. Compelling an accounting of the financial transactions between Defendant ATA and Defendant ATA Ranches, on the one hand, and Defendant Adeladia;

I. Removing and replacing Kedrin Van Steenwyk as Successor Trustee of the 1996 Trust and/or as a director and officer of Defendant ATA and Defendant ATA Ranches;

J. Awarding to Plaintiff his costs and disbursements incurred in this action, including reasonable attorneys' fees, accountants' fees and expert witness fees, costs and expenses; and

32

**COMPLAINT**

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

K.     Awarding such other relief as this Court may deem just and proper.

## **JURY TRIAL DEMAND**

Plaintiff hereby demands a trial by jury of all issues which are subject to adjudication by a trier of fact.

Dated:        March 12, 2020        SPERTUS, LANDES & UMHOFER, LLP


                                             /s/ Matthew Donald Umhofer
                                    _____
                                    MATTHEW DONALD UMHOFER, ESQ.
                                    Attorneys for Plaintiff

Dated:        March 12, 2020        ADAMSKI MOROSKI MADDEN
                                    CUMBERLAND & GREEN LLP


                                             /s/ Martin P. Moroski
                                    _____
                                    MARTIN P. MOROSKI, ESQ.
                                    Attorneys for Plaintiff

**COMPLAINT**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

Spertus, Landes & Umhofer, LLP
1990 South Bundy Dr., Suite 705
Los Angeles, CA 90025
Telephone 310-826-4700; Facsimile 310-826-4711

## **VERIFICATION**

I, Matthew Donald Van Steenwyk, verify that I am a shareholder of ATA and ATA Ranches.  I have reviewed the allegations in this Verified Shareholder Derivative Complaint.  As to those allegations of which I have personal knowledge, I believe them to be true; as to those allegations of which I lack personal knowledge, I rely upon my counsel and counsel's investigation, and believe them to be true.  Having received a copy of the complaint and reviewed it with counsel, I authorize its filing.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed on _12 March '20_ .

_____
Matthew Donald Van Steenwyk

**COMPLAINT**

# EXHIBIT 1

## AGREEMENT FOR SERVICES

This Agreement for Services ("*Agreement*"), effective April 1, 2016, is between Scientific Drilling International, Inc. and Applied Technologies Associates, Inc. (collectively, "*ATA*") and KMBG, LLC and Adelaida Cellars, Inc. (collectively, "*Adelaida*").

This Agreement documents Adelaida's retention of ATA to provide limited administrative, legal, and other services (collectively, "*Services*").

1. **Scope of Services.** ATA agrees to render the following Services to Adelaida at the following service levels:

   a. financial and accounting services including preparation of monthly financial statements from Adelaida's general ledger accounts and preparation of all related state and federal sales, employer, and income tax returns; and

   b. legal consultation services including routine matters relating to contractual arrangements and negotiations, insurance placement, risk assessments, and general advice; and

   c. administrative services including routine human resources support and advice and health, safety, and environmental inspections and training; and

   d. construction and maintenance support and service including routine maintenance and repair; and

   e. technical services including such computer information systems and technical support services as ATA has historically provided to Adelaida.

2. **Term.** This Agreement will remain in effect until terminated by either party by giving the other party 60 days written notice to that effect. Otherwise, the term of this Agreement will be the period from the date hereof until the date of termination of this Agreement.

3. **Compensation.** Adelaida will pay ATA a flat monthly service fee of $2,000.00 for Services rendered under this Agreement. Billing and payment will occur monthly in arrears with payment due within 30 days of Adelaida's receipt of ATA's invoice.

4. **Reasonable Efforts.** ATA agrees to use reasonable efforts to timely and accurately render Services to Adelaida. "Reasonable efforts" means, with respect to a given service, the efforts that a reasonable person in the position of ATA would use to deliver that service as expeditiously as possible.

**5.**     *Compliance with Laws.* ATA will, in rendering Services contemplated by this Agreement, observe and comply with all applicable federal, state, and local laws, ordinances, regulations, and rules.

**6.**     *Limitation.* Notwithstanding any of the other terms or conditions found in this Agreement, neither party will be liable for any indirect, consequential, exemplary, punitive, special, or speculative damages of any type or character (including, but not limited to, loss of profit, use, contract, lease, or production or increased costs) arising from or related in any way to this Agreement or Services rendered.

**7.**     *Governing Law.* This Agreement and Services rendered will be governed by and construed and interpreted in accordance with the laws of the State of California without regard to its conflict of law principles.

**8.**     *Warranties.* ATA does not guarantee results.   **ATA MAKES NO WARRANTIES OR REPRESENTATIONS, IMPLIED OR EXPRESS, WITH RESPECT TO SERVICES RENDERED.**

**9.**     *Independent Contractor.* ATA is not Adelaida's agent, but an independent contractor maintaining complete control over its employees and third-party service providers and subcontractors of every tier.

**10.**     *Force Majeure.* ATA will not be liable for delays due to unforeseeable causes or events beyond its reasonable control.

**11.**     *Access to Premises.* In order to enable ATA to render Services, Adelaida agrees to provide ATA's employees and its third-party service providers and subcontractors access to the facilities, assets, and books and records of Adelaida to the extent necessary for ATA to fulfill its obligations under this Agreement.

**12.**     *Cooperation.* The parties acknowledge and agree that: (i) it is impracticable to create an exhaustive Services list for the orderly operation of Adelaida and accordingly, Services listed in Section 1 present general outlines of the scope of Services to be provided by ATA; and (ii) the parties will act in good faith and reasonably cooperate with one another during the term hereof in order for ATA to provide the necessary Services to Adelaida.

**13.**     *Confidentiality.*

a.     Each party agrees to keep confidential all information that the other party provides to it (*"Proprietary Information"*).   The party providing Proprietary Information will be referred to as *"Discloser,"* while the party receiving Proprietary

2

Information will be referred to as "*Recipient.*" Proprietary Information includes, but is not limited to, information related to the affairs, methods of operation, strategies, plans, or financial information of the Discloser. Proprietary Information does not include information that: (i) is or becomes available other than as a result of unauthorized disclosure by Recipient; (ii) is or becomes available to Recipient on a non-confidential basis from a source that, to the best of Recipient's knowledge, is not prohibited from disclosing such information to Recipient by a legal, contractual or fiduciary obligation to Discloser; or (iii) is or becomes developed by Recipient independently of any information disclosed by Discloser. Recipient agrees to use the Proprietary Information only for the purposes of performing its obligations under this Agreement. Recipient will not, without first obtaining the written consent of Discloser, disclose or permit dissemination of Proprietary Information to any third party for purposes other than the performance of this Agreement except (i) in response to a request or order of a governmental authority or (ii) as otherwise required by applicable law.

b.      If Recipient is requested or required to disclose any Proprietary Information (i) in response to a request or order of a governmental authority or (ii) as otherwise required by applicable law, it will provide Discloser with prompt written notice of such request or requirement so that Discloser may seek a protective order or other appropriate remedy. If, in the absence of a protective order or other remedy or the receipt of a waiver from Discloser, Recipient is nonetheless, in the written opinion of counsel, legally compelled to disclose Proprietary Information, Recipient may, without liability under this Agreement, disclose such Proprietary Information.

**14.    *No Authority to Contract.*** Nothing contained herein will be construed to give either party any authority to execute any contract or to otherwise legally bind the other party.

**15.    *Successors and Assigns.*** This Agreement will extend to and bind the respective successors and assigns of the parties hereto, but neither party may assign or transfer this Agreement, or any right or obligation hereunder, to any third party without the prior written consent of the other party.

**16.    *Modification.*** This Agreement may only be modified by a writing executed by both parties.

**17.    *Integration.*** This Agreement expresses the complete agreement of the parties as of the time of execution, and all prior written or oral and contemporary oral agreements are superseded by this Agreement.

The duly authorized representatives of the parties executed this Agreement to be effective as of the day and year first written above.

**Adelaida**


Elizabeth A. Van Steenwyk

**ATA**


Daniel R. Carter
Senior Vice President and General Counsel

# EXHIBIT 2

# GRAPE PURCHASE AGREEMENT

This Agreement is between Adelaida Cellars, Inc. located at 5805 Adelaida Road, Paso Robles, California 93446 ("Winery") and Applied Technologies Associates, Inc. located at 3025 Buena Vista Drive, Paso Robles, California 93446 ("Grower"), who are singularly called "party" and collectively called "parties." The parties agree, as follows:

1.  Grower agrees to sell all the grapes grown in vineyards it owns to Winery. Winery agrees to purchase all the grapes grown in vineyards Grower owns.

2.  Grower will grant to Winery an unlimited right of entry to its vineyards for all purposes related to the grapes.

3.  Grower will bear the costs of delivery of the grapes to Winery and both parties acknowledge that the sale price per ton has been calculated taking into account the costs of transport.

4.  Grower will bear all labor costs associated with farming and harvesting the grapes and both parties acknowledge that the sale price per ton has been calculated taking into account the labor costs.

5.  Unless otherwise agreed in writing, title to and risk in the grapes will pass to Winery upon acceptance by Winery at its premises.

6.  For each harvest year, the price per ton will be 94% of the Weighted Average Grower Returns per Ton Delivered Basis (Table 6) paid for grapes of the same variety in District 8, as published in the *Final Grape Crush Report* by the California Department of Food and Agriculture, for the preceding harvest year.

7.  Grower will submit an itemized invoice to Winery on or before November 1 of each harvest year.

8.  Winery will pay one-half of the invoiced amount on or before December 31 and the balance of the invoiced amount on or before March 31 of the year following harvest.

9.  The term of this Agreement is for five years beginning 1 January 2016 and will automatically renew on each five year anniversary for an additional five year term unless terminated by either party by giving written notice to the other party at least 90 days prior to the end of the then-current five year term.

10. If any portion of this Agreement or the application thereof to any persons or circumstances should be found to be invalid by a court of competent jurisdiction, such invalidity will not affect the remaining portions or application thereof, which can be given effect without the invalid portion or application.

11. The validity of this Agreement and all causes of action, claims, damages, demands, disputes, losses, and suits arising hereunder will be construed, interpreted, and governed in accordance with the applicable laws of the State of California without regard to its conflict of law principles with venue being exclusive and proper in San Luis Obispo County, California.

12. This Agreement expresses the complete agreement of the parties as of the time of execution, and all prior written or oral, and contemporary oral agreements are superseded by this Agreement.

Wishing to be legally bound, the parties caused this Agreement to be executed by their duly authorized representatives below.

**Applied Technologies Associates, Inc.**

Printed Name: Philip N Longonio
Date: 15 DEC 2016

**Adelaida Cellars, Inc.**

Printed Name: Kelvin Van Steenwyk
Date: 2 Nov 2016

# EXHIBIT 3

# ADAMSKI MOROSKI MADDEN
# CUMBERLAND & GREEN LLP
ATTORNEYS AT LAW

Post Office Box 3835 • San Luis Obispo, California 93403-3835
T  805-543-0990 • F  805-543-0980 • *www.ammcglaw.com*

May 3, 2019

**VIA U.S. MAIL**

Philip Longorio
Chief Executive Officer
Applied Technologies Associates, Inc.
3025 Buena Vista Drive
Paso Robles, CA 93446

Re:  **Request For Inspection Of Books And Records of Applied Technologies Associates, Inc. Under Corporations Code Section 1601**

Dear Mr. Longorio:

This office represents Matthew Van Steenwyk ("Matt") and Gretchen V. Marsh, D.C. ("Gretchen"), two shareholders of one of Applied Technologies Associates, Inc.'s ("ATA") shareholders.  Pursuant to California Corporations Code section 1601, we hereby demand on behalf of Matt and Gretchen, the right to inspect the following accounting books, records and minutes of proceedings of ATA and to make copies or extracts therefrom on May 24, 2019, at ATA's offices at 3025 Buena Vista Drive in Paso Robles during ATA's usual business hours:

1.  A current list of the full name and last known business address or residence address of each shareholder of ATA;

2.  A current list of all current directors sitting on ATA's Board of Directors ("Board");

3.  Copies of ATI's articles of incorporation and bylaws, and all amendments thereto, together with any powers of attorney pursuant to which the articles of incorporation, bylaws and/or any amendments thereto were executed;

4.  Copies of ATA's federal and state income tax returns, for the five (5) most recent tax years;

5.  Copies of the financial statements of ATA for the five (5) most recent fiscal years of ATA, whether audited or reviewed;

6.  The following additional financial and accounting records of ATA:

Philip Longorio, CEO
Applied Technologies, Inc.
May 3, 2019
Page 2

a. Billings from ATA to Adelaida Cellars, Inc. for wine grapes sold and/or supplied by ATA;

b. The discounted price paid to ATA by Adelaida Cellars, Inc. for wine grapes sold and/or supplied by ATA as admitted in a December 20, 2018 email from David Neuhardt (*see*, **Exhibit A** hereto);

c. Payments made to ATA by Adelaida Cellars, Inc. for wine grapes sold and/or supplied by ATA to Adelaida Cellars, Inc.;

d. Human resources services provided by ATA to Adelaida Cellars, Inc.;

e. Payments made to ATA by Adelaida Cellars, Inc. for human resources services;

f. Business expenses of Adelaida Cellars, Inc., paid by ATA;

g. Employee expenses incurred by Adelaida Cellars, Inc. – i.e. salaries, benefits, retirement plan contributions, bonuses and other forms of compensation – paid or reimbursed by ATA;

h. The records reflecting the payments made by ATA to its directors, officers and/or managers of documents reflecting ATA's reporting of those payments to the taxing authorities, whether by Form 1099 or otherwise during the last five (5) years;

i. Compensation and payment records showing all direct and indirect payments made by ATA to Kedrin Van Steenwyk, during the last five (5) years, including direct and indirect distributions, fees, reimbursements, health insurance, tax distribution payments (i.e. distributions to pay taxes owned or penalties assessed), vehicle allowance, indirect benefits and/or the right to use any ATA assets;

j. The records relating to any loans from ATA to Kedrin Van Steenwyk, Adelaida Cellars, Inc. and/or any affiliate during the last five (5) years;

k. ATA's general ledger of accounts covering the last five (5) years.

Philip Longorio, CEO
Applied Technologies, Inc.
May 3, 2019
Page 3

7.    The books and records of ATA relating to the following internal affairs of the ATA for the current and the past five (5) fiscal years, including:

    a.    Notices of meetings of ATA's Board and/or any of its committees during the last five (5) years;

    b.    Agendas and board packets for each meeting of ATA's Board during the past five (5) years;

    c.    Consents given by given by Directors to ATA's Board and/or management committee meetings during the last five (5) years;

    d.    Approvals given by Directors and/or its committee members at meetings held during the last five (5) years;

    e.    The minutes of meetings of ATA's Board and/or any of its committees during the last five (5) years, including records of the votes by the Directors and/or management committee members at Board meetings;

    f.    Resolutions of the ATA's Board and/or its committees during the last five (5) years;

8.    The following additional documents relating to the internal affairs and governance of ATA:

    a.    Corporate records relating to the billings from ATA to Adelaida Cellars, Inc. for wine grapes sold and/or supplied by ATA;

    b.    Corporate records relating to payments made to ATA by Adelaida Cellars, Inc. for wine grapes sold and/or supplied by ATA to Adelaida Cellars, Inc.;

    c.    Corporate records relating to the discounted price paid to ATA by Adelaida Cellars, Inc. for the wine grapes sold and/or supplied by ATA (*see*, **Exhibit A** hereto);

    d.    Corporate records relating to human resources services provided by ATA to Adelaida Cellars, Inc.;

Philip Longorio, CEO
Applied Technologies, Inc.
May 3, 2019
Page 4

e.      Corporate records relating to payments made to ATA by Adelaida Cellars, Inc. for human resources services;

f.      Corporate records relating to business expenses of Adelaida Cellars, Inc. paid by ATA;

g.      Corporate records relating to the employee expenses of Adelaida Cellars, Inc. – i.e. salaries, benefits, retirement plan contributions, bonuses and other forms of compensation – paid or reimbursed by ATA;

h.      Corporate records relating to any financing obtained on behalf of ATA during the last five (5) years;

i.      Corporate records evidencing the disbursement and use of any loan proceeds by ATA's management;

j.      Corporate records relating to any discussions by and between the directors, officers and/or managers of ATA about its purchase of real property from Adelaida Cellars, Inc. and/or its exchange of properties with Adelaida Cellars, Inc.;

k.      Corporate records relating to any discussions by and between the directors, officers and/or managers of ATA about the sale of wine grapes to Adelaida Cellars, Inc.;

l.      Corporate records relating to any discussions by and between the directors, officers and/or managers of ATA about ATA's payment of overhead expenses of Adelaida Cellars, Inc.;

m.      Wine grape contracts entered into between ATA and Adelaida Cellars, Inc. during the last five (5) years;

n.      Wine grape contracts entered into between ATA and any entity other than Adelaida Cellars, Inc., during the last five (5) years;

o.      The records relating to the approval of the contracts identified in Request 8(m) and 8(n) by ATA's Board, management committee, and/or managers.

Philip Longorio, CEO
Applied Technologies, Inc.
May 3, 2019
Page 5


Matthew Van Steenwyk and Gretchen V. Marsh, D.O. are seeking to inspect the above-referenced books and records for the purpose of investigating the quality and certain details of the governance of ATA as well as questions of conflicts of interest and independence of ATA's management.  As you know, a member may bring an action to enforce the inspection rights under Corporation Code section 1601 and if the court finds the failure of the corporation to comply with the requirements of Section 1601 is without justification, the court may award an amount sufficient to reimburse the person bringing the action for the reasonable expenses incurred by that person, including reasonable attorneys' fees, in connection with the action or proceeding.

As stated, the inspection of the records identified above will be by Matthew Van Steenwyk and his designee.  We expect that the records will be made available for our inspection and copying at ATA's offices. We look forward to hearing from you, and confirming the details of the inspection of on **May 24, 2019.**  Thank you in advance for your courtesy and cooperation.

Very truly yours,

ADAMSKI MOROSKI MADDEN
CUMBERLAND & GREEN LLP

MARTIN P. MOROSKI

MPM:tf
G:\VanSteenwyk\Cor\Longorio 050319.docx
Enclosures

cc:     Matthew Van Steenwyk (via email only)
        Gretchen V. Marsh, D.O. (via email only)
        Thomas J. Madden, Esq. (via email only)
        Chase W. Martin, Esq. (via email only)
        George Olguin (via email only)

# ADAMSKI MOROSKI MADDEN
# CUMBERLAND & GREEN LLP

ATTORNEYS AT LAW

Post Office Box 3835 • San Luis Obispo, California 93403-3835
T  805-543-0990 • F  805-543-0980 • *www.ammcglaw.com*

July 24, 2019

**VIA EMAIL ONLY**

Sabrina McTopy, Esq.
Jackson Walker LLP
1401 McKinney, Suite 1900
Houston, Texas 77010
Email: smctopy@jw.com

Re:   **Request For Inspection Of Books And Records of Applied Technologies Associates, Inc. Under Corporations Code Section 1601**

Dear Ms. McTopy:

We write in follow-up to our letter of May 3, 2019 to Phil Longorio on behalf of our clients Matthew Van Steenwyk ("Matt") and Gretchen V. Marsh, D.C. ("Gretchen"), shareholders of Applied Technologies Associates, Inc. ("ATA"). Through your office, ATA has produced some of the documents and information we requested in our May 3 letter. Pursuant to California Corporations Code section 1601, we hereby demand, on behalf of Matt and Gretchen, the right to inspect and copy the following additional documents relating to ATA, that have not been produced by ATA, on or before **August 9, 2019**:

3.   Copies of ATA's articles of incorporation and bylaws, and all amendments thereto, together with any powers of attorney pursuant to which the articles of incorporation, bylaws and/or any amendments thereto were executed;

**Follow-up request:**   On June 14, 2019, ATA produced bylaws dated July 28, 2010 ("Amendment to Amended and Restated By-Laws of Applied Technologies Association, Inc.") Is this the most current set of ATA's bylaws? If not, we request that ATA produce the most current bylaws;

6.   The following additional financial and accounting records of ATA:

a.   Billings from ATA to Adelaida Cellars, Inc. for wine grapes sold and/or supplied by ATA;

**Follow-up request:** Produce the source documents supporting the amounts reflected in the "Grape Invoices-ATAR to ACI Summary" document ATA produced in response to this request, a copy of which is attached hereto as

Sabrina McTopy, Esq.
Jackson Walker LLP
July 24, 2019
Page 2

**Exhibit 1**, including, but not limited, the itemized invoices ATA submitted to Adelaida pursuant to paragraph 7 of Grape Purchase Agreement, documents referring to the transportation of grapes to Adelaida and any tickets evidencing the weight of each load of grapes ATA transported to Adelaida;

d.      Human resources services provided by ATA to Adelaida Cellars, Inc.;

**Follow-up request:** On June 14, 2019, ATA produced two agreements between SDI/ATA and KMBG, LLC/Adelaida for services rendered by SDI/ATA to KMBG, LLC/Adelaida, dated January 22, 2013 and April 1, 2016. According to Paragraph 1 of the agreements, ATA has been and is continuing to provide a number of services to Adelaida for a flat fee of $2,000 per month. Those services include preparation of Adelaida's monthly financial statements and income tax returns, legal consultations, human resource inspections and training, construction and maintenance support (which includes repairs) and computer technical support. We request that ATA produce any and all documents relating to these services, including, but not limited to, ATA invoices to Adelaida, ATA purchase orders, documents tracking ATA's activity, progress and/or completion of the services it is rendering, documents relating to and/or referring to the number of ATA employees being used to perform such services, ATA's general ledger detail reports relating to such services, Adelaida's financial statements and income tax returns (including drafts) prepared by ATA and documents relating to and/or referring to any construction and maintenance support that ATA has provided to Adelaida;

e.      Payments made to ATA by Adelaida Cellars, Inc. for human resources services;

**Follow-up request:** No documents evidencing Adelaida's payments to ATA under the agreements for services between SDI/ATA and KMBG, LLC/Adelaida dated January 22, 2013 and April 1, 2016, were produced by ATA. We request that ATA produce the requested payment information;

k.      ATA's general ledger of accounts covering the last five (5) years.

**Follow-up request:** ATA produced trial balance showing total credits and debts but it did not produce the requested general ledger **detail** for all of ATA's accounts. We request that ATA produce the requested general ledger detail for all

Sabrina McTopy, Esq.
Jackson Walker LLP
July 24, 2019
Page 3

of ATA's accounts, including, but not limited to, the detail relating to ATA's Non-Oil Field Business (ranch operations and vineyard operations);

**Follow-up request:** Documents evidencing that KMBG reimbursed Stoneway Properties/ATA for its payments of KMBG's property taxes reflected in the spreadsheet attached hereto as **Exhibit 2.** The documents should include, but not be limited to, property tax bills/invoices, copies of checks, and/or any other form of documentation evidencing reimbursement;

**Follow-up request:** Documents constituting the financial statements (e.g., income and expense and balance sheets) of Stoneway Properties and general ledger detail reports identifying its sources of income and expenses for the last five (5) years;

**Follow-up request:** Documents relating to the use of ATA manpower for the replanting of vineyards on any of the ranches whether owned by ATA or KMBG, including, but not limited to, hardscape and landscape around the winery or the vineyards, building and maintenance of any venues (e.g., wedding venue), greenhouses or other structures;

**Follow-up request:** Documents relating to Kedrin Van Steenwyk's business plan for her proposed new winery/vineyard operations as proposed by her in her buyout offer letter dated November 5, 2018, a copy of which is attached hereto as **Exhibit 3**;

**Follow-up request:** Documents evidencing the initial outlays, interest expenses, interest payments and principal payments for all notes between related parties given by ATA to any and all individuals and/or companies related to the company, A Shareholders, B Shareholders, including but not limited to DeVans, ATA Energy, Don and Elizabeth Van Steenwyk, Don Van Steenwyk, Elizabeth van Steenwyk, Kedrin Van Steenwyk, Brett Van Steenwyk;

**Follow-up request:** Documents relating to Note 14, Related Party Transactions, included in the Notes to Combined Financial Statement for SDI/ATA in which the combined entities identify 'receivables from related parties of $1.9M and $3.1M, losses of $1.0M, lack of timely payments, exceptionally low interest rates of 0.95% for arms length transactions, and finally a payoff sometime in 2018. Information should include the identity, amounts of interest paid, written off and

Sabrina McTopy, Esq.
Jackson Walker LLP
July 24, 2019
Page 4

all derivations and working documents of the note from inception to final payment.

**Follow-up request**: Documents relating to all capital equipment expenses made by ATA for operation of the Non-Oilfield Business;

7. The books and records of ATA relating to the following internal affairs of the ATA for the current and the past five (5) fiscal years, including:

a. Notices of meetings of ATA's Board and/or any of its committees during the last five (5) years;

**Follow-up request:** Notices of meetings of ATA's Board of Directors relating to ATA's Non-Oilfield Business from July 28, 2010 to the present;

b. Agendas and board packets for each meeting of ATA's Board during the past five (5) years;

**Follow-up request:** Agendas and board packets for each meeting of ATA's Board of Directors relating to ATA's Non-Oilfield Business from July 28, 2010 to the present;

c. Consents given by Directors to ATA's Board and/or management committee meetings during the last five (5) years;

**Follow-up request:** Consents given by ATA's Board of Directors relating to ATA's Non-Oilfield Business from July 28, 2010 to the present;

d. Approvals given by Directors and/or its committee members at meetings held during the last five (5) years;

**Follow-up request:** Approvals given by ATA's Board of Directors relating to ATA's Non-Oilfield Business from July 28, 2010 to the present, including approvals for the selection or appointment of officers responsible for the general supervision of assets not used in the Corporation's Oilfield Business;

Sabrina McTopy, Esq.
Jackson Walker LLP
July 24, 2019
Page 5

    e.    The minutes of meetings of ATA's Board and/or any of its committees during the last five (5) years, including records of the votes by the Directors and/or management committee members at Board meetings;

**Follow-up request:** The minutes of meetings of ATA's Board of Directors relating to ATA's Non-Oilfield Business from July 28, 2010 to the present, including records of the votes by the Directors relating to the process by which the officers responsible for the Non-Oilfield Business were identified and named;

    f.    Resolutions of the ATA's Board and/or its committees during the last five (5) years;

**Follow-up request:** Resolutions of the ATA's Board of Directors relating to ATA's Non-Oilfield Business from July 28, 2010 to the present;

**Follow-up request:** The names of the current officers for ATA's Non-Oilfield Business;

**Follow-up request:** A current list of assets not used in ATA's Oilfield Business that are managed by officers of ATA's Non-Oilfield Business;

**Follow-up request:** The name(s) of the person(s) directing/deciding the activities to redirect ATA's resources (e.g., invoicing, labor hours/manpower, capital investments, etc.) for the benefit of either the ranching operations or vineyard operations of KMBG, LLC and/or Adelaida and any documents relating to and/or evidencing those instructions/decisions;

**Follow-up request:** Documents evidencing and/or relating to Dan Carter's participation on the board of Adelaida Cellars, including, but not limited to, documents relating to his reports to ATA's management and/or board on the decisions made that have resulted in continued losses to ATA and/or Adelaida Cellars;

**Follow-up request:** Documents evidencing and/or relating to the reasoning behind ATA's decision to enter it an agreement with Adelaida for the purchase of grapes at cost other than actual cost, including, but not limited to, documents evidencing how the price basis was established, timing, oversight, and practice of

Sabrina McTopy, Esq.
Jackson Walker LLP
July 24, 2019
Page 6

allowing complete and open access to a purchaser and rationale for sales of all grapes to a closely related entity without timely and competitive pricing;

**Follow-up request:**  Documents relating to the "gag order" issued by ATA/SDI's board that prohibits its management from engaging in any discussion or conversations with shareholders of ATA/SDI, including, but not limited to, documents explaining why the "gag order" remains in effect;

8.      The following additional documents relating to the internal affairs and governance of ATA:

h.      Corporate records relating to any financing obtained on behalf of ATA during the last five (5) years;

**Follow-up request:**  Documents evidencing repayments of funds advanced by SDI/ATA to KMBG/Adelaida for the operating costs of KMBG/Adelaida as referenced in the Executed SDI Chase Credit Agreement (Disclosure Cert) attached hereto as **Exhibit 4**;

**Follow-up request:**  Documents evidencing repayments of financing, interest and other fees, if any, relating to any and all "intercompany" transactions between ATA, SDI, KMBG and/or Adelaida, including, but not limited to, any related entities having an interest in airplanes, aircraft leases, solar and/or any other related operations as referenced in the financial statements of SDI/ATA for the last five (5).

We reiterate to you what we stated in our letter of May 3, 2019. Matt and Gretchen are seeking to inspect the above-referenced books and records for the purpose of investigating the quality and certain details of the governance of ATA, as well as questions of conflicts of interest and independence of ATA's management.  As you know, a member may file an action to enforce the inspection rights under Corporation Code section 1601 and if the court finds the failure of the corporation to comply with the requirements of Section 1601 is without justification, the court may award an amount sufficient to reimburse the person bringing the action for the reasonable expenses incurred by that person, including reasonable attorneys' fees, in connection with the action or proceeding. We have drafted a petition to compel ATA's compliance with our clients' request. It is our hope that it will not be necessary to file it.

Sabrina McTopy, Esq.
Jackson Walker LLP
July 24, 2019
Page 7


     We expect that the requested records will be produced for our inspection in the same manner that was used with respect to the records ATA produced in response to our May 3, 2019 letter. Let us know if this is not the case.   We look forward to hearing from you.  Thank you in advance for your courtesy and cooperation.

               Very truly yours,

               ADAMSKI MOROSKI MADDEN
               CUMBERLAND & GREEN LLP

               MARTIN P. MOROSKI

MPM:go
G:\VanSteenwyk\Cor\McTopy 072419.docx
Enclosures

cc:     Clients (via email only)
        Thomas J. Madden, Esq. (via email only)
        Chase W. Martin, Esq. (via email only)
        George Olguin (via email only)

# ADAMSKI MOROSKI MADDEN
# CUMBERLAND & GREEN LLP
ATTORNEYS AT LAW

Post Office Box 3835 • San Luis Obispo, California 93403-3835
T  805-543-0990 • F  805-543-0980 • *www.ammcglaw.com*

September 12, 2019

**VIA EMAIL ONLY**

Sabrina A. McTopy, Esq.
Jackson Walker LLP
1401 McKinney, Suite 1900
Houston, Texas 77010
Email: smctopy@jw.com

Re:  **Request For Inspection Of Books And Records of Applied Technologies Associates, Inc. Under Corporations Code Section 1601**

Dear Ms. McTopy:

We write in follow-up to our letter requests for corporate information relating to Applied Technologies Associates, Inc. ("ATA") dated May 3, 2019, and July 24, 2019.  In response to your letter of August 9, 2019, our July 24 letter sought records that should have been produced or made available to my clients in response to the May 3 letter request.  The requested records have still not been produced and our office has received no further word from you as to when they will be produced.  To the extent the documents are not produced before the end of the month (September), we will file our petition seeking an order compelling their production that has already been drafted.  Thank you for your attention to this matter.

Very truly yours,

ADAMSKI MOROSKI MADDEN
CUMBERLAND & GREEN LLP

MARTIN P. MOROSKI

MPM:tf
G:\VanSteenwyk\Cor\McTopy 091219.docx

cc:  Matt van Steenwyk (via email only)
Gretchen V. Marsh, D.O. (via email only)
Thomas J. Madden, Esq. (via email only)
Chase W. Martin, Esq. (via email only)
George Olguin (via email only)

# ADAMSKI MOROSKI MADDEN
# CUMBERLAND & GREEN LLP
ATTORNEYS AT LAW

Post Office Box 3835 • San Luis Obispo, California 93403-3835
T 805-543-0990 • F 805-543-0980 • www.ammcglaw.com

September 20, 2019

**VIA EMAIL ONLY**

Roy E. Ogden, Esq.
Ogden & Fricks LLP
656 Santa Rosa St., Suite 2B
San Luis Obispo, CA 93401
Email: rogden@ogdenfricks.com

Re:   **Request For Inspection Of Books And Records of Applied Technologies Associates, Inc. Under Corporations Code Section 1601**

Dear Roy:

I write in follow-up to my two letters dated September 12, 2019, to Sabrina McTopy of the Jackson Walker firm. Copies of both are enclosed herewith.

The first is a follow-up to previous letter requests for corporate records of Applied Technologies Associates, Inc. ("ATA") under Corporations Code section 1601. As I state in that letter, my clients and I would like to receive the requested records before the end of this month.

The second letter is a new request. The Code of Ethics is something that ATA committed to adopting in a confidential settlement agreement with Matthew van Steenwyk in 2011. The Jackson Walker law firm should have a copy of the Code of Ethics in its files. My clients and I would like the Code of Ethics produced as soon as possible.

Thanks in advance for your attention to these requests. Please call or write in the meantime with any questions, or if you would like to discuss this matter.

Very truly yours,

ADAMSKI MOROSKI MADDEN
CUMBERLAND & GREEN LLP

MARTIN P. MOROSKI

MPM:tf
G:\VanSteenwyk\Cor\Ogden 092019.docx
cc:   Matt van Steenwyk (via email only)
Gretchen V. Marsh, D.O. (via email only)
Thomas J. Madden, Esq. (via email only)
Chase W. Martin, Esq. (via email only)
George Olguin (via email only)

Paso Robles Office:  1948 Spring Street • Paso Robles, CA 93446-1620 • T 805-238-2300 • F 805-238-2322

# EXHIBIT 4

 Scientific Drilling/Applied Technologies

## CODE OF CONDUCT

Our policy is simple: we must each conduct all of our activities with the highest level of integrity and ethics, complying with the letter and the spirit of all applicable laws and regulations. In other words, we should avoid doing anything that may be, or even appear to be, illegal or unethical and all employees should endeavor to deal fairly and honestly with our vendors, customers, competitors, and each other.

This Code describes our standards of conduct and business practices. These standards apply to all directors and employees (collectively, "employees") of Scientific Drilling International, Inc. and Applied Technologies Associates, Inc. and their subsidiaries and affiliates (collectively, "SDI").

## OBLIGATIONS OF EACH EMPLOYEE

**Understand this Code:** We all have a responsibility to make sure our ethics and business practices program works. To fulfill this responsibility, you should read this Code thoroughly and become familiar with it. If you do not understand something in this Code, please seek out assistance from your supervisor.

**Comply with this Code, SDI Policies, and the Law:** Each employee must comply with the spirit and the letter of this Code, SDI policies, and all applicable laws and regulations. For employees this is a condition of continued employment. Failure to comply will result in disciplinary action, which may include immediate termination for cause.

**Communicate Actual or Suspected Violations:** We should all be alert and sensitive to situations that could result in violations of this Code, SDI policies, or the law. *Each employee has an obligation to report any conduct that may be a violation.*

Generally, these matters should be raised first with your immediate supervisor. This may provide valuable insights or perspectives and encourage resolution of problems within the appropriate area. However, if you are uncomfortable bringing this matter up with your supervisor, or you do not believe the supervisor has dealt with the matter properly, you should raise the matter with SDI's General Counsel, Dan Carter. All inquiries, however reported, will be handled on a confidential, "need-to-know" basis.

If you choose to communicate in writing, you should send your letter to SDI, Attention: General Counsel, 1100 Rankin Road, Houston, Texas 77073 or email to codeofconduct@scientificdrilling.com. If you prefer to remain anonymous, you may call 281-214-7540 and leave a message for the General Counsel.

Regardless of how a report is made, no employee will suffer any retaliation of any kind for reporting in good faith a violation or suspected violation of this Code, SDI policy, or the law. In addition, no employee will suffer any retaliation for filing any complaint with any government agency or for exercising any legal right.

Violations of this Code or with the laws and regulations applicable to SDI's business may subject an employee to corrective disciplinary action, up to and including termination for cause. In addition, any violations may also violate foreign, federal, state, or local laws and could subject an employee to individual civil or criminal prosecution with accompanying potential damages, fines, and imprisonment.

**How Can You Be Sure That You Are Doing The Right Thing:** No matter what your job, you make decisions every day that affect SDI and your co-workers. Sometimes, circumstances can blur the line between right and wrong. When in doubt, you should ask yourself:

 Scientific Drilling/Applied Technologies

> ➢ Do I have all the information I need to make a good decision?
> ➢ Does my decision appear appropriate and ethical?
> ➢ Am I complying with the intent of SDI's policies?
> ➢ What could the impact on SDI be because of my actions?
> ➢ Would I want to read about it on the front page of the newspaper?

If your answer to any of these questions is not positive, it may be that whatever you are considering is the wrong thing to do and you should reach out to your supervisor or the General Counsel for help.

## POLICIES AND PRACTICES

Below are summaries of key SDI policies relating to ethics and business practices. *Compliance with these policies is a condition of each employee's continued employment.*

## CONFLICTS OF INTEREST

Conflicts of interest arise when there is opportunity for personal gain beyond the usual rewards of employment or when an employee's interests collide with SDI's interests. Each employee must avoid doing anything that compromises or appears to compromise his judgment or that places or appears to place his personal interests and SDI's interests at odds.

Conflicts of interest can arise whenever you hold a significant interest in, engage in outside work for, or receive any personal benefit or gift from any of our vendors, suppliers, contractors, customers, or competitors. Conflicts also arise when you compete with SDI or when you are presented with a business opportunity that is received due to your position with SDI and in which SDI may be interested.

It is impractical to list every activity that might constitute a "conflict of interest." There are also many borderline situations that need evaluation based on all relevant information. When in doubt, ask your supervisor. The following are typical conflict of interest situations and SDI policy with respect to each:

**Corporate Opportunities:** All employees are prohibited from taking for themselves opportunities that are discovered using corporate property, information, or position. No employee may use corporate property, information, or position for improper personal gain, and no employee may compete with SDI directly or indirectly. Each employee owes a duty of loyalty to SDI to advance its legitimate business interests when the opportunity to do so arises.

**Outside Work:** Employees must not work for, or conduct any outside business with, a competitor. Employees may not be engaged in any manner by a competitor of SDI.

**Gift and Business Entertainment:** Accepting gifts or entertainment from those SDI does business with could be perceived to influence decisions or create a sense of obligation. In addition, offering gifts and entertainment to our customers can raise similar issues. To ensure the highest level of objectivity in dealing with SDI's vendors, suppliers, contractors, customers, competitors and representatives, and to avoid the appearance of impropriety, you should not accept or offer any gift or entertainment unless it:

> ➢ is unsolicited and offered infrequently;
> ➢ is reasonable in its value and scope;
> ➢ is customary and part of your normal business practices to accept or offer the item;
> ➢ does not impose or create the appearance of imposing a sense of obligation on either the giver or the recipient, and

 Scientific Drilling/Applied Technologies

> does not create the appearance that your business judgment can be influenced.

## Questions and Answers

I am thinking about starting my own outside business to bring in some extra income.  Would this be a conflict of interest?

> An outside business activity does not necessarily create a conflict of interest situation.  If your outside business activity did not compete with SDI, and your participation in this business was accomplished outside your normal work hours and did not adversely impact your ability to do your job, this would probably not be a conflict of interest.  However, you should review the matter with your supervisor before starting the activity.

I'm thinking about taking a potential customer to an exclusive resort.  Would this be acceptable?

> If the purpose of this activity is to help build a good working relationship with the potential customer, then it would be acceptable.  However, the activity would be against company policy if it was (i) offered in return for securing the potential customer's business or (ii) an attempt to compromise the potential customer's ability to make objective and fair business decisions.

What are the guidelines if I have a relative who works for one of SDI's competitors?

> There is nothing wrong with relatives (or other personal relations) working for competitors or suppliers.  However, you should be doubly aware of any potential conflict of interest (e.g., there should be no discussion or exchange of sensitive information).  If you sense the possibility of a potential conflict, disclose the situation to your supervisor.

## SDI INFORMATION, RECORDS, AND PROPERTY

SDI property including SDI information, equipment, funds, supplies, facilities and other assets, as well as services and labor of other SDI employees, must be used only for legitimate business purposes on behalf of SDI.  Employees may not take for themselves personally opportunities that are discovered using SDI property or information or which arise due to their position at SDI.  All SDI records must be kept fully and accurately, and SDI confidential information must be protected at all times.

**Confidential SDI Information:** During employment with SDI, employees will learn and be entrusted with confidential information relating to SDI's operations, financial condition, and potential transactions (including acquisitions).  Some examples of information that is confidential include technical information, engineering data and calculations, financial information, business projections, personnel records, and any information that is marked confidential.  Because this information has substantial value to SDI, employees must not disclose any confidential information, even inadvertently, to any unauthorized person in or outside SDI.  *This obligation continues after your employment ends.*

**Maintaining Accurate Books and Records:** Each employee must maintain accurate and complete business records.  It is against SDI policy, and in some circumstances illegal, for any employee to cause books and records to be inaccurate in any way.  Some examples of prohibited record keeping include making the records appear as though payment were made to one person when in fact they were made to another, setting up unauthorized funds or accounts, and submitting expense accounts that did not accurately reflect the true nature of the expenses.

Scientific Drilling/Applied Technologies

We must ensure that SDI provides full, fair and accurate, timely and understandable disclosure in all reports and documents filed with any governmental agency, as well as in all public communications and disclosures. Employees must immediately inform the General Counsel of any significant issues they become aware of relating to SDI's accounting or auditing policies or practices or our financial statements.

**Representing SDI:** No employee should, under any circumstances, act as a potential spokesperson for SDI in response to inquiries by the news media, financial analysts, or other similarly interested persons. Employees should not grant interviews or release statistical or printed information of any kind. If you are approached for information, you should politely forward all requests to the CEO.

**SDI Systems, Electronic Media, and Services:** SDI-supplied systems, including our computer systems, e-mail system, telephones, voice mail, fax machines, on-line services, and internet access belong to SDI and not to employees. Use of these systems for personal reasons in any manner that is abusive, excessive, or unauthorized (including the posting of confidential information on social media sites) is against SDI policy. *We reserve the right to monitor and audit each employee's use of SDI's systems (e.g., e-mail and the internet), as well as social media sites.*

Use of the computer systems to make, download, or forward discriminatory, harassing, derogatory, obscene, defamatory, threatening, or offensive remarks to other people is prohibited. In addition, downloading, transmitting, or creating, through the Internet or otherwise, material that is offensive or illegal because of characteristics such as race, sex, sexual orientation, or national origin is prohibited.

**Privacy of Personal Information:** Records containing information about employees, customers, investors, vendors, and suppliers must be kept confidential. Access to these records is limited to those employees with a specific need to use the information in the performance of their duties.

## Questions and Answers

My group is receiving new personal computers and printers. The local elementary school in my neighborhood could really use the old equipment. May I donate it to the school on SDI's behalf?

> Though company equipment may be obsolete, there are other factors that must be considered before the company chooses to discard or donate it, such as accounting practices and corporate contribution policies. Therefore, check with your supervisor for initiation of a donation request before making a donation of company property.

If a supplier inadvertently leaves a document in my office that is related to a competitor's product, can I keep or make a copy of the document and share it with others to benefit SDI?

> No. The document may be confidential and cannot be disclosed without proper authorization. Reviewing it would violate our policy and may lead to a lawsuit. Once such a document is discovered, it should be brought to the attention of your supervisor and the General Counsel.

## CONDUCT IN THE WORKPLACE

We are committed to providing a safe, diverse, and tolerant work environment, free of discrimination and harassment of all kinds. As an employee, you are expected to treat others with the same respect and dignity you wish for yourself. *No discrimination or harassment of any employee will be tolerated.*

Scientific Drilling/Applied Technologies

**Equal Employment Opportunity:** We are committed to affirmatively provide equal employment to all qualified employees and qualified applicants without regard to race, color, ancestry, national origin, religion, sex, marital status, age, sexual orientation, legally protected disability, status in the US uniformed services, status as a disabled veteran, or on any other basis protected under applicable law.

Our policy of equal opportunity affects all employment practices including, but not limited to, recruitment, employment, assignments, training, compensation, benefits, promotions, transfers, layoffs, and termination. Employment decisions must be based solely on job-related experience or education requirements, an individual's qualifications, and the ability to perform the duties of the specific job.

**Sexual and Other Workplace Harassment:** We will not tolerate harassment in the workplace in any form or manner including, but not limited to, sexual harassment. We believe that all employees should enjoy a work environment that is free from discrimination, harassment, and intimidation. This applies to all of our employees, applicants, vendors, contractors, or guests.

Sexual harassment is behavior of a sexual nature that is not welcome by another and is personally offensive, debilitates morale, creates an intimidating, offensive, or hostile environment, or otherwise adversely affects the employment opportunities of our employees or interferes with work effectiveness.

Workplace harassment is verbal or physical conduct that adversely affects employment opportunities, creates an intimidating, offensive, or hostile environment, or interferes with an employee's work performance.

This policy applies to all SDI functions and all times and places where employees are functioning in a SDI-related activity or are required by SDI to be present.

SDI will investigate claims and, where appropriate, take corrective action. Any employee who believes that he or she is the subject of harassment should promptly inform the General Counsel. *Anyone employed by SDI who engages in harassment does so in violation of SDI policy and is subject to immediate termination for cause.*

**Violence in the Workplace:** The safety and security of our employees is very important. Threats or threatening behavior or acts of violence against employees, visitors, guests, or others by anyone on SDI property or while representing SDI will not be tolerated. *Violations of this policy will lead not only to disciplinary actions, which may include immediate termination for cause, but also to arrest.* Any employee who engages in violent behavior will be removed from the premises as quickly as safety permits and will not be allowed to return pending the outcome of an investigation.

### Questions and Answers

What if my supervisor starts to play favorites with job assignments and overtime, and I begin to feel discriminated against? What should I do?

> You should tell your supervisor in clear and specific terms that you feel you have not been treated fairly in terms of job assignments and overtime. If you feel your supervisor has not responded to your concerns in a fair manner, take advantage of the other reporting channels available to you and identified in this Code.

If I had a manager that kept asking me out socially after work, even though I had no interest and had continually refused his invitations, what should I do?

Scientific Drilling/Applied Technologies

Tell him no. You should immediately report the situation to Human Resources.

If I receive a call from another company requesting a reference check on a former SDI employee, how should I handle the call?

You should not provide any information, but should politely refer the caller to Human Resources. By establishing Human Resources as a clearinghouse for all reference requests, we can ensure that the information we release is accurate, authorized, and representative of the SDI's position.

## COMPLYING WITH LAW

Each employee must adhere to the letter and spirit of all laws and regulations in effect where SDI does business. We are each responsible for knowing the laws applicable to the performance of our job.

**Bribes and Kickbacks:** We will not condone any payment by any employee to any third party that is in the nature of a bribe, kickback for obtaining any business, or otherwise results in a special favor to SDI or its employees.

Gifts or payments may not be offered or given on behalf of SDI to any government official, political party, or candidate for public office either in the US or abroad. These payments may be in violation of federal law and could result in the imposition of fines or imprisonment or both.

**Payments to Government Officials:** The laws of the US and foreign countries prohibit companies and their employees and representatives from offering, promising to pay, or authorizing payment of any money or anything of value to any government official, any political party or official, or any candidate for political office, for the purpose of influencing any act or decision of that official, party, or candidate in his or its official capacity. Companies and their employees and representatives are also prohibited from taking any of these actions for the purpose of inducing the official, party, or candidate to use his or its influence to affect or influence any act or decision of a government or any agency thereof.

The US Foreign Corrupt Practices Act ("**FCPA**") prohibits bribery or unlawful payments to any official or employee of a foreign government or agency for the purpose of influencing decisions or obtaining or retaining business. In some foreign countries, small tips or gratuities (commonly referred to as facilitating payments) to low level government personnel to induce the performance of basic ministerial or clerical functions, or to provide routine services, are not categorically illegal. However, it is important to remember that local foreign law may be more restrictive than the FCPA.

*SDI requires full and absolute compliance with the FCPA by all of its employees, representatives, and distributors.* If you become aware of any FCPA violation or potential violation, you must immediately notify the CEO and the General Counsel.

**Antiboycott:** In the mid-1970's, the US adopted antiboycott laws to counteract the participation of US firms and their foreign subsidiaries in boycotts or embargoes that the US does not sanction. These laws have the effect of preventing US firms from being used to implement foreign policies of other nations which run counter to US policy. The Arab League boycott of Israel is the principal foreign economic boycott that US firms must be concerned with today. The antiboycott laws, however, apply to all boycotts imposed by foreign countries that are unsanctioned by the US.

*SDI is required to comply with all antiboycott laws and may have an obligation to report any attempt to*

Scientific Drilling/Applied Technologies

*require its participation as a condition of contract award.* If you become aware of any violation or potential violation of an antiboycott law, you must immediately notify the General Counsel.

**Governmental Investigations and Legal Actions and Proceedings:** SDI's policy is to cooperate fully with any governmental investigation and any legal action or proceeding. Appropriate handling of these matters is important for all of us as the laws regulating our business provide for civil and criminal penalties that may apply to SDI and its employees. If you receive a subpoena or any other legal document or are contacted by any person regarding a legal action, proceeding, or investigation that involves or may involve SDI, you must contact the General Counsel immediately.

Employees should never, under any circumstances, destroy or alter any SDI documents in anticipation of any investigation, action, or proceeding or in anticipation of a request for those documents from any governmental agency, court, or participant in any action or proceeding. In addition, employees should never lie, make any misleading statements, or attempt to cause any other SDI employee or any other person to fail to provide information or to provide any false or misleading information in connection with any investigation, action, or proceeding.

Any questions regarding the propriety of destroying or altering SDI documents should be referred immediately to the General Counsel.

**Fair Dealing:** We seek to outperform our competition fairly and honestly. Each employee should respect the rights of and deal fairly and honestly with SDI's suppliers, customers, competitors, and vendors. Stealing proprietary or confidential information or possessing trade secret information that was obtained without the owner's consent is prohibited.

**Political Contributions:** Generally, US and foreign laws prohibit corporations from making contributions or expenditures in connection with any election for political office. These laws also prohibit corporations from financially supporting political candidates. Political contributions include direct or indirect payments, advances, gifts of goods or services, subscriptions, memberships, purchase of tickets for fundraisers, and purchase of advertising space. No employee shall make any political contribution or other expenditure to any political organization or candidate for political office on behalf of or for the benefit of SDI.

**Antitrust and Competition Laws:** Antitrust and competition laws regulate SDI's relationships with its vendors, customers, and competitors. While these laws are complex and broad, generally, they prohibit agreements, arrangements, and activities that may have the effect of reducing competition. SDI is committed to free and competitive markets. No employee may enter into any agreement or arrangement, or engage in any activity, with vendors, customers, or competitors that may lessen competition.

**Health, Safety, and the Environment:** SDI is committed to protecting the health and safety of our employees and to environmental stewardship. *Working safely and protecting others and the environment are conditions of employment at SDI.*

### Questions and Answers

I will be attending a trade association meeting next month and I am curious about our chances for receiving a contract award. I would like to discuss this with other bidders who will be there. Is that all right?

> No. You should not discuss bids, contract terms, or similar proprietary business

 Scientific Drilling/Applied Technologies

information with employees of competitors. This might give others an unfair advantage, and it might create an antitrust problem. Don't initiate such conversations or respond to any outside inquiries.

Is it permissible for a business representative to entertain a government decision maker by taking her on an extravagant outing in an effort to speed up a decision on a matter?

> Generally the law prohibits any payment, whether direct or, as in this case, indirect, whose purpose is to influence a government employee's behavior. The company, the business representative, and the government decision maker could all be prosecuted for bribery, if the offer were made and accepted.

Several of my co-workers and I strongly support a certain political candidate. May we work together to support this candidate?

> Yes. SDI encourages participation in the political process. However, you may not use company funds, equipment, or materials to support the candidate, claim to represent the company's opinions or views of a candidate or issue, and you may not engage in political activities while you are on the job.

We will be attending a foreign trade show and have shipped our product displays from the United States. What if we experience unusual delays in getting our displays released by the customs officials of the foreign country? I'm told it is customary in this country to pay $100 to speed up processing of the customs document. Would this be proper?

> In some foreign cultures, it is customary and necessary to make payments called facilitating payments. These payments are for expediting routine governmental actions such as obtaining a permit or visa. In some cases, these payments may be illegal or improper. You are expected to use prudence when making facilitating payments, and you should contact the General Counsel if you have any questions or need advice.

**RIGHTS RESERVED**

This Code is for the exclusive use of SDI. No part of this Code may be reproduced in any form by any means without SDI's prior written consent.

**POLICY TERMINATION**

SDI reserves the right to amend, modify, revoke, suspend, or terminate this Code, in whole or in part, at any time with or without notice.

*THE ACKNOWLEDGMENT ATTACHED TO THIS CODE MUST BE SIGNED AND RETURNED. FAILURE TO SIGN AND RETURN THE ACKNOWLEDGMENT MAY RESULT IN SUSPENSION WITHOUT PAY OR TERMINATION.*

 Scientific Drilling/Applied Technologies

## ACKNOWLEDGMENT

By typing my name in the space provided below, I acknowledge that I have reviewed and agree with SDI's Code of Conduct. I also acknowledge that the Code of Conduct represents an outline of principles for individual and business conduct and do not, in any way, constitute an employment contract or an assurance of continued employment.

Except as specifically disclosed below, I am not aware of any violation of the Code of Conduct or any activity that could potentially violate the Code of Conduct by myself or anyone employed by or acting for SDI.

Name: _____          Date:_____, 2011

Work Location: _____

Specified Violation:

_____

**ALL INFORMATION CONTAINED ON THIS ACKNOWLEDGMENT IS CONFIDENTIAL.**

# EXHIBIT 5

# ADAMSKI MOROSKI MADDEN
# CUMBERLAND & GREEN LLP

#### ATTORNEYS AT LAW

Post Office Box 3835 • San Luis Obispo, California 93403-3835
T  805-543-0990 • F  805-543-0980 • *www.ammcglaw.com*

October 17, 2019

**VIA HAND DELIVERY TO COUNSEL**

Board of Directors
c/o Philip Longorio
Applied Technology Assoicates, Inc.
3025 Buena Vista Drive
Paso Robles, CA 93446

Re:  **Demand For Corrective Action – Corporations Code Section 800**

To the Board of Directors:

      This firm represents Matthew Van Steenwyk and Gretchen Van Steenwyk (collectively "Shareholders"). Through their trusts, the Shareholders own minority stakes of the Class B non-voting shares of Applied Technologies Associates, Inc ("ATA"). We write in reference to actions authorized and/or allowed by you with respect to ATA's relationship with Adelaida Cellars, Inc. ("ACI"). It is the Shareholders' position these actions have unjustly benefitted ACI to the substantial financial detriment of ATA at a critical juncture in its financial life. Pursuant to California Corporations Code section 800 et. seq., our clients hereby demand that ATA's Board of Directors take immediate corrective and remedial action against the controlling shareholder of ATA and/or responsible members of ATA's management team, restore the benefits diverted to ACI and enjoin the future diversion of ATA assets and resources to ACI for no compensation or compensation below market value. Our clients make their demand in the hope that they can avoid the need to file a derivative lawsuit.

      We have examined ATA's financial statements for the five (5) year period beginning in 2014. ATA's ranching operations have sustained significant losses. In 2018, ATA's ranching operations lost $1,367,571, an increase of several hundreds of thousands of dollars from its loss in 2017. (*See* **Exhibit 1**.) At the last ATA shareholder meeting on August 1, 2019, CEO Philip Longorio stated that ATA's financial situation was "tough going" and that ATA "needed all the financial resources [it] could muster" to keep it afloat financially. The recently announced layoffs at ATA underscore this reality. During this period that ATA has been (and is) struggling for its financial life, your Board has apparently authorized multiple questionable financial arrangements and transactions between ATA and ACI. Those arrangements have materially contributed to losses on ATA's ranching operations side and, in the process, contributed to ATA's current financial problems[1]. At the same time, your Board has failed to address serious issues facing ATA and to execute business decisions warranted by ATA's financial condition.

---

    [1] The losses incurred by ATA in its ranching operations appear to have resulted in a corresponding benefit to ACI.

---

Board of Directors
c/o Philip Longorio
October 17, 2019
Page 2

One financial arrangement that has caused and is causing financial harm to ATA is an Agreement for Services effective April 1, 2016, signed by Elizabeth Van Steenwyk for ACI and Daniel Carter for ATA.  Elizabeth Van Steenwyk is an ATA shareholder as Trustee of the Donald H. Van Steenwyk and Elizabeth A. Van Steenwyk 1996 Revocable Trust.  She is also the owner of all Class A voting shares of ATA, making her the controlling shareholder.  Therefore, she owed and owes ATA a fiduciary duty.  Elizabeth Van Steenwyk purportedly signed the Agreement for Services whereby ATA agreed to provide ACI with human resources capital in the following areas: (1) financial and accounting services; (2) legal services; (3) administrative services; (4) construction and maintenance support; and (5) technical (computer) services.  For all of these services from ATA, ACI has been obligated to pay only $2,000.00 per month.  (*See* **Exhibit 2**.)

The Agreement for Services discussed in the preceding paragraph has created another issue of concern to the shareholders which your Board has never acknowledged, let alone addressed.  Elizabeth Van Steenwyk purportedly signed the Agreement for Services shortly before she was, as a result of a medical referral by Dr. Kedrin Van Steenwyk, declared incompetent.  Copies of the reports of Dr. Jonathan Mueller, dated May 17, 2016, and Dr. John Justin Davis, dated May 19, 2016, are attached hereto collectively as **Exhibit 3**[2].  Shortly after this report was issued, Dr. Kedrin Van Steenwyk was given power over Elizabeth Van Steenwyk's affairs.  The timing of the Agreement for Services and incompetency assessment, raises a serious issue regarding the validity of the Agreement for Services, as well as other issues, which your Board has not addressed.

Another arrangement that has caused ATA financial harm involves the Grape Purchase Agreement between ACI (purchaser) and ATA (seller) executed in late 2016.  It was executed by Philip Longorio on behalf of ATA.  Dr. Kedrin Van Steenwyk executed the contract on behalf of ACI.  As stated above, Dr. Van Steenwyk is a Board member of ATA.  She also is the controlling shareholder of ATA through the power of attorney she holds regarding Elizabeth Van Steenwyk, the mother of the Shareholders and Dr. Van Steenwyk.  Further, Dr. Van Steenwyk is officer and director of ACI.  Finally, as stated, through her power of attorney, Dr. Van Steenwyk controls the controlling shareholder of ACI[3].  In short, Dr. Van Steenwyk owed and owes competing fiduciary duties to both ATA and ACI, and to the shareholders of both entities.  Notwithstanding Dr. Van Steenwyk's multiple conflicts of interest, your Board approved the Grape Purchase Agreement which contemplated the following terms: (1) that ATA would bear all costs of delivery of the grapes; (2) that ATA would bear all costs of labor and harvesting of

---

[2] It is the Shareholders' understanding that one or both of these doctors are friends and /or colleagues of Dr. Kedrin Van Steenwyk.

[3] The controlling shareholder of ACI is KMBG, LLC, a Colorado limited liability company.  KMBG, LLC is controlled by Dr. Kedrin Van Steenwyk as a result of the power of attorney giving her control over the affairs of Elizabeth Van Steenwyk.

Board of Directors
c/o Philip Longorio
October 17, 2019
Page 3

the grapes; (3) that ACI had unlimited right of entry onto ATAR property related to the grapes; and (4) that ATA would sell the grapes to ACI at less than fair market value. (*See* **Exhibit 4**.)

In addition to the foregoing financial arrangements and transactions, there are multiple additional suspect financial transactions that the Shareholders have been attempting to learn the details of through their multiple requests for corporate information under California Corporations Code section 1601. These other transactions include, but are not limited to, the following:

- The disappearance/erasure of the inter-company payable owed by ACI to ATA between 2016 and 2017 (*See* **Exhibit 5**);

- In years prior to 2016-2017, the payable was continually renegotiated and remained unpaid, to the detriment of ATA;

- The advance by ATA of funds to ACI and its principal shareholder, KMBG, to fund their operating costs (*See* **Exhibit 6**);

- The running of aircraft leasing expenses incurred for the benefit of ACI through ATA (*See* **Exhibit 7**); and

- The unanswered questions involving Stoneway Properties, its relationship with ATA, the transactions that have been consummated in its name and the individuals/entities that paid for and benefitted from those transactions

Your Board has failed to execute necessary business decisions concerning its relationships with ACI and KMBG in the face of ATA's consistent financial losses. While the Board has discussed selling off its non-core ranching and vineyard operations, it has taken no reasonable and good faith steps to effect those sales on the open market. The only potential sale that has been discussed is the proposed sale to insider Dr. Kedrin Van Steenwyk. Further, we recently obtained information indicating that a substantial player in the San Luis Obispo County vintners and growers industry approached Dr. Van Steenwyk about ATA's interest in selling one or more of its wine grape properties. Dr. Van Steenwyk apparently rebuffed the inquiry on the ground that she was working on her own plan to purchase the properties. We must assume Dr. Van Steenwyk did not take the issue to your Board.

The financial arrangements and transactions described above have benefitted ACI at the expense of ATA. Further, they have financially hamstrung ATA at a time when its own President and CEO has stated, at the recent annual shareholders' meeting, that he is searching for any and all financial resources available to keep ATA operating in the black. In short, your Board has effectively given away, or allowed its majority shareholder and/or its fellow Board member Dr. Kedrin Van Steenwyk, to give away ATA's goods and services to ACI for nothing or, at minimum, at significantly less than their value. In the process, ATA's Board has allowed costs to be piled up in a line item of ATA's financials that is one of ATA's most significant

Board of Directors
c/o Philip Longorio
October 17, 2019
Page 4

financial drains.   Our clients believe these actions have caused ATA to lose value to the detriment of its shareholders and employees.

Our clients hereby make demand that this Board take immediate action to address the above issues, and to investigate and rectify what appear to be areas of self-dealing and breaches of fiduciary duties that have resulted in financial detriment to ATA and, in addition, to respond to the Shareholders' reasonable and repeated requests for corporate and financial information relating to ATA, including its request for ATA's Code of Ethics.   The Shareholders further demand an accounting of the transactions with ACI and others under the arrangements mentioned above.   They also demand that your Board take appropriate action to recapture anylosses from ACI, KMBG and/or the responsible members of ATA's management, and to provide assurances that any future dealings with ACI, KMBG and/or members of ATA's management must be at arms-length.   At minimum, your Board needs to provide assurances that ATA will be allowed to market its grapes to buyers willing to pay fair market value, that ATA will be paid fair market value for all goods and services provided to ACI, that the requested records and the requested accounting will be provided and that fiduciary obligations and ATA's Code of Ethics will be observed going forward.

If this Board does not respond to this demand within 30 days, the Shareholders intend to file the appropriate lawsuit including direct claims and derivative claims in the name of ATA against those responsible for the conduct noted above.   If you have any question, please feel free to contact the undersigned.

Very truly yours,

ADAMSKI MOROSKI MADDEN
CUMBERLAND & GREEN LLP

MARTIN P. MOROSKI

MPM:tf
Enclosures
G:\VanSteenwyk\Cor\Board of Directors Demand.docx

cc:     Clients (via email only)
        Thomas J. Madden, Esq. (via email only)
        Chase W. Martin, Esq. (via email only)
        George Olguin (via email only)

# ADAMSKI MOROSKI MADDEN
# CUMBERLAND & GREEN LLP
ATTORNEYS AT LAW

Post Office Box 3835 • San Luis Obispo, California 93403-3835
T  805-543-0990 • F  805-543-0980 • *www.ammcglaw.com*

November 22, 2019

**<u>VIA EMAIL ONLY</u>**

Roy E. Ogden, Esq.
Ogden & Fricks LLP
656 Santa Rosa St., Suite 2B
San Luis Obispo, CA 93401
Email: <u>rogden@ogdenfricks.com</u>

Re:  **Request For Inspection Of Books And Records of Applied Technologies Associates, Inc. Under Corporations Code Section 1601; Demand For Corrective Action Under Corporations Code Section 800.**

Dear Roy:

Your clients authorized you to send me your letter of November 1, 2019. Further, I assume that your clients are responsible for the content of the letter. The letter is disappointing, to say the least. It purports to be both a response to my clients' multiple requests for production of books and records under Corporations Code section 1601 and a response to my clients' demand for corrective action under Corporations Code section 800. In fact, it is neither.

Your clients, the directors of Applied Technologies Associates, Inc. ("ATA") feign that they are unclear as to the ownership interest attributable to Gretchen Van Steenwyk-Marsh. Please advise as to whether that lack of clarity was developed after Vice President and General Counsel Daniel R. Carter emailed Gretchen Van Steenwyk-Marsh the attached shareholder and Board of Directors materials on April 30, 2019, July 15, 2019, and July 26, 2019, directly at her 'gmail' address. (*See* **Exhibit 1** hereto). Your clients are not taking this matter seriously.

Your clients, as ATA's directors, received and presumably reviewed the financial statements of ATA in discharging their obligations, fiduciary and otherwise, to ATA and its shareholders. The financial statement my clients rely on have been cited to you. As directors, your clients also have access to the general ledger and other accounting documents maintained by ATA. The information you request regarding the losses sustained by ATA is included in those financial statements and other financial documents. The documents my clients possess have already been cited and/or provided to your clients. The balance of the documents that bear on the issue that your clients feign ignorance of have been requested, but not produced. (*See* 7/24/19 Moroski letter, ¶¶ 6(k), 7(f) and 8(h).) Your clients are not serious about this matter.

Roy E. Ogden, Esq.
November 22, 2019
Page 2

Your clients continue to ignore the issues my clients raise as to the Agreement for Services that was executed by Elizabeth Van Steenwyk on behalf of ATA the month after she first exhibited documented signs of mental incapacity (*see* 10/17/19 Moroski letter, Ex. 3, p.1) and the month before she was diagnosed as lacking capacity by two different doctors.  What difference does it make that a similar arrangement had been in place since 2013?  Germane to my clients' demand under Section 800, what have your clients, the directors of ATA, done to investigate and analyze the arrangement and its financial impact on ATA's bottom line since 2013 and/or the implications of the fact that ATA has, since 2016, provided services that my clients believe are worth more than $2000 per month pursuant to an arguably void or voidable contract?  By reason of the fact that ATA did not produce corporate books and records relating to the services provided pursuant to the Agreement for Services (*see* 7/24/19 Moroski letter, ¶¶ 6(d) and (e)), my clients conclude that the withheld documents do not support your clients' position.

Your clients are simply not telling the truth about the Grape Purchase Agreement.  ATA, through its Board, has authorized the sale of wine grapes grown on ATA's property to Adelaida Cellars, Inc. ("ACI") for less than their market value.  My clients know that ACI resells those grapes to third parties for more than twice the amount ACI pays for them.  (*Compare* Ex. 1 to 7/24/19 Moroski letter *with* **Exhibit 2** hereto.)   Further, my clients believe that ATA representatives know about this wrongful and inappropriate distribution of the Company's assets to only select shareholders by reason of the fact that they have been invited to attend, and have attended, ACI director meetings where the subject of ACI's resale of wine grape to third parties has been discussed.  Your clients' willingness to attempt to deceive my clients about this subject further supports the conclusion that your clients are not taking this matter seriously.

Your clients, as directors of ATA, are aware of my clients' multiple requests for financial information explaining the disappearance of the inter-company payable and the advances to ACI and KMBG.  (*See* 7/24/19 Moroski letter, Ex. 3.)  The information has not been produced.  Your clients now suggest that my clients accept your clients' conclusory statement that the inter-company payable and advances to ACI/KMBG have been paid off, because they say it has been paid off.  Even if it has been paid off, my clients are entitled to know the source of the funds used to retire the payable.  Your clients are not taking this matter seriously.

Your clients' requests for clarification about the aircraft leasing expenses and Stoneway Properties issues are disingenuous, at best.  Requests for information under Corporations Code section 1601 have been made.  (*See* 7/24/19 Moroski letter, ¶¶ 6(k) and 8(h).)  ATA has stonewalled and refused to produce the requested information.

Roy E. Ogden, Esq.
November 22, 2019
Page 3

Your clients' purported requests for clarification regarding the potential sale of the ranch properties underscores, to my clients, that the demand for corrective action under Corporations Code section 800 has not been acted upon. The board of ATA should have known about Kedrin Van Steenwyk's proposal to my clients about the sale of the ranches. (*See* 7/24/19 Moroski letter, Ex. 3.) The request for an analysis by my clients of the pros and cons of selling the ranch properties again indicates that your clients are not taking this matter seriously.

Your clients have now produced, after over a month since it was first requested, a copy of the Code of Ethics for SDI, albeit an unsigned copy. It includes the following provisions which may bear on issues in this matter:

> "...services and labor of other SDI [and ATA] employees, must be used only for legitimate business purposes on behalf of SDI [and ATA].... Employees may not take for themselves personally opportunities that are discovered using SDI property or information or which arise due to their position at SDI."
> ...
>
> "...[it is] against SDI [and ATA] policy, and in some circumstances illegal, for any employee to cause books and records to be inaccurate in any way...setting up unauthorized funds or accounts..."

Your clients should understand that my clients, collectively, own a small fraction of 1% of KMBG LLC, the sole shareholder of ACI. Kedrin Van Steenwyk, on the other hand, controls KMBG through her control over Elizabeth Van Steenwyk's interest in KMBG. Through her control over that interest, Kedrin Van Steenwyk controls ACI. Kedrin Van Steenwyk similarly controls ATA. However, in contrast to their small ownership interest in ACI, my clients own a total of 50% of the outstanding class B shares in ATA. Accordingly, any economic damage resulting from the diversion of ATA assets to ACI, Par Ranch and/or Hilltop Ranch, and/or any misuse of ATA resources, falls disproportionately on my clients' shoulders. Your clients' fiduciary obligations demand that they recognize this fact and act accordingly.

Roy E. Ogden, Esq.
November 22, 2019
Page 4

      Your clients have not provided my clients with the information requested under Corporations Code section 1601. Your clients have not taken the actions my clients demanded they take under Corporations Code section 800. Your clients dismissed my clients' proposal for a tolling agreement and appear uninterested in the mediation concept I discussed with you. Accordingly, my clients have concluded that they must pursue their litigation options.

                      Very truly yours,

                      ADAMSKI MOROSKI MADDEN
                      CUMBERLAND & GREEN LLP

                      MARTIN P. MOROSKI

MPM:tf
Enclosures
G:\VanSteenwyk\Cor\Ogden 112219.docx

cc:      Clients (via email only)
          Thomas J. Madden, Esq. (via email only)
          Chase W. Martin, Esq. (via email only)
          George Olguin (via email only)