MATTHEW DONALD UMHOFER, ESQ., SBN 206607
matthew@spertuslaw.com
J. ANTHONY KING, ESQ., SBN 297279
anthony@spertuslaw.com
DIANE H. BANG, ESQ., SBN 271939
diane@spertuslaw.com
**SPERTUS, LANDES & UMHOFER, LLP**
1990 South Bundy Dr., Suite 705
Los Angeles, CA 90025
Telephone: (310) 826-4700
Facsimile: (310) 826-4711

MARTIN P. MOROSKI, ESQ., SBN 98202
moroski@ammcglaw.com
CHASE W. MARTIN, ESQ., SBN 260444
martin@ammcglaw.com
**ADAMSKI MOROSKI MADDEN CUMBERLAND & GREEN LLP**
Post Office Box 3835
San Luis Obispo, California 93403-3835
Telephone: (805) 543-0990
Facsimile: (805) 543-0980

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW D. VAN STEENWYK, Individually, as Trustee and Beneficiary of The Matthew Van Steenwyk GST Trust and The Matthew Van Steenwyk Issue Trust, and as Co-Trustee of The Gretchen Marie Van Steenwyk-Marsh GST Trust and The Gretchen Marie Van Steenwyk-Marsh Issue Trust and derivatively on behalf of Nominal Defendants APPLIED TECHNOLOGIES ASSOCIATES, INC., SCIENTIFIC DRILLING INTERNATIONL, INC. and ATA RANCHES, INC., <br><br>Plaintiff,<br><br>vs. | Case No.: 2:20-cv-02375-FLA-AFM<br><br>*Hon. Fernando L. Aenlle-Rocha*<br><br>**PLAINTIFF'S MOTION IN LIMINE #2 TO EXCLUDE AND/OR LIMIT THE OPINIONS AND REPORT(S) OF JOANN WALL**<br><br>*[Filed concurrently with the Declaration of Martin P. Moroski; Proposed Order]*<br><br>Date: August 26, 2022<br>Time: 1 p.m.<br>Courtroom: 6B<br><br>**Pretrial Conference:** August 26, 2022<br>**Trial:** September 13, 2022 |

KEDRIN E. VAN STEENWYK, et al.,

    Defendants,

and

APPLIED TECHNOLOGIES ASSOCIATES, INC., SCIENTIFIC DRILLING INTERNATIONAL, INC., and ATA RANCHES, INC.,

    Nominal Defendants.

TO THIS HONORABLE COURT, ALL PARTIES AND ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on August 26, 2022, or as soon as this matter may be heard in Courtroom 6B, 6th Floor of the above-titled Court, located at 350 West First Street, Los Angeles, California 90012, Plaintiff will and hereby does move the Court for an order excluding the testimony and appraisal reports of JoAnn Wall offered by Defendants on issues involving Plaintiff's damages claims against Defendants. Substantial questions exist as to whether Ms. Wall is a non-retained expert and, if not, whether she and her work product were properly disclosed. Further, Ms. Wall's reports and testimony are irrelevant to issues in the case. Moreover, whatever probative value her opinion and reports have is substantially outweighed by the danger for undue prejudice and jury confusion. Ms. Wall's opinions are therefore irrelevant, more prejudicial than probative, and improper as expert testimony under Federal Rules of Evidence 401, 403, 702, 703, and 704.

The parties met and conferred about this motion on July 14, 2022.

This Motion is based upon this Notice of Motion and Motion, the below Memorandum of Points and Authorities, the Declaration of Martin P. Moroski in Support of Plaintiff's Motion in Limine No. 4 , the Court's file in this matter, and any other oral and documentary evidence that may be presented at the hearing on this Motion.

Dated: July 29, 2022

**SPERTUS, LANDES & UMHOFER, LLP**

By: */s/ Matthew Donald Umhofer*
Matthew Donald Umhofer
Anthony King
Diane Bang
Attorneys for Plaintiff

1

*PLAINTIFF'S MOTION IN LIMINE #2 (WALL)*

Dated: July 29, 2022      **ADAMSKI MOROSKI MADDEN CUMBERLAND & GREEN LLP**

By:    */s/ Martin P. Moroski*
       Martin P. Moroski
       Chase Martin
       Attorneys for Plaintiff

## MEMORANDUM OF POINTS & AUTHORITIES

### I.   INTRODUCTORY STATEMENT

Defendants hope to shield themselves from liability in this matter by presenting irrelevant and unreliable opinion about the value of the vineyards owned by the oil and gas companies, SDI and ATA. The opinion has no place in this case.

The opinion faces insurmountable procedural and substantive hurdles. On the procedural front, the opinion must be excluded because it is not what Defendants claim it is: the opinion of a non-retained expert. Courts are quite clear that non-retained experts are only those whose opinions formed during their percipient involvement in the events of the case. *Guarantee Trust Life Ins. Co. v. Am. Med. & Life Ins. Co.*, 291 F.R.D. 234, 236 (N.D. Ill. 2013) ("[n]on-retained experts must *only* testify about opinions that were formed during the course of their participation in the relevant events of the case"). But their expert acknowledges she was completely uninvolved in the events of this case, was retained after the complaint was filed, and developed her opinion through a post-hoc review of documents and information. Because the expert is in fact a retained expert, her opinion should have been disclosed by the expert disclosure deadline. And because it was not, the opinion must be excluded.

Substantively, the opinion suffers from a litany of fatal flaws:

- the expert's valuation date post-dates the relevant of events of this case by more than a year;
- it has no bearing on Plaintiff's derivative or direct damages calculations, which are not tied to the value of the ranches;
- it was purportedly prepared for the limited purpose of an IRS audit, not a legal case;
- it is rooted in a deeply flawed, legally unsupported theory that the damages caused to a corporation may be offset because the market

1

*PLAINTIFF'S MOTION IN LIMINE #2 (WALL)*

value for an asset increased;

- it unreliably claims to use an income approach but failed to consider available evidence of the actual income generated by the ranches; and
- it is rife with unreliably dubious assumptions.

Because of all these flaws, and because it will only confuse and mislead the jury, the opinion of JoAnn Wall concerning the value of the ranches should be excluded.

## II. DISCUSSION OF LAW

### A. WALL'S TESTIMONY SHOULD BE PRECLUDED BECAUSE IT IS BEYOND THE ALLOWABLE SCOPE FOR A NON-RETAINED EXPERT

As a threshold issue, Ms. Wall's disclosure as a "non-retained" expert provides all the information the Court needs to exclude her testimony.

Ms. Wall is in truth a **retained** expert who Defendants chose to clothe up in **non-retained** garb because they failed to prepare a Rule 26 report by the expert disclosure deadline. (Decl. of Martin Moroski ("Moroski Decl.") ¶ 3.) Counsel for Defendants belatedly disclosed Ms. Wall as an "expert" without providing a Rule 26 expert report. (*Id.*) They withheld Ms. Wall's appraisal report—which comprised the entire basis of her testimony—until Christmas Eve, **even though the report was completed on December 3, 2021**. (*Id.*) That egregiously late appraisal report has all the trappings of a retained expert report (reliant upon materials well beyond her capacity as a percipient witness).

It is clear from the report that Ms. Wall's opinion is not based upon her percipient observation of the events relevant to this lawsuit. This puts her testimony beyond the realm of a non-retained expert, because "[n]on-retained experts must *only* testify about opinions that were formed during the course of their participation in the relevant events of the case." *Guarantee Trust Life Ins. Co.*, 291 F.R.D. at 236; *see also United States v. Sierra Pacific Indus.,* No. CIV S-

2

09-2445 KJM EFB, 2011 WL 2119078, *4 (E.D. Cal. May 26, 2011) ("The distinguishing characteristic between expert opinions that require a report and those that do not is whether the opinion is based on information the expert witness acquired through percipient observations or whether, as in the case of retained experts, the opinion is based on information provided by others in a manner other than by being a percipient witness to the events in issue"); *Tarter v. Throne Law Office*, 2019 WL 609337, *4 (D. Mont. Feb. 13, 2019) (non-retained expert provides opinions at trial based on information he or she acquired through his or her percipient observations).

The timing of Ms. Wall's retention alone makes it clear that she was not a percipient witness—she was retained over a year after the Complaint was filed in March 2020, and the date of her valuation is July 22, 2021—both of which extend well beyond the allegations in this case. Thus, she could not have possibly been involved in the events giving rise to the litigation. Rather, Ms. Wall was assessing the value of the land in November and December of 2021, well **over 20 months after** the latest allegations in the Complaint occurred.

Moreover, Ms. Wall admits in her report that her opinion is based upon "documents, writings and information owned and possessed by the client" that she was provided, and as is discussed below, she used market data to calculate her income approach valuation, and not her personal observations. (Moroski Decl. ¶ 9, Ex. 5.) Defendant Carter is also listed as a source for the information that Wall relied upon. (*Id.*) Ms. Wall also commissioned other parties to complete "a series of maps" which were "the basis for which the valuation of various land types were determined." (*Id.*) Ms. Wall "[r]eviewed and analyzed available public and private information relevant to the property" including "production history/future estimates, lease, farming costs, block breakdown, and other details provided by the property owner and vineyard manager" and the "2020 San Luis Obispo County

Crop Report." (*Id.*) This is not the type of information that a non-retained expert is permitted to use or testify about at trial.

Because Defendants insist that Ms. Wall is a non-retained expert, she must be treated as such and must be precluded from providing any testimony that is not based upon her percipient observations of the underlying events in this case, which means that she cannot provide any opinion as to the value of HMR Ranch and Viking Ranch (the "Ranches") in this case, because her opinion is not based on percipient observations.

### B.  THE WALL EVIDENCE IS IRRELEVANT

The other problem with Ms. Wall's testimony is that it provides a ranch valuation as of a date that is irrelevant to this case. Defendants want Ms. Wall to provide expert testimony regarding the purported value of the Ranches as of July 22, 2021 (the date of death of Defendant Elizabeth Van Steenwyk). However, even assuming Ms. Wall's appraisal was accurate (which it is not), the valuation of the Ranches on this date has absolutely no relevance to this case. The complaint alleges misconduct by Defendants from 2012 to March 20, 2020 (the date the complaint was filed). The allegations terminate well over a year before the Wall appraisal. But the relevant time range for the valuation of the Ranches is during the time period at issue in the complaint, not July 22, 2021. Ms. Wall offers no opinion as to the value of the Ranches during the time period relevant to the complaint, and would be speculating if she did. *See e.g.*, *Desert Citizens Against Pollution v. Bisson*, 231 F.3d 1172, 1185 (9th Cir. 2000) (Bureau of Land Management Handbook Manual "provides that an appraisal is presumed to be valid for only six months"); *In re Kelly*, No. 12-15258-JNF, 2013 WL 6536539, at *4 (Bankr. D. Mass. Dec. 13, 2013) (under industry standards, an appraisal that is over a year old is considered stale and not a current valuation). This renders her July 2022 valuation—and her testimony—irrelevant.

That valuation is also irrelevant to the calculation or causation of Plaintiff's damages. The focus of Plaintiff's **derivative damages** claims is not tied to the value of the Ranches, but to the money directors and controlling shareholders directed into Adelaida and the Ranches, for the benefit of Adelaida (and thereby the controlling shareholders). Had that money instead been invested in ATA/SDI's core business, ATA/SDI would not have lost as much money as they did during the 2013 to 2020 period. (*See* Fourth Am. Compl. ("4thAC") ¶ 12.)

As fiduciaries to ATA/SDI and its shareholders, D&O Defendants and Kedrin and Elizabeth, as controlling shareholders of ATA, should have pursued one of two courses with respect to the Ranches: (1) they should have marketed and sold them to the highest bidder in the open market, enjoying historically low long term capital gains tax rates, and either reinvested the net proceeds into ATA's human resources capital or projects in its core business or declared a dividend to its shareholders; or (2) it should have run the Ranches as a business, sold the wine grapes produced at their market value and earned a profit that could have been invested in ATA's core business or paid out as dividends to shareholders. The losses arising out of Defendants' failure to do either of these things are unaffected by the value of the Ranches on July 22, 2021, or any fortuitous alleged appreciation.

Similarly, Plaintiff's claims for **direct damages** focus on the disguised dividend paid to the controlling shareholders of ATA (EVS and KVS) resulting from the subsidies going from ATA to Defendant Adelaida Cellars ("Adelaida") for the benefit of its owners. (4thAC ¶ 22.) Those direct claims are not tied to or based on any supposed appreciation of the value of the Ranches. The alleged appreciation of the value of the Ranches has nothing to do with the benefits wrongfully diverted to Adelaida and its owners.

Even if there was a factual relationship between Ms. Wall's valuation and the damages in this case, there is no legal hook for it. Defendants cite no

authority—and Plaintiff could find none—that supports Defendants' quasi-mitigation or quasi-set-off argument that the directors and officers of a corporation can escape liability for wasting millions in corporate funds because the market fortuitously elevated the value of an asset. Essentially, Defendants wish to defend their misconduct by saying, "Yes, we poured corporate money down a drain, but the pitcher we used to pour it is now worth double, so no harm no foul." Without legal support for such an assertion, any purported value increase is irrelevant and testimony about it must be excluded.

### C. THE WALL EVIDENCE IS UNRELIABLE

In deciding the admissibility of expert testimony, courts have a "gatekeeping obligation" to ensure expert testimony is reliable. *Kumho Tire Co., Ltd., v. CarMichael*, 526 U.S. 137, 141 (1999). Federal Rule of Evidence ("FRE") 702 requires that such testimony satisfy three separate relevance and reliability standards: (1) expert testimony must be based upon sufficient facts or data, (2) expert testimony must be the product of reliable principles and methods, and (3) the expert witness must have applied the principles and methods reliably to the facts of the case. *See Lust v. Merrell Dow Pharm.*, 89 F.3d 594, 598 (9th Cir. 2008) (discretion to exclude "is especially true with respect to expert witnesses").

#### 1. Wall's Appraisal Methodology Was Flawed

##### a. Wall Conducted an Appraisal for Estate Planning and IRS, Not For a Market Sale

Ms. Wall's appraisal report asserts that its "intended use … is to assist client with estate and business planning purposes" and that "(n)o other intended use or users are intended by the appraiser." (Moroski Decl. ¶ 8, Ex. 4.) Ms. Wall confirmed this during her testimony:

> Q. *Okay. You say that what you were provided with, including what was attached to this email, was not market based and therefore not relevant to your inquiry in determining the value of the HMR, Viking, Tir na nOg, and excess market properties.*

> *Not market based from what standpoint or from - -*
>
> A.   *Well, and forgive me if that's - - I'll have to have the stenographer read that back if that's what I said. I simply said it is not typical. Now, it is very possible if I took every single one of these line items and looked at the backup data for it, meaning what was it used for, how was it spent, where was it spent, it's very possible that I could get to a conclusion as to what their actual costs were.*
>
> *There simply was too much data here for me.* **Given the intended use. I mean, you have to keep in mind, I wasn't hired for a legal case. I was hired to do the estate planning, and the IRS does not require that I beat their financials to death to try to figure out whether or not they spent an appropriate amount on their farming costs.** *It was easier and simpler for me to simply go to other resources to get market farming costs and that's what I did.*
>
> *It's possible that what they spent was appropriate.* **It would be very difficult to determine that without breaking this information down to a much more minute level, but it's simply not required for the type of appraisal that I performed.*"

(Moroski Decl. ¶ 10, Ex. 6 (Wall Depo. at 59-60).)

The problem with this testimony is that it confirms the unreliability of her opinion in this case. Ms. Wall made it crystal clear that her report was not intended to be used for this litigation, but she also noted that her methodology is different for its intended use because the IRS is the targeted user. Because the report was prepared with a methodology that even Wall admits is not appropriate for this litigation, it has no place in this litigation.

        **b.**     **Wall Used Comparable Property Sales that Dated the July 22, 2021 Date of the Appraisal and Well Beyond the Allegations in this Case**

Ms. Wall relied on four sales or listings of comparable properties which post-date the valuation date in both of her appraisal reports. (Moroski Decl. ¶ 11, **Ex. 7**.)

7

*PLAINTIFF'S MOTION IN LIMINE #2 (WALL)*

| Expired Listing | Active Listing | Sale 1 (Pending) | Sale 2 (Pending) |
|---|---|---|---|
| XXXX | XXXX | Spring Ranch LLC | Cole Creek Vineyard, LL |
| with Candacce L Trust | Quentin Lilly | William Blythe | Cole Creek Vineyard, L |
| XXXX | XXXX | 10/14/2021 | 9/22/2021 |
| XXXX | XXXX | 2021-69988 | 2021-64679 |
| 039-191-039 | 039-011-019 | 014-221-028 | 040-021-058 & -059 |
| 050 York Mountain | 0 Vineyard Drive | 0 York Mountain Rd | 920 Wilmar Place |
| Templeton | Paso Robles | Templeton | Paso Robles |
| York Mountain | Adelaida | York/Templeton Gap | Willow Creek |
| AG | AG | AG | AG |
| 60.00 | 56.00 | 365.00 | 36.26 |
| 2,613,600 | 2,439,360 | 15,899,400 | 1,579,699 |
| 0.00 | 0.00 | 0.00 | 1.00 |
| 0.00 | 0.00 | 0.00 | 0.00 |
| 35.00 | 50.00 | 125.00 | 30.00 |
| 58.33% | 89.29% | 34.25% | 85.48% |
| 25.00 | 6.00 | 240.00 | 5.26 |
| $3,000,000 | $2,850,000 | $8,000,000 | $2,959,010 |

This alone is reason to question the reliability and admissibility of the Wall Evidence. Indeed, "there is no dispute that in the appraisal field, to determine fair market value, it is proper to use sales preceding the valuation date." *Cayuga Indian Nation of N.Y. v. Pataki*, 83 F. Supp. 2d 318, 326 (N.D.N.Y. 2000). The *Cayuga* court stated that the rationale for this practice is that "in determining fair market value, the focus is on what a willing buyer and a willing seller would pay for a given piece of property on a given date" and that "[p]art of making that determination is taking into account what those parties knew, or could reasonably have known at the time, about market conditions." *Id.* Sales which post-date the subject sale are not known or even knowable to the parties at the time of sale, and hence cannot be taken into account by them in determining sales price." *Id.* The use of post-dated comparables render Ms. Wall's opinion unreliable.

### 2. The Wall Evidence Is Not Based Upon Actual Data

Ms. Wall also acknowledged in her appraisal reports that the "[income approach] is the most logical method of valuing [the Ranches]." (Moroski Decl. ¶ 12, Ex. 8.) Despite this admission, Ms. Wall failed to consider available evidence of the income generated by the Ranches or their actual financial performance when conducting her appraisal.

Even though she had the ability to ask Defendants for the Ranches' actual financial statements and data, Ms. Wall admitted that she relied on secondary

information regarding the hypothetical financial performance of properties like the Ranches, when the information evidencing the actual performance (e.g., general ledgers of account, financial statements, etc.) of the Ranches were available to her through those who retained her. Ms. Wall testified:

> Q. And do you recall Mr. Radeski communicating to you that virtually 100 percent of the grape farming costs - - grape farming costs - - I'm sorry - - are on the ATR tab so that will be the area of focus.
>
> Do you recall Mr. Radeski communicating that to you?
>
> A. Yes.
>
> Q. And do you recall having had discussions with Mr. Radeski about that fact?
>
> A. Very briefly because it's not relevant for market value.
>
> Q. It's not relevant to the income approach to valuation, one of the three approaches zyou used in your appraisal report?
>
> A. Correct. I used market costs, not actuals. Just like I used market grape pricing, not actuals."

(Moroski Decl. ¶ 10, Ex. 6.)

The hypothetical valuation of the Ranches as of July 2021 for estate planning purposes is unreliable. The Wall Evidence should be excluded.

### 3. Wall's Opinion Relies Upon Critical Assumptions that Are Unsupported by the Actual Facts

"Courts must be wary of appraisals which contain unsupported assumptions, valuations which place property with a unique and extraordinary location on par with an ordinary lot, and comparable sales that are so dissimilar that they are of little use in supporting the opinion of value." *In re Belmont Realty Corp.*, 113 B.R. 118, 119-21 (Bankr. D.R.I.1990).

Ms. Wall's appraisal did precisely what courts should be wary of. Not only did Ms. Wall assume that the topography of the Ranches would allow additional planting of vines beyond the existing planted area, but she also made two extraordinary assumptions to support a conclusion that wine grape vineyards could

9

*PLAINTIFF'S MOTION IN LIMINE #2 (WALL)*

be developed on an additional 409.8 acres on the Ranches.  (Moroski Decl. ¶ 14 **Ex. 10**.)  Those extraordinary assumptions were that water was readily available to irrigate the hypothetical new vineyards on "plantable" acres, and there would be legal access to the areas on the Ranches where the hypothetical new vineyards would be planted.  Of the extraordinary assumption regarding the availability of water, Ms. Wall wrote in both of her appraisals:

> **Water Conclusion and Assumption**: …the valuation largely depends on the subject's potentially plantable acres having adequate water to develop them.  Currently, there is not enough developed water to irrigate additional acres.  Therefore, the valuation is based on the assumption that a hypothetical buyer will develop additional water sources.

(Moroski Decl. ¶ 15, Ex. 11.)

Ms. Wall did nothing to investigate the facts regarding the potential availability of developable water sources on the Ranches.  She produced a chain of emails with Jude Radeski requesting, inter alia, updated well test results.  (Moroski Decl. ¶ 16, **Ex. 12**.) No updated well test data was produced.  (*Id*. ¶ 17, **Ex. 13**.) The request for well test information was set forth in her subsequent Retention/Services Agreement.  (*Id*. **Exs. 1, 14**.)  In fact, she noted in both of her appraisal reports that "[c]urrent well tests were not provided," even though they were requested.[1]  (*Id*. ¶ 19, **Ex. 15**.)  Of her failure, Ms. Wall testified at deposition as follows:

> Q.   *And with respect to the water assumptions, directing your attention to page 16, something we covered a little bit earlier - - current well tests were not proved.*
>
>      *That's still an accurate statement?*
>
> A.   Correct.

---

[1] In her Retainer/Service Agreement with ATA-R, Ms. Wall requested the following data relating to the Ranches: (1) ownership history; (2) **copies of leases**; (3) **access easement**; (4) historical production records; (5) block/ranch map; (6) **grape contracts**; (7) preliminary reports; (8) **water agreements/pump tests**; and (9) **farming/harvest budget**. (Moroski Decl. Ex. 1 (emphases added).)

> Q. Now, did Jude Radeski or did Chad Taber ever discuss with you what management of the farm properties had done to explore for additional water sources during the period of time, let's say, the six-year period prior to your engagement?
>
> A. Not enough that I made note of it, no. I don't believe so."

(Moroski Decl. **Ex. 16**.)

Ms. Wall was not provided with the requested water agreement and pump tests. Further, she was not provided with, and did not consider the Grape Purchase Agreement between ATA and Adelaida Winery which is a linchpin of Plaintiff's damages case. (Moroski Decl. Ex. 17 (Wall Depo. 37-38, 121-123); *see generally,* 4thAC.) In June 2021, the same month Wall was retained to complete the appraisal, a special meeting of the directors of SDI and ATA was called to discuss the fact that ATA Ranches, the owner of the Ranches since November 2018, was bankrupt. (Moroski Decl. ¶ 22, Ex. 18.) Ms. Wall was not provided with information regarding this Special Meeting. (*Id.* ¶ 23 **Ex. 19**.)

## III. THE WALL EVIDENCE WILL CREATE CONFUSION

The Court may exclude relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. FRE 403 supplies a further backstop against the admission of prejudicial or confusing expert testimony. *In re Hanford Nuclear Reservation Litig.*, 534 F.3d 986, 1016 (9th Cir. 2008) (discretion to exclude "is especially true with respect to expert witnesses").

Here, Ms. Wall's testimony and appraisal report has minimal probative value as it is specifically being offered to prove a point that it simply cannot establish. Defendants are attempting to mislead the jury by showing a large appraisal value and then claiming that this valuation was the result of Defendants' brilliant decision to "invest" money into the Ranches (i.e., run annual operating losses in excess of $1 million to subsidize Adelaida), when the truth of the matter

is that Ms. Wall did not claim that the Ranches appreciated nor did she provide any causal nexus for that increase in value (and certainly did not opine that Defendants' actions were the cause of any appreciation in value). Thus, any probative value Ms. Wall's date of death opinion and report may have is highly outweighed by the potential to mislead and confuse the jury. By proffering Wall's testimony and reports on damages issues in the case, Defendants invite error, seek to confuse issues and cause prejudice to Plaintiff.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court enter an order excluding the testimony and appraisal reports of JoAnn Wall.

Dated: July 29, 2022             **SPERTUS, LANDES & UMHOFER, LLP**

By:   */s/ Matthew Donald Umhofer*
Matthew D. Umhofer
Anthony King
Diane Bang
Attorneys for Plaintiff

Dated: July 29, 2022             **ADAMSKI MOROSKI MADDEN CUMBERLAND & GREEN LLP**

By:   */s/ Martin P. Moroski*
Martin P. Moroski
Chase Martin
Attorneys for Plaintiff