MATTHEW DONALD UMHOFER, ESQ., SBN 206607
matthew@spertuslaw.com
J. ANTHONY KING, ESQ., SBN 297279
anthony@spertuslaw.com
DIANE H. BANG, ESQ., SBN 271939
diane@spertuslaw.com
**SPERTUS, LANDES & UMHOFER, LLP**
1990 South Bundy Dr., Suite 705
Los Angeles, CA 90025
Telephone: (310) 826-4700
Facsimile: (310) 826-4711

MARTIN P. MOROSKI, ESQ., SBN 98202
moroski@ammcglaw.com
CHASE W. MARTIN, ESQ., SBN 260444
martin@ammcglaw.com
**ADAMSKI MOROSKI MADDEN
CUMBERLAND & GREEN LLP**
Post Office Box 3835
San Luis Obispo, California 93403-3835
Telephone: (805) 543-0990
Facsimile: (805) 543-0980

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW D. VAN STEENWYK, Individually, as Trustee and Beneficiary of The Matthew Van Steenwyk GST Trust and The Matthew Van Steenwyk Issue Trust, and as Co-Trustee of The Gretchen Marie Van Steenwyk-Marsh GST Trust and The Gretchen Marie Van Steenwyk-Marsh Issue Trust and derivatively on behalf of Nominal Defendants APPLIED TECHNOLOGIES ASSOCIATES, INC., and ATA RANCHES, INC., <br><br> Plaintiff, <br><br> vs. | Case No.: 2:20-cv-02375-FLA-AFM <br><br> **DECLARATION OF MARTIN P. MOROSKI IN SUPPORT OF PLAINTIFF'S MOTION IN LIMINE #2 TO EXCLUDE AND/OR LIMT THE TESTIMONY AND REPORT(S) OF JOANN WALL** <br><br> Date:   August 26, 2022 <br> Time:  1:00 p.m. <br> Courtroom:  6C <br><br> Before:  Hon. Fernando L. Aenlle-Rocha <br><br> **Pretrial Conference:** August 26, 2022 <br> **Trial:** September 13, 2022 |

*DECLARATION OF MARTIN P. MOROSKI IN SUPPORT OF PLAINTIFF'S*
*MOTION IN LIMINE #2 (WALL)*

Spertus, Landes & Umhofer, LLP
1990 South Bundy Dr., Suite 705
Los Angeles, CA 90025
Telephone 310-826-4700; Facsimile 310-826-4711

1    KEDRIN E. VAN STEENWYK, et
2    al.,

3                    Defendants,

4    and

5    APPLIED TECHNOLOGIES
6    ASSOCIATES, INC., and ATA
     RANCHES, INC.,
7
8                    Nominal Defendants.

9

Spertus, Landes & Umhofer, LLP
1990 South Bundy Dr., Suite 705
Los Angeles, CA 90025
Telephone 310-826-4700; Facsimile 310-826-4711

*DECLARATION OF MARTIN P. MOROSKI IN SUPPORT OF PLAINTIFF'S MOTION IN LIMINE #2 (WALL)*

Spertus, Landes & Umhofer, LLP
1990 South Bundy Dr., Suite 705
Los Angeles, CA 90025
Telephone 310-826-4700, Facsimile 310-826-4711

I, Martin P. Moroski, declare:

1. I am an attorney licensed to practice before this Court. In this matter, I represent Plaintiff Matthew Van Steenwyk, Individually, as Trustee and Beneficiary of The Matthew Van Steenwyk GSO Trust and The Matthew Van Steenwyk Issue Trust, and as Co-Trustee of The Gretchen Marie Van Steenwyk-Marsh GST Trust and The Gretchen Marie Van Steenwyk-Marsh Issue Trust ("Plaintiff").

2. I submit this declaration in support of Plaintiff's Motion in Limine #2 to Exclude and/or Limit the Testimony and Reports of JoAnn Wall. I have personal knowledge of the facts set forth herein and, if called upon to do so, can competently testify to those facts.

3. The initial deadline date for the disclosure of expert witnesses was November 19, 2021. While Plaintiff's counsel adhered to the deadline and the rules governing the disclosure of expert witnesses, JoAnn Wall, a purported non-retained expert, was not disclosed until after midnight on November 19, 2021. Additionally, Ms. Wall's appraisal report was not produced until late December 2021, even though she prepared and signed her appraisal on November 16, 2021. To date, Defendants have not served a Rule 26 expert report by Ms. Wall.

4. I have taken all three sessions to date of Ms. Wall's deposition. At the most recent session of her deposition, she promised to produce copies of the invoices requested in the deposition subpoena duces tecum that was served on her. Ms. Wall has not yet produced the invoices.

5. Attached to this declaration as **Exhibit 1** is a true and correct copy of JoAnn Wall's Retainer/Services Agreement with ATA Ranches, Inc., dated and signed by her on June 22, 2021, one month before Elizabeth Van Steenwyk passed away on July 22, 2021.

*DECLARATION OF MARTIN P. MOROSKI IN SUPPORT OF PLAINTIFF'S MOTION IN LIMINE #2 (WALL)*

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

6.    Attached to this declaration collectively as **Exhibit 2** are true and correct copies of pages 44-45 of the transcript of the session of the deposition of JoAnn Wall taken on April 25, 2022.

7.    Attached to this declaration collectively as **Exhibit 3** are true and correct copies of the cover page and page WALL – 000378 of JoAnn Wall's December 3, 2021 appraisal report ("Wall Report No. 2").

8.    Attached to this declaration collectively as **Exhibit 4** are true and correct copies of the cover page and page WALL – 000197 of JoAnn Wall of Wall Report No. 2.

9.    Attached to this declaration collectively as **Exhibit 5** are true and correct copies of the cover page and pages WALL – 000205 and 218 of Wall Report No. 2.

10.    Attached to this declaration collectively as **Exhibit 6** are true and correct copies of pages 56-60 of the transcript of the session of JoAnn Wall's deposition taken on April 25, 2022.

11.    Attached to this declaration collectively as **Exhibit 7** are true and correct copies of the cover page and page WALL - 000298 of Wall Report No. 2.

12.    Attached to this declaration collectively as **Exhibit 8** are true and correct copies of the cover page and page WALL - 000295 of Wall Report No. 2.

13.    Attached to this declaration as **Exhibit 9** is a true and correct copy of an email exchanges between JoAnn Wall and Jude Radeski, the General Manager of Adelaida Cellars, Inc., from November 9 to November 12, 2021 (WALL – 002139 -002145).

14.    Attached to this declaration collectively as **Exhibit 10** are true and correct copies of the following pages from Wall Report No. 2: the cover sheet, WALL-000227, WALL-000228, WALL-000248, WALL-000262, WALL-000273 and WALL-000285.

2

*DECLARATION OF MARTIN P. MOROSKI IN SUPPORT OF PLAINTIFF'S MOTION IN LIMINE #2 (WALL)*

15.     Attached to this declaration collectively as **Exhibit 11** are true and correct copies of the cover sheet and WALL-000223 from Wall Report No. 2.

16.     Attached to this declaration collectively as **Exhibit 12** are true and correct copies emails exchanged between JoAnn Wall (and her assistant) and Jude Radeski marked WALL-000587 – WALL-000593.

17.     Attached to this declaration collectively as **Exhibit 13** are true and correct copies of pages 36-37 of the transcript of the session of JoAnn Wall's deposition taken on April 25, 2022.

18.     Attached to this declaration as **Exhibit 14** is a true and correct copy of page 48 from the transcript of the session of JoAnn Wall's deposition taken on April 25, 2022.

19.     Attached to this declaration collectively as **Exhibit 15** are true and correct copies of the cover page and page WALL-000222 from Wall's Report No. 2.

20.     Attached to this declaration as **Exhibit 16** is a true and correct copy of page 108 from the transcript of the session of JoAnn Wall's deposition taken on April 25, 2022.

21.     Attached to this declaration collectively as **Exhibit 17** are true and correct copies of pages 37-38 and 121-123 from the transcript of the session of JoAnn Wall's deposition taken on April 25, 2022.

22.     Attached to this declaration as **Exhibit 18** is a true and correct copy of the Notice of Special Meeting of the Directors of SDI and ATA that occurred on June 28, 2021, which is marked MVS – 011693 – MVS – 011699.

//

//

//

//

Spertus, Landes & Umhofer, LLP
1990 South Bundy Dr., Suite 705
Los Angeles, CA 90025
Telephone 310-826-4700; Facsimile 310-826-4711

3

*DECLARATION OF MARTIN P. MOROSKI IN SUPPORT OF PLAINTIFF'S MOTION IN LIMINE #2 (WALL)*

23.    Attached to this declaration collectively as **Exhibit 19** are true and correct copies of pages 67 – 68 from the transcript of the session of JoAnn Wall's deposition taken on April 25, 2022.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct and that this declaration was executed on this 29th day of July, 2022, at Avila, California.

By: _____

Martin P. Moroski
Attorneys for Plaintiff

Spertus, Landes & Umhofer, LLP
1990 South Bundy Dr., Suite 705
Los Angeles, CA 90025
Telephone 310-826-4700; Facsimile 310-826-4711

4

*DECLARATION OF MARTIN P. MOROSKI IN SUPPORT OF PLAINTIFF'S MOTION IN LIMINE #2 (WALL)*

# EXHIBIT 1

  

**ABOVE AND BEYOND**
REAL ESTATE SERVICES. INC.

<div style="border:2px solid black; background:yellow">

**Exhibit
329**

JoAnn Wall

</div>

## Retainer/Service Agreement

| I | This agreement is to retain Above & Beyond Real Estate Services, Inc. to provide appraisal services for ATA Ranches, Inc. and their agents. The undersigned Client requests that Above & Beyond Real Estate Services, Inc. complete an appraisal of the property described below, in accordance with the terms, conditions and specifications outlined in this agreement. |
|---|---|

| II | A | Request Date: | June 22, 2021 | | Reference: | N/A |
|---|---|---|---|---|---|---|
| | | Client: | ATA Ranches, Inc. | | Phone No: | 805-239-8980 |
| | | Client Contact | Jude Radeski | | Email: | jude@adelaida.com |
| | | Mailing Address: | 5791 Adelaida Road, Paso Robles, CA 93446 | | | |
| | B | Property Contact: | Jude Radeski | | Phone No: | 805-239-8980 |
| | | Mailing Address: | 5805 Adelaida Road, Paso Robles, CA 93446 | | | |
| | C | Property Address(s): | 4470 Peachy Canyon Road & Kiler Canyon Road | | | |
| | | Property Location(s): | San Luis Obispo County | | | |
| | | APN(s) | 026-292-022, 030, & 026-342-001, -002; 026-293-019 | | | |
| | D | Present Property Use(s): | Vineyard, Walnut Orchard, and open land | | | |
| | | Proposed Use(s): | Not Applicable | | | |
| | | Property Size(s): | 1,011± gross acres; 334± net planted acres | | | |
| | E | Appraisal Purpose: | x | Current Market Value | | Other: |
| | | Intended Report Use: | Estate Planning – Privileged Communication | | | |
| | | Intended Report User: | ATA Ranches, Inc. | | | |
| | F | Eff. Date: | TBD | Appointment Date: | TBD | |
| | | Access Contact: | Jude Radeski | Phone No: | TBD | |
| | | Level and Format: | TBD | Copies Requested: | 1 Electronic | |
| | | Date Needed: | 9/30/2021 | Deliver Reports To: | Dan Carter | |

III    The client or agent is asked to provide the following data (check all that apply):

| | | | | | |
|---|---|---|---|---|---|
| x | Ownership History (3-Yrs) | x | Historical Production Records | x | Preliminary Report |
| x | Copies of Leases | x | Block/Ranch Map | x | Water Agreements/Pump Tests |
| x | Access Easement, if any | x | Grape Contracts | x | Farming/Harvest Budget |

Other Items: *Any information pertaining to the ranch, including historical production, past lease information, etc.*

## IV. CONTRACT AND RETAINER AGREEMENT FOR APPRAISAL SERVICES

In consideration of this contract between JoAnn Wall, ARA hereinafter referred to as the "Appraiser(s)" and ATA Ranches, Inc. hereinafter referred to as the "Client", said parties do hereby agree as follows:

The Client hires the Appraiser(s) to report a supported opinion of market value of the leasehold interest in the subject property listed above. The report shall be limited to analysis of the vineyard/agricultural real estate market and derivation of a reasonably supported opinion of market value as of the effective date. The report, this agreement, and all communications and work product will be protected from disclosure pursuant to the applicable privilege(s), to the extent permitted by law.

### General Conditions of this Agreement

A. That <u>any services</u> other than the scope of work provided for in this agreement will be separately billed at a market rate to be determined at the time those services are provided.

B. That if Above & Beyond Real Estate Services, Inc. cancels this agreement or determines that the Services cannot be performed, the damages, if any, resulting there from, would be difficult to determine. Therefore, as liquidated damages, any fee collected, as described in Section V, will be refunded in satisfaction of any claim by Client against Above & Beyond Real Estate Services, Inc. for having canceled this agreement.

C. That the total liability of Above & Beyond Real Estate Services, Inc. to the client with regard to this agreement or in any way related to the Services shall not exceed the amount of the fee paid to Above & Beyond Real Estate Services, Inc. for the Services.

D. That if the client cancels this agreement, Above & Beyond Real Estate Services, Inc. may retain a reasonable portion of the fee collected, as determined by Above & Beyond Real Estate Services, Inc., as compensation for the time and effort expended by Above & Beyond Real Estate Services, Inc. in connection with this agreement.

E. That the conclusion set out in the report are expressions of opinion and are not warranties as to value, condition, utility, or marketability of the subject property, and that the use or reliance on those conclusions by client is at client's sole discretion and risk.

F. That client understands that client must provide Above & Beyond Real Estate Services, Inc. with all pertinent property and ownership information under client's control and that the reliability of the requested services and associated reports is limited to the reliability of the information available to Above & Beyond Real Estate Services, Inc. in the course of performing the services.

G. <u>Intended users</u>: Client and agents

H. <u>Intended use of the appraisal</u>: Estate Planning – Privileged Communication

I. <u>Effective date of the appraisal</u>: Current

J. <u>Interest valued</u>: Fee Simple

K. <u>Purpose of the Assignment</u>: To render a supported opinion of the market value of the fee simple as of effective date of the subject properties (2 Properties, 5 separate parcels)

L. <u>Assumptions and Limiting Conditions</u>: The Appraiser(s) reserves the right to add assumptions and limiting conditions to the appraisal report should she deem those necessary for credible assignment results. These will be discussed with the Client prior to their use.

M. <u>Methods and techniques</u>: The scope of work includes property inspections to ascertain particular physical characteristics including, but not limited to, property size, location, topography, soils, water source, climatic conditions, vineyard productivity and condition, and economic conditions. In addition, a survey of local brokers, property owners, and investors who have assets located within a reasonable proximity to the subject was performed to analyze the market area and a search was performed to locate market data. Sales and leases in the market area were analyzed and a reasonably supported opinion of market value was rendered.

## V. REPORTING OF THE MARKET VALUE OPINION

The Appraiser(s) will prepare an appraisal that are intended to comply with the development and reporting requirements  set forth under Standards Rule 1 and 2 of the 2021 – 2022 Uniform Standards of Professional Appraisal Practice.

<u>Appraisal fee schedule</u>:    In return  for said services the Client agrees to  the following  fee arrangement:

N. Appraisal Retainer Fee is $5,000 (Five Thousand Dollars). The balance of up to $7,000 (Seven Thousand Dollars) is due immediately upon receipt of the final appraisal report and accompanying invoice.

O. Meetings (phone/video conference/in person) requested by the Client, their client, and with other experts providing support to the assignment, beyond the scope of work outlined above are billed at $250.00 (two hundred fifty dollars) per hour. This includes time spent at a mediation session. This does not include, within reason, typical review of the appraisal report by the Client, phone calls and emails related to such, and potential changes that result.

P. If necessary, deposition and trial preparation fees are billed at $250.00 (Two Hundred Fifty Dollars) per hour.

Q. Expert witness fees for deposition/arbitration/trial testimony are billed at $450.00 (Four Hundred Fifty Dollars) per hour. This fee applies to travel time, waiting, and recess/breaks.

R. If necessary, expenses (actual costs) directly related to and necessary to the completion of this assignment will be reimbursed to the Appraiser(s). Expenses are limited to $100 without approval, with the Client to approve all expenses exceeding the $100 threshold before they are expended.

S. Client is responsible for reimbursing the Appraiser(s) for any expenses related to court exhibits, such as charts, photo enlargements, etc. should the Client desire these items.

The Appraiser(s) will have no responsibility to update the report for events and circumstances occurring after completion of the appraisal without prior arrangements defining the additional services (new assignment) and compensation to complete the supplemental services. Terms of this Contract and Retainer Agreement are effective for one year from the date of its execution. Annually and if necessary, the Contract terms and scope of the assignment will be reviewed, and either an extension of the original terms or necessary modifications to the original terms will be mutually agreed to between the Client and the Appraiser(s).

Balances outstanding, beyond 30 days will have a service charge added at the rate of five percent (5%) per month compounded. All costs for the collection these fees, will be the responsibility of the Client including, but not limited to, attorney fees, court costs, collection agency fees, etc., and including any additional time required of Appraiser(s) in the entire collection process, at $250.00 (Two Hundred Fifty Dollars) per hour.

**Neither the employment to render a supported opinion within the appraisal report nor the compensation itself is contingent upon any predetermined outcome**. It is understood that the Appraiser(s) has no past, present, or contemplated future interest in the real estate of which the market value opinion is a subject of this report, nor any express or implied agreement of continuing or additional work for the Client, which would prevent the Appraiser(s) from giving an objective, unbiased opinion. **The Client understands and agrees that the Appraiser(s) is not an advocate of this assignment.**

**If the foregoing meets with your approval, please sign, and date this contract, and return the signed contract along with a non-refundable retainer payment of $5,000 (Five Thousand Dollars). An executed copy of the signed Contract for Appraisal Services will be returned upon receipt.**

If necessary, any additional services which have not been identified, but subsequently agreed to and performed by the appraiser(s) will require periodic progress payment and final statements are due and payable upon receipt.

Thank you for the opportunity to provide these appraisal services related to this matter. Please

review the information above, sign the enclosed copy and return it to me for my files. I will countersign and send you a fully executed copy for your records.


By: _____     Dated: June 22, 2021

JoAnn Wall, Certified General and Accredited Rural Appraiser


I have read and understand this agreement. The following signature is confirmation and acceptance of all of the foregoing:


By: _____     Dated: 7/21/2021

For the Client, Jude Radeski

WALL - 000007

# EXHIBIT 2

1              UNITED STATES DISTRICT COURT

2            CENTRAL DISTRICT OF CALIFORNIA

3

4      MATTHEW D. VAN STEENWYK, )

5      et al.,                  )  Case No.

6          Plaintiff,           )  2:20-cv-02375-FLA-AFM

7      vs.                      )

8      KEDRIN E. VAN STEENWYK,  )

9      et al.,                  )

10         Defendants,          )

11     and                      )

12     APPLIED TECHNOLOGIES     )

13     ASSOCIATES, INC., and    )

14     ATA RANCHES, INC.,       )     VOLUME I

15         Nominal Defendants. )  (Pages 1 - 149)

16     _____)

17

18              DEPOSITION OF JOANN C. WALL

19                 APRIL 25, 2022

20

21

22

23     REPORTED REMOTELY BY: JANET FRENCH, CSR NO. 946

24

25                    Notary Public

                                        Page 1

| | | |
|---|---|---|
| 1 | that probably means that I didn't. | 11:17:26 |
| 2 | Q.   Now, the next box that I wanted to talk | 11:17:29 |
| 3 | about, which you checked, grape contracts.  We | 11:17:32 |
| 4 | established that you were not provided with any grape | 11:17:33 |
| 5 | contract other than the contract with Ridge Winery; | 11:17:39 |
| 6 | true? | 11:17:41 |
| 7 | A.   That's true. | 11:17:42 |
| 8 | Q.   And with respect to the box water | 11:17:45 |
| 9 | agreements, pump tests, we've established that you | 11:17:49 |
| 10 | were not provided with new pump tests; is that | 11:17:54 |
| 11 | correct? | 11:17:55 |
| 12 | A.   Correct. | 11:17:56 |
| 13 | Q.   Without looking at your appraisal report, | 11:18:03 |
| 14 | what is your recollection as to the most recent well | 11:18:08 |
| 15 | test report that you were given access to? | 11:18:14 |
| 16 | A.   I'm sorry. | 11:18:17 |
| 17 | Q.   I'm sorry? | 11:18:18 |
| 18 | A.   I don't know the date. | 11:18:19 |
| 19 | Q.   Okay.  Direct your attention to exhibit -- | 11:18:43 |
| 20 | well, before we leave, because this kind of sets the | 11:18:47 |
| 21 | table for the next question. | 11:18:52 |
| 22 | MR. MOROSKI:  Exhibit 329, again, George. | 11:19:12 |
| 23 | Q.   (BY MR. MOROSKI)  Section Roman 2, sub | 11:19:15 |
| 24 | capital E, appraisal purpose, current market value, | 11:19:23 |
| 25 | intended report use, estate planning-privileged | 11:19:26 |

Page 44

```
 1    communication.                                        11:19:26

 2            That's consistent with the emails we looked   11:19:31

 3    at earlier where you were being instructed to prepare 11:19:33

 4    your retainer agreement and indicating that it was for 11:19:37

 5    estate planning purposes that you were preparing the  11:19:40

 6    appraisal of HMR, Viking, Tir na nOg, and the excess  11:19:46

 7    parcel; correct?                                      11:19:47

 8        A.   This -- that box shouldn't have been marked. 11:19:51

 9    It should have been other.  So that's a mistake on the 11:19:55

10    service agreement.  That's how come there is a TBD     11:20:00

11    underneath that that says effective date TBD.          11:20:01

12        Q.   Got it.  So --                                11:20:02

13        A.   That should state her date of death.          11:20:06

14        Q.   Date of death, right.                         11:20:09

15        A.   At the time that was prepared, she had not    11:20:11

16    passed so we didn't know.                              11:20:13

17        Q.   Okay.  So you recall now that she had not --  11:20:15

18    Elizabeth Van Steenwyk had not passed as of the date   11:20:20

19    that you completed your --                             11:20:23

20        A.   Well, I'm not really sure what you mean by    11:20:25

21    "now."  I stated that she had not passed as of June    11:20:29

22    22.  She had passed as of the time that service        11:20:34

23    agreement was signed and counter signed.              11:20:36

24        Q.   Okay.  Directing your attention to Exhibit    11:20:41

25    330.                                                   11:20:42
```

                                                        Page 45

# EXHIBIT 3

# Appraisal Report

## of

### ATA Ranches, Inc.
### 4475 Peachy Canyon Road & Kiler Canyon Road
### Paso Robles, California
### San Luis Obispo County

**Appraiser:**
JoAnn C. Wall, ARA
CEO/Principal Appraiser

**Firm:**
Above & Beyond Real Estate Services, Inc.
P.O. Box 1225
Templeton, CA 93465

**Client:**
Mr. Dan Carter
SVP-Administration & General Counsel
Scientific Drilling International, Inc.
5805 Adelaida Road
Paso Robles, CA 93446

Effective Date: July 22, 2021

4/1/202
Alicia Cronbach
**288**
J. Erickson, CSR 13144

H. <u>Intended use of the appraisal</u>: Estate Planning – Privileged Communication

I. <u>Effective date of the appraisal</u>: Current

J. <u>Interest valued</u>: Fee Simple

K. <u>Purpose of the Assignment</u>: To render a supported opinion of the market value of the fee simple as of effective date of the subject properties (2 Properties, 5 separate parcels)

L. <u>Assumptions and Limiting Conditions</u>: The Appraiser(s) reserves the right to add assumptions and limiting conditions to the appraisal report should she deem those necessary for credible assignment results. These will be discussed with the Client prior to their use.

M. <u>Methods and techniques</u>: The scope of work includes property inspections to ascertain particular physical characteristics including, but not limited to, property size, location, topography, soils, water source, climatic conditions, vineyard productivity and condition, and economic conditions. In addition, a survey of local brokers, property owners, and investors who have assets located within a reasonable proximity to the subject was performed to analyze the market area and a search was performed to locate market data. Sales and leases in the market area were analyzed and a reasonably supported opinion of market value was rendered.

## V. REPORTING OF THE MARKET VALUE OPINION

The Appraiser(s) will prepare an appraisal that are intended to comply with the development and reporting requirements set forth under Standards Rule 1 and 2 of the 2021 – 2022 Uniform Standards of Professional Appraisal Practice.

<u>Appraisal fee schedule</u>: In return for said services the Client agrees to the following fee arrangement:

N. Appraisal Retainer Fee is

is due immediately upon receipt of the final appraisal report and accompanying invoice.

O. Meetings (phone/video conference/in person) requested by the Client, their client, and with other experts providing support to the assignment, beyond the scope of work outlined above are billed at $250.00 (two hundred fifty dollars) per hour. This includes time spent at a mediation session. This does not include, within reason, typical review of the appraisal report by the Client, phone calls and emails related to such, and potential changes that result.

P. If necessary, deposition and trial preparation fees are billed at $250.00 (Two Hundred Fifty Dollars) per hour.

CONFIDENTIAL

WALL - 000378

# EXHIBIT 4

# Appraisal Report

## of

### ATA Ranches, Inc.
### 4475 Peachy Canyon Road & Kiler Canyon Road
### Paso Robles, California
### San Luis Obispo County

**Appraiser:**
JoAnn C. Wall, ARA
CEO/Principal Appraiser

**Firm:**
Above & Beyond Real Estate Services, Inc.
P.O. Box 1225
Templeton, CA 93465

**Client:**
Mr. Dan Carter
SVP-Administration & General Counsel
Scientific Drilling International, Inc.
5805 Adelaida Road
Paso Robles, CA 93446

Effective Date: July 22, 2021

4/1/202
Alicia Cronbach
**288**
J. Erickson, CSR 13144

December 3, 2021

Mr. Dan Carter
SVP-Administration & General Counsel
Scientific Drilling International, Inc.
5805 Adelaida Road, Paso Robles, CA 93446

Dear Mr. Carter,

At your request, I have completed an on-site viewing, analysis, and retrospective market value opinion of the fee simple interest in the **ATA Ranches** (also known as **ATAR**) located at 4475 Peachy Canyon Road & Kiler Canyon Road (San Luis Obispo County), California as of July 22, 2021, the date of death of Elizabeth A. Van Steenwyk.

The purpose of this assignment is to provide a supported opinion of market value of the subject, as defined in Key Definitions section of this report.  The intended use of this report is to assist client with estate and business planning purposes.  The client is ATA Ranches, Inc.  The only intended users of the final appraisal report are the client, other members of the Van Steenwyk families and any affiliated agents of these parties, such as accountants and attorneys, as well as the Internal Revenue Service.

No other intended use or users of this appraisal report are intended by the appraiser.  The value opinion is based on the definition of fair market value as defined by Treasury Regulation Section 20.2031-1(b) for estate taxes.

Your attention is directed to the Assumptions and Limiting Conditions section of the report wherein all significant assumptions and conditions to this appraisal are specified.  It is important for the readers of this report to understand that my opinion of value is subject to a series of definitions, assumptions, and/or limiting conditions.  As a result of the investigation, analysis and request of the client, the supported opinions of values for the ATA Ranches separate salable parcels, subject to the assumptions and limiting conditions located in the addendum and as of effective date of July 22, 2021, was:

<div align="center">

**ATA Ranches (Aggregate Market Value)**
**Twenty-Eight Million Three Hundred Thousand Dollars**
**($28,300,000)**
**Cash**

</div>

CONFIDENTIAL                                                                                                          WALL - 000197

# EXHIBIT 5

# Appraisal Report

## of

### ATA Ranches, Inc.
### 4475 Peachy Canyon Road & Kiler Canyon Road
### Paso Robles, California
### San Luis Obispo County

**Appraiser:**
JoAnn C. Wall, ARA
CEO/Principal Appraiser

**Firm:**
Above & Beyond Real Estate Services, Inc.
P.O. Box 1225
Templeton, CA 93465

**Client:**
Mr. Dan Carter
SVP-Administration & General Counsel
Scientific Drilling International, Inc.
5805 Adelaida Road
Paso Robles, CA 93446

Effective Date: July 22, 2021

4/1/202
Alicia Cronbach
**288**
J. Erickson, CSR 13144

### Disclosure and Use

This report shall be used for its intended purposes only, and by the parties to whom it is addressed. Possession of this report does not include the right of publication. This report cannot be updated or changed by any party other than the certifying appraiser.

Neither all nor any part of this report shall be conveyed to any person or entity, other than the appraiser's or client's firms, through advertising, solicitation materials, public relations, news, sales, or other media without the written consent and approval of the author, particularly as to valuation conclusions, the identity of the appraiser or firm with which the appraiser is connected, or any reference to the American Society of Farm Managers and Rural Appraisers or ARA designation. Further, the appraiser or firm assumes no obligation, liability, or accountability to any third party. If this report is placed in the hands of anyone but the client, client shall make such party aware of all the assumptions and limiting conditions of the assignment.

The appraiser is not required to give testimony or appear in court by reason of this appraisal, with reference to the property in question, unless further arrangements have been previously made and mutually agreed upon. Information estimates and opinions furnished to the appraiser and contained in this report were obtained from sources considered reliable and believed to be true and correct. However, no responsibility for accuracy of such items furnished to the appraiser can be assumed by the appraiser. The appraiser assumes no responsibility for changes and/or limitations that may be imposed to the subject by the numerous governmental and political entities which have authority to make decisions that can alter property use, project feasibility, and value. This report has been prepared in accordance with the Code of Professional Ethics & Standards of Professional Appraisal Practice of the American Society of Farm Managers and Rural Appraisers (ASFMRA). The ASFMRA has a legal right to review this report.

This appraisal report was ordered by Jude Radeski, general manager of Adelaida Winery, on behalf of ATA Ranches, Inc. It is prepared for the sole use and benefit of ATA Ranches, Inc. and its affiliates. The report is addressed to Mr. Dan Carter, SVP-Administration & General Counsel, Scientific Drilling International, Inc., a related entity. The fiduciary appraiser/client relationship is only with ATA Ranches, Inc. and Mr. Carter. The report is based in part upon documents, writings and information owned and possessed by the client, and the information, analyses, conclusions, statements, and appraised values contained within the report are strictly confidential. The unlawful interception, use, or disclosure of such information is strictly prohibited under 18 USCA 2511 and the Gramm-Leach-Bliley Act of 1999.

This report may be made available to third parties who have been authorized to receive it for information purposes only. However, this report should not be used for any purpose other than to understand the information made available to the client concerning the property it addresses.

CONFIDENTIAL

Van Steenwyk passing on July 22, 2021. The appraiser has determined that a narrative-style appraisal report is adequate to produce credible results in this assignment and satisfies the needs of the intended user(s) for their intended use. The scope, or extent, of the data collection process employed in developing this appraisal report involves a comprehensive investigation into all factors that are believed to influence the fair market value of the subject property, but with summarized property description and report details.

**Steps Taken to Solve Appraisal Problem:** The conclusions contained in this report have been based on a physical viewing of the subject property and an analysis of market-derived information pertinent to the valuation of similar property in the general market area. Applicable data, such as improved property transactions and comparable cost data were gathered and analyzed to help support the indications of value contained in this report. Much of this analysis has been retained in the appraiser's work files. This is an ongoing process that requires consulting with knowledgeable brokers, property managers, real estate appraisers, contractors, etc. Specific tasks undertaken in the development of this report include the following:

- Performed a physical viewing of the subject site and surrounding vicinity on September 8, 2021. Appraiser JoAnn C. Wall, ARA and Trainee, Jane W Karney, were accompanied by Jude Radeski, general manager of Adelaida Winery. Pre- and post-inspection questioning was also conducted with Mr. Radeski, vineyard manager Chad Taber, and Dan Carter, Senior Vice President – Administration and General Counsel for Scientific Drilling International, Inc.

- A series of maps was commissioned and completed by Kelly Bobbitt with Mike Bobbitt & Associates. These maps are the basis for which the valuation of various land types was determined.

- Questioning of Messrs. Radeski, Taber, and Carter prior to and following the onsite visit was also conducted. Reviewed and analyzed available public and private information relevant to the property. Some of the more significant documents include:

  o Zoning Ordinance – County of San Luis Obispo

  o Production history/future estimates, lease, farming costs, block breakdown, and other details provided by the property owner and vineyard manager

  o San Luis Obispo County Property Tax Bills – 2021/2022 assessment year

  o 2020 San Luis Obispo County Crop Report (most recent version), published by the San Luis Obispo County Agricultural Commissioner's Office

  o 5-Year Historical Grape Crush Reports, published by the California Department of Food and Agriculture



CONFIDENTIAL

WALL - 000218

# EXHIBIT 6

1                    UNITED STATES DISTRICT COURT

2                  CENTRAL DISTRICT OF CALIFORNIA

3

4         MATTHEW D. VAN STEENWYK, )

5         et al.,                  )  Case No.

6              Plaintiff,          )  2:20-cv-02375-FLA-AFM

7         vs.                      )

8         KEDRIN E. VAN STEENWYK,  )

9         et al.,                  )

10             Defendants,         )

11        and                      )

12        APPLIED TECHNOLOGIES     )

13        ASSOCIATES, INC., and    )

14        ATA RANCHES, INC.,       )      VOLUME I

15             Nominal Defendants. )  (Pages 1 - 149)

16        _____)

17

18                    DEPOSITION OF JOANN C. WALL

19                        APRIL 25, 2022

20

21

22

23        REPORTED REMOTELY BY: JANET FRENCH, CSR NO. 946

24

25                        Notary Public

                                            Page 1

| 1 | items of information from Mr. Radeski. | 11:49:33 |
| 2 | A.   Correct. | 11:49:33 |
| 3 | Q.   And Mr. Radeski's response is the verbiage | 11:49:39 |
| 4 | reflected in red print. | 11:49:43 |
| 5 | "Yes"? | 11:49:43 |
| 6 | A.   Yes.  Correct. | 11:49:46 |
| 7 | Q.   Did you ever see or were you ever provided | 11:49:49 |
| 8 | with the Mag Lab contracted rental agreement referred | 11:49:52 |
| 9 | to by Mr. Radeski adjacent to that first bullet point? | 11:50:01 |
| 10 | A.   Again, I would have to go back and look at | 11:50:05 |
| 11 | the voluminous exhibits that I was provided to see if | 11:50:09 |
| 12 | I was actually given a copy.  I don't think so. | 11:50:11 |
| 13 | Q.   Directing your attention to Exhibit 335. | 11:50:23 |
| 14 | (Exhibit 335 marked.) | 11:50:39 |
| 15 | Q.   (BY MR. MOROSKI)  And you can take a moment | 11:50:40 |
| 16 | to review this once you've got it on your screen. | 11:50:52 |
| 17 | For the record -- for the record, the | 11:50:54 |
| 18 | Exhibit 335 is an email chain -- an email from Donna | 11:51:02 |
| 19 | Flora of Adelaida to Jude Radeski.  And the second is | 11:51:10 |
| 20 | an email -- a forwarding email from Jude Radeski to | 11:51:15 |
| 21 | Jane Wood and you, Ms. Wall. | 11:51:19 |
| 22 | And my question to you is whether you recall | 11:51:22 |
| 23 | having received this email from Mr. Radeski? | 11:51:25 |
| 24 | A.   I do. | 11:51:29 |
| 25 | Q.   And do you recall Mr. Radeski communicating | 11:51:35 |

Page 56

| | | |
|---|---|---|
| 1 | to you that virtually 100 percent of the grape farming | 11:51:38 |
| 2 | costs -- grape farming costs -- I'm sorry -- are on | 11:51:45 |
| 3 | the ATR tab so that will be the area of focus. | 11:51:49 |
| 4 | Do you recall Mr. Radeski communicating that | 11:51:51 |
| 5 | to you? | 11:51:52 |
| 6 | A.   Yes. | 11:51:53 |
| 7 | Q.   And do you recall having had discussions | 11:51:56 |
| 8 | with Mr. Radeski about that fact? | 11:52:04 |
| 9 | A.   Very briefly because it's not relevant for | 11:52:06 |
| 10 | market value. | 11:52:08 |
| 11 | Q.   It's not relevant to the income approach to | 11:52:13 |
| 12 | valuation, one of the three approaches you used in | 11:52:16 |
| 13 | your appraisal report? | 11:52:18 |
| 14 | A.   Correct.   I used market costs, not actuals. | 11:52:23 |
| 15 | Just like I used market grape pricing, not actuals. | 11:52:38 |
| 16 | Q.   Did -- and this is a little bit off my | 11:52:40 |
| 17 | script, but did you ask Mr. Radeski to provide you | 11:52:45 |
| 18 | with actual financial statements for ATA Ranches, | 11:52:51 |
| 19 | Inc., to determine the extent of the expense it | 11:52:54 |
| 20 | incurred in carrying the HMR, Viking, Tir na nOg, and | 11:53:00 |
| 21 | excess parcel properties and paying for farming costs | 11:53:05 |
| 22 | incurred in connection with the vineyards on those | 11:53:08 |
| 23 | properties? | 11:53:08 |
| 24 | A.   The only thing that I asked for, which is | 11:53:12 |
| 25 | what I ask of every client, is to provide me with | 11:53:15 |

Page 57

```
 1    their farming costs so I can use it as a basis of        11:53:18

 2    determining whether or not it's at market.  If it is     11:53:21

 3    not at market, I don't use it, and in this case I        11:53:23

 4    didn't.                                                  11:53:28

 5        Q.   What were you provided with and on what is      11:53:32

 6    your conclusion that it was not at market based on?      11:53:37

 7        A.   Yeah.  I mean, the documents -- like, for       11:53:40

 8    example, this exhibit that you are putting -- that is    11:53:42

 9    up on the screen includes a lot of information that is   11:53:46

10    not relevant to a real property valuation.              11:53:48

11            And, in fact, I would still be doing the        11:53:54

12    appraisal if I had to pick this apart and try to        11:53:57

13    figure out what was actually being spent.               11:54:00

14            To be honest, I looked at this and basically    11:54:03

15    didn't look at it again because this information taken   11:54:06

16    out of the context is very meaningless from an          11:54:11

17    appraisal standpoint.  I don't know what professional   11:54:14

18    fees are, what they were spent for.  Is it typical?     11:54:18

19    Is it not?  I don't know what supplies are.  Are they   11:54:22

20    typical supplies or are they not?                       11:54:25

21            So there was a lot of information that is       11:54:27

22    contained in documents like this that were provided to  11:54:30

23    me but for which I did not use, simply because there    11:54:33

24    was no way I could figure out how much of this          11:54:36

25    actually was market based cultural costs.               11:54:40
```

Page 58

```
 1              So I had to go back to what other vineyards    11:54:44

 2    in the area would typically see in farming costs, my    11:54:49

 3    files that have appraisals of other properties so I     11:54:53

 4    had a better idea of what farming costs were on other   11:54:56

 5    vineyards.  It is not uncommon for owner/operators to   11:55:00

 6    either spend less than market or spend more for a       11:55:06

 7    variety of reasons.  Some put more expenses into their  11:55:10

 8    farming costs.  Some do a lot of the work themselves    11:55:15

 9    and so the cost is less.  So because of that, I will    11:55:18

10    look at this information.  I do my best to analyze it.  11:55:21

11    If it is not something that I can use, then I go to     11:55:25

12    the market value based on costs that are typically      11:55:27

13    seen in the market and that is what I did in this       11:55:30

14    case.                                                   11:55:31

15         Q.   Would you characterize the information that   11:55:34

16    was provided to you by Jude Radeski in the area of      11:55:39

17    farming costs as being somewhat messy?                  11:55:43

18         A.   He's an accountant and they think            11:55:47

19    differently than appraisers do.                         11:55:49

20         Q.   Okay.  You say that what you were provided    11:55:53

21    with, including what was attached to this email, was    11:55:56

22    not market based and therefore not relevant to your    11:56:00

23    inquiry in determining the value of the HMR, Viking,    11:56:05

24    Tir na nOg, and excess market properties.               11:56:09

25              Not market based from what standpoint or      11:56:12
```

Page 59

```
 1    from --                                              11:56:14

 2        A.   Well, and forgive me if that's -- I'll have  11:56:18

 3    to have the stenographer read that back if that's what  11:56:21

 4    I said.  I simply said it is not typical.  Now, it is  11:56:24

 5    very possible if I took every single one of these line  11:56:30

 6    items and looked at the backup data for it, meaning    11:56:34

 7    what was it used for, how was it spent, where was it    11:56:38

 8    spent, it's very possible that I could get to a        11:56:42

 9    conclusion as to what their actual costs were.         11:56:46

10         There simply was too much data here for me.       11:56:50

11    Given the intended use.  I mean, you have to keep in    11:56:52

12    mind.  I wasn't hired for a legal case.  I was hired    11:56:56

13    to do the estate planning, and the IRS does not        11:56:59

14    require that I beat their financials to death to try    11:57:03

15    to figure out whether or not they spent an appropriate  11:57:07

16    amount on their farming costs.  It was easier and      11:57:10

17    simpler for me to simply go to other resources to get   11:57:15

18    market farming costs and that's what I did.            11:57:17

19         It's possible that what they spent was            11:57:23

20    appropriate.  It would be very difficult to determine   11:57:26

21    that without breaking this information down to a much   11:57:32

22    more minute level, but it's simply not required for     11:57:34

23    the type of appraisal that I performed.                11:57:37

24        Q.   Now, you used the pronoun "they."  You know,  11:57:41

25    you couldn't figure out what they were using for       11:57:43
```

Page 60

# EXHIBIT 7

# Appraisal Report

## of

### ATA Ranches, Inc.
### 4475 Peachy Canyon Road & Kiler Canyon Road
### Paso Robles, California
### San Luis Obispo County

**Appraiser:**
JoAnn C. Wall, ARA
CEO/Principal Appraiser

**Firm:**
Above & Beyond Real Estate Services, Inc.
P.O. Box 1225
Templeton, CA 93465

**Client:**
Mr. Dan Carter
SVP-Administration & General Counsel
Scientific Drilling International, Inc.
5805 Adelaida Road
Paso Robles, CA 93446

Effective Date: July 22, 2021

4/1/202
Alicia Cronbach
**288**
J. Erickson, CSR 13144

## Land Listings/Sales Grid (1 of 3)

| Sale ID | Subject/ | Expired Listing | Active Listing | Sale 1 (Pending) | Sale 2 (Pending) | Sale 3 | Sale 4 |
|---|---|---|---|---|---|---|---|
| Buyer Name | XXXX | XXXX | XXXX | Spring Ranch LLC | Cole Creek Vineyard, LLC | Wc Vineyard Properties | Star Wagon LLC |
| Seller Name | ATA Ranches | Mark with Candace L Trust | Quentin Lilly | William Blythe | Cole Creek Vineyard, LP | Frantzen | Wc Property LLC |
| Sale Date | XXXX | XXXX | XXXX | 10/14/2021 | 9/22/2021 | 7/1/2021 | 5/7/2021 |
| Document Number | XXXX | XXXX | XXXX | 2021-69988 | 2021-64679 | 2021-46772 | 2021-34637 |
| Assessor's Parcel Number | 026-293-019 | 039-191-039 | 039-011-019 | 014-221-028 | 040-021-058 & -059 | 039-061-015 | 040-101-036 |
| Location | 4475 Peachy Canyon | 6050 York Mountain | 0 Vineyard Drive | 0 York Mountain Rd | 920 Wilmar Place | 5880 Vineyard Drive | 3975 La Tablas Willow Creek |
| Closest City/Community | Paso Robles | Templeton | Paso Robles | Templeton | Paso Robles | Paso Robles | Paso Robles |
| AVA | Adelaida | York Mountain | Adelaida | York/Templeton Gap | Willow Creek | Willow Creek | Willow Creek |
| Jurisdiction/Zoning | AG | AG | AG | AG | AG | SFR | AG |
| Gross Acres | 375.00 | 60.00 | 56.00 | 365.00 | 36.26 | 65.00 | 75.00 |
| Gross Square Feet | 16,335,000 | 2,613,600 | 2,439,360 | 15,899,400 | 1,579,699 | 2,831,400 | 3,267,000 |
| Residential Homesite | 3.00 | 0.00 | 0.00 | 0.00 | 1.00 | 1.00 | 0.00 |
| Net Vine Acres | 105.77 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Additional Plantable | 153.68 | 35.00 | 50.00 | 125.00 | 30.00 | 30.00 | 40.00 |
| Percent Usable | 69.99% | 58.33% | 89.29% | 34.25% | 85.48% | 47.69% | 53.33% |
| Unplantable | 112.55 | 25.00 | 6.00 | 240.00 | 5.26 | 34.00 | 35.00 |
| **Listing/Sale Price** | **XXXX** | **$3,000,000** | **$2,850,000** | **$8,000,000** | **$2,959,010** | **$3,000,000** | **$2,650,000** |
| Condition of Sale Adjustment | XXXX | $0 | $0 | $0 | $19,990 | $0 | $0 |
| Residential Improvement Value | XXXX | $0 | $0 | $0 | $0 | $950,000 | $0 |
| Main Residence Value | XXXX | $0 | $0 | $0 | $0 | $700,000 | $0 |
| Main Residence Size | XXXX | 0 | 0 | 0 | 0 | 3,100 | 0 |
| Main Residence Value/SF | XXXX | $0.00 | $0.00 | $0.00 | $0.00 | $225.81 | $0.00 |
| Secondary Residence Value | XXXX | $0 | $0 | $0 | $0 | $250,000 | $0 |
| Secondary Residence Size | XXXX | 0 | 0 | 0 | 0 | 950 | 0 |
| Secondary Residence Value/ SF | XXXX | $0.00 | $0.00 | $0.00 | $0.00 | $263.16 | $0.00 |
| Equipment/Personal Property | XXXX | $0 | $0 | $0 | $0 | $0 | $0 |
| Permanent Plantings | XXXX | $0 | $0 | $0 | $0 | $0 | $0 |
| Other Buildings | XXXX | $0 | $0 | $0 | $400,000 | $0 | $0 |
| Adjusted Site Value | XXXX | $3,000,000 | $2,850,000 | $8,000,000 | $2,579,000 | $2,050,000 | $2,650,000 |
| Site Value per Usable Acre | XXXX | $85,714 | $57,000 | $64,000 | $83,194 | $66,129 | $66,250 |
| Site Value per Gross Acre | XXXX | $50,000 | $50,893 | $21,918 | $71,116 | $31,538 | $35,333 |
| Overall Value per Gross Acre | XXXX | $50,000 | $50,893 | $21,918 | $82,146 | $46,154 | $35,333 |
| Overall Value per SF | XXXX | $1.15 | $1.17 | $0.50 | $1.89 | $1.06 | $0.81 |
| **Listing-to-Sale Ratio** | **XXXX** | **$75,179** | **$49,994** | **$56,134** | **XXXX** | **XXXX** | **XXXX** |
| **Market Conditions** | **XXXX** | **XXXX** | **XXXX** | **XXXX** | **$82,777** | **$66,242** | **$66,659** |
| Size | XXXX | SS | SS | NE | SS | SS | SS |
| Location/Access | XXXX | NE | NE | NE | SS | SS | SS |
| Site Profile | XXXX | NE | I | I | NE | CI | CO |
| **Overall Adjustment** | **XXXX** | **SS** | **NE** | **I** | **CS** | **NE** | **NE** |
| **Adjusted Price / Usable Acre** | **XXXX** | **$63,339** | **$52,019** | **$69,836** | **$60,479** | **$68,021** | **$66,903** |

CONFIDENTIAL

WALL - 000298

# EXHIBIT 8

# Appraisal Report

## of

### ATA Ranches, Inc.
### 4475 Peachy Canyon Road & Kiler Canyon Road
### Paso Robles, California
### San Luis Obispo County

**Appraiser:**
JoAnn C. Wall, ARA
CEO/Principal Appraiser

**Firm:**
Above & Beyond Real Estate Services, Inc.
P.O. Box 1225
Templeton, CA 93465

**Client:**
Mr. Dan Carter
SVP-Administration & General Counsel
Scientific Drilling International, Inc.
5805 Adelaida Road
Paso Robles, CA 93446

Effective Date: July 22, 2021

4/1/202
Alicia Cronbach
**288**
J. Erickson, CSR 13144

## Appraisal Process

The three recognized appraisal procedures used to determine a supported opinion of market value are the cost, sales comparison, and income approaches. In each appraisal, any, or all of these approaches to value may or may not be appropriate depending upon the purpose of the appraisal, property use type, and the availability of the information necessary to properly present each.

This appraisal represents methodologies which are generally accepted by other rural land appraisers and industry professionals who specialize in the valuation of agricultural real estate. Each potential appraisal procedure is discussed below in further detail, as well as reasoning for why or why not each were selected for use in this assignment. All three approaches to value are completed for all ranches, except the Excess Parcel, which is unimproved.

The **cost approach** is employed, reflecting cost new, less accrued utility losses, specifically from physical deterioration and functional obsolescence. The depreciated value of the vineyards is then added to the estimate of land value determined by market comparison, as if vacant, to yield an indication of value. All factors concerning costs and depreciation losses must be weighed carefully. We must turn to the market for justification and support of these charges to loss in utility.

The **sales comparison approach** is considered and is based on the principle of substitution. That is, no rational and sophisticated buyer will pay more for a property, which is replaceable in the market, than an acceptable substitution would cost. In essence, it is a test of the subject property in the market by comparison to those similar properties that have sold or borne the test of the market.

The **income approach** is presented since the subject vineyard can be reasonably analyzed through the use of a discounted cash flow (DCF) analysis. The DCF process requires (1) selecting a holding period, (2) identifying all future cash flow patterns and reversion, (3) analyzing market evidence and industry trends to determine an appropriate discount rate, and (4) converting the future benefits into a determination of retrospective market value. This technique is well-suited to the valuation of permanent plantings and is especially suited to valuing the subject property since the primary focus of any potential buyer would be the net operating income in the future and the varied property interests of the subject. The steps involved in the DCF are summarized in the Income Approach section of this report. This is the most logical method of valuing the subject property and the most likely process by which a hypothetical buyer would take when analyzing the property for purchase.

Adjustments are complex and, in this valuation, qualitative indicators are developed to analyze the subject. These approaches produce a range of value estimates, which can be reconciled into a final opinion of market value.



CONFIDENTIAL

# EXHIBIT 9

**From:** Jude Radeski <jude@adelaida.com>
**Sent:** Fri, 12 Nov 2021 18:16:50 +0000
**To:** JoAnn Wall <JoAnn@wallagappraisal.com>, Jane Wood <jane@wallagappraisal.com>
**Subject:** RE: Invoice for your work

I completely agree and we are good to go.  Keep me posted on your progress.  Thanks


*Jude Radeski*

General Manager

A D E L A I D A

> **Exhibit
> 341**
> JoAnn Wall

e. Jude@adelaida.com | o. 805.239.8980 ext. 12 |

5805 ADELAIDA ROAD, PASO ROBLES, CA 93446 | WWW.ADELAIDA.COM

---

**From:** JoAnn Wall <JoAnn@wallagappraisal.com>
**Sent:** Friday, November 12, 2021 9:27 AM
**To:** Jude Radeski <jude@adelaida.com>; Jane Wood <jane@wallagappraisal.com>
**Subject:** RE: Invoice for your work


Fair enough.  Let me know what Chad's thoughts on regarding my assumption.  I think we might be nit picking it unnecessarily, but I'm willing to revisit it if the difference is considerable.  That said, on PAR, I understand your desire to get that right, which is exactly why I suggested (and thank you for agreeing) having Kelly prepare the maps.  The most likely actions taken by any prospective buyer on that parcel is exactly what we did.  They'd have hired Kelly to put a map together.  ==The only difference is that they might have asked for a limit in slope, etc.  and I would anticipate that this is where a negotiation is most likely to occur.  Some vineyard developers have no qualms about planting on 30%+ slopes…others won't touch it.==  I think we've done as good a job as possible with Kelly's help in giving you a value based on preliminary numbers…the rest will be up to the family to negotiate with savvy (or not) buyers.


JoAnn Wall, ARA

Above and Beyond Real Estate Services, Inc.

CEO/Accredited Rural Appraiser

California Certified General Appraiser, #AG028036

P.O. Box 1225, Templeton, CA 93465

JoAnn@wallagappraisal.com

805-591-0577 office/cell

CONFIDENTIALITY NOTICE:

This e-mail transmission may contain confidential information. This information is solely for the use of the individual(s) or entity to whom or which it was intended. If not an intended recipient, any review, copying, printing, disclosure, distribution or any other use is strictly prohibited.  If you have received this email in error, please immediately notify the sender by reply e-mail. Please delete this e-mail from your files if you are not the intended recipient. Thank you.

---

**From:** Jude Radeski <jude@adelaida.com>
**Sent:** Friday, November 12, 2021 9:21 AM
**To:** JoAnn Wall <JoAnn@wallagappraisal.com>; Jane Wood <jane@wallagappraisal.com>
**Subject:** RE: Invoice for your work

Speaking with Chad now.  Let's go with your assumptions for the time being.  He pointed out several areas that we have eyed for planting or have previously had at least walnuts are shown as red, etc…  To be perfectly honest, the only one this really matters on to me is Par.  Confidentially, that is the one we will likely put up for sale in the near future so I want to make sure the assumptions for plantable acres are in line with what people do out here.

Thanks

*Jude Radeski*

General Manager

# ADELAIDA

e. Jude@adelaida.com | o. 805.239.8980 ext. 12 |

CONFIDENTIAL                                                        WALL - 002140

5805 ADELAIDA ROAD, PASO ROBLES, CA 93446 · WWW.ADELAIDA.COM

**From:** JoAnn Wall <JoAnn@wallagappraisal.com>
**Sent:** Thursday, November 11, 2021 3:18 PM
**To:** Jude Radeski <jude@adelaida.com>; Jane Wood <jane@wallagappraisal.com>
**Subject:** RE: Invoice for your work

Yes, I'm around tomorrow.  I noticed the same thing that he did and how I rectified it in my mind is that there are probably areas that are within the "plantable" areas that are not practical to plant (i.e. short rows, too cold, wrong orientation, etc.) so I felt like there was most likely a tradeoff.  I will also tell you that regardless of slope, anything that was in vines (and there are some areas that are in the red, but also in vines) were included as "plantable" regardless.  Again…happy to talk more and take another look at it, but rest assured I DID consider this when I put the valuation's together.

JoAnn Wall, ARA

Above and Beyond Real Estate Services, Inc.

CEO/Accredited Rural Appraiser

California Certified General Appraiser, #AG028036

P.O. Box 1225, Templeton, CA 93465

JoAnn@wallagappraisal.com

805-591-0577 office/cell

CONFIDENTIALITY NOTICE:

This e-mail transmission may contain confidential information. This information is solely for the use of the individual(s) or entity to whom or which it was intended. If not an intended recipient, any review, copying, printing, disclosure, distribution or any other use is strictly prohibited.  If you have received this email in error, please immediately notify the sender by reply e-mail. Please delete this e-mail from your files if you are not the intended recipient. Thank you.

**From:** Jude Radeski <jude@adelaida.com>
**Sent:** Thursday, November 11, 2021 1:53 PM
**To:** JoAnn Wall <JoAnn@wallagappraisal.com>; Jane Wood <jane@wallagappraisal.com>

**Subject:** FW: Invoice for your work

Hi guys.  I'm off today but saw this note form Chad.  I spoke with him briefly and he says some of the areas shown as red (unplantable) are in fact planted (At least with walnuts), which makes him question things a bit.   Any chance you would have a few moments Friday AM to discuss with us when I am back in the office so we can see what he has to say?


Thanks


*Jude Radeski*

General Manager


# ADELAIDA


e. Jude@adelaida.com | o. 805.239.8980 ext. 12 |

5805 ADELAIDA ROAD, PASO ROBLES, CA 93446 |  WWW.ADELAIDA.COM


---

**From:** Chad Taber <chad@adelaida.com>
**Sent:** Thursday, November 11, 2021 10:04 AM
**To:** Jude Radeski <jude@adelaida.com>
**Subject:** RE: Invoice for your work


I have some issues with this, not sure how important they are.


*Chad Taber*

Ranch Manager


# ADELAIDA

---

**From:** Jude Radeski
**Sent:** Wednesday, November 10, 2021 12:54 PM
**To:** Chad Taber <chad@adelaida.com>
**Subject:** FW: Invoice for your work

For your viewing pleasure

*Jude Radeski*

General Manager

ADELAIDA

e. Jude@adelaida.com | o. 805.239.8980 ext. 12 |

5805 ADELAIDA ROAD, PASO ROBLES, CA 93446 | WWW.ADELAIDA.COM

---

**From:** Kelly Bobbitt <kelly@mikebobbitt.com>
**Sent:** Wednesday, November 10, 2021 12:48 PM
**To:** Jude Radeski <jude@adelaida.com>
**Subject:** RE: Invoice for your work

Hi Jude,

The maps are posted to
https://www.dropbox.com/sh/x7ljdtmzzkxqt54/AABQiQyA3Ixw2i41THcwd5OCa?dl=0

Please let me know if you need anything else.

Best,

Kelly

*********************************************

**Kelly Bobbitt**

Mike Bobbitt & Associates

3001 San Fernando

Atascadero Ca 93422

kelly@mikebobbitt.com

www.mikebobbitt.com

w:805-466-2920

c:831-238-1183

********************************************

---

**From:** Jude Radeski <jude@adelaida.com>
**Sent:** Tuesday, November 9, 2021 2:09 PM
**To:** Kelly Bobbitt <kelly@mikebobbitt.com>
**Subject:** Invoice for your work

Kelly:

Can you send me copies of the maps you produced for JoAnn and an invoice for services so I can get you paid?  If at all possible, can you bill the Par Ranch and Hilltop separate from the HMR and Viking?

Thanks

*Jude Radeski*

General Manager

# ADELAIDA

e. Jude@adelaida.com | o. 805.239.8980 ext. 12 |

5805 ADELAIDA ROAD, PASO ROBLES, CA 93446 | WWW.ADELAIDA.COM

CONFIDENTIAL

CONFIDENTIAL

# EXHIBIT 10

# Appraisal Report

## of

### ATA Ranches, Inc.
### 4475 Peachy Canyon Road & Kiler Canyon Road
### Paso Robles, California
### San Luis Obispo County

**Appraiser:**
JoAnn C. Wall, ARA
CEO/Principal Appraiser

**Firm:**
Above & Beyond Real Estate Services, Inc.
P.O. Box 1225
Templeton, CA 93465

**Client:**
Mr. Dan Carter
SVP-Administration & General Counsel
Scientific Drilling International, Inc.
5805 Adelaida Road
Paso Robles, CA 93446

Effective Date: July 22, 2021

4/1/202
Alicia Cronbach
**288**
J. Erickson, CSR 13144

demands and demographics, but also the result of a series of above average harvests preceding 2019. Market participants, sensing a market correction was in order, pulled back and were more hesitant to buy properties, especially if they lacked grape contracts. Softening grape prices followed. Uncontracted grapes became much harder to sell than in previous years and, in some cases, sold at a significant discount if they are sold at all. Dan Berger, writer of the wine newsletter "Vintage Experiences" and Napa Valley Register columnist, gave the impression that prices for most California wines have been inflated for decades.[1] This situation became evident once the industry-wide over supply of wine occurred in 2018. By then, the surplus became evident in the bulk wine market as well with prices trending downward. Wine broker, Joe Ciatti, noticed in some instances Coastal wines were cheaper than the Central Valley which are usually the cheapest.[2] Consequently, by 2019, the market uncertainty translated into fewer vineyard transactions and those that did occur were at lower prices. This trend appeared to be destined to continue into 2021 and beyond; however, with COVID-related changes to wine purchases and a significant portion of the 2020 crop damaged by smoke-taint, the market now appears to be on the cusp of changing yet again.

While the near future condition of the California wine market is uncertain, the longer-term perspective remains positive. Barriers to entry in the Central Coast vineyard market are only increasing making it harder to establish new developments. Many in the investment community believe, regardless of the drought, vineyards and California-produced wines will continue to remain in demand.

**Subject Marketability:** The subject properties are located within the highly desirable Adelaida and Willow Creek sub-AVAs within the Paso Robles AVA. All of the ranches were also recently designated as Certified Organic by the California Certified Organic Farms (CCOF) organization. They have been farmed organically since 2016.

**HMR** is located within the Adelaida District sub-AVA and is comprised of walnut trees and several named vineyard blocks including HMR, Don Juliette, Anna's West, Anna's East and Michael's. Collectively these vineyards make up the HMR property and will be referred as "HMR Ranch" within this report. Although the majority of the property is planted to fully depreciated walnut trees, the property has high desirability for the underlying plantable land value and equal desirability for the vineyard acres, especially those blocks that have been redeveloped more recently. Hypothetical buyer(s) would likely see the value of the property in the underlying land (primarily the

---

[1]Berger, Dan. "Dan Berger, On Wine: The Imminent Glut: The State Industry Is Facing a Major Wine Surplus." *Napa Valley Register*, 26 Sept. 2019, https://napavalleyregister.com/wine/columnists/dan-berger/dan-berger-on-wine-the-imminent-glut-the-state-industry/article_73d8aa51-1738-54d2-8e53-a0ba28baf9d8.html

[2]Berger. "Dan Berger, On Wine: The Imminent Glut: The State Industry Is Facing a Major Wine Surplus." *Napa Valley Register*, 26 Sept. 2019.



walnut acres and older vines) and potential to plant or expand a successful vineyard on the Westside of Paso Robles.

Tír Na nÓg is located within the Willow Creek AVA and is improved with a recently planted 18.07 net acre vineyard and additional plantable land of up to 37.17 acres plus 23.00 acres of steeper land that could be developed but is less desirable. Hypothetical buyer(s) would view this parcel as a highly desirable, young vineyard located in the most premium Sub AVAs within the Paso Robles wine region.

Viking Ranch is located within the Adelaida District sub-AVA and is planted to 25.70 net acres of planted vineyard and up to 97.67 acres of additional plantable land and another 61.43 acres of steeper land that could also be planted, but is less desirable. Similar to the Tír Na nÓg, hypothetical buyer(s) would view this parcel as highly desirable given its location within the most premium sub AVAs of the Paso Robles wine region, but the vineyard is mixed age and only a few blocks are young.

The "Excess" parcel identified as APN #026-342-002 is also located within the Willow Creek sub-AVA and is unimproved. A potential buyer would consider this to be raw land with vineyard potential but would also require infrastructure and site improvements including a well, underground mainlines and a road system before it could be developed. There is an estimated 13.1 acres of prime plantable land (0-15% slopes) and an additional 26.7 acres of sub-prime land (15-30% slopes) for a total of 39.8 acres of plantable land. There is an additional 18.2 acres of land that has the potential to be planted, but due to the steepness of the terrain, it would be less desirable in the minds of a hypothetical buyer.

**Exposure Time**

Exposure time is the estimated length of time that the property interest being appraised would have been offered on the market prior to the hypothetical consummation of a sale at market value on the effective date of the appraisal. Exposure time is typically a retrospective opinion based on an analysis of past events assuming a competitive and open market. Based on interviews with local real estate agents that specialize in this use type and supported by sales, normal exposure time for each of the subject ranches is estimated at 6 to 12 months. As a single transaction, it would take much longer to locate and secure a qualified buyer.



CONFIDENTIAL    WALL - 000228

# HMR Ranch – Property Description

## Site Profile/Land Use

The HMR Ranch is irregular in shape as shown on the accompanying maps.  According to the Assessor's plat map, there are 375.00± gross acres.  Of those gross acres, 105.77± net vine acres are currently planted to fifteen different wine grapes, including Rhone, Bordeaux, and Burgundy varietals of mixed age.  Of these planted acres, 71.05 net acres are comprised of modern plantings and contribute to the value of the underlying land.  The remaining 34.72 net acres were planted in 1964 and are still farmed, but given their age, these vines are fully depreciated and offer no additional value to the underlying land.  There is an additional 77.70± acres planted to walnuts.  These orchard acres are also considered plantable land as their highest and best use is to tear out the orchard and plant to vineyard.  The other usable land is located within the farm roads, residence, shop, and support acres.  The balance of the subject is located in steep, tree covered terrain that would be very difficult to develop.  Below is a complete breakdown of the various land components:

### Land Use Acreage Components

| Land Use | Size (Acres) |
|---|---|
| **Net Vineyard Acres** | 105.77 |
| **Plantable Acres (includes planted walnuts)** | |
| Prime Plantable Acres (0 – 15% slopes) | 22.99 |
| Sub-Prime Plantable Acres (16 – 30% slopes) | 58.14 |
| Non-Prime Acres (31 - 40% slopes) | 51.40 |
| Residence & Shop Area | 3.00 |
| Farm Roads/Staging Areas/Support | 21.15 |
| **Total Usable Acres** | **262.45** |
| Unplantable/Unusable Acres | 112.55 |
| **Total Gross Property Size** | **375.00** |

## Location/Access

The subject property is located north of Highway 46W, off Peachy Canyon Road from a series of narrow, mostly paved, county-maintained roads.  The subject is accessed directly off Peachy Canyon Road and can also be accessed through an affirmative easement through the Daou Family Estates from Adelaida Road.  Site access consists of dirt-based farm roads, which is typical for the area.



CONFIDENTIAL

WALL - 000248

# Tír Na nÓg Property Description

### Site Profile/Land Use

The subject property is irregular in shape as shown on the accompanying maps. According to the Assessor's plat map, there are 160.00± gross acres. Of those gross acres, 18.07± net vine acres were recently planted to Cabernet Sauvignon. Based on mapping completed by Kelly Bobbitt, there is approximately 37.17± additional acres of potentially plantable land. The other usable land is located within the farm roads and support acres. The balance of the subject is located in steep, tree covered terrain that would be very difficult to develop. Below is a complete breakdown of the various land components:

### Land Use Acreage Components

| Land Use | Acres |
|---|---|
| **Net Vineyard Acres** | 18.07 |
| **Plantable Acres** | |
| Prime Plantable Acres (0 – 15% slopes) | 10.23 |
| Sub-Prime Plantable Acres (16 – 30% slopes) | 26.94 |
| Non-Prime Acres (31 – 40% slopes) | 23.00 |
| Farm Roads/Staging Areas/Support | 8.01 |
| **Total Usable Acres** | **86.25** |
| Unplantable/Unusable Acres | 73.75 |
| **Total Gross Property Size** | **160.00** |

### Location/Access

The subject property is located northeast of Highway 46W, off Kiler Canyon Road from a series of narrow, mostly unpaved, county-maintained roads. Site access consists of dirt-based farm roads, which is typical for the area.



### Vineyard Improvements/Production

The subject vineyard was originally developed in 2016 and 2018 entirely to Cabernet Sauvignon. All blocks are planted on 420A rootstock out of 47 clones. A summary of the vineyard blocks follows:



ABOVE & BEYOND
REAL ESTATE SERVICES, INC.

CONFIDENTIAL

WALL - 000262

# Viking Ranch Property Description

## Site Profile/Land Use

The Viking Ranch is irregular in shape as shown on the accompanying maps. According to the Assessor's plat map, there are 298.50± gross acres. Of those gross acres, 25.70 net vine acres are currently planted to three different wine grape varietals. There is an additional 98.12 acres± planted to walnuts. These orchard acres are considered plantable land as their highest and best use is to tear out the orchard and plant to vineyard. The other usable land is located within the farm roads and support acres. The balance of the subject is located in steep, tree covered terrain that would be very difficult to develop. Below is a complete breakdown of the various land components:

### Land Use Acreage Components

| Land Use | Size (Acres) |
|---|---|
| **Net Vineyard Acres** | 25.70 |
| **Plantable Acres (includes planted walnuts)** | |
| Prime Plantable Acres (0 – 15% slopes) | 13.04 |
| Sub-Prime Plantable Acres (16 – 30% slopes) | 84.63 |
| Non-Prime Acres (31 – 40% slopes) | 61.43 |
| Farm Roads/Staging Areas/Support | 5.29 |
| **Total Usable Acres** | **190.09** |
| Unplantable/Unusable Acres | 108.41 |
| **Total Gross Property Size** | **298.50** |

## Location/Access

The subject property is located northeast of Highway 46W, off Kiler Canyon Road from a series of narrow, mostly unpaved, county-maintained roads. Along with Kiler Canyon Road access, the property has been accessed from Peachy Canyon Road from an easement known as "Thomas Road". See information regarding subject easements in the Extraordinary Assumptions and Limiting Conditions section. Site access consists of dirt-based farm roads, which is typical for the area.

## Vineyard Improvements/Production

The Viking Ranch was originally purchased in 1974 by the Steenwyk Family and conveyed it to ATA in 1985. The current subject vineyard was originally developed in 1991 primarily to Syrah, of which only one block is still in production. Between 2000 and 2007, 13.89 acres were redeveloped to Cabernet Sauvignon and Cabernet Franc. In 2021, 9.65 acres were redeveloped to Cabernet Franc, Syrah, and Cabernet Sauvignon. All blocks are planted on 1103P or 110R rootstock with



CONFIDENTIAL

WALL - 000273

## Excess Parcel Property Description

### Site Profile/Land Use

The Excess Parcel is square in shape as shown on the accompanying maps. According to the Assessor's plat map, there are 160.00± gross acres. Of those gross acres, according to maps produced by Kelly Bobbitt, approximately 58.00 acres are considered to be plantable. An additional 18.20 acres are also plantable, but at slopes between 31 – 40%, making them less desirable for development. The balance of the subject is located in steep, tree covered terrain that would be very difficult to develop and considered to be unplantable. Below is a complete breakdown of the various land components:

### Land Use Acreage Components

| Land Use | Size (Acres) |
|---|---|
| Prime Plantable Acres (0 - 15% slopes) | 13.10 |
| Sub-Prime Plantable Acres (16 – 30% slopes) | 26.70 |
| Non-Prime Acres (31 – 40% slopes) | 18.20 |
| **Total Usable Acres** | **58.00** |
| Unplantable/Unusable Acres | 102.00 |
| **Total Gross Property Size** | **160.00** |

### Location/Access

The subject property is located northeast of Highway 46W, off Kiler Canyon Road from a series of narrow, mostly unpaved, county-maintained roads. Site access consists of dirt-based farm roads, which is typical for the area.

### Utilities

The subject is unimproved. Telephone and electricity are available at Kiler Canyon Road. Private vendors in the area provide liquid propane gas.



CONFIDENTIAL

WALL - 000285

# EXHIBIT 11

# Appraisal Report

## of

### ATA Ranches, Inc.
### 4475 Peachy Canyon Road & Kiler Canyon Road
### Paso Robles, California
### San Luis Obispo County

**Appraiser:**
JoAnn C. Wall, ARA
CEO/Principal Appraiser

**Firm:**
Above & Beyond Real Estate Services, Inc.
P.O. Box 1225
Templeton, CA 93465

**Client:**
Mr. Dan Carter
SVP-Administration & General Counsel
Scientific Drilling International, Inc.
5805 Adelaida Road
Paso Robles, CA 93446

Effective Date: July 22, 2021

4/1/202
Alicia Cronbach
**288**
J. Erickson, CSR 13144

CONFIDENTIAL

**State Legislation:**  On September 16, 2014, California governor Jerry Brown signed into law three companion bills, SB 1168, AB 1739, and SB 1319 providing for the Sustainable Groundwater Management Act or SGMA, which went into effect on January 1, 2015.  SGMA creates a comprehensive framework requiring further regulation of California groundwater basins.  As a result, local and regional agencies have formed groundwater sustainability agencies, GSAs, for the specific purpose of managing, monitoring, and creating sustainable action plans protecting their groundwater basins.  Stakeholders throughout the state are preparing for increased regulation, oversight, and litigation as a result, all of which will be created and enforced by their GSAs.  Rules may include water extraction limitations, well spacing requirements, and well metering based on the severity levels "low, medium or high" assigned to each basin.

According to the basin boundary as defined by the State, the subject property does **not** overlay the Paso Robles Groundwater Sub-Basin and it is <u>outside</u> the determined local boundaries.  A map follows for review.  However, the State has also indicated that, in time, all basins within the State will be evaluated and will be required to comply with SGMA as well.  The appraiser makes the extraordinary assumption as of the effective date of this report the subject property is not encumbered by the effects of the new groundwater legislation, even though the full implications of the law remain unknown.  For additional water information, please see the Market Area Analysis section of this appraisal report.

**Water Conclusion and Assumption:**  While the amount of water currently available to the subject property is less than larger, commercial vineyards would typically use, this situation not atypical of small, higher end vineyards located in the westside of Paso Robles/Templeton gap areas.  Vineyards in these areas typically focus resources on grape quality versus increased yields and grape prices received are commensurately higher as a result.  Even so, the valuation largely depends on the subject's potentially plantable acres having adequate water to develop them.  Currently, there is not enough developed water to irrigate additional acres.  Therefore, the valuation is based on the assumption that a hypothetical buyer will develop additional water sources.

The appraiser is unable to predict future yields of the subject wells nor the timing and/or severity of drought conditions.  Every attempt is made to value the subject reflecting the current water supply; however, it is assumed that the quantity and quality of water presently supplied to the property is adequate to support the highest and best use of the subject now and into the foreseeable future.  Any significant changes to this water supply may have an impact on the market value of the subject property.  For additional water information, please see the Market Area Analysis section of this appraisal report.



CONFIDENTIAL

WALL - 000223

# EXHIBIT 12

**Jane Karney**

| | |
|---|---|
| **From:** | Jude Radeski <jude@adelaida.com> |
| **Sent:** | Monday, July 12, 2021 5:02 PM |
| **To:** | Jane Wood; JoAnn Wall |
| **Subject:** | RE: Checking in |

<div style="border:2px solid black; background:yellow; text-align:center">

**Exhibit
328**

JoAnn Wall

</div>

Thanks Jane.  I'll start working on the list of diligence items shortly, but figured I would attend to the agreements themselves first.

Dan Carter is at dan.carter@scientificdrilling.com .  Physical address is 16701 Greenspoint Park Drive, Suite 200 Houston, TX 77060.  Phone is 713-805-9292.

On the first Agreement with KMBG, LLC (Please change name from Scientific Drilling as KMBG LLC is independent from them) the company mailing address (IIA) should be 5791 Adelaida Road, Paso Robles CA 93446 (my address is the 5805 address).  The property addresses (IIC) are:

5791, 5803, 5805, 4255 4265 Adelaida Road, Paso Robles, CA 93446

While I don't have the exact property size for KMBG, I do know that planted acreage (including both grapes and nuts) is approximately 269 acres.

The intended report user (IIE) will be KMBG, LLC


For the second agreement, the client name is ATA Ranches, Inc. which is a wholly owned subsidiary of Applied Technologies Associates, Inc.  Mailing address for that company is 5791 Adelaida Road as well.  I show a property address of 4470 rather than 4475 Peachy Canyon Road plus Kiler Canyon Road.

Planted acres are approximately 334 between both grapes and nuts.

Intended report user should be ATA Ranches, Inc.


I'll be your site contact for all 4 properties, although I will enlist our Ranch Manager (Chad Taber) to assist in property tours as some of the roads are a bit beyond my driving skills!  You let me know when you would like to schedule initial visits and I'll take care of the rest.

If my requested changes above are confusing, feel free to give me a call tomorrow morning to walk through.

Thanks

CONFIDENTIAL

WALL - 000587

*Jude Radeski*
General Manager

# A D E L A I D A

e. Jude@adelaida.com | o. 805.239.8980 ᴇxᴛ. 12 | ꜰ. 805.239.4671
5805 ADELAIDA ROAD, PASO ROBLES, CA 93446 | WWW.ADELAIDA.COM

---

**From:** Jane Wood <jane@wallagappraisal.com>
**Sent:** Monday, July 12, 2021 2:25 PM
**To:** Jude Radeski <jude@adelaida.com>; JoAnn Wall <JoAnn@wallagappraisal.com>
**Subject:** RE: Checking in

Hi there,

I have attached the split service agreements with your requests. Please let me know if there is anything else that you will need changed before signing them and sending our way!

As we will be transmitting the reports to Dan Carter, I will need his email, phone number, and mailing address.

Here is an outline of items that we will need in order to get rolling on these reports:

- Updated well tests
  - Water quality and GPM
- Block maps for all properties
  - Variety, rootstock, clone, acreage, density/spacing, year planted, year grafted
- List of all inventory owned within the winery
  - Barrels, tanks, bottling systems, etc.
- Cost information
  - If you have any budgeting information from when you built any of buildings on the property, that helps us give a more accurate value to those buildings
  - If you have receipts of any sort from purchasing the equipment listed above that would be great
- Purchase Contracts
  - Gapes, almonds, or walnuts if available
  - If not, please provide previous contracts or purchase agreements
- Production history
  - Grapes, almonds, and walnuts

2

CONFIDENTIAL

WALL - 000588

- o    As far as they go back, we would love to have them!
- Harvest and cultural costs
  - o    Grapes, almonds, and walnuts
- Yearly budget for 2020 and 2019 across all properties
- Taxes from 2020 or 2021
  - o    The county currently has their site down due to processing payments from the previous fiscal year so we do not have access to these
- Certificates of compliance or subdivision map if available


That will give me a good start to get rolling on this report and update any changes from the information I pulled from the previous appraisal provided.

Who will be our property site visit contact for all four properties? We will need to start thinking about scheduling a site visit. It would be best if we could gain access into each building structure and be able to drive around and through each property via truck or ranger if possible. Thank you!

Jane Wood
Appraisal Assistant/Trainee
Above and Beyond Real Estate Services, Inc.
P.O. Box 1225, Templeton, CA 93465
Jane@wallagappraisal.com
805-369-2790 Office
925-286-8981 Cell

CONFIDENTIALITY NOTICE:
This e-mail transmission may contain confidential information. This information is solely for the use of the individual(s) or entity to whom or which it was intended. If not an intended recipient, any review, copying, printing, disclosure, distribution or any other use is strictly prohibited. If you have received this email in error, please immediately notify the sender by reply e-mail. Please delete this e-mail from your files if you are not the intended recipient. Thank you.

---

**From:** Jude Radeski <jude@adelaida.com>
**Sent:** Monday, July 12, 2021 12:57 PM
**To:** JoAnn Wall <JoAnn@wallagappraisal.com>
**Cc:** Jane Wood <jane@wallagappraisal.com>
**Subject:** RE: Checking in

CONFIDENTIAL

WALL - 000589

Thank you.  Safe travels.

*Jude Radeski*
General Manager

# ADELAIDA

e. Jude@adelaida.com | o. 805.239.8980 EXT. 12 | F. 805.239.4671
5805 ADELAIDA ROAD, PASO ROBLES, CA 93446 | WWW.ADELAIDA.COM

---

**From:** JoAnn Wall <JoAnn@wallagappraisal.com>
**Sent:** Monday, July 12, 2021 12:56 PM
**To:** Jude Radeski <jude@adelaida.com>
**Cc:** Jane Wood <jane@wallagappraisal.com>
**Subject:** RE: Checking in

Hi Jude-
I'm heading out of town and rushing around with some errands, so I'm going to cancel our call for this afternoon; however, we are making these changes to the service agreement, no problem, and my trainee Jane will be sending the revised one to you.  In addition, she will be sending you a list of requested items to help us get started on the reports.  I will be out of town the rest of this week and most of next; however, I will check in with email and get back to you as soon as I can.  Jane will be available and I've cc'd her on this email in case you have more pressing questions/concerns.  Have a great week!

JoAnn Wall, ARA
Above and Beyond Real Estate Services, Inc.
CEO/Accredited Rural Appraiser
California Certified General Appraiser, #AG028036
P.O. Box 1225, Templeton, CA 93465
JoAnn@wallagappraisal.com
805-591-0577 office/cell

4

CONFIDENTIAL

WALL - 000590

CONFIDENTIALITY NOTICE:

This e-mail transmission may contain confidential information. This information is solely for the use of the individual(s) or entity to whom or which it was intended. If not an intended recipient, any review, copying, printing, disclosure, distribution or any other use is strictly prohibited. If you have received this email in error, please immediately notify the sender by reply e-mail. Please delete this e-mail from your files if you are not the intended recipient. Thank you.

**From:** Jude Radeski <jude@adelaida.com>
**Sent:** Monday, July 12, 2021 12:40 PM
**To:** JoAnn Wall <JoAnn@wallagappraisal.com>
**Subject:** RE: Checking in

Hi JoAnn. I hope you had a relaxing weekend in the heat! Let me know if you have a few minutes this afternoon to chat. I reviewed the draft agreement with Dan Carter, one of our board members who is also our attorney. He had a few comments as follows, none of which I think will be too objectionable:

- Section II A. Similar to the 2018 reports, we likely need to have two reports, one for KMBG (owner of Hilltop Ranch and Parr Ranch) and one for ATA Ranches, Inc. (owner of HMR and Viking Ranches). The ownership structures of the two owners are different.
- Section II C. I can help you split the address into the appropriate report/agreement.
- Sections II E&F. Dan pointed out that certain family members only hold interest in one or the other entity, so he preferred the intended use say "Estate Planning – Privileged Communication" and that he be the recipient of both reports to preserve privilege.
- Section IV-General Conditions item K. It says 4 properties, but I wanted to point out per the parcel map I sent, KMBG actually has 19 separate parcels on the two ranches, and ATAR has 5 parcels.
- If possible, can you split the fee between the two companies based on what you know from the previous report (This is for my accounting as each entity needs to pay the appropriate share based on whatever methodology you use). For now, I will simply plan to split the deposit in half and have each company pay $5K towards it unless you suggest otherwise.

Thanks so much.

*Jude Radeski*
General Manager

# ADELAIDA

e. Jude@adelaida.com | o. 805.239.8980 EXT. 12 | F. 805.239.4671
5805 ADELAIDA ROAD, PASO ROBLES, CA 93446 | WWW.ADELAIDA.COM

CONFIDENTIAL                                                                                           WALL - 000591

**From:** JoAnn Wall <JoAnn@wallagappraisal.com>
**Sent:** Tuesday, July 6, 2021 5:49 PM
**To:** Jude Radeski <jude@adelaida.com>
**Subject:** RE: Checking in

Hi Jude-

Please forgive me for the lack of timely response.  Here is the draft of the service agreement (please review and sign and send back if no corrections) and yes, your assumptions are correct.  The questions you have will be answered within the appraisal reports, though they are more "estimates".  There are other resources for getting a more exact number of plantable acres, etc.  Let's discuss this a bit more when you have time.  Any openings this week for a quick call?


JoAnn Wall, ARA
Above and Beyond Real Estate Services, Inc.
CEO/Accredited Rural Appraiser
California Certified General Appraiser, #AG028036
P.O. Box 1225, Templeton, CA 93465
JoAnn@wallagappraisal.com
805-591-0577 office/cell

CONFIDENTIALITY NOTICE:
This e-mail transmission may contain confidential information. This information is solely for the use of the individual(s) or entity to whom or which it was intended. If not an intended recipient, any review, copying, printing, disclosure, distribution or any other use is strictly prohibited.  If you have received this email in error, please immediately notify the sender by reply e-mail. Please delete this e-mail from your files if you are not the intended recipient. Thank you.

**From:** Jude Radeski <jude@adelaida.com>
**Sent:** Monday, July 5, 2021 4:00 PM
**To:** JoAnn Wall <JoAnn@wallagappraisal.com>
**Subject:** RE: Checking in

Hi JoAnn.  I thought I would check in and see where you were on the agreement.  I wanted to make sure that you will be able to offer some allocation of value by parcel in the finished reports.  We have had inquiries about several different parcels, and considering they are parcels we don't currently use or have plans for,

6

WALL - 000592

we are entertaining the idea of selling one or more.  The other question is around estimation of plantable acres in each area.  Am I correct that there will be some data provided in that regard as part of the process?

Thanks so much.  Looking forward to working with you.

*Jude Radeski*
General Manager

# ADELAIDA

e. Jude@adelaida.com | o. 805.239.8980 EXT. 12 | F. 805.239.4671
5805 ADELAIDA ROAD, PASO ROBLES, CA 93446 | WWW.ADELAIDA.COM

**From:** JoAnn Wall <JoAnn@wallagappraisal.com>
**Sent:** Tuesday, June 22, 2021 2:57 PM
**To:** Jude Radeski <jude@adelaida.com>
**Subject:** RE: Checking in

Hi Jude, you are on my "to do" list and I apologize for not replying sooner.  Yes, we are still okay for a mid to late September delivery, but please let me know right away if this is not a "go" since I've had additional inquires that I've said no to.  Here's my estimated cost:

4 Vineyards and Walnuts:  $24,000 ($6,000 each)
Winery (including winery equipment):  $15,000
Total:  $39,000
Discount of 10% offered for similarities of the vineyard properties and some efficiency due to previous appraisal.

Bid: $35,100

JoAnn Wall, ARA

CONFIDENTIAL                                                                                                    WALL - 000593

Above and Beyond Real Estate Services, Inc.
CEO/Accredited Rural Appraiser
California Certified General Appraiser, #AG028036
P.O. Box 1225, Templeton, CA 93465
JoAnn@wallagappraisal.com
805-591-0577 office/cell

CONFIDENTIALITY NOTICE:
This e-mail transmission may contain confidential information. This information is solely for the use of the individual(s) or entity to whom or which it was intended. If not an intended recipient, any review, copying, printing, disclosure, distribution or any other use is strictly prohibited.  If you have received this email in error, please immediately notify the sender by reply e-mail. Please delete this e-mail from your files if you are not the intended recipient. Thank you.

---

**From:** Jude Radeski <jude@adelaida.com>
**Sent:** Tuesday, June 22, 2021 12:18 PM
**To:** JoAnn Wall <JoAnn@wallagappraisal.com>
**Subject:** Checking in

Hi JoAnn.  Were you able to give that a glance for purposes of a rough proposal?  Is mid to late September still possible in your schedule?

Thanks

*Jude Radeski*
General Manager

# ADELAIDA

e. Jude@adelaida.com | o. 805.239.8980 EXT. 12 | F. 805.239.4671
5805 ADELAIDA ROAD, PASO ROBLES, CA 93446 | WWW.ADELAIDA.COM

CONFIDENTIAL

# EXHIBIT 13

1            UNITED STATES DISTRICT COURT

2          CENTRAL DISTRICT OF CALIFORNIA

3

4      MATTHEW D. VAN STEENWYK, )

5      et al.,                  )  Case No.

6          Plaintiff,          )  2:20-cv-02375-FLA-AFM

7      vs.                      )

8      KEDRIN E. VAN STEENWYK,  )

9      et al.,                  )

10          Defendants,          )

11      and                      )

12      APPLIED TECHNOLOGIES      )

13      ASSOCIATES, INC., and    )

14      ATA RANCHES, INC.,       )      VOLUME I

15          Nominal Defendants. )  (Pages 1 - 149)

16      _____)

17

18            DEPOSITION OF JOANN C. WALL

19              APRIL 25, 2022

20

21

22

23      REPORTED REMOTELY BY: JANET FRENCH, CSR NO. 946

24

25                    Notary Public

                                            Page 1

```
 1    general manager of Adelaida.  That was -- that was his    11:03:49
 2    title.  He was my primary point of contact for the       11:03:54
 3    assignment, so beyond that, I can't share with you.  I    11:03:57
 4    don't know.                                                11:03:57
 5        Q.   To try to recap your testimony, your only        11:04:12
 6    knowledge was that Jude Radeski was employed as            11:04:16
 7    general manager for Adelaida Cellars, Inc., an entity      11:04:21
 8    that was separate from and under different ownership       11:04:26
 9    than ATA Ranches, Inc.?                                    11:04:33
10        A.   Again, he was my primary source of contact.      11:04:38
11    I -- and he is the general manager -- just based on       11:04:41
12    his signatures on his email, he's general manager for     11:04:44
13    Adelaida.  Any additional roles that he plays, I'm not    11:04:49
14    privy to.                                                  11:04:50
15        Q.   But based on these email statements that         11:04:52
16    we've just talked about, it was your understanding as     11:04:56
17    of July 12, 2021, that Adelaida Cellars, Inc., was        11:05:01
18    under different ownership than ATA Ranches, Inc.?         11:05:05
19        A.   Yes.                                              11:05:07
20        Q.   Directing your attention to the second page,    11:05:12
21    page Wall 588 -- and I understand that this email,        11:05:24
22    July 12, 2021, is written by your assistant, Jane         11:05:30
23    Wood, but you were copied on it.                          11:05:32
24             Did you authorize Jane Wood to send this         11:05:36
25    email out to Jude Radeski?                                11:05:38
```

Page 36

```
 1        A.    Yeah.                                    11:05:38

 2        Q.    Okay.  And the requests made in the email  11:05:45

 3   for certain items of information and documents, those  11:05:50

 4   are items that you approved?                         11:05:53

 5        A.    Yes.                                      11:05:54

 6        Q.    Okay.  Now, the first bullet, "Updated well  11:06:03

 7   tests," were updated well tests ever performed after  11:06:08

 8   you were engaged?                                    11:06:10

 9        A.    No, not that I'm aware of.                11:06:16

10        Q.    So updated well test results were not     11:06:20

11   provided?                                            11:06:21

12        A.    No.                                       11:06:26

13        Q.    The fifth bullet, "Purchase Contracts,    11:06:33

14   grapes, almonds, or walnuts," were you ever provided  11:06:39

15   with grape purchase contracts for HMR and Viking     11:06:45

16   Ranches?                                             11:06:46

17        A.    There was one grape contract that I was   11:06:51

18   provided, yes.                                       11:06:51

19        Q.    Was that the grape contract with Ridge    11:06:55

20   Winery?                                              11:06:55

21        A.    Yes.                                      11:07:01

22        Q.    Were you ever provided with a grape purchase  11:07:04

23   agreement between Adelaida Cellars, Inc., and ATA?   11:07:12

24        A.    I don't believe so.  I'm going to say that I  11:07:15

25   received a voluminous amount of documents from Jude.  11:07:20
```

Page 37

# EXHIBIT 14

```
 1                UNITED STATES DISTRICT COURT

 2              CENTRAL DISTRICT OF CALIFORNIA

 3

 4      MATTHEW D. VAN STEENWYK, )

 5      et al.,                  )  Case No.

 6           Plaintiff,          )  2:20-cv-02375-FLA-AFM

 7      vs.                      )

 8      KEDRIN E. VAN STEENWYK,  )

 9      et al.,                  )

10           Defendants,         )

11      and                      )

12      APPLIED TECHNOLOGIES     )

13      ASSOCIATES, INC., and    )

14      ATA RANCHES, INC.,       )      VOLUME I

15           Nominal Defendants. )  (Pages 1 - 149)

16      _____)

17

18                 DEPOSITION OF JOANN C. WALL

19                     APRIL 25, 2022

20

21

22

23      REPORTED REMOTELY BY: JANET FRENCH, CSR NO. 946

24

25                     Notary Public

                                           Page 1
```

```
 1          A.   Yes.                                    11:24:38

 2          Q.   Okay.  Did you communicate that to      11:24:41

 3    Mr. Radeski?                                        11:24:42

 4          A.   Yes.                                    11:24:44

 5          Q.   Okay.  Starting with the top bullet No. 1,  11:24:56

 6    is the "not recently" adjacent to "Updated well tests"  11:25:01

 7    written in your hand or Jane's hand?                11:25:03

 8          A.   That's Jane's writing.                  11:25:05

 9          Q.   Were you present when Mr. Radeski -- Radeski  11:25:09

10    communicated to you that no recent well tests had been  11:25:13

11    performed?                                          11:25:13

12          A.   Yes.                                    11:25:13

13          Q.   The note underneath "Water quality GPM, well  11:25:21

14    data since 2018," does that refresh your recollection  11:25:25

15    as to the last well test data you were provided with?  11:25:30

16          A.   No.  I'm not exactly sure what that     11:25:34

17    reference is, other than what it says.  It could also  11:25:37

18    mean simple well readings by Chad, the vineyard     11:25:42

19    manager.  I don't know why it's referencing 2018.  I  11:25:47

20    don't recall the exact nature of that comment.      11:25:52

21          Q.   Now, the next bullet point, "Block maps for  11:25:57

22    all properties" and then adjacent to that "Mike     11:26:00

23    Bobbitt made maps in 2017."                         11:26:03

24          A.   Yes.                                    11:26:04

25          Q.   Mike Bobbitt is who?                    11:26:08
```

Page 48

# EXHIBIT 15

# Appraisal Report

## of

### ATA Ranches, Inc.
### 4475 Peachy Canyon Road & Kiler Canyon Road
### Paso Robles, California
### San Luis Obispo County

**Appraiser:**

JoAnn C. Wall, ARA

CEO/Principal Appraiser

**Firm:**

Above & Beyond Real Estate Services, Inc.

P.O. Box 1225

Templeton, CA 93465

**Client:**

Mr. Dan Carter

SVP-Administration & General Counsel

Scientific Drilling International, Inc.

5805 Adelaida Road

Paso Robles, CA 93446

Effective Date: July 22, 2021



4/1/202
Alicia Cronbach
**288**
J. Erickson, CSR 13144

vineyard is assumed to be under competent management and any disease and pest issues are addressed with a level of care expected by hypothetical buyers.

**Plantable Land Assumption:**  The subject properties were evaluated by Kelly Bobbitt of Mike Bobbitt & Associates, a geographic information services company offering GIS & GPS mapping services for the wine and vineyard industry.  The criteria discussed and agreed upon with the client include the following land categories:

| Category | Slope |
|---|---|
| Prime Plantable | 0 – 15% |
| Sub-Prime Plantable | 16 – 30% |
| Non-Prime Acres | 31 – 40% |
| Unplantable | 41%+ |

## Water Assumptions

**Current Supply:**  Current well tests were not provided.  A summary of each ranches wells was provided by the vineyard manager and is outlined below.  A summary of each of the subject properties and their well information is provided below:

### Well Summary

| Ranch | # | Well Name | Depth | Bail Test GPM | Pump Test GPM | Status | Notes |
|---|---|---|---|---|---|---|---|
| HMR | 1 | Snibley | 500' | 300 | 100 | Active | Lowered well 53' in October 2021, GPM not known but lowering well will reduce GPM. |
| HMR | 2 | Peachy Canyon | 460' | - | 50 | Active | GPM is estimate |
| HMR | 3 | Box Canyon | 430' | 50 | 20 | Active | GPM is estimate |
| HMR | 4 | Michael's | 240' | 80 | 25 | Active | GPM is estimate |
| HMR | - | Michael's | - | - | - | Abandoned | Dry since earthquake 2004 |
| HMR | - | - | - | - | - | Abandoned | Dry, not sure if properly Abandoned, next to Peachy Canyon well |
| HMR | - | - | - | - | - | Abandoned | Dry, not sure if properly abandoned drilled 1960s |
| | | | | | 195 | | |
| Viking | 5 | Lower Viking North | 115' | - | 30 | Active | GPM is estimate |
| Viking | 6 | Lower Viking South | 300' | 320 | 92 | Active | GPM test done in 5-30-2019 |
| Viking | 7 | Viking Orchard | 202' | 17 | 15 | Active | Seasonally dry |
| Viking | 8 | Tir Na nÓg | 290' | - | 20 | Active | Seasonally dry |
| Viking | - | - | - | - | - | Abandoned | Dry, next to TNN well south side of road, may be marked by a tire |
| | | | | | 157 | | |



CONFIDENTIAL

WALL - 000222

# EXHIBIT 16

1                    UNITED STATES DISTRICT COURT

2                  CENTRAL DISTRICT OF CALIFORNIA

3

4        MATTHEW D. VAN STEENWYK, )

5        et al.,                  )  Case No.

6             Plaintiff,          )  2:20-cv-02375-FLA-AFM

7        vs.                      )

8        KEDRIN E. VAN STEENWYK,   )

9        et al.,                  )

10            Defendants,         )

11       and                      )

12       APPLIED TECHNOLOGIES      )

13       ASSOCIATES, INC., and     )

14       ATA RANCHES, INC.,        )      VOLUME I

15            Nominal Defendants. )  (Pages 1 - 149)

16       _____)

17

18                    DEPOSITION OF JOANN C. WALL

19                       APRIL 25, 2022

20

21

22

23       REPORTED REMOTELY BY: JANET FRENCH, CSR NO. 946

24

25                       Notary Public

                                              Page 1

```
 1    extraordinary assumption?                              13:41:37

 2        A.   They are all assumptions.  Extraordinary      13:41:40

 3    assumptions are specific to a specific property.       13:41:43

 4        Q.   But isn't it true that this is an             13:41:46

 5    extraordinary assumption?                              13:41:47

 6        A.   Yes.                                          13:41:47

 7        Q.   And with respect to the water assumptions,    13:41:52

 8    directing your attention to page 16, something we      13:42:02

 9    covered a little bit earlier -- current well tests     13:42:07

10    were not provided.                                     13:42:09

11         That's still an accurate statement?              13:42:12

12        A.   Correct.                                      13:42:13

13        Q.   Now, did Jude Radeski or did Chad Taber ever  13:42:18

14    discuss with you what management of the farm           13:42:23

15    properties had done to explore for additional water    13:42:27

16    sources during the period of time, let's say, the      13:42:32

17    six-year period prior to your engagement?              13:42:35

18        A.   Not enough that I made note of it, no.  I     13:42:40

19    don't believe so.                                      13:42:41

20        Q.   Now, to your knowledge does the -- part of    13:42:49

21    the west side where the HMR Viking, Tir na nOg, and    13:42:56

22    excess parcel property is located overlie a            13:43:00

23    groundwater basin?                                     13:43:04

24        A.   The entire state overlies a groundwater       13:43:10

25    basin.  I'm not sure I understand your question.       13:43:13
```

Page 108

# EXHIBIT 17

```
 1              UNITED STATES DISTRICT COURT

 2            CENTRAL DISTRICT OF CALIFORNIA

 3

 4       MATTHEW D. VAN STEENWYK, )

 5       et al.,                  )  Case No.

 6            Plaintiff,          )  2:20-cv-02375-FLA-AFM

 7       vs.                      )

 8       KEDRIN E. VAN STEENWYK,  )

 9       et al.,                  )

10            Defendants,         )

11       and                      )

12       APPLIED TECHNOLOGIES     )

13       ASSOCIATES, INC., and    )

14       ATA RANCHES, INC.,       )      VOLUME I

15            Nominal Defendants. )  (Pages 1 - 149)

16       _____)

17

18              DEPOSITION OF JOANN C. WALL

19                   APRIL 25, 2022

20

21

22

23       REPORTED REMOTELY BY: JANET FRENCH, CSR NO. 946

24

25                   Notary Public

                                       Page 1
```

```
 1        A.   Yeah.                                    11:05:38

 2        Q.   Okay.  And the requests made in the email  11:05:45

 3   for certain items of information and documents, those  11:05:50

 4   are items that you approved?                        11:05:53

 5        A.   Yes.                                      11:05:54

 6        Q.   Okay.  Now, the first bullet, "Updated well  11:06:03

 7   tests," were updated well tests ever performed after  11:06:08

 8   you were engaged?                                   11:06:10

 9        A.   No, not that I'm aware of.                11:06:16

10        Q.   So updated well test results were not     11:06:20

11   provided?                                           11:06:21

12        A.   No.                                       11:06:26

13        Q.   The fifth bullet, "Purchase Contracts,    11:06:33

14   grapes, almonds, or walnuts," were you ever provided  11:06:39

15   with grape purchase contracts for HMR and Viking     11:06:45

16   Ranches?                                            11:06:46

17        A.   There was one grape contract that I was   11:06:51

18   provided, yes.                                      11:06:51

19        Q.   Was that the grape contract with Ridge    11:06:55

20   Winery?                                             11:06:55

21        A.   Yes.                                      11:07:01

22        Q.   Were you ever provided with a grape purchase  11:07:04

23   agreement between Adelaida Cellars, Inc., and ATA?   11:07:12

24        A.   I don't believe so.  I'm going to say that I  11:07:15

25   received a voluminous amount of documents from Jude.  11:07:20
```

Page 37

```
 1    I went back through all of my emails.  I            11:07:24

 2    don't -- I don't find that anyway, so I'm going to  11:07:28

 3    say, no.  That does not mean that it's not possible 11:07:32

 4    that he emailed it to me and I overlooked it.  But to 11:07:36

 5    my knowledge, I never received it.                  11:07:38

 6        Q.    And we couldn't find it in your production 11:07:41

 7    so that led me to conclude that it wasn't provided. 11:07:45

 8            That's your best recollection sitting here  11:07:47

 9    today is that it was not provided to you; correct?  11:07:50

10        A.    Correct.                                  11:07:50

11        Q.    Now, the fourth bullet and the sixth bullet 11:08:00

12    I'm going to take together, "Cost information" and  11:08:03

13    Production history."                                11:08:08

14            Was all of the cost information and         11:08:12

15    production history that you requested produced to you? 11:08:17

16        A.    Yes.  It was produced in bits and pieces.  I 11:08:21

17    won't say that it came all at one time or in a neat 11:08:26

18    and organized package, but I did receive production 11:08:30

19    history information in a variety of documents.  I did 11:08:33

20    receive some cost information.  It -- again, this -- 11:08:39

21    it's not uncommon for, you know, wineries in        11:08:44

22    particular or winery owned vineyards in particular for 11:08:50

23    information to sort of be sent piecemeal, but I did 11:08:55

24    receive most of that information.  What I knew to   11:08:58

25    exist, I believe I received.                        11:09:00
```

Page 38

| | | |
|---|---|---|
| 1 | but -- and, in essence, I'm not evaluating -- I'm not | 14:03:43 |
| 2 | valuing the grapes on the vineyards either.  Those | 14:03:47 |
| 3 | belong to the winery under those grape contracts. | 14:03:49 |
| 4 | What I'm evaluating is whether or not that vineyard | 14:03:53 |
| 5 | can support grapes being sold at a particular price. | 14:03:57 |
| 6 | Grapes are actually part -- are, in essence, | 14:03:59 |
| 7 | for all intents and purposes, personal property.  So I | 14:04:03 |
| 8 | don't know if that helps explain it, but I didn't -- I | 14:04:06 |
| 9 | understand that that -- obviously there is some sort | 14:04:08 |
| 10 | of grape contract that is a point of contention, but I | 14:04:13 |
| 11 | did not address that in my appraisal. | 14:04:15 |
| 12 | Q.   Do you have any knowledge -- do you have any | 14:04:17 |
| 13 | knowledge one way or the other whether there is | 14:04:20 |
| 14 | currently a grape purchase contract in effect? | 14:04:22 |
| 15 | A.   I only learned about it having talked with | 14:04:26 |
| 16 | Sam and Johnny last week. | 14:04:27 |
| 17 | Q.   And what did you learn from Sam and Johnny | 14:04:30 |
| 18 | last week? | 14:04:31 |
| 19 | A.   That there is a contract.  Yeah.  And it | 14:04:33 |
| 20 | appears in -- I did not get a chance to read | 14:04:35 |
| 21 | Mr. Knupper's or Mr. Dakin's reports, but they did | 14:04:40 |
| 22 | point out that they discussed that, but I didn't have | 14:04:43 |
| 23 | a copy of it.  I sent you everything I have.  I didn't | 14:04:46 |
| 24 | get a copy of it. | 14:04:49 |
| 25 | And to be honest, even if I had, I probably | 14:04:53 |

Page 121

| | | |
|---|---|---|
| 1 | wouldn't have included it because it is a related | 14:04:56 |
| 2 | entity.  And that is common.  That is common in this | 14:05:00 |
| 3 | market.  Every -- I wouldn't say every winery, but | 14:05:04 |
| 4 | most wineries that own their own vineyards to some | 14:05:09 |
| 5 | extent have internal grape contracts.  Some of them | 14:05:11 |
| 6 | are very casual in nature, some of them are written. | 14:05:13 |
| 7 | For real property valuation a lot of times | 14:05:17 |
| 8 | we simply have to assume that they would not be in | 14:05:20 |
| 9 | play at the time of sale because it's to a related | 14:05:23 |
| 10 | entity. | 14:05:23 |
| 11 | Q.   I'm sorry.  I missed the first part of your | 14:05:26 |
| 12 | answer which is the most important part to me. | 14:05:28 |
| 13 | Is it your understanding that there is a | 14:05:32 |
| 14 | grape purchase contract in effect currently between | 14:05:37 |
| 15 | Adelaida Cellars, Inc., and ATA Ranches, Inc.? | 14:05:41 |
| 16 | A.   Five days ago I found out that there could | 14:05:44 |
| 17 | be.  I have not seen it. | 14:05:46 |
| 18 | Q.   Okay.  And so you referred to Sam.  That's | 14:05:49 |
| 19 | Sam Edgerton? | 14:05:51 |
| 20 | A.   Yes.  In my conversation with Sam and Johnny | 14:05:53 |
| 21 | last week, which I told you about, where they -- we | 14:05:58 |
| 22 | were -- they asked me to make sure I tell you | 14:06:01 |
| 23 | everything I know and be truthful, and what this | 14:06:04 |
| 24 | process was going to entail.  They did give me those | 14:06:09 |
| 25 | two documents, and they pointed out that there is a | 14:06:12 |

Page 122

| | | |
|---|---|---|
| 1 | grape contract. I was not aware of that. | 14:06:14 |
| 2 | I knew that the grapes were being sold to | 14:06:17 |
| 3 | Adelaida Cellars, which is not uncommon, but that's | 14:06:20 |
| 4 | all I knew. | 14:06:20 |
| 5 | Q. And I didn't know until you just answered | 14:06:27 |
| 6 | that last question that Johnny Antwiler was on the | 14:06:31 |
| 7 | call between you and Mr. Edgerton last week; so I | 14:06:34 |
| 8 | appreciate -- I appreciate that clarification. | 14:06:35 |
| 9 | Now, getting back to just the digression | 14:06:39 |
| 10 | regarding your appraisal of the winery and the real | 14:06:45 |
| 11 | property only, what appraisal number do you come up | 14:06:50 |
| 12 | with respect to the value of Adelaida Cellars, Inc.'s | 14:06:55 |
| 13 | real property? | 14:06:58 |
| 14 | A. I'm going to ask Sam if it is okay if I | 14:07:01 |
| 15 | answer that question. I did sign a confidentiality | 14:07:04 |
| 16 | agreement. | 14:07:04 |
| 17 | MR. TRICKER: Yeah, I'm going to jump in here and | 14:07:08 |
| 18 | object and instruct the witness not to answer anymore | 14:07:12 |
| 19 | about Adelaida Cellars until there is clarification on | 14:07:14 |
| 20 | that as well. | 14:07:16 |
| 21 | MR. MOROSKI: Well, just -- for the record, how | 14:07:17 |
| 22 | can she object based on her testimony that she | 14:07:20 |
| 23 | perceives that the two entities to be related? | 14:07:24 |
| 24 | MR. TRICKER: Well, until there is clarification, | 14:07:27 |
| 25 | I'm just not going to let her answer those questions | 14:07:31 |

Page 123

# EXHIBIT 18

# NOTICE OF SPECIAL MEETING OF THE DIRECTORS
## OF
# SCIENTIFIC DRILLING INTERNATIONAL, INC.
## AND
# APPLIED TECHNOLOGIES ASSOCIATES, INC.

Notice is hereby given that Pamela S. Pierce has called a special meeting of the directors of APPLIED TECHNOLOGIES ASSOCIATES, INC., a California corporation, and SCIENTIFIC DRILLING INTERNATIONAL, INC., a Texas corporation, to be held Monday, June 28, 2021, immediately following the previously scheduled 2020 Audit Review.  The meeting subject is ATA RANCHES, INC.

The meeting will be held virtually; you will receive a calendar invitation by email with instructions for participation by Microsoft Teams.

DATED: Wednesday, June 23, 2021

_____
Daniel R Carter, Secretary

**Exhibit 259**
10/13/2021
Kieran Duggan





# Monday, June 28, 2021
# **Special Board of Directors Meeting**



MVS-011694



# ATA Ranches

SDI — CONFIDENTIAL & PROPRIETARY



MVS-011695

# ATA Ranches

## Overview

➢ ATA Ranches, Inc., a Delaware corporation, is a wholly owned subsidiary of ATA ("ATAR").

➢ ATAR was formed in 2018 as a necessary part of Project Satellite. Specifically, buyers interested in purchasing SDI and ATA were necessarily disinterested in purchasing the ranching and agricultural properties. When incorporated in November 2018, it was anticipated that ATAR would be spun off to the shareholders immediately prior to consummation of the sale.

➢ At the point of creation, the net book value of the ATAR assets was ~$1,900,000 with $2,000,000 cash issued at commencement as a capital contribution.

➢ ATAR owns ~1,050 acres with ~168 acres under grapes and ~179 acres under walnuts.

S D I – C O N F I D E N T I A L  &  P R O P R I E T A R Y


Scientific Drilling

MVS-011696

# ATA Ranches

## Currently

➤ ATAR grows and sells grapes to Adelaida Cellars at the contract rate.

  ➤ Contract rate is 94% of the reported average District 8 crush price.
  ➤ The contract is "take or pay" requiring Adelaida Cellars to take all grapes grown regardless of quality or volume.
  ➤ Average Annual Revenue: $650,000-$700,000
  ➤ Average Annual Operating Expenses: $2,200,000-$2,400,000

➤ Adelaida Cellars pays the salaries and benefits for ATAR employees and charges the cost back to ATAR.

  ➤ ATAR employee salaries: $550,000-$600,000 annually

➤ ATAR is responsible for all capital expenditures including:

  ➤ Land Improvements
  ➤ Vines
  ➤ Trees
  ➤ Machinery and Equipment
  ➤ Buildings

➤ ATAR is projected to run out of cash by end of June 2021.

S D I  –  C O N F I D E N T I A L  &  P R O P R I E T A R Y


Scientific Drilling

MVS-011697

# ATA Ranches

## Proposed

➢ ATAR invoices the cost of farming the property directly to Adelaida Cellars.

➢ Monthly installment invoices, based on prior year expenses, will be sent to Adelaida Cellars.  Annual true-up to actual costs will take place at year-end.
➢ Adelaida Cellars will own all grapes and walnuts grown.  Third-party sales, if any, will be their responsibility and revenue.

➢ ATAR will provide capital, at the sole discretion of ATA and based on economic justification, for:

➢ Land Improvements
➢ Vines
➢ Trees
➢ Buildings

➢ Adelaida Cellars will cover CAPEX associated with:

➢ Machinery and Equipment

| | YTD-20 Actual | YTD-19 Actual | ATA | ACI |
|---|---|---|---|---|
| **Operating expenses** | | | | |
| Labor | **408,346** | 460,891 | | ✔ |
| Employee Related | **126,995** | 172,229 | | ✔ |
| Occupancy | **43,985** | 41,433 | | ✔ |
| Supplies and Equipment | **189,962** | 233,390 | | ✔ |
| Repairs & Maintenance | **316,505** | 175,871 | ✔ | ✔ |
| Taxes and Insurance | **48,396** | 33,779 | ✔ | |
| Outside Services | **885,002** | 862,559 | | ✔ |
| Other Expenses | **11,255** | 14,447 | | ✔ |
| Depreciation | **309,293** | 281,692 | ✔ | |
| **Total operating expenses** | 2,339,741 | 2,276,291 | | |
| Other Income | 31,655 | **4,724** | | ✔ |

S D I – C O N F I D E N T I A L  &  P R O P R I E T A R Y


Scientific Drilling

MVS-011698

# ATA Ranches

## Action Requested

➢ Approval of the presented Proposal is requested, effective June 1, 2021.

S D I – C O N F I D E N T I A L & P R O P R I E T A R Y

 Scientific Drilling

MVS-011699

# EXHIBIT 19

```
 1                UNITED STATES DISTRICT COURT

 2               CENTRAL DISTRICT OF CALIFORNIA

 3

 4      MATTHEW D. VAN STEENWYK, )

 5      et al.,                  )  Case No.

 6           Plaintiff,          )  2:20-cv-02375-FLA-AFM

 7      vs.                      )

 8      KEDRIN E. VAN STEENWYK,  )

 9      et al.,                  )

10           Defendants,         )

11      and                      )

12      APPLIED TECHNOLOGIES      )

13      ASSOCIATES, INC., and    )

14      ATA RANCHES, INC.,       )     VOLUME I

15           Nominal Defendants. )  (Pages 1 - 149)

16      _____)

17

18                DEPOSITION OF JOANN C. WALL

19                    APRIL 25, 2022

20

21

22

23      REPORTED REMOTELY BY: JANET FRENCH, CSR NO. 946

24

25                      Notary Public

                                              Page 1
```

| | | |
|---|---|---|
| 1 | Mr. Radeski on September 22, 2021, is, "Moving forward | 12:09:00 |
| 2 | the intent is to have Adelaida pay 'farming costs.'" | 12:09:07 |
| 3 | This Exhibit 259 relates to that statement | 12:09:13 |
| 4 | regarding who is going to pay farming costs moving | 12:09:16 |
| 5 | forward. | 12:09:17 |
| 6 | Was this document ever provided to you? | 12:09:21 |
| 7 | A.   Not that I recall, no. | 12:09:22 |
| 8 | Q.   Was it ever discussed with you that the | 12:09:24 |
| 9 | board of directors for Applied Technologies Associates | 12:09:29 |
| 10 | and Scientific Drilling International, Inc., and these | 12:09:34 |
| 11 | subsidiary ATA Ranches, Inc., had decided going | 12:09:38 |
| 12 | forward that it would require Adelaida Cellars to pay | 12:09:43 |
| 13 | farming costs?  Was that ever discussed with you? | 12:09:46 |
| 14 | A.   Yeah, verbally that was absolutely | 12:09:47 |
| 15 | discussed.  Again, it wasn't really relevant to what I | 12:09:52 |
| 16 | was doing but... | 12:09:53 |
| 17 | Q.   It was not relevant to what you were doing? | 12:09:56 |
| 18 | A.   No.  Because, again, I was using market | 12:09:57 |
| 19 | data.  Appraisal is always done from -- well, market | 12:10:01 |
| 20 | value is always done from perspective of a third-party | 12:10:06 |
| 21 | hypothetical buyer.  That's the perspective.  So | 12:10:08 |
| 22 | whether or not Adelaida was going to be paying farming | 12:10:12 |
| 23 | costs going forward or weren't or were is not | 12:10:15 |
| 24 | relevant.  What is relevant is how much would a | 12:10:19 |
| 25 | third-party unbiased hypothetical buyer be paying as | 12:10:24 |

Page 67

| 1 | of the date of value. | 12:10:25 |
| 2 | So my analysis included what would it | 12:10:28 |
| 3 | typically cost somebody to farm this property.  Their | 12:10:32 |
| 4 | internal operations is not relevant to market value, | 12:10:37 |
| 5 | you know, in terms of the appraisal that I completed. | 12:10:42 |
| 6 | Q.   Is it your professional understanding as an | 12:10:49 |
| 7 | appraiser -- a licensed appraiser, that the actual | 12:10:56 |
| 8 | relationship in terms of who is paying what in terms | 12:10:59 |
| 9 | of costs and who is receiving what in terms of revenue | 12:11:04 |
| 10 | does not bear on the reasonableness of the | 12:11:09 |
| 11 | hypothetical buyer and his or her or its assessment of | 12:11:15 |
| 12 | whether or not a vineyard property is something that | 12:11:19 |
| 13 | he or she or it wants to buy? | 12:11:25 |
| 14 | A.   And that's a good question.  Right, so I'm | 12:11:26 |
| 15 | going to answer that two ways, first as the appraiser | 12:11:30 |
| 16 | and then also as a licensed real estate broker. | 12:11:33 |
| 17 | As an appraiser, our job is to determine | 12:11:36 |
| 18 | market value based on a third-party hypothetical | 12:11:39 |
| 19 | buyer.  So somebody could tell me -- a property owner | 12:11:43 |
| 20 | could tell me that they were only paying a dollar to | 12:11:47 |
| 21 | farm this property.  I wouldn't -- I would have to go | 12:11:50 |
| 22 | out into the market place find other information that | 12:11:53 |
| 23 | would tell me what that market information -- or what | 12:11:56 |
| 24 | that market costs would be to farm that property | 12:11:59 |
| 25 | because the information that I received seems to be | 12:12:01 |

Page 68