1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          CENTRAL DISTRICT OF CALIFORNIA

10

11  MATTHEW D. VAN STEENWYK,              Case No. 2:20-cv-02375-FLA (AFMx)

12                      Plaintiff,
                                          **ORDER GRANTING IN PART AND**
13          v.                            **DENYING IN PART MOTIONS FOR**
                                          **SUMMARY JUDGMENT**
14  KEDRIN E. VAN STEENWYK, *et al.*,      **[DKTS. 226, 227, 229]**

15                      Defendants.

16

17

18                                 __RULING__

19          Before the court are Motions for Summary Judgment ("Motions") by Plaintiff

20  Matthew D. Van Steenwyk ("Plaintiff" or "Matthew") (Dkt. 227, "Pl. Mot.");

21  Defendants Adelaida Cellars, Inc. ("Adelaida") and Kedrin E. Van Steenwyk

22  ("Kedrin") individually, as Executor of the Estate of Elizabeth A. Van Steenwyk

23  ("Elizabeth"),[1] and as Successor Trustee of the Survivor's Trust of the Donald H. Van

24  Steenwyk and Elizabeth Van Steenwyk 1996 Revocable Trust (the "Survivor's Trust")

25  (collectively, the "Adelaida Defendants") (Dkt. 226, "Adelaida Mot."); and

26  _____

27  [1] On December 1, 2021, the parties notified the court Elizabeth had passed away, and
    requested leave to substitute in her place Kedrin, as the executor for Elizabeth's estate.
28  Dkt. 175.  The court granted the parties' request on December 7, 2021.  Dkt. 176.

Defendants Pamela Pierce ("Pierce"), Philip Gobe ("Gobe"), Phil Longorio ("Longorio"), Gene Durocher ("Durocher"), Joseph McCoy ("McCoy"), Daniel Carter ("Carter"), and Kieran Duggan ("Duggan") (collectively, the "D&O Defendants"), Dkt. 229.[2]  On June 10, 2022, the court found these matters appropriate for resolution without oral argument and vacated the hearing set for June 17, 2022.  Dkt. 272; *see* Fed. R. Civ. P. 78(b); Local Rule 7-15.

For the reasons stated herein, the court GRANTS in part and DENIES in part the Motions.  The court RESETS the final pretrial conference for June 7, 2024 at 1:30 p.m., and the jury trial for June 25, 2024 at 8:15 a.m.  The parties' amended first round of trial documents shall be due on May 10, 2024, and their second round of trial documents shall be due on May 24, 2024.

## **BACKGROUND**

Plaintiff Matthew brings this action individually, as Trustee and Beneficiary of The Matthew Van Steenwyk GST Trust and The Matthew Van Steenwyk Issue Trust ("Matthew's Trusts") and Co-Trustee of The Gretchen Marie Van Steenwyk-Marsh GST Trust and The Gretchen Marie Van Steenwyk-Marsh Issue Trust ("Gretchen's Trusts") (all together, "Plaintiff's Trusts"), and derivatively, on behalf of Nominal Defendants Applied Technologies Associates, Inc. ("ATA"), Scientific Drilling International, Inc. ("SDI"), and ATA Ranches, Inc. ("ATA Ranches") (collectively, the "Nominal Defendants").  Dkt. 179 (Fourth Amended Complaint, "4AC") at 2–3.[3]

---

[2] The parties filed cross-motions for summary judgment requesting adjudication of the same legal issues, in violation of the court's Initial Standing Order.  *See* Dkt. 118 at 8.  The court will exercise its discretion to consider the parties' Motions on their merits.  The parties are advised that the court expects them to comply fully with all statutory requirements, court rules, and court orders and that failure to so comply may result in the imposition of sanctions, including striking documents filed improperly, denial of requested relief, and fines.

[3] The court cites documents by the page numbers added by the court's CM/ECF system, rather than any page numbers listed on documents natively.

1    In January 2013, ATA sold Defendant Adelaida Cellars, Inc. ("Adelaida") to

2  non-party KMBG, LLC ("KMBG"), in what Plaintiff contends was a non-arm's

3  length, one-sided transaction.  4AC ¶¶ 5–7.  According to Plaintiff, Elizabeth and

4  Kedrin subsequently abused their control over these companies, to engage in one-

5  sided transactions to transfer substantial value from ATA and SDI (in which

6  Plaintiff's Trusts owned a significant financial interest) to Adelaida (in which they did

7  not).  *E.g.*, *id.* ¶¶ 6, 10–11.  Plaintiff further alleges the D&O Defendants breached

8  fiduciary duties owed as corporate officers and directors of the Nominal Defendants

9  and aided and abetted Elizabeth and Kedrin's breaches of fiduciary duty, by

10  authorizing the challenged conduct and transactions without reasonable investigation

11  and thorough examination.  *Id.* ¶¶ 105–21.

12    In the 4AC, Plaintiff asserts four derivative claims: (1) the first cause of action

13  for breach of fiduciary duty against Kedrin and the D&O Defendants; (2) the second

14  cause of action for corporate waste against the D&O Defendants; (3) the third cause of

15  action for accounting against the D&O Defendants; and (4) the fourth cause of action

16  for declaratory relief against all Defendants; as well as three direct claims: (1) the fifth

17  cause of action for breach of fiduciary duty by controlling shareholder against Kedrin

18  and Elizabeth; (2) the sixth cause of action for aiding and abetting breach of fiduciary

19  duty by controlling shareholder against the D&O Defendants and Adelaida; and (3)

20  the seventh cause of action for an order compelling the production of corporate

21  records against the D&O Defendants and nominal Defendant ATA.  *Id.* ¶¶ 144–85.

22                              **DISCUSSION**

23  **I.    Legal Standard**

24    Summary judgment is appropriate where "there is no genuine dispute as to any

25  material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ.

26  P. 56(a).  "The substantive law determines which facts are material; only disputes over

27  facts that might affect the outcome of the suit under the governing law properly

28  preclude the entry of summary judgment."  *Nat'l Ass'n of Optometrists & Opticians v.*

*Harris*, 682 F.3d 1144, 1147 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248.

The moving party bears the initial burden of establishing the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party meets its initial burden, the opposing party must then set forth specific facts showing there is a genuine issue for trial.  *Id.* at 324.  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.

"If the nonmoving party produces direct evidence of a material fact, the court may not assess the credibility of this evidence nor weigh against it any conflicting evidence presented by the moving party."  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  Inferences may be drawn from underlying facts that are either not in dispute or that may be resolved at trial in favor of the nonmoving party, but only if they are "rational" or "reasonable" and otherwise permissible under the governing substantive law.  *Id.*  The court must view all evidence and justifiable inferences "in the light most favorable to the nonmoving party[.]"  *Id.* at 630–31.  However, a party cannot defeat summary judgment based solely on the allegations or denials of the pleadings, conclusory statements, or unsupported conjecture.  *Hernandez v. Spacelabs Med., Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003); *see also FTC v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997) ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact.").

"After giving notice and a reasonable time to respond, the court may: (1) grant summary judgment for a nonmovant; (2) grant the motion on grounds not raised by a party; or (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute."  Fed. R. Civ. P. 56(f).

## II.     Analysis

### A.     Relevant Facts

The following facts are not disputed reasonably by the parties.  At all relevant times, ATA and SDI operated under common ownership and management, with the same individuals serving as directors of both companies. Dkt. 262-1 ¶ 7.  ATA has two classes of corporate shares: Class A voting shares and Class B non-voting shares.  *Id.* ¶¶ 4–5.  As of April 9, 2012, 51% of ATA Class A shares were controlled by the Survivor's Trust.  *Id.* ¶¶ 19–20.  At all relevant times, Matthew's Trusts and Gretchen's Trusts each owned 23.75% of the Class B shares in ATA and 22.6% of the Class B shares of SDI.  *Id.* ¶¶ 68–69.  Elizabeth was the Trustee of the Survivor's Trust and controlling shareholder of ATA and SDI from approximately April 9, 2012 to June 21, 2016, when Kedrin became the Successor Trustee and controlling shareholder.  *Id.* ¶¶ 19–20, 47, 56.

With respect to both companies, Elizabeth served as a director until June 2016. Dkt. 286 ¶ 4.  Kedrin, Pierce, and McCoy were directors at all relevant times.  *Id.* ¶¶ 15–16, 26, 32.  Longorio served as Chief Executive Officer ("CEO"), President, and director from 2014 until May 2020.  *Id.* ¶¶ 29–30.  Pierce has been the Interim CEO since May 15, 2020.  *Id.* ¶ 27.  Gobe was a director from 2010 until September 2020.  *Id.* ¶ 28.  Durocher was a director from 2010 until 2021.  *Id.* ¶ 31.  Carter has served as Secretary and General Counsel from 2011 to the present.  *Id.* ¶ 33.  Duggan was the Corporate Accounting Manager from 2015 until 2018, when he became the Corporate Accounting Director.  *Id.* ¶¶ 127–28.  Duggan was appointed Treasurer and Assistant Secretary in July 2020, and currently serves as Chief Financial Officer ("CFO").  Dkt. 286 ¶¶ 35–36.

With respect to KMBG, Elizabeth almost exclusively owned and controlled the company prior to June 2016, through her trusts—which held 99% of its shares. Dkt. 286 ¶ 11; Dkt. 262-1 ¶¶ 28, 60. As of June 2016, Kedrin has been its managing member and holds a controlling interest. Dkt. 262-1 ¶¶ 62–63. Plaintiff owns a de minimis interest of 0.16736%, through Matthew's Trusts. Dkt. 286 ¶ 70. Gretchen's Trusts own no interest. *Id.* ¶ 71.

On or about January 22, 2013, ATA and KMBG executed an agreement (the "Adelaida Sale Agreement"), in which ATA sold Adelaida to KMBG for "$0 at closing with the remaining balance of $3,105,128 delivered in the form of a promissory note to [ATA]" (the "Promissory Note"), which was to be repaid over a five-year period at an annual interest rate of 0.95%. *Id.* ¶ 186; Dkt. 255-20 (Pl. Ex. 23).[4] The Promissory Note defines an "Event of Default" to mean "the failure of [KMBG] to timely make payments on [the] Promissory Note when due and such failure continues for ten (10) days after [KMBG] receives written notice of such failure from [ATA]." *Id.* at 1–2. During an Event of Default, the interest on the principal balance would increase to 4% per annum and ATA would be entitled to "declare the unpaid principal balance of and earned interest on [the] Promissory Note immediately due and payable." *Id.* at 1. KMBG did not make the first two payments required by the promissory note. Dkt. 268 ¶ 158. ATA did not provide KMBG with written notice of its failure to make payments, or otherwise act to enforce its rights under the Promissory Note upon default. *Id.* ¶¶ 47–49.

---

[4] On January 22, 2013, ATA and SDI also entered into an "Agreement for Services" with Adelaida (the "2013 Services Agreement"), pursuant to which ATA and SDI agreed to provide Adelaida with financial and accounting services, legal consultation services, administrative services (including human resources services and health, safety, and environmental inspections and training), and technical services (including computer information systems and technical support services) in exchange for a flat monthly service fee of $1,000. Dkt. 227-63 (Pl. Ex. 54). Elizabeth signed on behalf of Adelaida, and Carter signed on behalf of ATA. *Id.* at 3.

In 2015, ATA assigned the Promissory Note to SDI in exchange for a reduction of the intercompany balance owed by ATA to SDI of $3,170,306.85.  *Id.* ¶¶ 54, 115, 179; Dkt. 255-97 (Pl. Ex. 121).  Defendant Longorio signed the Assignment of Note on behalf of both ATA and SDI.  Dkt. 255-97 (Pl. Ex. 121).  On December 31, 2015, SDI restructured the Promissory Note to provide for repayment over a ten-year period at an annual interest rate of 2.58%, with the final payment due on December 31, 2025.  Dkt. 268 ¶¶ 116, 179; Dkt. 255-98 (Pl. Ex. 124).  KMBG paid off the restructured Promissory Note in 2018.  Dkt. 255-98 (Pl. Ex. 124) at 1 (handwritten note: "Cancelled 30 APR 2018").[5]

Adelaida held a Financial Summit on August 30 and 31, 2016, whose attendees included Kedrin, Carter, and Duggan.[6]  Dkt. 286 ¶ 61; Dkt. 227-58 (Pl. Ex. 49) at 1.  The "Action Items" of the meeting minutes include the entry: "Determine whether Adelaida can take a discounted rate for grapes."  Dkt. 227-58 (Pl. Ex. 49) at 1.  The meeting notes include the following entries: "How get more income to Adelaida? … Lower grape costs.  10% below district 8 average would be acceptable, even if sell at 110% to other parties."  *Id.* at 6 (grammar errors in original).

In November 2016, KMBG entered into a Grape Purchase Agreement with Adelaida (the "KMBG Purchase Agreement"), whereby KMBG agreed to sell all grapes grown in its vineyards to Adelaida for "100% of the Weighted Average Grower Returns per Ton Delivered Basis (Table 6) paid for grapes of the same variety in District 8, as published in the *Final Grape Crush Report* by the California Department of Food and Agriculture for the preceding harvest year."  Dkt. 255-35 (Pl.

---

[5] In June 2016, Longorio approved a $600,000 write-off of debt Adelaida owed ATA prior to its sale to KMBG.  Dkt. 268. ¶ 178; Dkt. 255-108 (Pl. Ex. 134) at 1–3.  ATA's Senior Vice President and CFO, Dana Armstrong ("Armstrong"), stated in an e-mail dated June 7, 2016, that this balance "should have been zeroed on closing of the sale from ATA to KMBG."  Dkt. 255-108 (Pl. Ex. 134) at 2.

[6] Carter became a director of Adelaida in August 2016.  Dkt. 286 ¶ 34.  Duggan has served as a director of Adelaida since May 2018.  *Id.* ¶ 37.

Ex. 50) at 1.  The KMBG Purchase Agreement was for a one-year term, beginning January 1, 2016, with an automatic renewal for an additional one-year term "unless terminated by either party by giving written notice to the other party at least 90 days prior to the end of the then-current one-year term." *Id.*  Kedrin signed the KMBG Purchase Agreement on behalf of both Adelaida and KMBG on November 2, 2016. *Id.*

In December 2016, ATA entered into a Grape Purchase Agreement with Adelaida (the "ATA Purchase Agreement"), whereby ATA agreed to sell all grapes grown in its vineyards to Adelaida for "94% of the Weighted Average Grower Returns per Ton Delivered Basis … paid for grapes of the same variety in District 8…." *Id.* at 3.  The ATA Purchase Agreement was identical to the KMBG Purchase Agreement, except for the lower price for ATA's grapes and that it was for longer five-year initial and renewal terms.  *Compare id.* at 1, 3.  Carter drafted both purchase agreements.  Dkt. 286 ¶ 68.  Kedrin signed the ATA Purchase Agreement on behalf of Adelaida on November 2, 2016.  Dkt. 255-35 (Pl. Ex. 50) at 3.  Longorio signed the agreement on behalf of ATA on December 15, 2016.  *Id.*

**B.    Plaintiff's First and Fifth Causes of Action for Breaches of Fiduciary Duty and Sixth Cause of Action for Aiding and Abetting Breaches of Fiduciary Duty**

The parties bring cross-motions for summary judgment as to: (1) the first cause of action, a derivative claim for breaches of fiduciary duty against Kedrin and the D&O Defendants; (2) the fifth cause of action, a direct claim for breach of fiduciary duty by controlling shareholder against Kedrin and Elizabeth; and (3) the sixth cause of action, a direct claim for aiding and abetting breach of fiduciary duty by controlling shareholder against the D&O Defendants and Adelaida.

"The elements of a cause of action for breach of fiduciary duty are: (1) the existence of a fiduciary duty; (2) the breach of that duty; and (3) damage proximately caused by that breach." *IIG Wireless, Inc. v. Yi*, 22 Cal. App. 5th 630, 646 (2018).

"Under California law, liability may be imposed on one who aids and abets the commission of an intentional tort if the person (a) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act or (b) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person." *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1118 (C.D. Cal. 2003) (quotation marks and ellipses omitted); *Casey v. U.S. Bank Nat'l Ass'n*, 127 Cal. App. 4th 1138, 1144 (2005).

"It is without dispute that in California, corporate directors owe a fiduciary duty to the corporation and its shareholders and …, must serve 'in good faith, in a manner such director believes to be in the best interests of the corporation and its shareholders.'" *Berg & Berg Enters., LLC v. Boyle*, 178 Cal. App. 4th 1020, 1037 (2009) (citing Cal. Corp. Code § 309(a)). "This duty—generally to act with honesty, loyalty, and good faith—derive[s] from the common law." *Id.*

Similarly, "majority shareholders, either singly or acting in concert to accomplish a joint purpose, have a fiduciary responsibility to the minority and to the corporation to use their ability to control the corporation in a fair, just, and equitable manner." *Jones v. H.F. Ahmanson & Co.*, 1 Cal. 3d 93, 108 (1969). "Majority shareholders may not use their power to control corporate activities to benefit themselves alone or in a manner detrimental to the minority." *Id.* "Any use to which they put the corporation or their power to control the corporation must benefit all shareholders proportionately and must not conflict with the proper conduct of the corporation's business." *Id.*

"[A]n officer who participates in management of the corporation, exercising some discretionary authority, is a fiduciary of the corporation as a matter of law." *GAB Bus. Servs., Inc. v. Lindsey & Newsom Claim Servs., Inc.*, 83 Cal. App. 4th 409, 420–21 (2000), *disapproved on other grounds by Reeves v. Hanlon*, 33 Cal. 4th 1140, 1154 (2004). "Conversely, a 'nominal' officer with no management authority is not a

fiduciary." *Id.* at 421.  "Whether a particular officer participates in management is a question of fact." *Id.*

### 1.    Breaches of Fiduciary Duty by Elizabeth and Kedrin

It is long-established under California law that directors and dominant or controlling shareholders are fiduciaries. *Efron v. Kalmanovitz*, 226 Cal. App. 2d 546, 556 (1964).  "Their dealings with the corporation are subjected to rigorous scrutiny and where any of their contracts or engagements with the corporation is challenged the burden is on the director or stockholder not only to prove the good faith of the transaction but also to show its inherent fairness from the viewpoint of the corporation and those interested therein." *Id.*  "The essence of the test is whether or not under all the circumstances the transaction carries the earmarks of an arm's length bargain." *Id.* "The price to be paid, the manner of payment, the terms of credit, if any, and such like questions, must all meet the test of the corporation's best interest." *Id.* at 557.

Plaintiff contends Elizabeth and Kedrin breached fiduciary duties to ATA and its minority shareholders by abusing their control over the companies to execute transactions related to Adelaida that transferred value from ATA to KMBG.  Dkt. 227 (Pl. Mot.) at 19–22.  The Adelaida Defendants respond summary judgment is not appropriate because there are genuine disputes as to whether these transactions were, in fact, fair to ATA.  Dkt. 245 (Opp'n to Pl. MSJ) at 23, 27.  Based on the undisputed evidence presented, the court agrees in part with Plaintiff and finds Elizabeth and Kedrin breached fiduciary duties in connection with the Adelaida Sale Agreement and the ATA Purchase Agreement, respectively.  The court will address each transaction in turn.

It is undisputed that Elizabeth and Kedrin were directors of ATA and the controlling shareholders of ATA, SDI, and KMBG, through their ownership and control of trusts, including the Survivor's Trust, when ATA entered into the Adelaida Sale Agreement and ATA Purchase Agreement, respectively.  Dkt. 286 ¶¶ 4, 13–16, 240–43.  It is also undisputed that Elizabeth and Kedrin had a significantly greater

proportional interest in KMBG (99% of the shares) than in ATA at all relevant times. *Id.* ¶¶ 11, 21–22, 249.  Plaintiff's Trusts collectively owned 47.5% of the Class B shares of ATA and 43.2% of the Class B shares of SDI, but only owned a de minimis interest in KMBG (0.16736% of the shares).  *Id.* ¶¶ 21–23.  Elizabeth and Kedrin, thus, owed ATA and its minority shareholders fiduciary duties as directors and controlling shareholders of ATA not to engage in conduct that disproportionately benefited themselves or harmed minority shareholders.  *See Efron*, 226 Cal. App. 2d at 556; *Jones*, 1 Cal. 3d at 108.

In 2013, ATA sold Adelaida to KMBG in exchange for the Promissory Note. Dkt. 268 ¶¶ 26, 138; Dkt. 255-20 (Pl. Ex. 23).  KMBG did not make the first two payments as required by the Promissory Note.  Dkt. 268 ¶¶ 46, 202.  Despite this nonpayment, ATA did not provide KMBG with written notice of its failure—which would have triggered a higher interest rate and allowed ATA to declare the unpaid principal balance and interest accrued immediately due and payable on continued nonpayment—or take any other steps to enforce its rights under the Promissory Note. *Id.* ¶¶ 46–49; *see* Dkt. 255-20 (Pl. Ex. 23).  Defendants do not offer any explanation for this inaction beyond stating that "ATA made a business decision to not provide a notice of default…."  *See id.* ¶ 160.

Defendants contend Plaintiff's breach of fiduciary duty claims fail because the amount KMBG paid for Adelaida represented fair value for the company.  Dkt. 245 (Adelaida Opp'n to Pl. Mot.) at 23.  The court disagrees.  Regardless of whether the ultimate price paid was fair, Elizabeth's failure to act, as a director and the controlling shareholder of both ATA and KMBG, to ensure KMBG made payments on this self-interested transaction timely or enforce ATA's rights under the Adelaida Purchase Agreement upon nonpayment and default, constituted breaches of her fiduciary duty to ensure the manner of payment was inherently fair and in the best interests of ATA and its minority shareholders.  *See Efron*, 226 Cal. App. 2d at 557–60 (finding terms of payment for a self-interested transaction were unfair to the selling corporation and

1    its minority shareholders where full payment for the inventory and accounts

2    receivable of the sold company would not be received until 5 years after the sale, with

3    no interest payable on the unpaid balance during that time).[7]

4        On August 30 and 31, 2016, Adelaida held a Financial Summit in which

5    Kedrin, Carter, and the other attendees discussed lowering grape costs and set an

6    action item to "[d]etermine whether Adelaida can take a discounted rate for grapes."

7    Dkt. 227-58 (Pl. Ex. 49) at 1, 6.  On November 2, 2016, Kedrin signed the ATA

8    Purchase Agreement on behalf of Adelaida and separately signed the KMBG Purchase

9    Agreement on behalf of Adelaida and KMBG.  Dkt. 255-35 (Pl. Ex. 50) at 1, 3.  These

10   two agreements are substantively identical, except that the ATA Purchase Agreement

11   provides for a 6% lower purchase price for grapes than the KMBG Purchase

12   Agreement, and significantly longer initial and renewal terms of 5 years, instead of the

13   1-year terms for KMBG.  Dkt. 255-35 (Pl. Ex. 38) at 1, 3.  No evidence has been

14   presented to establish the ATA Purchase Agreement was the result of arm's length

15   negotiations between Adelaida and ATA.  Dkt. 286 ¶ 67.[8]  Given her significantly

16

_____

17   [7] It is telling that the 0.95% annual interest rate provided under the Adelaida Sale

18   Agreement was significantly lower than the 2.4% annual rate at which ATA borrowed
     money from SDI one month earlier, in December 2012.  *Compare* Dkt. 286 ¶ 78 *with*

19   *id.* ¶ 80.  Defendants do not offer any explanation for why ATA provided KMBG a

20   1.45% lower interest rate than ATA received from SDI—a sister company with which
     it shared the same officers and directors.

21
     [8] The Adelaida Defendants argue testimony by their retained expert, John Hinman

22   ("Hinman"), establishes the existence of a genuine dispute regarding whether the

23   grape purchase agreements were fair to ATA.  Dkt. 245 at 23.  The Adelaida
     Defendants do not cite any specific portion of Hinman's testimony or discuss any

24   specific argument or findings he made.  *See id.*  The court will not search through the
     record to try to reconstruct the ATA Defendants' arguments.  *See Carmen v. S.F.*

25   *Unified Sch. Dist.*, 237 F.3d 1026, 1030 (9th Cir. 2001) ("It is absurdly difficult for a

26   judge to perform a search, unassisted by counsel, through the entire record, to look for
     such evidence."); *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir.

27   2003) ("[J]udges are not like pigs, hunting for truffles buried in briefs." (quoting

28

1  greater proportional ownership interest in KMBG and Adelaida than ATA, Kedrin's

2  conduct in connection with the ATA Purchase Agreement breached her fiduciary duty

3  to ensure this self-interested transaction was inherently fair and in the best interests of

4  ATA and its minority shareholders.  *See Efron*, 226 Cal. App. 2d at 556.

5      The Adelaida Defendants cite *Schrage v. Schrage*, 69 Cal. App. 5th 126, 151–

6  58 (2021), to argue that a controlling shareholder in a close corporation may not be

7  sued directly under California law.  Dkt. 245 (Adelaida Opp'n to Pl. Mot.) at 20–21.

8  In *Schrage*, 69 Cal. App. 5th at 156, the court held that the plaintiff lacked standing to

9  bring a direct cause of action for breach of fiduciary duty because the plaintiff had not

10  alleged the majority shareholder defendants retained a disproportionate share of the

11  corporation's value and argued only that they had "destroyed the value of the business

12  for all of the shareholders (and members and partners)."  *Schrage* expressly

13  distinguished the facts of that case from those where courts held minority shareholders

14  of close corporations had standing to bring direct causes of action against majority

15  shareholders for retaining a disproportionate share of the corporation's value.  *Id.* at

16  155–56 (discussing cases).

17      Here, Plaintiff alleges Elizabeth and Kedrin engaged in self-dealing to retain a

18  disproportionate share of the value of Adelaida for themselves, by transferring the

19  company from ATA to KMBG while arranging for ATA to subsidize Adelaida's

20  expenses at a substantial loss to ATA.  4AC ¶¶ 32, 46–59, 71–83.  Like in the cases

21  where courts have allowed direct claims for breach of fiduciary duty and unlike

22  _____

23  *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991))).  To the extent the
   Adelaida Defendants argue a genuine dispute exists solely because their retained

24  expert testified he thought the agreements were fair based on his knowledge and
   experience in the industry, these Defendants do not cite any legal authority to establish

25  that a retained expert's testimony regarding general fairness of a self-interested

26  transaction is sufficient "to show its inherent fairness from the viewpoint of the
   corporation and those interested therein."  *See Efron v. Kalmanovitz*, 226 Cal. App. 2d

27  at 556.  The court, therefore, DISREGARDS the Adelaida Defendants' argument as

28  deficient and unsupported.

*Schrage*, the gravamen of Plaintiff's direct claim for breach of fiduciary duty is that Plaintiff and Plaintiff's Trusts were personally harmed because Elizabeth and Kedrin retained a disproportionate share of ATA's value, through transfers to KMBG and Adelaida—in which these Defendants had a significantly greater proportional ownership interest—rather than that the overall value of ATA was diminished equally for all shareholders due to mismanagement. *See, e.g.*, *Efron*, 226 Cal. App. 2d at 55–60 (1964) (reversing judgment in favor of defendant dominant stockholder regarding a self-interested transaction where the financing terms were unfair and created a substantial risk the unpaid balance of the purchase price would never be paid). *Schrage* is inapposite, and the Adelaida Defendants' argument, thus, fails.

The Adelaida Defendants additionally argue Plaintiff's breach of fiduciary duty claims fail with respect to the Adelaida Sale Agreement because the decision to sell Adelaida rested solely with ATA's board of directors and all disinterested board members voted in favor of the sale. Dkt. 245 (Adelaida Opp'n to Pl. Mot.) at 22. The court disagrees. A director bears the burden to demonstrate that a contract or other transaction between the director and the corporation, or between the corporation and any corporation, firm, or association in which the director has a material financial interest, was just and reasonable to the corporation at the time it was authorized, approved, or ratified, if the director's interest was not fully disclosed or known to the board. Cal. Corp. Code § 310(a)(2)–(3); *see also Michel v. Moore & Assocs., Inc.*, 156 Cal. App. 4th 756, 762 (2007) ("A fiduciary must tell its principal of all information it possesses that is material to the principal's interests. A fiduciary's failure to share material information with the principal is constructive fraud, a term of art obviating actual fraudulent intent.") (citations omitted); *Franklin v. Mortg. Guar. & Sec. Co.*, 57 F.2d 834, 835–36 (9th Cir. 1932) ("When once it [became] apparent that [defendant] occupied a fiduciary relation toward the corporation and his associates in it, the burden rested on him to show the full disclosure, without which the transaction was an improper one.").

The Adelaida Defendants do not present any evidence to establish Elizabeth disclosed to the board of ATA that she had a greater proportionate ownership interest in KMBG than in ATA, before it approved the Adelaida Sale Agreement. *See* Dkt. 245 (Adelaida Opp'n to Pl. Mot.).  To the contrary, Defendants Gobe, Pierce, Durocher, and McCoy each testified at deposition that they were unaware of and/or could not recall specific details regarding the ownership of KMBG and the transactions related to Adelaida.  Dkt. 255-6 (Pl. Ex. 6, Pierce Dep.) at 9–11, 13–17; Dkt. 255-7 (Pl. Ex 7, Gobe Dep.) at 7–9; Dkt. 255-9 (Pl. Ex. 9, Durocher Dep.) at 3–7; Dkt. 255-10 (Pl. Ex. 11, McCoy Dep.) at 3–5.  The Adelaida Defendants, thus, fail to demonstrate Elizabeth did not breach her fiduciary duties in connection with the Adelaida Purchase Agreement due to authorization, approval, or ratification by the board.  This issue is discussed further in connection with the parties' arguments regarding Defendants' business judgment rule affirmative defense, below.

In sum, the court finds Plaintiff meets his burden to demonstrate Elizabeth and Kedrin breached fiduciary duties owed to ATA and its minority shareholders, in connection with the Adelaida Sale Agreement and ATA Purchase Agreement, respectively.  The court, therefore, GRANTS partial summary judgment in Plaintiff's favor on these issues.  Plaintiff's Motion and request for partial summary judgment is otherwise DENIED as to these claims (including with respect to the 2013 Service Agreement, the price Adelaida paid ATA for grapes from 2013 to 2016, and Plaintiff and ATA's damages, if any), as genuine disputes exist that must be decided by a jury. The court will address the Adelaida Defendants' arguments regarding affirmative defenses separately below.

## 2.   Breaches of Fiduciary Duty by D&O Defendants

California Corporations Code § 309(a) ("Section 309(a)") states, in relevant part: "A director shall perform the duties of a director … in good faith, in a manner such director believes to be in the best interests of the corporation and its shareholders and with such care, including reasonable inquiry, as an ordinarily prudent person in a

1   like position would use under similar circumstances."  Directors "owe a duty to all

2   stockholders, including the minority stockholders, and must administer their duties for

3   the common benefit."  *Burt v. Irvine Co.*, 237 Cal. App. 2d 828, 850 (1965).

4        Plaintiff contends "Defendants repeatedly breached their fiduciary duties of

5   care and loyalty by failing to make a reasonable inquiry or conduct any due diligence

6   into transactions with KMBG and Adelaida, even though a clear conflict of interest

7   was present with these companies' owners and directors, and the transactions

8   benefitted the controlling shareholders at the expense of the Class B shareholders."

9   Dkt. 227 (Pl. Mot.) at 23.  In particular, Plaintiff notes: (1) there was no

10  documentation of the ATA board's consideration of conflicts of interest regarding

11  Elizabeth's ownership of KMBG in connection with the Adelaida Sale Agreement; (2)

12  the board did not obtain an appraisal or other independent valuation of Adelaida prior

13  to the sale; and (3) there is no evidence the board conducted an arm's length analysis

14  of the fair market interest rate for the Promissory Note or projected the financial effect

15  of the transaction on the controlling and minority shareholders.  *Id.* at 24.  Plaintiff

16  further argues Defendants Pierce, Gobe, Longorio, Durocher, and McCoy breached

17  their fiduciary duties of care and loyalty by ignoring the losses and potential self-

18  dealing involved with (1) allowing ATA and SDI "to provide wide-ranging services

19  [to Adelaida] for a small fraction of their value," (2) providing grapes to Adelaida at

20  artificially low prices, and (3) allowing Adelaida and KMBG to direct ATA's

21  ranching operations.  *Id.* at 25–26.

22       Viewing the evidence in the light most favorable to Defendants, the court finds

23  genuine disputes exists as to whether the D&O Defendants breached fiduciary duties

24  owed to ATA and its minority shareholders, including by failing to make a reasonable

25  inquiry into potential self-dealing by Elizabeth and Kedrin, and the effect of these

26  transactions on minority shareholders.  The court, therefore, will not grant partial

27  summary judgment in Plaintiff's favor on this basis.

28  / / /

The D&O Defendants separately move for summary judgment as to Plaintiff's breach of fiduciary duty claim against Duggan on the grounds that Plaintiff "failed to show what duties non-director Defendant Duggan had and how he breached any fiduciary duty." Dkt. 229 (D&O Mot.) at 22.  Plaintiff responds that "Duggan has held various managerial positions in ATA, SDI, and ATA Ranches during the timeframe when the act alleged took place," pursuant to which "Duggan had managerial authority and control over accounts related to the ranches and balances owed by affiliates Adelaida and KMBG." Dkt. 284 (citing Dkt. 284-1 ¶¶ 127–35). Armstrong testified at deposition that Duggan "kind of handled … all of the accounting for the affiliated companies." Dkt. 268 ¶ 132; Dkt. 255-50 (Pl. Ex. 72, Armstrong Dep.) at 8.

Viewing the evidence in the light most favorable to Plaintiff, the non-moving party, a reasonable jury could find Duggan participated in the management of ATA and exercised discretionary authority, and that he breached fiduciary duties in connection with the transactions between ATA and Adelaida.  *See GAB*, 83 Cal. App. 4th at 420–21.  The court, therefore, will not grant summary judgment in the D&O Defendants' favor on this basis.

In sum, the court DENIES the parties' Motions as to Plaintiff's breach of fiduciary duty claims against the D&O Defendants.

### 3.      Aiding and Abetting Breach of Fiduciary Duty by the D&O Defendants

"The elements of a claim for aiding and abetting a breach of fiduciary duty are: (1) a third party's breach of fiduciary duties owed to plaintiff; (2) defendant's actual knowledge of that breach of fiduciary duties; (3) substantial assistance or encouragement by defendant to the third party's breach; and (4) defendant's conduct was a substantial factor in causing harm to plaintiff." *Nasrawi v. Buck Consultants LLC*, 231 Cal. App. 4th 328, 343 (2014).

/ / /

Plaintiff contends the evidence clearly establishes the D&O Defendants knew "Elizabeth and Kedrin were directing ATA to pour millions of dollars annually into the Ranches (a business completely unrelated to its core business) for the benefit of an entity that the controlling shareholders owned," and helped facilitate these transfers despite knowing the harm they caused to ATA. Dkt. 227 (Pl. Mot.) at 28. The D&O Defendants respond Plaintiff fails to establish they had actual knowledge of a breach of fiduciary duty by Kedrin or Elizabeth. Dkt. 254 (D&O Opp'n to Pl. MSJ) at 23.

As General Counsel for ATA and SDI, Carter knew or should have known Kedrin owed ATA and its minority shareholders fiduciary duties as its controlling shareholder and director. Dkt. 268 ¶¶ 59, 121–22, 126; Dkt. 227-63 (Pl. Ex. 54). It is undisputed Carter received communications which indicated ATA was financially supporting Adelaida even after its sale to KMBG, including an email from Armstrong dated April 6, 2016, that stated: "Wondering if it's appropriate for SDI/ATA to be 'funding' KMBG/Adelaida routinely with no concrete plans to get paid back. Vincent has some tax concerns, appreciate your viewpoint from Legal perspective on this." Dkt. 286 ¶ 119; Dkt. 227-77 (Pl. Ex. 68). Despite being aware of ATA's officers' concerns regarding the company's relationship with Adelaida, Carter became a director of Adelaida in August 2016. Dkt. 286 ¶ 34. Carter also attended Adelaida's Financial Summit that month, during which it was recommended that Adelaida "[l]ower grape costs" to "get more income to Adelaida," and they decided to "[d]etermine whether Adelaida can take a discounted rate for grapes." Dkt. 286 ¶ 61; Dkt. 227-58 (Pl. Ex. 49) at 1, 6. Carter subsequently drafted both the ATA and KMBG Purchase Agreements, by which Adelaida agreed to pay ATA 6% less for grapes than KMBG. Dkt. 286 ¶ 68; Dkt. 255-35 (Pl. Ex. 38) at 1, 3.

This evidence is sufficient to establish Carter knew Kedrin owed fiduciary duties to ATA and its minority shareholders, knew Kedrin was breaching those fiduciary duties by engaging in a self-interested transaction that favored Adelaida, and gave her substantial assistance or encouragement to so act. Based on the undisputed

1   evidence, Plaintiff, thus, establishes a prima facie case against Carter for aiding and

2   abetting breach of fiduciary duties.  *See Neilson*, 290 F. Supp. 2d at 1118.  With

3   respect to the remaining D&O Defendants, viewing the evidence in the light most

4   favorable to the non-moving parties, the court finds genuine disputes exist as to

5   whether they aided and abetted breaches of fiduciary duty by Elizabeth and Kedrin.

6          The D&O Defendants argue Carter drafted the ATA Purchase Agreement at the

7   request of Longorio—not Elizabeth or Kedrin; however, they do not cite any specific

8   evidence in support of this contention.  Dkt. 254 (D&O Opp'n to Pl. Mot) at 24.  The

9   court will not independently search through the record for evidence to support these

10  Defendants' argument.  *See Carmen*, 237 F.3d at 1030.  Even if the court were to

11  assume arguendo that Longorio asked Carter, the General Counsel of ATA, to draft

12  the ATA Purchase Agreement, Defendants do not establish that such fact would be

13  relevant.  What matters here is not who asked Carter to draft the agreement, but

14  whether he knew Kedrin improperly favored Adelaida over ATA in this self-interested

15  transaction and substantially aided her in doing so.  As stated, the undisputed evidence

16  establishes clearly that he did.  Defendants, in turn, do not present evidence Carter and

17  Kedrin disclosed their conflicts of interest with respect to this and other transactions

18  involving Adelaida to Longorio before he would have asked Carter to draft the ATA

19  Purchase Agreement.  Defendants' argument, thus, fails.

20         In sum, the court finds the undisputed evidence establishes Carter aided and

21  abetted Kedrin's breach of fiduciary duties in connection with the ATA Purchase

22  Agreement, and GRANTS partial summary judgment in Plaintiff's favor on this issue.

23  The parties' Motions are otherwise DENIED as to the sixth cause of action against the

24  D&O Defendants.  As stated in connection with Plaintiff's claims for breach of

25  fiduciary duty, the court will address the parties' arguments regarding Defendants'

26  affirmative defenses separately below.

27  / / /

28  / / /

1         **4.**      **Aiding and Abetting Breaches of Fiduciary Duty by Adelaida**

2         The Adelaida Defendants argue the sixth cause of action for aiding and abetting

3 breach of fiduciary duty by a controlling shareholder fails as to Adelaida, because

4 Adelaida was the subject of the Adelaida Sale Agreement and not a party to the

5 transaction. Dkt. 226 (Adelaida Mot.) at 20–21. The sixth cause of action alleges the

6 D&O Defendants and Adelaida substantially assisted Elizabeth and Kedrin in

7 breaching fiduciary duties in connection with the 2013 Services Agreement and the

8 ATA Purchase Agreement—not the Adelaida Sale Agreement. *See* 4AC ¶¶ 172–76.

9 The Adelaida Defendants do not discuss these transactions or explain why Plaintiff

10 cannot state an aiding and abetting breach of fiduciary duty claim against Adelaida on

11 this basis. *See* Dkt. 226 (Adelaida Mot.) at 20–21. Accordingly, the court DENIES

12 Adelaida's request for partial summary judgment as to the sixth cause of action.

13       **C.**     **Plaintiff's Second Cause of Action for Waste**

14         "Claims of corporate waste in California are based upon Delaware state law."

15 *Swingless Golf Club Corp. v. Taylor*, 679 F. Supp. 2d 1060, 1070 (N.D. Cal. 2009).

16 In Delaware, "waste" is defined to mean "an exchange of corporate assets for

17 consideration so disproportionately small as to lie beyond the range at which any

18 reasonable person might be willing to trade." *White v. Panic*, 783 A.2d 543, 554 (Del.

19 2001). "As a practical matter, a stockholder plaintiff must generally show that the

20 board 'irrationally squandered' corporate assets-for example, where the challenged

21 transaction served no corporate purpose or where the corporation received no

22 consideration at all." *Id.* (brackets omitted). "To prevail on a waste claim…, the

23 plaintiff must overcome the general presumption of good faith by showing that the

24 board's decision was so egregious or irrational that it could not have been based on a

25 valid assessment of the corporation's best interests.'" *Id.* at 554 n. 36. Unless there is

26 reasonable doubt that the board was proceeding in the corporation's best interest, the

27 board's decisions are entitled to deference." *In re Zoran Corp. Derivative Litig.*, 511

28 F. Supp. 2d 986, 1019 (N.D. Cal. 2007) (citing *White*, 783 A.2d at 554). "Any

directors engaging in self-dealing and making misrepresentations to shareholders cannot be said to act in the corporation's best interest." *Id.*

Defendants contend Plaintiff cannot establish a prima facie case for waste because "Plaintiff cannot point to any transactions in which there was essentially no consideration received or where assets were literally given away." Dkt. 229 (D&O Mot.) at 24; *see also* Dkt. 226 (Adelaida Mot.) at 25–26. Plaintiff responds he "has substantial evidence that D&O Defendants allowed millions of dollars from ATA's and SDI's bank accounts to be spent for the benefit of companies owned and controlled by the controlling shareholder and thus was of no benefit to ATA/SDI." Dkt. 283 (Pl. Opp'n to Adelaida Mot.) at 26 (citing, *e.g.*, *In re Zoran*, 511 F. Supp. 2d at 1019); Dkt. 284 (Pl. Opp'n to D&O Mot.) at 29 (same).

As stated, the undisputed evidence establishes Elizabeth and Kedrin breached fiduciary duties they owed to ATA and its minority shareholders in connection with the terms of the Adelaida Sale Agreement and the ATA Purchase Agreement. Courts have recognized that self-dealing and self-interested transactions can form the basis of a claim for waste, as "self-dealing or self-interested transactions cannot be in the corporation's best interest." *See In re Zoran*, 511 F. Supp. 2d at 1019. Defendants do not cite any legal authority to establish otherwise. *See* Dkt. 262 (Adelaida Reply ISO Mot.) at 18; Dkt. 267 (D&O Reply ISO Mot.) at 17–18. The court, therefore, DENIES in part Defendants' Motions on this basis.

The D&O Defendants additionally argue Plaintiff's waste claim is improper as to Defendants Duggan and Carter, because "'a claim for waste will not lie against an officer as only directors may be liable for waste under Delaware law.'" Dkt. 229 (D&O Mot.) at 25 (quoting *In re Wonderwork, Inc.*, 611 B.R. 169, 207 (Bankr. S.D.N.Y. 2020)). Plaintiff does not respond to this argument in his opposition or identify any legal authority that allows a shareholder to assert a claim of waste against a corporate officer. *See* Dkt. 284 (Pl. Opp'n to D&O Mot.) at 29–30. The court, therefore, GRANTS in part summary judgment in Duggan and Carter's favor as to

21

1   Plaintiff's second cause of action for waste.

2         **D.    Defendants' Affirmative Defense of the Statute of Limitations**

3         In California, claims for breach of fiduciary duty and aiding and abetting

4   breaches of fiduciary duty are subject to a three-year statute of limitations under

5   California Code of Civil Procedure § 338(d), if based on fraud or mistake, or a four-

6   year statute of limitations otherwise, under the "catch-all statute" of California Code

7   of Civil Procedure § 343.  *William L. Lyon & Assocs., Inc. v. Super. Ct.*, 204 Cal.

8   App. 4th 1294, 1312 (2012).  As Plaintiff filed the initial Complaint on March 12,

9   2020 (Dkt. 1), any claims that accrued on or before March 12, 2016 or 2017, thus, are

10  barred by the applicable statute of limitations absent tolling.

11        "[U]nder the delayed discovery rule, a cause of action accrues and the statute of

12  limitations begins to run when the plaintiff has reason to suspect an injury and some

13  wrongful cause, unless the plaintiff pleads and proves that a reasonable investigation

14  at that time would not have revealed a factual basis for that particular cause of action."

15  *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 803 (2005).  "In that case, the

16  statute of limitations for that cause of action will be tolled until such time as a

17  reasonable investigation would have revealed its factual basis."  *Id.*  "Once a belated

18  discovery is properly pleaded, the question becomes whether the failure to discover

19  earlier the injury and its negligent cause was justifiable and reasonable so as to

20  prevent the running of the statute of limitations."  *Snow v. A.H. Robins Co.*, 165 Cal.

21  App. 3d 120, 128 (1985).  "Because the question of belated discovery depends on

22  facts and circumstances concerning the injury and discovery, it is an issue for the trier

23  of fact to decide."  *Id.*  "There are no hard and fast rules for determining what facts or

24  circumstances will compel inquiry by the injured party and render him chargeable

25  with knowledge."  *U.S. Liab. Ins. Co. v. Haidinger-Hayes, Inc.*, 1 Cal. 3d 586, 597

26  (1970).  However, whenever reasonable minds can draw only one conclusion from the

27  evidence, the question becomes one of law."  *Snow*, 165 Cal. App. 3d at 128.

28  / / /

1    "[T]he general rules relating to pleading and proof of facts excusing a late

2    discovery of fraud remain applicable to cases involving a confidential relationship."

3    *Bedolla v. Logan & Frazer*, 52 Cal. App. 3d 118, 131 (1975).  "The only distinction

4    between the rules of discovery in the ordinary fraud case and those in the confidential

5    relationship category is that in the latter situation the duty to investigate may arise

6    later by reason of the fact that the plaintiff is entitled to rely upon the assumption that

7    his fiduciary is acting in his behalf."  *Id.*  "But, once the plaintiff becomes aware of

8    facts which would make a reasonably prudent person suspicious, the duty to

9    investigate arises and the plaintiff may then be charged with the knowledge of facts

10   which would have been discovered by such an investigation."  *Id.*

11   Defendants contend the majority—if not all—of Plaintiff's claims are barred by

12   the applicable statute of limitations.  Dkt. 226 (Adelaida Mot.) at 18–20; Dkt. 229

13   (D&O Mot.) at 16–21.  Plaintiff responds he "had no reason to suspect that Elizabeth

14   and Kedrin would be able to engage in self-dealing that resulted in millions of dollars

15   being given to or spent for the benefit of Adelaida and KMBG" until November 2018,

16   "when Kedrin attempted to purchase ATA's ranches for herself and she made

17   representations to ATA's minority shareholders that caused Matthew to seriously

18   question how ATA and Adelaida were being run."  Dkt. 283 (Pl. Opp'n to Adelaida

19   Mot.) at 19–20 (citing Dkt. 283-1 ¶¶ 90–92); Dkt. 284 (Pl. Opp'n to D&O Mot.) at 17

20   (citing Dkt. 284-1 ¶¶ 104–06, 193); Dkt. 255-96 (Pl. Ex. 122, Letter from Kedrin

21   dated Nov. 5, 2018); Dkt. 255-15 (Pl. Ex. 16, emails dated Nov. 26–29, 2018).[9]

22   The Adelaida Defendants contend Plaintiff's claims accrued outside the

23   limitations period because: (1) the material terms of the sale of Adelaida were set forth

24

25   _____

26   [9] Defendants "dispute" several statements from Plaintiff's Statements of Genuine
     Disputes of Material Fact in Opposition to Defendants' Motions (Dkts. 264-1, 283-1)

27   without specific objections or citations to evidence.  *See, e.g.*, Dkt. 268 ¶¶ 105–06.
     Defendants' statements that certain facts are disputed are alone insufficient to

28   demonstrate genuine disputes regarding the facts presented.

1  in the minutes of the October 25, 2012 ATA and SDI Board of Directors' meeting; (2)

2  Plaintiff had direct access to the Chief Executive Officer of ATA and SDI and could

3  have asked for information regarding the sale of Adelaida; (3) Plaintiff was the

4  general manager of Adelaida during the 1990s and, therefore, knew or could have

5  learned through inquiry that Adelaida obtained its grapes from vineyards owned by

6  ATA and that ATA provided administrative services to support Adelaida; and (4)

7  Plaintiff was provided with ATA's combined audited financial statements and knew

8  or should have known that ATA's "ranching operations" were losing money in 2013

9  through 2015.  Dkt. 226 (Adelaida Mot.) at 12–15, 19–20 (citing Dkt. 226-3 ¶¶ 13–16,

10  25–27, 40–44).[10]

11       After reviewing the parties' arguments and evidence, the court finds a genuine

12  dispute exists regarding whether a reasonably prudent person in Plaintiff's position

13  would have suspected prior to November 2018 that Kedrin and Elizabeth were

14  engaged in self-dealing, aided by the D&O Defendants, as alleged.  *See Bedolla*, 52

15  Cal. App. 3d at 131.  Defendants contend that "[s]ince 2013, [Plaintiff] had both

16  knowledge of the sale of Adelaida from ATA to KMBG and the means to discover[]

17  any and all additional facts surrounding the sale, and the grape purchase[] agreements

18  and the service agreements."  Dkt. 226 (Adelaida Mot.) at 20; *see also* Dkt. 229 (D&O

19  Mot.) at 18.  A reasonable jury, however, could find Plaintiff assumed reasonably that

20

21  [10] The D&O Defendants contend Plaintiff knew or should have known details
22  regarding ATA's financial dealings with KMBG based on financial statements he
   received from ATA.  Dkt. 229 (D&O Mot.) at 18–21.  The D&O Defendants do not
23  cite any specific portions of the record in support of their arguments.  *See id.* at 9–15,
24  18–21; Dkt. 267 (D&O Reply ISO Mot.) at 9–11.  The court will not search through
   the record to try to identify evidence in support of the D&O Defendants' assertions.
25  *See Carmen*, 237 F.3d at 1030 ("[T]he district court may limit its review to the
   documents submitted for the purposes of summary judgment and those parts of the
26  record specifically referenced therein.  …  It is absurdly difficult for a judge to
27  perform a search, unassisted by counsel, through the entire record, to look for such
   evidence."); *Indep. Towers of Wash.*, 350 F.3d at 929 (same).  The court, therefore,
28  disregards the D&O Defendants' arguments as unsupported.

24

Defendants were acting on his behalf as fiduciaries and had no reason to suspect prior to November 2018, the self-dealing, breaches of fiduciary duty, and aiding and abetting breaches of fiduciary duty alleged.[11]  The court, therefore, DENIES in part the Adelaida and D&O Defendants' Motions on this basis.

### E.    Defendants' Affirmative Defense of the Business Judgment Rule

Under California law, the business judgment rule "has two components—one which immunizes directors from personal liability if they act in accordance with its requirements, and another which insulates from court intervention those management decisions which are made by directors in good faith in what the directors believe is the organization's best interest."  *Berg*, 178 Cal. App. 4th at 1045.  "Only the first component is embodied in [California] Corporations Code section 309."  *Id.*  "The broader rule is a judicial policy of deference to the business judgment of corporate directors in the exercise of their broad discretion in making corporate decisions."  *Id.* (quotation marks omitted).  "The rule establishes a presumption that directors' decisions are based on sound business judgment, and it prohibits courts from interfering in business decisions made by the directors in good faith and in the absence of a conflict of interest."  *Id.*  "A hallmark of the business judgment rule is that a court will not substitute its judgment for that of the board if the latter's decision can be

---

[11] The Adelaida Defendants cite *Miller v. Bechtel Corp.*, 33 Cal. 3d 868, 875 (1983), to argue "if (Plaintiff) became aware of facts which would make a reasonably prudent person suspicious, (Plaintiff) had a duty to investigate further, and (he) was charged with knowledge of matters which would have been revealed by such an investigation." Dkt. 226 (Adelaida Mot.) at 19.  In *Miller*, 33 Cal. 3d at 875, the California Supreme Court held the plaintiff there had reason to suspect the facts underlying her claims and conduct further investigation where the evidence in the record "establish[ed] without question that the attorneys who represented plaintiff … entertained serious doubts" within the limitations period, but "chose not to pursue their inquiry further despite their suspicions."  *Id.  Miller* is distinguishable from the case at hand, as there is no evidence that establishes "without question" that Plaintiff had reason to suspect Defendants breached fiduciary duties or aided and abetted breaches of fiduciary duty, prior to November 2018.

'attributed to any rational business purpose.'" *Id.* (quotation marks omitted).

"An exception to the presumption afforded by the business judgment rule accordingly exists in circumstances which inherently raise an inference of conflict of interest and the rule does not shield actions taken without reasonable inquiry, with improper motives, or as a result of a conflict of interest." *Id.* (quotation marks omitted). "It is clear that the rule does not protect a director in certain situations, such as where there is a conflict of interest, fraud, oppression, or corruption." *F.D.I.C. v. Castetter*, 184 F.3d 1040, 1046 (9th Cir. 1999). "Neither does the business judgment rule protect a director who has wholly abdicated his corporate responsibility, closing his or her eyes to corporate affairs." *Id.* "But the rule does protect well-meaning directors who are misinformed, misguided, and honestly mistaken." *Id.*

First, Plaintiff contends Kedrin and Elizabeth cannot rely on the business judgment rule to shield themselves from liability because they had "clear conflicts of interest in the transactions, but they did nothing to ensure that these deals were fair to all ATA shareholders." Dkt. 227 (Pl. Mot.) at 30–31; Dkt. 227-1 ¶¶ 93, 103. Under California law, a director is not protected from liability under the business judgment rule "where there is a conflict of interest, fraud, oppression, or corruption." *E.g.*, *Castetter*, 184 F.3d at 1046. The same is true under Texas law. *Sneed v. Webre*, 465 S.W. 3d 169, 186 (Tex. 2015). As stated, Plaintiff presents evidence Elizabeth and Kedrin held conflicts of interest in transactions between ATA and SDI on one side, and KMBG or Adelaida on the other, based on Elizabeth and Kedrin's significantly greater ownership interest in KMBG and Adelaida than ATA. *See* Dkt. 262-1 ¶¶ 6, 60, 62, 64, 146. Plaintiff, thus, meets his initial burden to establish Elizabeth and Kedrin may not assert the business judgment rule as an affirmative defense in connection with transactions between ATA and SDI on one side, and Adelaida or KMBG on the other.

The Adelaida Defendants do not dispute Elizabeth and Kedrin were conflicted in these transactions and argue instead that Plaintiff's claims are barred by the

business judgment rule because all decisions by the ATA/SDI board were unanimously approved by the independent board members.  Dkt. 245 (Adelaida Opp'n to Pl. MSJ) at 24–25, 30.  These Defendants do not cite any relevant legal authority to establish a controlling shareholder cannot be held liable for breaches of fiduciary duty in connection with a self-interested transaction that was approved by disinterested directors.  *See* Dkt. 245 (Adelaida Opp'n to Pl. MSJ) at 24–25, 30; Dkt. 262 (Adelaida Reply ISO Mot.) at 17.  Defendants, thus, fail to establish Elizabeth and Kedrin may assert the business judgment rule as an affirmative defense to Plaintiff's claims,[12] and the court GRANTS in part summary judgment in Plaintiff's favor as to Elizabeth and Kedrin's affirmative defense of the business judgment rule.

Second, Plaintiff contends Defendants Carter, Duggan, and Longorio are not protected by the business judgment rule under California law because the rule does not apply to officers, or directors acting in their roles as officers.  Dkt. 227 (Pl. Mot.) at 30 (citing *e.g.*, *Gaillard v. Natomas Co.*, 208 Cal. App. 3d 1250, 1265 (1989)).  The D&O Defendants respond that even if § 309 does not explicitly apply to Carter and Duggan, as officers of ATA, the decisions and transactions at issue were protected by the business judgment rule under California law.  Dkt. 254 (D&O Opp'n to Pl. Mot.) at 25.  As SDI is a Texas corporation, the D&O Defendants argue Carter and Duggan are entitled to protection under the business judgment rule under Texas law, with

---

[12] The Adelaida Defendants cite *Central Laborers' Pension Fund v. McAfee, Inc.*, 17 Cal. App. 5th 292, 335 (2017), and *Lyondell Chemical Co. v. Ryan*, 970 A.2d 235, 243–44 (Del. 2009)), to argue Plaintiff's claims are barred by the business judgment rule because "Plaintiff has proffered no evidence on which a reasonable trier of fact could conclude that the independent directors 'intentionally disregarded their duty.'"  Dkt. 245 (Adelaida Opp'n to Pl. MSJ) at 24–25, 30.  These cases are distinguishable from the facts at hand, as they did not involve claims by a minority shareholder against a controlling shareholder for transactions that disproportionately favored the controlling shareholder or undisclosed conflicts of interest, as is alleged here. Furthermore, these cases arose under Delaware law and are inapposite to the business judgment rule under California and Texas law, as is asserted here.  *See id.* at 24–25.

respect to Plaintiff's derivative claims on behalf of SDI.  *Id.* at 25–26 (citing *Sneed*, 465 S.W. 3d at 173 (holding the business judgment rule applies to both officers and directors under Texas law)).  Finally, the D&O Defendants argue Longorio is entitled to protection under the business judgment rule as he was both an officer and director of ATA and SDI.  *Id.* at 25.

Section 309(a) states, in relevant part: "A director shall perform the duties of a director … in good faith, in a manner such director believes to be in the best interests of the corporation and its shareholders and with such care, including reasonable inquiry, as an ordinarily prudent person in a like position would use under similar circumstances."  Cal. Corp. Code § 309(a).  "A person who performs the duties of a director in accordance with subdivisions (a) and (b) shall have no liability based upon any alleged failure to discharge the person's obligations as a director."  *Id.* § 309(c).  In *Gaillard*, 208 Cal. App. 3d at 1265 (brackets omitted), the California Court of Appeal recognized that § 309 "does not relate to the officers of the corporation, but only to directors," noting that "[a]n officer-director might be liable for particular conduct because of his capacity of an officer, whereas the other directors would not."  "This result is in accord with the premise of the business judgment rule that courts should defer to the business judgment of *disinterested* directors who presumably are acting in the best interests of the corporation."  *Id.* at 1265–66 (emphasis in original).

The purpose of the business judgment rule is to "immunize[] *directors* from personal liability if they act in accordance with its requirements" and "insulate[] from court intervention those management decisions which are made by *directors* in good faith in what the directors believe is the organization's best interest."  *Berg*, 178 Cal. App. 4th at 1045 (emphasis added).  Defendants do not cite any legal authority to establish or even suggest the California legislature intended the business judgment rule to immunize *transactions* or *decisions* by directors—rather than the directors themselves—or to extend protection from liability under this rule to corporate officers and other individuals who were involved in such transactions or decisions.  *Gaillard*,

28

1   208 Cal. App. 3d at 1265, holds the business judgment rule does not.

2       The court, therefore, GRANTS in part Plaintiff's Motion with respect to Carter

3   and Duggan's affirmative defense of the business judgment rule for transactions

4   involving ATA.  Plaintiff's Motion is DENIED on this issue with respect to (1) Carter

5   and Duggan for transactions involving SDI, and (2) Longorio, as genuine disputes

6   exist as to whether these Defendants are entitled to protection under the business

7   judgment rule, based on the evidence presented.

8       Third, Plaintiff contends the business judgment rule cannot "protect the other

9   directors, as they failed to exercise any oversight and supervision over these

10  transactions with Adelaida and KMBG[.]"  Dkt. 227 (Pl. Mot.) at 31.  Defendants, in

11  turn, contend they are entitled to summary judgment on Plaintiff's claims for breach

12  of fiduciary duty and aiding and abetting breach of fiduciary duty, under the business

13  judgment rule, because all relevant decisions were approved by a majority of

14  disinterested directors.  Dkt. 226 (Adelaida Mot.) at 17, 23–24; Dkt. 229 (D&O Mot.)

15  at 21–22.

16      The D&O Defendants cite *Casetter*, 184 F.3d at 1045, to argue that "[u]nder

17  California law, a prima facie showing of good faith and reasonable investigation is

18  established when a majority of the board is comprised of outside directors and the

19  board has received the advice of independent consultants."  Dkt. 267 (D&O Reply

20  ISO Mot.) at 12–13; Dkt. 254 (D&O Opp'n to Pl. Mot.) at 15, 26 (quotation marks

21  omitted).  The D&O Defendants do not cite or identify any specific evidence to

22  establish that a majority of ATI's board was comprised of outside directors or that

23  "legal counsel, officers, and other non-board members" provided advice on any of the

24  transactions at issue.  *See* Dkt. 267 (D&O Reply ISO Mot.) at 12–14; Dkt. 254 (D&O

25  Opp'n to Pl. Mot.) at 14–16, 25–27.  The court will not independently search through

26  the record for evidence to support these Defendants' argument.  *See Carmen*, 237 F.3d

27  at 1030.  Accordingly, the D&O Defendants fail to demonstrate they are entitled to

28  summary judgment on this basis.

Even if the court, however, were to assume arguendo that Defendants could establish they had made a prima facie showing of a good faith and reasonable investigation, Plaintiff presents sufficient evidence to demonstrate the existence of a genuine dispute on this issue.  As stated, the undisputed evidence establishes Elizabeth and Kedrin breached their fiduciary duties to ATA and its minority shareholders by engaging in self-interested transactions related to the Adelaida Sale Agreement and the ATA Purchase Agreement.  Defendants do not present any evidence to establish these conflicts of interest were fully disclosed to or understood by the independent directors when they approved the transactions at issue.  To the contrary, Defendants Gobe, Pierce, Durocher, and McCoy testified at deposition that they were unaware of and/or could not recall specific details regarding the ownership of KMBG and the transactions related to Adelaida.  Dkt. 268 ¶ 149; Dkt. 255-6 (Pl. Ex. 6, Pierce Dep.) at 9–17; Dkt. 255-7 (Pl. Ex 7, Gobe Dep.) at 7–9; Dkt. 255-9 (Pl. Ex. 9, Durocher Dep.) at 3–7; Dkt. 255-10 (Pl. Ex. 11, McCoy Dep.) at 3–5.  McCoy also testified at deposition that he had "no concern about the [ATA] board not weighing any potential conflict of interest" because "[t]he board approved the sale, and the board knew that Elizabeth was the buyer, … and the board had comfort that management had done the due diligence that the price was fair.  And the board relied on management's assessment in approving it[.]"  Dkt. 255-10 (Pl. Ex. 11) at 5; *see also* Dkt. 284 (Pl. Opp'n to D&O Mot.) at 23–24.

Based on the evidence presented, a reasonable jury could find ATA and SDI's boards failed to conduct a reasonable inquiry regarding conflicts of interest prior to authorizing the sale of Adelaida and the transactions at issue.  *See Castetter*, 184 F.3d at 1046 ("Neither does the business judgment rule protect a director who has wholly abdicated his corporate responsibility, closing his or her eyes to corporate affairs.").  The court, therefore, finds genuine disputes exists as to whether ATA's directors are immunized from liability under the business judgment rule and DENIES in part Defendants' Motions on this basis.

In sum, the court GRANTS partial summary judgment in Plaintiff's favor regarding Defendants' affirmative defense of the business judgment rule as to: (1) Kedrin and Elizabeth; and (2) Carter and Duggan for transactions involving ATA. The parties' Motions are otherwise DENIED on this affirmative defense.

### F.    Plaintiff's Third Cause of Action for an Accounting

Defendants move for summary judgment on Plaintiff's derivative claim for an accounting, arguing this cause of action fails for the same reasons as the first and second causes of action.  Dkt. 226 (Adelaida Mot.) at 26; Dkt. 229 (D&O Mot.) at 25. Having largely denied Defendants' Motions as to the first and second causes of action, the court similarly DENIES the Motions as to this claim.

### G.    Plaintiff's Fourth Cause of Action for Declaratory Relief

Plaintiff's fourth cause of action seeks a declaration that the ATA Purchase Agreement and ATA's services agreements with Adelaida are invalid, unenforceable, and/or voidable.  4AC ¶¶ 160–64.  "The Declaratory Judgment Act (the Act) permits a federal court to 'declare the rights and other legal relations' of parties to 'a case of actual controversy.'"  *Societe de Conditionnement en Aluminium v. Hunter Eng'g Co.*, 655 F.2d 938, 942 (9th Cir. 1981) (citing 28 U.S.C. § 2201).

The Adelaida Defendants move for summary judgment as to the fourth cause of action on two primary grounds.  First, the Adelaida Defendants contend there is no case of actual controversy with respect to the ATA Purchase Agreement because this agreement has already been terminated.  Dkt. 226 (Adelaida Mot.) at 21–22.  The Adelaida Defendants cite Duggan's deposition testimony as evidence this agreement was terminated by the parties in or around 2021.  *Id.* at 14; Dkt. 226-3 ¶ 38.  Duggan, however, did not state the parties terminated the agreement—he testified only that ATA was no longer receiving payment for grapes.  *See* Dkt. 226-1 (Tricker Decl. Ex. J) at 54–57.  This testimony does not support the Adelaida Defendants' argument.

/ / /

/ / /

31

Paragraph 9 of the ATA Purchase Agreement states:

> The term of this Agreement is for five years beginning 1 January 2016 and will automatically renew on each anniversary for an additional five year term unless terminated by either party by giving written notice to the other party at least 90 days prior to the end of the then-current five year term.

Dkt. 255-35 at 3.  The Adelaida Defendants do not present any evidence ATA or Adelaida terminated the ATA Purchase Agreement by giving the written notice required.  Accordingly, they fail to demonstrate Plaintiff lacks standing to seek termination of the ATA Purchase Agreement because it has already been terminated.

Second, the Adelaida Defendants contend Plaintiff cannot meet his burden to establish that the services agreement ATA entered into with Adelaida in 2017 is void or voidable under California Corporations Code § 310.  Dkt. 226 (Adelaida Mot.) at 22.  As stated in connection with Plaintiff's claims for breach of fiduciary duty, genuine disputes exist as to whether Kedrin and Elizabeth breached fiduciary duties to ATA and its minority shareholders in connection with the services agreements between Adelaida and ATA.  The court, therefore, DENIES in part the Adelaida Defendants' Motion on this basis.

Finally, the D&O Defendants contend Plaintiff's fourth cause of action fails for the same reasons as the first and second causes of action.  Having largely denied the D&O Defendants' Motion as to the first and second causes of action, the court likewise DENIES the Motion as to the fourth.

In sum, the court DENIES in part Defendants' Motions with respect to the fourth cause of action.

## H. Plaintiff's Seventh Cause of Action for an Order Compelling Production of Corporate Records

Plaintiff's seventh cause of action is a direct claim against ATA and the D&O Defendants for an order compelling the production of corporate records pursuant to California Corporations Code § 1601 ("§ 1601").  4AC ¶¶ 178–85.  Section

1601(a)(1) states, in relevant part:

> The accounting books, records, and minutes of proceedings of the shareholders and the board and committees of the board of any domestic corporation … shall be open to inspection at the corporation's principal office in California, … upon the written demand on the corporation of any shareholder or holder of a voting trust certificate at any reasonable time during usual business hours, for a purpose reasonably related to the holder's interests as a shareholder or as the holder of a voting trust certificate.

Cal. Corp. Code § 1601(a)(1).

Enforcement of a shareholder's right of inspection is set forth in California Corporations Code § 1603 ("§1603"), which provides:

> (a) Upon refusal of a lawful demand for inspection, the superior court of the proper county, may enforce the right of inspection with just and proper conditions or may, for good cause shown, appoint one or more competent inspectors or accountants to audit the books and records kept in this state and investigate the property, funds and affairs of any domestic corporation … and of any subsidiary corporation thereof, domestic or foreign, keeping records in this state and to report thereon in such manner as the court may direct.
>
> (b) All officers and agents of the corporation shall produce to the inspectors or accountants so appointed all books and documents in their custody or power, under penalty of punishment for contempt of court.
>
> (c) All expenses of the investigation or audit shall be defrayed by the applicant unless the court orders them to be paid or shared by the corporation.

*Id.* § 1603(b).  If the court finds a corporation's failure to comply with a proper demand under § 1601 was without justification, the court may reimburse the shareholder reasonable expenses incurred, including attorney's fees.  *Id.* § 1604.

Defendants contend a claim under § 1601 may only be brought against a corporation and not individual officers or directors.  Dkt. 245 (Adelaida Opp'n to Pl. Mot.) at 28–29 (citing *e.g.*, *JAH Interests V, LLC v. Nutrition 53, Inc.*, Case No. 2:21-cv-00173-JAM-KJN, 2021 WL 1813171, at *5 (E.D. Cal. May 6, 2021)); Dkt. 254

1  (D&O Opp'n to Pl. Mot.) at 27–28 (same).  Plaintiff, in turn, cites cases including

2  *Bairnson-Stoll v. Stone*, Case No. 8:16-cv-01532-DOC (JCGx), 2017 WL 11631210,

3  at *3 (C.D. Cal. Feb. 1, 2017), to argue a corporation's directors and officers can be

4  held liable under § 1601, because a corporation can only act through its directors,

5  officers, and other agents.  Dkt. 263 (Pl. Reply ISO Mot.) at 20.

6      Section 1603(a) grants courts the authority to "enforce the right of inspection

7  with just and proper conditions or … appoint one or more competent inspectors …."

8  Cal. Corp. Code § 1603(a).  Section 1603(b) allows the court to require "[a]ll officers

9  and agents of the corporation [to] produce to the inspectors … so appointed all books

10 and documents in their custody or power, under penalty of punishment for contempt

11 of court."  *Id.* § 1603(b).  Together, these provisions allow the court to enforce a

12 shareholder's right of inspection by ordering the officers and agents of a corporation

13 to produce documents to the shareholder for inspection.  *See id.* § 1603(a), (b).

14     The court, therefore, finds these statutes authorize a shareholder to bring an

15 action against the officers, directors, or other agents of a corporation for an order

16 enforcing their right of inspection.  However, as neither §§ 1603(c) or 1604 include or

17 discuss "officers and agents of the corporation," these statutes, on their face, do not

18 allow courts to award costs or expenses against a corporation's directors, officers, or

19 other agents.  *See* Cal. Corp. Code §§ 1603(c), 1604.  The court, therefore, holds

20 Plaintiff may assert the seventh cause of action against the D&O Defendants but may

21 only seek reimbursement of costs and expenses against ATA, and not the D&O

22 Defendants.

23     The D&O Defendants also argue the seventh cause of action fails as to ATA

24 because it was named only as a nominal Defendant in this action.  Dkt. 254 (D&O

25 Opp'n to Pl. MSJ) at 27, 29.  The court disagrees, as Plaintiff identified ATA as a

26 Defendant in the caption of the seventh cause of action (4AC at 50) and the D&O

27 Defendants filed an Answer on ATA's behalf (Dkt. 191).  The D&O Defendants do

28 not cite any legal authority to establish a plaintiff cannot assert claims or seek

substantive relief against a corporation while also bringing derivative claims on its behalf.  *See* Dkt. 254 (D&O Opp'n to Pl. MSJ).  Thus, the court will not grant partial summary judgment in ATA's favor on this basis.

Plaintiff moves for partial summary judgment as to the seventh cause of action on the grounds that: (1) he made multiple written requests to inspect ATA's corporate records on behalf of Plaintiff's Trusts in 2019; (2) Defendants delayed their response to Plaintiff's requests and did not produce or make available for inspection all records and information requested; and (3) Defendants did not have a legitimate justification for not permitting inspection or producing the documents requested.  Dkt. 227 (Pl. Mot.) at 32–33.  Having reviewed the evidence submitted, the court finds genuine disputes exist as to whether ATA reasonably and substantially complied with Plaintiff's inspection demands and/or whether any noncompliance was justified.  *See* Cal. Corp. Code §§ 1603(c), 1604.

In sum, the court DENIES the parties' Motions and requests for partial summary judgment with respect to the seventh cause of action for production of corporate records.

## I.    Plaintiff's Request for Punitive Damages

Under California law, a plaintiff may recover punitive damages "[i]n an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice[.]"  Cal. Civ. Code § 3294(a).  For purposes of this section:

> (1) "Malice" means conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others.

> (2) "Oppression" means despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights.

> (3) "Fraud" means an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the

35

1
2
intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury.

3
*Id.* § 3294(c).

4
5
6
7
Defendants move for summary judgment as to Plaintiff's request for punitive damages on the grounds that Plaintiff has failed to provide evidence any Defendant acted with oppression, fraud, or malice.  Dkt. 226 (Adelaida Mot.) at 27; Dkt. 229 (D&O Mot.) at 26–27.

8
9
10
11
12
13
14
15
16
After reviewing and considering the evidence submitted, and having found: (1) Elizabeth breached fiduciary duties with respect to the Adelaida Sale Agreement; (2) Kedrin breached fiduciary duties with respect to the ATA Purchase Agreement; and (3) genuine disputes exist as to whether Defendants breached or aided and abetted breaches of fiduciary duty they owed to ATA and its minority shareholders, in connection with other transactions between Adelaida and ATA, the court finds genuine disputes exist with respect to whether Defendants acted with malice, oppression, or fraud as defined under Cal. Civ. Code § 3294.  The court, therefore, DENIES in part Defendants' Motions as to Plaintiff's request for punitive damages.

17
### J.    Plaintiff's Request to Remove Kedrin as Successor Trustee

18
19
20
21
22
23
24
25
26
In the Prayer to the 4AC, Plaintiff requests the court remove and replace Kedrin Van Steenwyk as Successor Trustee of the Survivor's Trust.  4AC at 52.  The Adelaida Defendants contend Plaintiff has not pleaded any claims that would allow the court to remove Kedrin as the Successor Trustee.  Dkt. 226 (Adelaida Mot.) at 27.  Plaintiff responds he has agreed already to stipulate he is no longer requesting Kedrin's removal as Successor Trustee and will not seek such relief at trial.  Dkt. 283 (Pl. Opp'n to Adelaida Mot.) at 30.  Accordingly, the court GRANTS in part the Adelaida Defendants' Motion and STRIKES Plaintiff's request to remove Kedrin as Successor Trustee of the Survivor's Trust from the 4AC.

27
/ / /

28
/ / /

**CONCLUSION**

For the aforementioned reasons, the court GRANTS in part the Motions (Dkts. 226, 227, 229) and ORDERS as follows:

1. The court GRANTS partial summary judgment in Plaintiff's favor and holds:

   a. Elizabeth breached fiduciary duties owed to ATA and its minority shareholders in connection with the Adelaida Sale Agreement;

   b. Kedrin breached fiduciary duties owed to ATA and its minority shareholders in connection with the ATA Purchase Agreement;

   c. Carter aided and abetted Kedrin's breach of fiduciary duties in connection with the ATA Purchase Agreement;

   d. Elizabeth and Kedrin may not assert the business judgment rule as an affirmative defense; and

   e. Carter and Duggan may not assert the business judgment rule as an affirmative defense with respect to ATA.

2. The court GRANTS partial summary judgment in Defendants' favor on the following issues and claims:

   a. Plaintiff's second cause of action for waste against Carter and Duggan; and

   b. Plaintiff's request to remove Kedrin as the Successor Trustee of the Survivor's Trust.

3. The Motions are otherwise DENIED.[13]

4. The court RESETS the final pretrial conference for June 7, 2024 at 1:30 p.m. and the jury trial for June 25, 2024 at 8:15 a.m. The parties'

---

[13] Having denied the Motions for the reasons stated, the court need not address the parties' remaining arguments. The parties' evidentiary objections are OVERRULED without prejudice as moot.

1      amended first round of trial documents shall be due on May 10, 2024,

2      and their second round of trial documents shall be due on May 24, 2024.

3

4          IT IS SO ORDERED.

5

6   Dated: March 28, 2024

7                                                FERNANDO L. AENLLE-ROCHA
                                                United States District Judge
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28