MATTHEW DONALD UMHOFER, ESQ., SBN 206607
matthew@umklaw.com
J. ANTHONY KING, ESQ. SBN 297279
anthony@umklaw.com
DIANE H. BANG, ESQ., SBN 271939
diane@umklaw.com
**UMHOFER, MITCHELL & KING LLP**
767 S. Alameda Street, Suite 270
Los Angeles, CA 90021
Telephone: (213) 394-7979
Facsimile: (213) 529-1027

CHASE W. MARTIN, ESQ., SBN 260444
cmartin@ammcglaw.com
**ADAMSKI MOROSKI MADDEN CUMBERLAND & GREEN LLP**
Post Office Box 3835
San Luis Obispo, California 93403-3835
Telephone: (805) 543-0990
Facsimile: (805) 543-0980

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW D. VAN STEENWYK, Individually, as Trustee and Beneficiary of The Matthew Van Steenwyk GST Trust and The Matthew Van Steenwyk Issue Trust, and as Co-Trustee of The Gretchen Marie Van Steenwyk-Marsh GST Trust and The Gretchen Marie Van Steenwyk-Marsh Issue Trust and derivatively on behalf of Nominal Defendants APPLIED TECHNOLOGIES ASSOCIATES, INC., SCIENTIFIC DRILLING INTERNATIONL, INC. and ATA RANCHES, INC., <br><br>            Plaintiff, <br>  vs. <br><br>KEDRIN E. VAN STEENWYK, et al., <br>            Defendants, <br>and <br>APPLIED TECHNOLOGIES ASSOCIATES, INC., SCIENTIFIC DRILLING INTERNATIONAL, INC., and ATA RANCHES, INC., <br>            Nominal Defendants. | Case No.: 2:20-cv-02375-FLA-AJR <br><br>*Hon. Fernando L. Aenlle-Rocha* <br><br>**PLAINTIFF'S MOTION IN LIMINE # 4 TO EXCLUDE EVIDENCE RELATED TO THE 2021 TO 2023 APPRAISAL OF RANCHES, THE ATTEMPTED SALE OF ATA RANCHES, AND LITIGATION ARISING OUT OF THE ATTEMPTED SALES** <br><br>Hearing Date: June 7, 2024 <br>Time: 1:30 p.m. <br>Place: Courtroom 6B |

**TO THIS HONORABLE COURT, ALL PARTIES AND ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on June 7, 2024, or as soon as this matter may be heard in Courtroom 6B, 6th Floor of the above-titled Court, located at 350 West First Street, Los Angeles, California 90012, Plaintiff will and hereby does move the Court for an order excluding all evidence of, and related to any post-2020 evidence of Defendants' attempts to subsequently market and sell Defendants' ranch properties and Adelaida winery including (i) any valuations and appraisals of the ATA-owned ranches, (ii) any attempted sale of the ranches, and (iii) any litigation related to the ranches.

This evidence makes no fact at issue in this case more or less likely. The evidence is therefore irrelevant, and whatever minor probative value it may have provided is substantially outweighed by its significant danger of being unfairly prejudicial, confusing the issues, misleading the jury, wasting time, and causing undue delay under Federal Rules of Evidence 401, 402, and 403.

Moreover, Defendants seek to introduce this evidence using testimony from witnesses and documents that they have only just recently disclosed even though Plaintiff has been given no opportunity to test this evidence in discovery, as discovery closed over two years prior to this disclosure. Accordingly, any possible minimal probative value is heavily outweighed by the immense prejudice that Plaintiff would suffer.

The parties met and conferred about this motion on May 3, 2024. Counsel for Defendants confirmed they will present the aforementioned evidence and argument at trial.

This Motion is based upon this Notice of Motion and Motion, the below Memorandum of Points and Authorities, the Declaration of J. Anthony King in Support of Plaintiff's Motion in Limine #4 to Exclude Evidence Related to the 2022 to 2023 Appraisal of Ranches ("King Decl."), the Court's file in this matter, and any other oral and documentary evidence that may be presented at the hearing on this Motion.

| | |
|---|---|
| Dated: May 10, 2024 | **UMHOFER, MITCHELL & KING LLP** |
| | By:  */s/ Matthew Donald Umhofer*<br>Matthew Donald Umhofer<br>J. Anthony King<br>Diane H. Bang<br>*Attorneys for Plaintiff* |
| Dated: May 10, 2024 | **ADAMSKI MOROSKI MADDEN CUMBERLAND & GREEN LLP** |
| | By:  */s/ Chase Martin*<br>Chase Martin<br>*Attorneys for Plaintiff* |

# MEMORANDUM OF POINTS & AUTHORITIES

## I. INTRODUCTION

It is unsurprising that just a few weeks after this Court issued its summary judgment order on March 28, 2024—finding that the two controlling shareholders of ATA/SDI had breached their fiduciary duties—Defendants decided that they need to change the subject in this litigation, by manufacturing a sideshow about events that occurred well after this case was filed.

To that end, on April 22, 2024 (just two months before trial), Defendants served a new Rule 26 Disclosure that contained 11 new witnesses, well over 10,000 pages of documents, and pleadings, deposition transcripts, and court documents from other lawsuits regarding the controlling shareholders' efforts to sell two ranch properties in 2022 and 2023—which have nothing to do with the alleged breaches of fiduciary duty in 2012 to 2020 that are the subject of this case. Ironically, Defendants have repeatedly argued that no discovery should take place in the California state case because it would violate a U.S. District Court's order closing discovery in this case, yet they have now dumped in 196 new exhibits and 11 witnesses after the close of discovery that were only just disclosed a few weeks ago in Defendants' Second Supplemental Rule 26 disclosure. (Decl. of J. Anthony King ISO Pl.'s MIL #4 ("King Decl.") ¶ 3-6, Exs. 1-3.)

This evidence should be barred under FRCP Rule 37 and FRE 401 and 403, for at least four critical reasons:

*First*, as a threshold matter, the voluminous evidence that Defendants seek to have admitted was disclosed just two months before trial and over two years after discovery closed, thus it is barred under Rule 37 and for good reason—Plaintiff did not have the ability to propound document requests, draft interrogatories, or depose witnesses on these issues.

*Second*, the evidence and subject matter are not relevant to this litigation, as it is well beyond the relevant time period (2012 to 2020) of the operative complaint. Evidence of a failed sale in 2023 has no relevance to the claims in this case, as: (i) a

valuation in 2022 or 2023 has no relevance to what the value of the ranches were during the 2012 to 2020 relevant time period[1]; and critically, (ii) the rise or fall in value of land over time proves nothing about whether a fiduciary committed waste or self-dealing with the resources of the land and the money poured into it.[2] Because such evidence makes no issue of fact more or less likely, it is irrelevant under FRE 401.

***Third***, whatever minor probative value this evidence may provide (which is zero) is substantially outweighed by its significant danger of being unfairly prejudicial, confusing the issues, misleading the jury, wasting time, and causing undue delay under Federal Rules of Evidence 401, 402, and 403. Presenting evidence of the value of property in 2023 when the relevant time period ends in 2020, is misleading and likely to cause confusion.

***Lastly***, Defendants will suffer no prejudice if this red herring subject matter and its related evidence are barred here, as there are ***two*** other lawsuits that deal with this precise issue and time period—one filed by Defendants ATA and ATA Ranches in Texas, and one filed by Plaintiff in California state court.

Accordingly, any evidence or mention of the valuation of the Ranches or the circumstances surrounding any potential sale of the Ranches after the date of the Complaint (March 20, 2020) should be barred.

## II.  RELEVANT FACTUAL BACKGROUND

The complaint in this alleges misconduct by Defendants from 2012 to March 20, 2020—the date the complaint was filed. Discovery closed in this case on February 18, 2022. (*See* ECF No. 208.) When Plaintiff petitioned the Court to extend the discovery

---

[1] *See e.g.*, *Desert Citizens Against Pollution v. Bisson*, 231 F.3d 1172, 1185 (9th Cir. 2000) (Bureau of Land Management Handbook Manual "provides that an appraisal is presumed to be valid for only six months"); *In re Kelly*, No. 12-15258-JNF, 2013 WL 6536539, at *4 (Bankr. D. Mass. Dec. 13, 2013) (under industry standards, an appraisal that is over a year old is considered stale and not a current valuation).

[2] *See, e.g., Pension Tr. Fund for Operating Engineers Loc. 3 v. McMorgan & Co.*, 2006 WL 2788340, at *2 (E.D. Cal. Sept. 26, 2006) (despite defendants' alleged mismanagement of properties, the properties subsequently increased in value).

deadline, Defendants opposed it. (*See* ECF No. 281.) Yet, just two years later—on April 22, 2024—Defendants served a Second Supplemental Rule 26 Disclosure that contained 11 new witnesses, well over 10,000 pages of documents, and pleadings, deposition transcripts, and other court documents. (King Decl. ¶ 3, Ex. 1.)

The documents and witnesses are from two other lawsuits that are actually about the subject matter that Defendants want to improperly drag into this case: the potential sale of the ranches during the 2022 and 2023 time period. These two other cases are currently pending in California and Texas state courts.

Plaintiff filed a case in California state court ("SLO Case") in May 2023 after Defendants told Plaintiff that they intended to sell the Ranches, but were going to keep the proceeds to indemnify themselves in this litigation rather than distribute the money to the shareholders, as would be expected. In other words, the minority shareholders would be made to pay for the transgressions of Defendants. Plaintiff thus had no choice but to file a lawsuit to address the controlling shareholder's (Kedrin) and directors' and officers' new, post-2020 malfeasance. Because these events were clearly outside of the bounds of the complaint of the instant matter (and discovery had long since closed), Plaintiff filed this case in the Superior Court of San Luis Obsipo County.

Conversely, in June 2023, ATA and ATA Ranches filed a retaliatory lawsuit against Plaintiff and his attorney, Matthew Umhofer, in Texas state court (the "Texas Case") to avoid California's strong anti-SLAPP statute, which would have ended Defendants' litigation before it even got off the ground. Defendants' claims that Plaintiff and his attorney interfered with the sale by Mr. Umhofer merely fielding due diligence calls from prospective ranch buyers inquiring about this pending federal case.

Defendants now seek to introduce an enormous amount of evidence from the California State Case and Texas Case, as is evidenced by their additions to their witness and exhibit lists. Defendants have added 17 new witnesses and an additional new 196 exhibits that were never disclosed prior to the close of discovery, and instead were only just disclosed a few weeks ago in Defendants' Second Supplemental Rule 26 disclosure

and additional trial exhibits. (King Decl. ¶ 3-5, Exs. 1-2.)

## III. LEGAL ANALYSIS

### A. BELATED EVIDENCE RELATED TO POST-COMPLAINT VALUATION AND SALE OF THE RANCHES IS BARRED BY FRCP RULE 37 AND FRE 403

Over two years after discovery closed in this case and only two months before trial, Defendants now seek to introduce numerous witnesses and hundreds of exhibits at trial that have never been disclosed before. The Federal Rules of Civil Procedure do not tolerate such "trial by ambush" tactics.

Rule 26(e)(1) states, in relevant part, that "[a] party… who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response." Fed. R. Civ. P. 26(e)(1). The supplementation or correction must be done "***in a timely manner*** if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." *Id.* at 26(e)(1)(A).

And "if a party fails to provide information . . . as required by Rule 26(a) or (e), the party **is not allowed to use that information** . . . to supply evidence… **at a trial**, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1) (emphasis added). The evidentiary sanction has been applied regardless of the importance of the information or witness excluded—"[c]ourts have upheld the use of the sanction even when a litigant's entire cause of action or defense has been precluded." Yeti by Molly, Ltd., 259 F.3d at 1106 (citations omitted). In fact, the Advisory Committee specifically contemplated the conundrum Plaintiff now faces. The Advisory Committee notes to the 1993 Amendment states that the evidentiary sanction is "self-executing" and "automatic," and meant to "provide[] a strong inducement for disclosure of material that the disclosing party would expect to use as evidence, whether at a trial, at a hearing, or on a motion…." Fed. R. Civ. P. 37(c), Adv. Comm. Notes to 1993 Amendment.

In other words, Rule 37 does not permit a party to just dump a laundry list of witnesses and documents that they have never produced in this litigation after the discovery deadline has closed and only two months before trial—especially, whereas here, Defendants have been in possession, custody and control of these documents and having knowledge of these witnesses for months, if not years.

Indeed, the documents that they now seek to admit stem from Defendants' own efforts to sell the Ranches in 2022 and 2023 and the documents reflect that same vintage. (*See* King Decl. ¶ 5 (Defs.' Ex. Nos. 2213-2407).) Because they were undeniably in possession, custody, and control of the documents and knew about the witnesses, their failure to timely disclose the information bars this evidence.

Even ignoring Rule 37's bar, the introduction of such belatedly disclosed evidence would be extremely prejudicial to Plaintiff, as discovery has long since closed thus depriving Plaintiff of his opportunity to conduct his own discovery regarding these freshly disclosed issues, witnesses, and documents, or provide expert testimony to rebut the veracity of their claims. FRE 403; *see cf. Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292–93 (9th Cir. 2000) (after discovery deadlines have passed, cannot assert new theories to defend against as that would prejudice the opposing party who no longer has the ability to conduct discovery regarding the new theory). Accordingly, this evidence must be precluded.

### B. THE RANCHES VALUE IN 2022 AND BEYOND IS IRRELEVANT TO THIS LITIGATION AND WOULD ONLY CONFUSE THE JURY

Even if such evidence was not untimely, the subject matter that Defendants intend to introduce in this lawsuit regarding the 2023 sale and valuation of the ranches is still problematic as it has no relevance to the claims at issue. *First*, putting aside how wildly inconsistent these valuations are, the reality is that the price of the Ranches after 2020 simply has no relevance to the issues in this case. *See e.g., Desert Citizens Against Pollution v. Bisson*, 231 F.3d 1172, 1185 (9th Cir. 2000) (Bureau of Land Management Handbook Manual "provides that an appraisal is presumed to be valid for only six

months"); *In re Kelly*, No. 12-15258-JNF, 2013 WL 6536539, at *4 (Bankr. D. Mass. Dec. 13, 2013) (under industry standards, an appraisal that is over a year old is considered stale and not a current valuation). Plaintiff's claims regarding the Ranches center on (1) the money that directors and controlling shareholders of ATA funneled into Adelaida and the Ranches from 2012 to 2020 for the benefit of Adelaida (and thereby the controlling shareholders); and (2) the value of the Ranches in 2018 that ATA lost when Defendants transferred the Ranches to a subsidiary controlled by Defendants, ATA Ranches, Inc. Both claims are distinctly independent of the value of the Ranches in 2021 *and* beyond. Thus, any evidence of the Ranches' valuation post-2020 is irrelevant and should be excluded. See FRE 401.

*Second*, Defendants have not, and cannot, provide any legal authority or theory that allows for a mitigation of off-set against damages for breaches of fiduciary duty or corporate waste because the market value of an asset increased two or more years later. Rather, as the law recognizes, the value of property is market driven and is not correlated with the stewardship of the land. Land can appreciate in value despite even egregious mismanagement of the land's resources; conversely, land can sharply depreciate in value despite even the most responsible stewardship of its resources. *See Pension Tr. Fund for Operating Engineers Loc. 3 v. McMorgan & Co.*, No. CIVS06904 WBS JFM, 2006 WL 2788340, at *2 (E.D. Cal. Sept. 26, 2006) (despite defendants' alleged mismanagement of properties, the properties subsequently increased in value); *cf. W. States Petroleum Assn. v. Bd. of Equalization*, 57 Cal. 4th 401, 433 (2013) ("land values tend to appreciate over time … [and] depreciation in the value of the fixtures is generally offset by appreciation in the value of the land." Thus, any alleged increase in value in 2021 or beyond has no probative value in determining the damages or any other fact in this case.

*Third*, this evidence should be barred because it is highly prejudicial and is likely to confuse the jury. It is quite evident that Defendants are aiming to confuse and mislead the jury by showing large appraisal values and sales offers and then claiming that these

"valuations" were somehow the result of Defendants' brilliant decision to "invest" money into the Ranches (i.e., run annual operating losses in excess of $1 million to subsidize Adelaida). As explained above, this speculative evidence of offers to purchase and appraisals in 2022 and 2023, has no bearing on the value of the Ranches in 2020 or before. Defendants' post-2020 speculative valuations of the Ranches and attempted sale are thus irrelevant here, and introducing them greatly risks confusing and distracting the jury from the central issues—wrongful revenue allocation and the wasteful transactions that benefitted Defendants' company to the detriment of ATA. *See* Fed. R. Evid. 403 ("relevant … evidence may be excluded if its probative value is substantially outweighed by the danger of … confusion of the issues, or misleading the jury....").

### C. EVIDENCE RELATED TO SALE OF RANCHES AND LITIGATION

Similarly, the Court should exclude the subject matter, filings, and California State and Texas Litigation because the probative value of those cases is severely outweighed by the prejudicial effect and risk of confusion of introducing them. Courts routinely exclude a party's involvement in other litigation where the risk of prejudice is outweighed by the probative value. *See, e.g., In re Homestore.com, Inc.*, No. CV 01-11115, 2011 WL 291176, at *1 (C.D. Cal. Jan. 25, 2011) ("[R]eference to or evidence of Plaintiff's involvement in other litigation is also irrelevant and carries with it a high risk of prejudice."); *Hynix Semiconductor Inc. v. Rambus Inc.*, No. CV-00-20905, 2008 WL 504096, at *2 (N.D. Cal. Feb. 19, 2008) (excluding as substantially more prejudicial than probative evidence that would require explaining a separate litigation).

Here, Defendants seek to manufacture a controversy about Plaintiff and his counsel's alleged involvement in the attempted sale of the Ranches in 2023. This has nothing to do with Defendants' breach of fiduciaries duties from 2012 to 2020. Nor do they provide insight into what Defendants owe ATA based on their breach of fiduciary duty from 2012 to 2020. *See cf. In re: Cathode Ray Tube (Crt) Antitrust*, No. C-07-5944 JST, 2016 WL 5871243, at *8 (N.D. Cal. Oct. 7, 2016) (violations by a plaintiff, however, are generally irrelevant to whether a defendant is liable for its own violations).

...

1  And by their nature, such evidence can create an "undue tendency" for the jury to decide against Plaintiff on "an improper basis," such as the mere existence of allegations in a Texas court against Plaintiff and counsel for allegedly tortiously interfering with the sale of the Ranches (again, they did not)—which has nothing to do with the issues in this case. *See White v. Ford Motor Co.*, 500 F.3d 963, 977 (9th Cir. 2007) (quoting Fed. R. Evid. 403, advisory committee's note.). Rule 403 was intended to prevent precisely this risk. The Court should therefore exclude such evidence.

Moreover, permitting Defendants to introduce evidence of unrelated litigation and actions would needlessly and significantly expand the breadth of the factual presentation at trial, "wasting time" and causing "undue delay" in an already complicated trial. Fed. R. Evid. 403. For example, for Plaintiff to defend against Defendants' suggestion that the SLO and Texas Litigation support their arguments here, Plaintiff would need to present detailed evidence and witness testimony related to each of those cases. The effect would be to convene two "mini trials" that would waste time and "distract the jury from the real issue in the trial." *Bair v. Callahan*, 664 F.3d 1225, 1230 (8th Cir. 2012); *see also Tennison v. Circus Circus Enters., Inc.*, 244 F.3d 684, 690 (9th Cir. 2001) (affirming the exclusion of evidence under Rule 403 that posed the risk of creating a "mini trial" that would be "an inefficient allocation of trial time").

Moreover, Defendants will suffer no prejudice as there are two pending litigations in which they can raise these same arguments and submit this evidence. Accordingly, evidence of the SLO and Texas Litigation should be excluded at trial.

## IV. CONCLUSION

For the foregoing reasons, the Court should grant Plaintiff's Motion in Limine #4 to exclude any post-2020 evidence regarding the appraisals and valuations of the Ranches, the attempted sale of the Ranches, and the SLO and Texas Litigation.

Dated: May 10, 2024                **UMHOFER, MITCHELL & KING LLP**

By:   */s/ Matthew Donald Umhofer*
      Matthew Donald Umhofer
      J. Anthony King
      Diane H. Bang
      *Attorneys for Plaintiff*

Dated: May 10, 2024                **ADAMSKI MOROSKI MADDEN CUMBERLAND & GREEN LLP**

By:   */s/ Chase Martin*
      Chase Martin
      *Attorneys for Plaintiff*

9
*PLAINTIFF'S MOTION IN LIMINE #4 – ATTEMPTED SALE OF ATA RANCHES*