MATTHEW DONALD UMHOFER (SBN 206607)
matthew@umklaw.com
J. ANTHONY KING (SBN 297279)
anthony@umklaw.com
DIANE H. BANG (SBN 271939)
diane@umklaw.com
**UMHOFER, MITCHELL & KING LLP**
767 S. Alameda Street, Suite 270
Los Angeles, CA 90021
Telephone: (213) 394-7979
Facsimile: (213) 529-1027

CHASE W. MARTIN (SBN 260444)
cmartin@ammcglaw.com
**ADAMSKI MOROSKI MADDEN
CUMBERLAND & GREEN LLP**
Post Office Box 3835
San Luis Obispo, California 93403-3835
Telephone: (805) 543-0990
Facsimile: (805) 543-0980

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW D. VAN STEENWYK, et al., | Case No.: 2:20-cv-02375-FLA-AJRx |
| Plaintiff, | *Hon. Fernando L. Aenlle-Rocha* |
| vs. | **PLAINTIFF'S TRIAL BRIEF** |
| KEDRIN E. VAN STEENWYK, et al., | FPTC: June 7, 2024 |
| Defendants, | Trial: June 25, 2024 |

*PLAINTIFF'S TRIAL BRIEF*

1

## **TABLE OF CONTENTS**

2

**PAGE**

3   I.   INTRODUCTION ................................................................................. 1

4       A.   Nature of the Proceedings ....................................................... 1

5       B.   Status of the Proceedings ........................................................ 3

6   II.   RELEVANT FACTUAL BACKGROUND ......................................... 3

7       A.   Elizabeth Ran ATA and SDI until 2016, When Kedrin Took Control ...... 3

8       B.   In 2018, Matthew Sensed Issues With the Company's Affairs. ............... 4

9   III.   PLAINTIFF'S CLAIMS ..................................................................... 4

10   IV.   DEFENDANTS' AFFIRMATIVE DEFENSES .................................. 6

11       A.   First Affirmative Defense—Standing .................................... 7

12       B.   Second Affirmative Defense—Unclean Hands ....................... 7

13       C.   Third Affirmative Defense—Statute of Limitations ............... 7

14       D.   Fourth Affirmative Defense—Waiver ................................... 10

15       E.   Fifth Affirmative Defense—Business Judgment Rule ........... 10

16       F.   Sixth Affirmative Defense—Pre-Suit Demand ..................... 11

17       G.   Seventh Affirmative Defense—Laches ................................. 11

18   V.   BIFURCATION OF ISSUES ............................................................ 12

19   VI.   EQUITABLE RELIEF ...................................................................... 12

20       A.   Declaratory Relief ................................................................ 12

21       B.   Injunctive Relief .................................................................. 15

22   VII.   ATTORNEY'S FEES ....................................................................... 21

23   VIII.   ABANDONMENT OF ISSUES ....................................................... 21

24   CERTIFICATE OF COMPLIANCE ............................................................ 23

25

26

27

28

# TABLE OF AUTHORITIES

## CASES                                                                PAGE(S)

Am. Ctr. for Educ., Inc., v. Cavnar,
  80 Cal. App. 3d 476 (1978) ...............................................................16

Art Movers, Inc. v. Ni West, Inc.,
  3 Cal. 4th 640 (1992) ........................................................................18

Aryeh v. Canon Business Solutions, Inc.,
  55 Cal. 4th 1185 (2013) ...................................................................8, 9

Bernson v. Browning-Ferris Indus. of Cal., Inc.,
  7 Cal. 4th 926 (1994) ..........................................................................8

Braude v. Auto. Club of S. Cal.,
  78 Cal. App. 3d 178 (1978) ...............................................................17

Cent. Laborers' Pension Fund v. McAfee, Inc.,
  17 Cal. App. 5th 292 (2017) .............................................................16

Communist Party v. 522 Valencia, Inc.,
  35 Cal. App. 4th 980 (1995) .........................................................18, 19

Cont'l W. Ins. Co. v. ASAP Hauling, LLC,
  No. 20-cv-04063, 2021 WL 150017 (W.D. Mo. Jan. 15, 2021) .............14

Dallas v. Goldberg,
  143 F. Supp. 2d 312 (S.D.N.Y. 2001) ...............................................12

DeGarmo v. Goldman,
  19 Cal. 2d 755 (1942) .......................................................................16

Eisenbaum v. W. Energy Res., Inc.,
  218 Cal. App. 3d 314 (1990) .........................................................8, 10

F.D.I.C. v. Faigin,
  No. CV 12-03448, 2013 WL 3389490 (July 8, 2013)............................11

Feuer v. Thompson,
  Nos. 10-CV-00279, 12-CV-00203, 2013 WL 2950667 (N.D. Cal. June 14, 2013) 17

Fox v. Ethicon Endo-Surgery, Inc.,
  35 Cal. 4th 797 (2005) ........................................................................8

Gaillard v. Natomas Co.,
  208 Cal. App. 3d 1250 (1989) ...........................................................11

Glenbrook Cap. Ltd. P'ship v. Kuo,
  525 F. Supp. 2d 1130 (N.D. Cal. 2007).............................................17

Hangarter v. Provident Life & Acc. Ins. Co.,
  373 F.3d 998 (9th Cir. 2004) .............................................................12

Hobbs v. Bateman Eichler, Hill Richards, Inc.,
  164 Cal. App. 3d 174 (1985) ...............................................................8

*PLAINTIFF'S TRIAL BRIEF*

<u>Huitt v. Teva Pharms. USA, Inc.</u>,
No. 22-cv-00954, 2020 WL 5642369 (E.D. Cal. Sept. 22, 2020)............................9

<u>In re Clary's Est.</u>,
203 Cal. 335 (1928) ....................................................................................8

<u>In re NVIDIA Corp. Derivative Litig.</u>,
Master File No. C-06-06110, 2008 WL 5382544 (N.D. Cal. Dec. 22, 2008)..........17

<u>In re Real Estate Assocs. Ltd. P'ship Litig.</u>,
223 F. Supp. 2d 1109 (C.D. Cal. 2002) ....................................................14

<u>IP Telesis, Inc. v. Velocity Networks, Inc.</u>,
Case No. CV 11-09950, 2012 WL 12886966 (C.D. Cal. June 25, 2012) ...............16

<u>Johnson v. Tago, Inc.</u>,
188 Cal. App. 3d 507 (1986) ......................................................................16

<u>Kirkwood v. Cal. State Auto. Ass'n Inter-Ins. Bureau</u>,
193 Cal. App. 4th 49 (2011) .....................................................................17

<u>Kruss v. Booth</u>,
185 Cal. App. 4th 699 (2010) ....................................................................11

<u>Lamar Co. v. Cont'l Cas. Co.</u>,
No. CV-05-320, 2006 WL 1210228 (E.D. Wash. 2006)..............................13

<u>Lucasfilm Ltd. v. EZ2FLY, Inc.</u>,
No. CV 10-2575, 2011 WL 13214281 (C.D. Cal. June 29, 2011) .........................18

<u>Lund v. Albrecht</u>,
936 F.2d 459 (9th Cir. 1991) ....................................................................19

<u>Marsicano v. Bank of America, N.A.</u>,
CV 16-6189, 2016 WL 10968664 (C.D. Cal. Dec. 19, 2016)...................................8

<u>McGraw–Edison Co. v. Preformed Line Prods. Co.</u>,
362 F.2d 339 (9th Cir. 1966) ....................................................................14

<u>MedImmune, Inc. v. Genentech, Inc.</u>,
549 U.S. 118 (2007)....................................................................................13

<u>Meister v. Mensinger</u>,
230 Cal. App. 4th 381 (2014) ...................................................................20

<u>Micron Tech., Inc. v. Mosaid Techs., Inc.</u>,
518 F.3d 897 (Fed. Cir. 2008) ...................................................................13

<u>Miller v. Bechtel Corp.</u>,
33 Cal. 3d 868 (1983) ................................................................................10

<u>Moreno v. Sanchez</u>,
106 Cal. App. 4th 1415 (2003) .....................................................................8

<u>Murphy v. Am. Gen. Life Ins. Co.</u>,
74 F. Supp. 3d 1267 (S.D. Cal. 2015)......................................................19

<u>Palm Springs Villas II Homeowners Ass'n, Inc. v. Parth</u>,
248 Cal. App. 4th 268 (2016) ...................................................................11

<u>Patton v. Sherwood</u>,
152 Cal. App. 4th 339 (2007) ...................................................................16

*PLAINTIFF'S TRIAL BRIEF*

Prakashpalan v. Engstrom, Lipscomb & Lack,
   223 Cal. App. 4th 1105 (2014) .................................................................19
Ramirez v. Navarro,
   No. 23-55112, 2024 WL 1874993 (9th Cir. Apr. 30, 2024).........................9
Santana v. BSI Fin. Servs., Inc.,
   495 F. Supp. 3d 926 (S.D. Cal. 2020)......................................................19
Sass v. Cohen,
   10 Cal. 5th 861 (2020) ......................................................................19, 20
Shell Gulf of Mex., Inc. v. Ctr. for Biological Diversity, Inc.,
   771 F.3d 632 (9th Cir. 2014) ...................................................................14
Synthes Inc. v. Emerge Med., Inc.,
   No. 11-1566, 2014 WL 2616824 (E.D. Pa. June 11, 2014) ......................15
Teselle v. McLoughlin,
   173 Cal. App. 4th 156 (2009) ..................................................................19
Teutscher v. Woodson,
   835 F.3d 936 (9th Cir. 2016) ...................................................................12
Union Bank v. Superior Ct.,
   31 Cal. App. 4th 573 (1995) ....................................................................20
United Nat'l Ins. Co. v. R&D Latex Corp.,
   242 F.3d 1102 (9th Cir. 2001) .................................................................14
United States v. Laerdal Mfg. Corp.,
   73 F.3d 852 (9th Cir. 1995) .....................................................................18
Unpingco v. Hong Kong Macau Corp.,
   935 F.2d 1043 (9th Cir. 1991) ...................................................................8
Verdier v. Superior Ct.,
   88 Cal. App. 2d 527 (1948) ...............................................................19, 21
Warren v. Warren,
   240 Cal. App. 4th 373 (2015) ..................................................................20
Wilton v. Seven Falls Co.,
   515 U.S. 277 (1995).................................................................................14
Woodall v. Walt Disney Co.,
   Case No. CV 20-3772, 2021 WL 2982305 (C.D. Cal. Apr. 14, 2021) ......9
Xerox Corp v. Apple Computer, Inc.,
   734 F. Supp. 1542 (N.D. Cal. 1990).........................................................13
Yamauchi v. Cotterman,
   84 F. Supp. 3d 993 (N.D. Cal. 2015)........................................................14

**REGULATIONS**

28 U.S.C. § 2201(a) ........................................................................................13
California Civil Code section 3422 .................................................................18
California Corporations Code section 1601 .............................................2, 4, 6

California Corporations Code section 304 .................................................16
California Corporations Code section 800 .............................................4, 7
Section 1604 of the California Corporations Code ...................................21

**OTHER AUTHORITIES**

California Practice Guide: Civil Procedure Before Trial ¶ 3:136 (The Rutter Group February 2022 Update) ........................................................8
1 Ann Taylor Schwing, California Affirmative Defenses ¶ 25:65 (2d ed. July 2023 Update) ........................................................................................8

*PLAINTIFF'S TRIAL BRIEF*

Pursuant to Local Rule 16-10, Plaintiff Matthew D. Van Steenwyk respectfully submits the following Trial Brief to clarify the few issues remaining for trial.

## I.    INTRODUCTION

Kedrin Van Steenwyk and her mother Elizabeth exploited their roles as controlling shareholders. They caused the Company[1] (which services and equips firms involved in oil and gas exploration) to improperly funnel tens of millions of dollars to bankroll their pet project, Adelaida Cellars, a money-losing winery[2], at the expense of minority shareholders. The Company's Directors and Officers aided and abetted Elizabeth and Kedrin in breaching their fiduciary duties and breached their own fiduciary duties owed to the Company and its minority shareholders by rubber-stamping the self-dealing transactions and helping to facilitate them. Plaintiff Matthew Van Steenwyk ("Matthew")[3] contends that these fiduciary breaches and the reckless waste of corporate assets resulted in significant damages to the Company and its minority shareholders.

### A.    __Nature of the Proceedings__

Many of the principal issues of this case were resolved on summary judgment. (See Order on Mots. for Summ. J. ("MSJ Order") at 37, ECF No. 342; see also Order on Defs. Mot. For Recon. at 1, ECF No. 392.) Defendants Memorandum of Contentions of Fact and Law ("Defendants' Memo," ECF No. 351) is a thinly veiled attempt to undo

---

[1]  Defendants Applied Technologies Associates ("ATA"), a California corporation, and its sister company, Scientific Drilling International ("SDI"), a Texas corporation are collectively referred to as the "Company." ATA and SDI operate under common ownership and management. ATA Ranches, Inc. ("ATA Ranches"), a Delaware corporation, is a wholly owned subsidiary of ATA.

[2] Adelaida is wholly owned by KMBG LLC, a Colorado limited liability company controlled and 99% owned by Elizabeth.

[3] Plaintiff Matthew Van Steenwyk is the trustee of his trusts and his sister Gretchen's trusts, which own a minority interest in ATA and SDI. Specifically, Matthew and Gretchen's Trusts each own a 23.75% equity interest in ATA and 22.6% equity interest in SDI, holding non-voting Class B shares of both entities. Matthew, through Matthew's Trusts, owns a _de minimis_ interest in KMBG of 0.16736%, and Gretchen's Trusts own no interest in KMBG. Matthew brought this lawsuit on behalf of Gretchen and himself.

*PLAINTIFF'S TRIAL BRIEF*

1  these findings and obfuscate the issues to be decided at trial.[4] The Court has already
2  found that controlling shareholders Kedrin and Elizabeth breached their fiduciary duties
3  to the Company and its minority shareholders, Matthew and Gretchen. (See MSJ Order
4  at 37.) It also found that the Company's General Counsel and Secretary, Defendant
5  Daniel Carter, aided and abetted Kedrin and Elizabeth in their breaches. (Id.)
6  Additionally, Kedrin, Elizabeth, Carter, and the Company's Chief Financial Officer
7  ("CFO"), Kieran Duggan,[5] may not assert the business judgment rule as an affirmative
8  defense. (Id.)

9      With Elizabeth and Kedrin's breaches established with respect to the sale of
10  Adelaida and grape purchase agreement respectively,  Plaintiff will prove at trial: (i)
11  further breaches of fiduciary duty by Kedrin and Elizabeth; (ii)  breaches of fiduciary
12  duties by the Company's Directors and Officers, (iii) commission of corporate waste;
13  (iv) violations of shareholder inspection rights under California Corporations Code
14  section 1601; and (v) damages on behalf of the Company and its minority shareholders.
15  He will also present evidence rebutting Defendants' hollow statute of limitations and
16  business judgment rule defenses.

17      Matthew will also be seeking equitable remedies, including an accounting and
18  declaratory and injunctive relief. The Court confirmed that it will hear all the evidence
19  and rule on Plaintiff's equitable claims for relief following the jury trial, and that it does

20
21
22

---

23      [4] For example, in Defendants' Memo, they argue that the business judgment rule
24  precludes liability against Elizabeth and Kedrin under Delaware law. Meanwhile, the Court already granted summary judgment in Plaintiff's favor as to Elizabeth and Kedrin's affirmative defense of the business judgment rule on March 28, 2024, thus
25  precluding them from asserting the business judgment rule. (Compare Defendants' Memo at 17 with MSJ Order at 27.)

26      [5] Duggan is Kedrin's stepson who was appointed as the Treasurer and Assistant
27  Secretary of ATA and SDI in July 2020, and currently serves as the CFO of both entities. Duggan also has served as a Director of Adelaida since May 2018 and as an officer of
28  ATA Ranches since 2020.

not need a whole separate trial on equitable claims.[6] (See ECF No. 406 ("FPTC Transcript") at 133:19–25.)

### B. Status of the Proceedings

On June 7, 2024, this Court held a final pretrial conference and advanced the start of trial to Monday, June 24, at 8:30 a.m. This Court ruled that each side will have 15 hours of trial time. The Court set another pretrial conference ahead of trial for Thursday, June 20, 2024, at 9:00 a.m. (ECF No. 403.)

## II.   RELEVANT FACTUAL BACKGROUND

### A. Elizabeth Ran ATA and SDI until 2016, When Kedrin Took Control

ATA and SDI—the two parent companies at issue in this case—share common ownership and management. Elizabeth, the family matriarch, served as the Director and controlling shareholder—i.e., the sole Class A shareholder—of both ATA and SDI from 2010 to June 2016.

In June 2016, Kedrin declared her mother Elizabeth *non compos mentis* and admitted her to a memory care facility. With Elizabeth sidelined, Kedrin stepped in as successor trustee which allowed her to seize control as the controlling shareholder of ATA and SDI. Kedrin also took control of Adelaida through her controlling interest of KMBG.[7]

Before 2013, ATA owned Adelaida Cellars. In early-2013, ATA sold Adelaida to KMBG, a company that was owned and controlled by Elizabeth.[8] Kedrin now holds controlling ownership interest in KMBG, is the managing member of KMBG, and serves as the CEO and a Director of Adelaida. Kedrin also receives compensation from ATA and SDI for her service as a Director.

---

[6] This Court may also order post-trial briefing on these issues if it believes it is necessary.

[7] The 1996 Trust owns the substantial majority membership interest in KMBG and Kedrin is expected to receive a 51% majority interest in KMBG once Elizabeth's estate is settled.

[8] When ATA sold Adelaida to KMBG, ATA's Class B shareholders essentially lost their ownership interest in Adelaida to Elizabeth.

*PLAINTIFF'S TRIAL BRIEF*

### B.   In 2018, Matthew Sensed Issues With the Company's Affairs.

In November 2018, Matthew's brother Brett presented him with a troubling email from Kedrin. ATA's HMR and Viking Ranches (the "Ranches"), which provide grapes to Adelaida Cellars, had been burning through almost $2 million of cash per year. According to Kedrin, unless Matthew and his siblings each forked over $500,000 annually to keep the Ranches afloat, he, Gretchen, and Brett would have to sell the Ranches to Kedrin at a below-market price. This disturbing email spurred Matthew to seek information about why ATA was hemorrhaging money on the Ranches. He especially grew concerned that Kedrin, as ATA's controlling shareholder and Director, may have been funneling transactions through the Ranches to finance Adelaida—the winery owned by KMBG, and where Kedrin served as CEO, Director, and controlling shareholder.

In mid-2019, Matthew made multiple requests on behalf of the trusts he represents for ATA's corporate information, pursuant to California Corporations Code section 1601. But ATA failed to produce most of the requested documents, causing Matthew to begin suspecting that Kedrin, Elizabeth, and the D&O Defendants really had something to hide. The stonewalling responses prompted Matthew and Gretchen to demand corrective action from the ATA Board under California Corporations Code section 800. When the Board did nothing, Matthew took the fight to court.

Discovery has since uncovered—and this Court has now ruled on—what Matthew suspected: that Elizabeth and Kedrin used ATA and SDI as a pocketbook to divert money to themselves and finance their passion project, Adelaida, at the Class B shareholders' expense.

## III.   PLAINTIFF'S CLAIMS

Plaintiff has brought the following claims:

- Claim 1 (Derivative Claim For Breaches Of Fiduciary Duty): Defendants violated their fiduciary duties to the Company and shareholders, including without limitation their duties of care, good faith, honesty, and loyalty.

o This Court already found Elizabeth and Kedrin "breached fiduciary duties owed to ATA and its minority shareholders, in connection with the [2013] Adelaida Sale Agreement and ATA [Grape] Purchase Agreement, respectively." (MSJ Order at 15.)

- Claim 2 (Derivative Claim For Corporate Waste): D&O Defendants[9] caused ATA to waste valuable corporate assets.

- Claim 3 (Derivative Claim For Accounting): D&O Defendants failed and refused to provide the requested accounting of the transactions and occurrences about which Plaintiff complains, thereby forcing Plaintiff to file this Complaint seeking the Court's order compelling the requested accounting.

- Claim 4 (Derivative Claim For Declaratory Relief): The 2016 Agreement for Services, the 2017 Agreement for Services, and the ATA Grape Purchase Agreement, were and are invalid and unenforceable or, at least, voidable. Plaintiff desires a judicial determination of and declaration on these contract issues.

- Claim 5 (Direct Claim For Breach Of Fiduciary Duty By Controlling Shareholder): Elizabeth and Kedrin breached fiduciary duties owed to Plaintiff and trusts he represents, and other minority shareholders.

o This Court already found Elizabeth and Kedrin liable for breach of fiduciary duty by a controlling shareholder. (MSJ Order at 8–15.)

- Claim 6 (Direct Claim For Aiding And Abetting Breach Of Fiduciary Duty By Controlling Shareholder): ATA/SDI's directors and officers, along with Adelaida's, aided and abetted Kedrin's and Elizabeth's breaches of fiduciary duties by ensuring the Company's funding continued to flow to Adelaida, causing the Company to lose over a million dollars annually.

---

[9] "D&O Defendants" refers to all individual defendants, including Kedrin and Elizabeth.

*PLAINTIFF'S TRIAL BRIEF*

o   This Court already found Carter aided and abetted Kedrin's and Elizabeth's breaches of their fiduciary duties as controlling shareholders. (MSJ Order at 19.) The liability of the other directors and officers, as well as Adelaida, remains to be tried. Adelaida knew that it was reliant on the Company's funding to survive, thus its officers and directors (e.g., Elizabeth, Kedrin, Carter, and Duggan) and employees, actively worked to ensure that the Company's funding of its expenses continued to flow despite it causing the Company to hemorrhage over a million dollars in losses per year. Likewise, the Director Defendants helped facilitate the flow of funds from ATA to the Ranches or for other expenses that benefitted companies owned by the controlling shareholders, Adelaida and KMBG.

- Claim 7 (Direct Claim For Order Compelling Production Of Corporate Records): Plaintiff made multiple written requests to Defendants to inspect ATA and Adelaida's corporate records and information pursuant to California Corporations Code section 1601. Defendants purposefully delayed their response to Plaintiff's statutory requests for corporate records and information and did not produce or make available for inspection all records and information requested. Defendants did not have any legitimate justification for not permitting inspection or producing the requested documents.

## IV.   DEFENDANTS' AFFIRMATIVE DEFENSES

Defendants have asserted the following affirmative defenses:

- First Affirmative Defense: Plaintiff lacks standing to bring some or all of the claims he alleges in the Complaint.

- Second Affirmative Defense: Plaintiff's claims are barred by the doctrine of unclean hands.

*PLAINTIFF'S TRIAL BRIEF*

- <u>Third Affirmative Defense</u>: Plaintiff's claims are barred by the relevant statutes of limitations.
- <u>Fourth Affirmative Defense</u>: Plaintiff's claims are barred by waiver, as he has been fully aware of the facts and circumstances giving rise to the claims he asserts for years yet failed to take action or raise objection.
- <u>Fifth Affirmative Defense</u>: Plaintiff's claims are barred by the business judgment rule.
- <u>Sixth Affirmative Defense</u>: Plaintiff's claims are barred because he did not make an adequate pre-suit demand pursuant to Corporations Code section 800 and other relevant law.
- <u>Seventh Affirmative Defense</u>: Plaintiff's claims are barred by laches.

## A. **First Affirmative Defense—Standing**

It is unknown what arguments the defense may make on this point, and Defendants may have abandoned this affirmative defense.

## B. **Second Affirmative Defense—Unclean Hands**

It is unknown what arguments the defense may make on this point, and Defendants may have abandoned this affirmative defense.

## C. **Third Affirmative Defense—Statute of Limitations**

As elucidated in Plaintiff's response to Defendants' motion for summary judgment on this issue, the statute of limitations does not bar any of Plaintiff's claims here because of the discovery rule.

The statute of limitations *only* begins to run when the "plaintiff suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her." <u>Bernson v. Browning-Ferris Indus. of Cal., Inc.</u>, 7 Cal. 4th 926, 932 (1994); Justice Kathleen M. Banke, et al., <u>California Practice Guide: Civil Procedure Before Trial</u> ¶ 3:136 (The Rutter Group February 2022 Update) ("[S]uspicion must relate to the elements of 'wrongdoing, causation, and harm.'") (citing <u>Fox v. Ethicon Endo-Surgery, Inc.</u>, 35 Cal. 4th 797, 807 (2005).)

1    But in a fiduciary relationship—as is the case here—the "statute of limitations

2    does not run where the parties occupy a fiduciary relationship toward each other, so long

3    as such relationship is not repudiated." In re Clary's Est., 203 Cal. 335, 341 (1928); see

4    also Moreno v. Sanchez, 106 Cal. App. 4th 1415, 1424 (2003) ("Delayed accrual of a

5    cause of action is viewed as particularly appropriate where the relationship between the

6    parties is one of special trust such as that involving a fiduciary, confidential or privileged

7    relationship.") In fact, in this scenario, "[w]here a fiduciary relationship exists the usual

8    duty of diligence to discover facts does not exist." Unpingco v. Hong Kong Macau

9    Corp., 935 F.2d 1043, 1045 (9th Cir. 1991) (citations omitted); see also 1 Ann Taylor

10   Schwing, California Affirmative Defenses ¶ 25:65 (2d ed. July 2023 Update).

11   Indeed, "facts which ordinarily require investigation may not incite suspicion and

12   do not give rise to a duty of inquiry" where a fiduciary relationship exists. Hobbs v.

13   Bateman Eichler, Hill Richards, Inc., 164 Cal. App. 3d 174, 201–02 (1985). Thus, a

14   "plaintiff's burden of discovery is reduced and he is entitled to rely on the statements

15   and advice provided by the fiduciary." Eisenbaum v. W. Energy Res., Inc., 218 Cal.

16   App. 3d 314, 324 (1990).

17   Defendants' reliance on Marsicano v. Bank of America, N.A., CV 16-6189, 2016

18   WL 10968664, at *1, *3 (C.D. Cal. Dec. 19, 2016) is mistaken as that case deals with

19   tolling the statute of limitations in mortgage- and loan-related cases where a plaintiff

20   failed to thoroughly read agreements that he signed. Moreover, the plaintiff in Marsicano

21   did not rely on a fiduciary. Id. Defendants also disingenuously cite to Aryeh v. Canon

22   Business Solutions, Inc., 55 Cal. 4th 1185, 1198 (2013) arguing that the continuing

23   violations doctrine does not apply here, because the "doctrine can toll a statute of

24   limitations only when the injury alleged is 'the product of a series of small harms, any

25   one of which may not be actionable on its own.'" (Defendants' Memo at 14, n.2 (quoting

26   Aryeh, 55 Cal. 45th at 1197).) But Plaintiff never alleges that; rather, Plaintiff repeatedly

27   alleges a pattern of actions by Defendants resulting in harm to the Company and

28   Plaintiff. (See, e.g., Fourth Am. Compl. ("4AC") ¶¶ 145, 148, 152, 169, ECF No. 179.);

Aryeh, 55 Cal. 45th at 1198 ("Allegations of a pattern of reasonably frequent and similar acts may, in a given case, justify treating the acts as an indivisible course of conduct actionable in its entirety, notwithstanding that the conduct occurred partially outside and partially inside the limitations period."). This is exactly the type of conduct the continuous violations doctrine addresses. Id. at 1198 (continuing violation doctrine applies in cases where "a wrongful course of conduct became apparent only through the accumulation of a series of harms.").

Defendants further misrepresent Ramirez v. Navarro, No. 23-55112, 2024 WL 1874993, at *2 (9th Cir. Apr. 30, 2024), a case where a family "**knew** of [the defendant's wrongful] actions [prior to the statute of limitations period]." Id. (emphasis added). The court held that the continuous violation doctrine ultimately did not apply for that reason, and also because "the [defendant] **never had** an ongoing, recurring obligation to the [plaintiff]." Id. (emphasis added).[10] In our case, Matthew was unaware of Elizabeth, Kedrin, and the board's wrongful actions prior to the limitations period, as their wrongful conduct was not disclosed to him. He only became suspicious in 2018 after he saw Kedrin's emails disclosing how much money the ranches were losing. And Defendants had a continuous obligation to uphold their fiduciary duties to the Company and to its shareholders, including to Matthew. Defendants have conceded, and this Court has affirmed, that Defendants owed Matthew fiduciary duties during the relevant period. (MSJ Order at 11:4–7) Accordingly, Matthew should have been able to rely upon his fiduciaries to act in his best interest, and he did not have a duty to ferret out Defendants' wrongdoing. Eisenbaum, 218 Cal. App. 3d at 324.

This Court should disregard Defendants' already rejected arguments relying on Miller v. Bechtel Corp., 33 Cal. 3d 868, 875 (1983) in Defendants' Memo. As this Court

---

[10] Defendants' other cases are also inapposite. Woodall v. Walt Disney Co., Case No. CV 20-3772, 2021 WL 2982305, at *9 (C.D. Cal. Apr. 14, 2021) ("Plaintiff alleges he was aware of Defendants' alleged wrongful conduct [prior to the statute of limitations period]"); Huitt v. Teva Pharms. USA, Inc., No. 22-cv-00954, 2020 WL 5642369, at *3 (E.D. Cal. Sept. 22, 2020) (continuing violations doctrine triggered by ongoing conduct of the defendant, not other parties).

already explained in its summary judgment order, "<u>Miller</u> is distinguishable from the case at hand." (MSJ Order at 25 n.11.) The Court went on, "there is no evidence that establishes 'without question' that Plaintiff had reason to suspect Defendants breached fiduciary duties or aided and abetted breaches of fiduciary duty, prior to November 2018." (<u>Id.</u>) Thus, a reasonable jury "could find Plaintiff assumed reasonably that Defendants were acting on his behalf as fiduciaries and had no reason to suspect prior to November 2018, the self-dealing, breaches of fiduciary duty, and aiding and abetting breaches of fiduciary duty alleged." (<u>Id.</u> at 24–25.)

### D.      <u>Fourth Affirmative Defense—Waiver</u>

It is unknown what arguments the defense may make on this point, and Defendants may have abandoned this affirmative defense. Any arguments on this point would fail for the same reasons Defendants' statute of limitations arguments fail.

### E.      <u>Fifth Affirmative Defense—Business Judgment Rule</u>

On summary judgment, the Court already found that Elizabeth, Kedrin, Carter, and Duggan are not entitled to protection under the business judgment rule. (MSJ Order at 25–31.) The Court also denied Defendants' summary judgment on this affirmative defense with respect to all other defendants.

The evidence that the business judgment rule does not shield defendants is the same as the evidence that establishes the breaches of fiduciary duty enumerated above.

Defendants cannot succeed in their business judgment rule contentions. First, in California, directors who were acting in their capacity as officers (<u>i.e.</u>, Longorio) are not protected by the business judgment rule. <u>Gaillard v. Natomas Co.</u>, 208 Cal. App. 3d 1250, 1265 (1989) (holding that because the directors were "acting as officer employees of the corporation[] . . . the business judgment rule therefore should not apply").

Second, "[t]he business judgment rule does not shield actions taken without reasonable inquiry, *with improper motives, or as a result of a conflict of interest*." <u>Kruss v. Booth</u>, 185 Cal. App. 4th 699, 728 (2010); <u>accord</u> <u>F.D.I.C. v. Faigin</u>, No. CV 12-03448, 2013 WL 3389490, at *5 (July 8, 2013) ("The rule does not protect a

director 'where there is a conflict of interest, fraud, oppression, or corruption,' nor does it protect 'a director who has wholly abdicated his corporate responsibility, closing his or her eyes to corporate affairs.'") (citation omitted). Indeed, "whether a director exercised reasonable diligence is one of the 'factual prerequisites' to application of the business judgment rule." <u>Palm Springs Villas II Homeowners Ass'n, Inc. v. Parth</u>, 248 Cal. App. 4th 268, 280 (2016) (citations omitted).

The business judgment rule cannot protect the remaining defendants, as they failed to exercise any oversight and supervision over these transactions with Adelaida and KMBG, but rather served as a rubber stamp as to Elizabeth's and Kedrin's wishes. None of the directors made any attempt to analyze the financial implications of the transactions discussed above, much less made a serious effort to determine the financial effects on the different classes of shareholders, despite the conflicts of interest present that made such an analysis critical to prevent self-dealing. In fact, D&O Defendants' own testimony is quite clear that they failed to make *any* inquiry as to whether these related party transactions were fair to the company and the minority shareholders. Nor do any of the ATA/SDI Board meeting minutes show any such consideration. This lack of diligence precludes the application of the business judgment rule.

## F.   Sixth Affirmative Defense—Pre-Suit Demand

As the Court held in denying Defendants' motions to dismiss, "Plaintiff has pleaded sufficient facts of his demand to the ATA board to state derivative claims against the Director Defendants on behalf of ATA." (Order Denying Mot. to Dismiss at 12, ECF No. 137.) Plaintiff will prove those "sufficient facts" at trial—in particular, through Plaintiff's October 17, 2019 letter to the ATA board and other letters and communications.

## G.   Seventh Affirmative Defense—Laches

It is unknown what arguments the defense may make on this point, and Defendants may have abandoned this affirmative defense. Any arguments on this point

would fail, however, because Defendants cannot show inexcusable delay and the existence of prejudice.

## V.    BIFURCATION OF ISSUES

Defendants recently filed a motion for bifurcation. As set more fully in Plaintiff's opposition brief, bifurcation is not in the interests of judicial economy. See Hangarter v. Provident Life & Acc. Ins. Co., 373 F.3d 998, 1021 (9th Cir. 2004). It is the exception, not the rule. Dallas v. Goldberg, 143 F. Supp. 2d 312, 315 (S.D.N.Y. 2001) ("[B]ifurcation remains the exception rather than the rule."). This Court will rule on bifurcation at the June 20 pretrial conference.

## VI.   EQUITABLE RELIEF

It is appropriate for this Court to address the equitable claims for relief immediately following the jury's verdict at the conclusion of trial, based on the evidence and testimony presented at trial and the clear factual findings from the jury. Teutscher v. Woodson, 835 F.3d 936, 945 (9th Cir. 2016).

### A.    Declaratory Relief

Plaintiff seeks declaratory relief from this Court, declaring that: (i) Director Defendants have breached and/or aided and abetted the breach of their fiduciary duties to ATA, SDI, and ATA Ranches; (ii) controlling shareholders, Elizabeth and Kedrin, breached their fiduciary duties to the minority shareholders by paying themselves constructive dividends and preventing dividends from being paid to the minority; (iii) Director Defendants, Adelaida, and Defendant Duggan aided and abetted Kedrin and Elizabeth in their breach of fiduciary duties to the minority shareholders; and (iv) Director Defendants, Kedrin, and Adelaida are liable under the common law of unjust enrichment.

The Declaratory Judgment Act provides that "[in] a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. §

2201(a). For the Act to apply, the plaintiff must show a "substantial controversy[,] between parties having adverse legal interests[,] of sufficient immediacy and reality to warrant the issuance of declaratory judgment." <u>Micron Tech., Inc. v. Mosaid Techs., Inc.</u>, 518 F.3d 897, 901 (Fed. Cir. 2008) (citing <u>MedImmune, Inc. v. Genentech, Inc.</u>, 549 U.S. 118, 127 (2007)). This requires a "substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality," which has 'crystallized to the point that there is a specific need'" for a declaratory judgment. <u>Xerox Corp v. Apple Computer, Inc.</u>, 734 F. Supp. 1542, 1546 (N.D. Cal. 1990) (citation omitted).

Here, the Act enables this Court to grant relief given the substantial controversy between the parties regarding the fiduciary duties Defendants owed to Plaintiff and Defendants' breaches of those duties through their complex, self-interested business dealings, which have harmed and will continue to harm Plaintiff absent declaratory relief. The immediacy of the declaratory relief sought is evident given that this litigation has proliferated into two other pending lawsuits (one in California state court and one in Texas state court), where Defendants continue to repudiate the fiduciary duties they owed to Plaintiff and seek indemnification through surreptitious sales of corporate assets. <u>See</u> <u>Lamar Co. v. Cont'l Cas. Co.</u>, No. CV-05-320, 2006 WL 1210228, at *4 (E.D. Wash. 2006) ("[Plaintiff's] declaratory judgment action is a 'concrete case' involving a dispute which is neither abstract or hypothetical, i.e., whether [defendant] breached various duties owed to [plaintiff] by virtue of the settlement agreement negotiated and executed in the [prior] lawsuit.").

The Court has discretion to grant declaratory relief in cases involving claims for breaches of fiduciary duties. The Act "expands the remedies available in federal courts" so parties can "determine whether they have any legal obligations to their potential adversaries." <u>Shell Gulf of Mex., Inc. v. Ctr. for Biological Diversity, Inc.</u>, 771 F.3d 632, 635 (9th Cir. 2014); <u>see also</u> <u>Yamauchi v. Cotterman</u>, 84 F. Supp. 3d 993, 105 (N.D. Cal. 2015) ("The Declaratory Judgment Act places a 'remedial arrow in the district

court's quiver.'") (citing <u>Wilton v. Seven Falls Co.</u>, 515 U.S. 277, 288 (1995)). While district courts have discretion to decline jurisdiction over declaratory claims, "when other claims are joined with an action for declaratory relief (e.g., bad faith, breach of contract, *breach of fiduciary duty*, rescission, or claims for other monetary relief), the district court should not, as a general rule, remand or decline to entertain the claim for declaratory relief." <u>See</u> <u>United Nat'l Ins. Co. v. R&D Latex Corp.</u>, 242 F.3d 1102, 1112 (9th Cir. 2001) (emphasis added) (citations omitted); <u>see</u> <u>also</u> <u>Cont'l W. Ins. Co. v. ASAP Hauling, LLC</u>, No. 20-cv-04063, 2021 WL 150017, at *4 (W.D. Mo. Jan. 15, 2021) ("District courts entertain declaratory judgment actions brought for the determination of tort claims, *including claims for breach of fiduciary duty*.") (emphasis added).

The Ninth Circuit guides this Court to consider declaratory judgments when (1) they clarify and settle the legal relations at issue; and (2) they afford relief from the controversy giving rise to the proceeding. <u>See</u> <u>McGraw–Edison Co. v. Preformed Line Prods. Co.</u>, 362 F.2d 339, 342 (9th Cir. 1966).

As a prophylactic measure, Plaintiff seeks a declaration that Defendants breached their fiduciary duties to deny Defendants indemnification by the corporate entities if judgment is entered against them. Other courts have supported this form of declaratory relief. <u>See, e.g.</u>, <u>In re Real Estate Assocs. Ltd. P'ship Litig.</u>, 223 F. Supp. 2d 1109, 1138 (C.D. Cal. 2002) (denying defendants' motion for summary judgment on plaintiffs' prayer for a declaration that defendants breached their fiduciary duties and thus are not entitled to indemnification); <u>Synthes Inc. v. Emerge Med., Inc.</u>, No. 11-1566, 2014 WL 2616824, at *27 (E.D. Pa. June 11, 2014) (declining jurisdiction over the prayer for declaratory relief regarding an aiding and abetting breach of fiduciary duty claim because the court had already decided that the defendant "was entitled to summary judgment on this claim. Accordingly, the declaratory judgment action on this claim is moot.").

This suit meets the prerequisites of the Declaratory Judgment Act, and other district courts have granted similar relief in fiduciary duty cases. Given the need to clarify the legal relationships in dispute and for immediate relief, this Court should declare that Defendants breached and/or aided and abetted breaches of fiduciary duties, thus preventing Defendants from avoiding consequences through indemnification.

**B.**   **Injunctive Relief**

Plaintiff seeks injunctive relief from this Court, specifically that the Court: (i) direct ATA, SDI, ATA Ranches, and Director Defendants to take all necessary actions to reform and improve their corporate governance and internal procedures to comply with applicable laws and to protect ATA, ATA Ranches, and their shareholders from a repeat of the damaging events described herein, including:

(a) removing directors and officers engaged in wrongdoing, and

(b) putting forward for shareholder vote resolutions for appropriate amendments to ATA's and ATA Ranches' Bylaws or Articles of Incorporation;

(ii) enjoin the Director Defendants from engaging in ongoing conduct that constitutes breaches of their fiduciary duties, corporate waste and conversion; (iii) attach, impound, impose a constructive trust on or otherwise restricting Defendants' assets so as to assure that Plaintiff, on behalf of ATA, SDI, ATA Ranches, and their shareholders, has an effective remedy; and (iv) compel an accounting of the financial transactions between ATA, SDI, and ATA Ranches, on the one hand, and Adelaida on the other.

**1.**   **Corporate Government Reforms**

Plaintiff asks the Court to compel Defendants to institute corporate governance reforms. This includes removing directors and officers engaged in wrongdoing and proposing shareholder vote resolutions for appropriate amendments to ATA's and ATA Ranches's bylaws or articles of incorporation. California law and broad equitable principles support this Court's power to intercede and mandate reforms, especially in cases of systemic abuses and serial misconduct by the board.

California Corporations Code section 304, vests courts statutory authority to remove corporate directors: the Court may "at the suit of shareholders holding at least 10 percent of the number of outstanding shares of any class, remove from office any director in case of fraudulent or dishonest acts or gross abuse of authority or discretion with reference to the corporation and may bar from reelection any director so removed for a period prescribed by the court." Cal. Corp. Code § 304; see also IP Telesis, Inc. v. Velocity Networks, Inc., Case No. CV 11-09950, 2012 WL 12886966, at *3 (C.D. Cal. June 25, 2012) (denying the defendants' motion to dismiss the section 304 claim because the plaintiff "sufficiently pled the circumstances surrounding [the defendants'] fraud[.]").

Apart from statutory authority, California courts have inherent equitable power to remove directors for fiduciary breaches. See DeGarmo v. Goldman, 19 Cal. 2d 755, 761 (1942) (broad concept of equitable jurisdiction justified historically and required presently for protecting rights); see also Am. Ctr. for Educ., Inc., v. Cavnar, 80 Cal. App. 3d 476, 499 (1978) (courts have equitable power to remove directors independent of statutory authorization), superseded by statute on other grounds by Patton v. Sherwood, 152 Cal. App. 4th 339 (2007).

California's equitable jurisdiction extends beyond removing directors, as "[a] trial court's equity powers are *formidable*." Johnson v. Tago, Inc., 188 Cal. App. 3d 507, 518 (1986) (emphasis added); see also Cent. Laborers' Pension Fund v. McAfee, Inc., 17 Cal. App. 5th 292, 346 (2017) (variety of equitable remedies available for fiduciary breaches).

Plaintiff seeks shareholder vote resolutions to amend ATA and ATA Ranches' bylaws and articles of incorporation, aiming at reforms to deter and prevent fiduciary breaches. Declaratory relief serves to set controversies at rest before obligations are repudiated, rights invaded, or wrongs committed, advancing preventive justice. Kirkwood v. Cal. State Auto. Ass'n Inter-Ins. Bureau, 193 Cal. App. 4th 49, 59 (2011). Defendants' claim of implemented reforms does not moot Plaintiff's declaratory relief

claims. The Court can still enforce more robust reforms, as "voluntary cessation of allegedly illegal conduct does not moot a case." See Glenbrook Cap. Ltd. P'ship v. Kuo, 525 F. Supp. 2d 1130, 1150 (N.D. Cal. 2007) (citations omitted). Existing bylaws and articles of incorporation have failed to prevent Defendants from abusing their power. The Court must intervene to implement new internal controls to prevent further injustices. See Braude v. Auto. Club of S. Cal., 78 Cal. App. 3d 178, 184 (1978) (bylaws invalid if unreasonable in practical application).

Ninth Circuit courts recognize the value of corporate governance reforms. See Feuer v. Thompson, Nos. 10-CV-00279, 12-CV-00203, 2013 WL 2950667, at *2 (N.D. Cal. June 14, 2013) ("Courts have recognized that corporate governance reforms provide valuable benefits' to corporations and their shareholders.") (citations omitted); see also In re NVIDIA Corp. Derivative Litig., Master File No. C-06-06110, 2008 WL 5382544, at *3 (N.D. Cal. Dec. 22, 2008) ("As corporate debacles such as Enron, Tyco and WorldCom demonstrate, strong corporate governance is fundamental to the economic well-being and success of a corporation."). Corporate governance reforms will not only vindicate Plaintiff but also rehabilitate shareholder trust and detoxify the boardroom, safeguarding the future of these companies and their communities.

Given courts' equitable powers to enact corporate governance reforms, as recognized by California and Ninth Circuit courts, and the necessity due to Defendants' conduct, Plaintiff's prayer for relief should be granted.

## 2.    Enjoinment of Ongoing Misconduct

"A permanent injunction is an equitable remedy for certain torts or wrongful acts of a defendant where a damage remedy is inadequate. A permanent injunction is a determination on the merits that a plaintiff has prevailed on a cause of action for tort or other wrongful act against a defendant and that equitable relief is appropriate." Art Movers, Inc. v. Ni West, Inc., 3 Cal. App. 4th 640, 646 (1992). California Civil Code section 3422 authorizes a permanent injunction to prevent breach of an obligation existing in favor of the applicant: (1) where pecuniary compensation would not afford

adequate relief, (2) where it would be extremely difficult to ascertain the amount of compensation which would afford adequate relief, (3) where the restraint is necessary to prevent a multiplicity of judicial proceedings, or (4) where the obligation arises from a trust. Cal. Civ. Code § 3422. The remedy should be exercised where it is reasonably probable the acts complained of will recur. United States v. Laerdal Mfg. Corp., 73 F.3d 852, 856 (9th Cir. 1995) (a defendant's repeated self-justification can indicate a likelihood of future violations, regardless of intent, as continued justification of past violations is a key factor in deciding if future violations are likely enough to warrant an injunction.); Id. at 855 (holding that where a court has found a cognizable danger of recurrent future violations, an injunction can be utilized even without a showing of past wrongs). Here, Defendants have engaged in ongoing misconduct for almost a decade, making it appropriate for the court to enjoin Defendants from continuing in conduct that constitutes breach of fiduciary duties, waste, and conversion.

### 3.   Constructive Trust

"A constructive trust is an involuntary equitable trust created by operation of law as a remedy to compel the transfer of property from the person wrongfully holding it to the rightful owner." Communist Party v. 522 Valencia, Inc., 35 Cal. App. 4th 980, 990 (1995). A court may impose a constructive trust when three conditions are met: "(1) the existence of a *res* (property or some interest in property); (2) the *right* of a complaining party to that res; and (3) some *wrongful* acquisition or detention of the res by another party who is not entitled to it." Lucasfilm Ltd. v. EZ2FLY, Inc., No. CV 10-2575, 2011 WL 13214281, at *4 (C.D. Cal. June 29, 2011). A constructive trust is intended to "prevent unjust enrichment and to prevent a person from taking advantage of his or her own wrongdoing." Communist Party, 35 Cal. App. 4th at 990.

To prevent unjust enrichment and preclude Defendants from benefiting from their wrongdoing, this Court should order Defendants' assets, sufficient to meet the required awards determined by the jury, be placed in a constructive trust after the jury reaches its verdict and upon final judgment. Lund v. Albrecht, 936 F.2d 459, 464 (9th Cir. 1991)

(holding that the breaching party of fiduciary duties is required to account for all profits or benefits, regardless of whether the other the non-breaching party has suffered a loss).

### 4. Accounting

Plaintiff is entitled to relief given his significant shareholder interests, degraded by Defendants' clandestine and tortious conduct. An accounting is necessary to determine the damages owed to Plaintiff.

"An accounting action 'is a proceeding in equity for the purpose of obtaining a judicial settlement of the accounts of the parties . . . , adjudicate the amount due, administer full relief and render complete justice.'" Santana v. BSI Fin. Servs., Inc., 495 F. Supp. 3d 926, 952 (S.D. Cal. 2020) (citing Verdier v. Superior Ct., 88 Cal. App. 2d 527, 530 (1948)). A cause of action for an accounting requires (1) a showing "that a relationship exists between the plaintiff and defendant that requires an accounting," and (2) "that some balance is due the plaintiff that can only be ascertained by an accounting." Teselle v. McLoughlin, 173 Cal. App. 4th 156, 179 (2009). Additionally, as an equitable remedy, the plaintiff must show underlying misconduct by the defendant. Prakashpalan v. Engstrom, Lipscomb & Lack, 223 Cal. App. 4th 1105, 1137 (2014); see also Murphy v. Am. Gen. Life Ins. Co., 74 F. Supp. 3d 1267, 1282 (S.D. Cal. 2015). An accounting is appropriate where the defendant's books and records are so complicated that it is impracticable for the plaintiff to demand a fixed sum. Id.

As the California Supreme Court has noted, "the nature of a cause of action in accounting is unique in that it is a means of discovery[,]" and thus, its purpose is to reveal "what, if any, sums are owed to the plaintiff." Teselle, 173 Cal. App. 4th at 180; see also Sass v. Cohen, 10 Cal. 5th 861, 869 (2020). Courts infer that a defendant in an accounting lawsuit has pertinent private information necessary to compute the amount owed to the plaintiff. Id. ("In short, the underpinning of an accounting action is an information asymmetry between the parties, an asymmetry that generally favors the defendant but never the plaintiff."); see also Warren v. Warren, 240 Cal. App. 4th 373, 378 (2015) ("Generally, the defendant, not the plaintiff, in an accounting action has the

information necessary to determine its liability for damages. Generally, the plaintiff does not have equal access to that information."), <u>overruled in part on other grounds by</u> <u>Sass v. Cohen</u>, 10 Cal. 5th 861 (2020)).

For the first element of equitable accounting, Plaintiff can show a relationship exists between himself and Defendants that necessitates this relief. The right to an accounting often arises where the defendant has abused a special relationship with the plaintiff, such as in trusts, partnerships, domestic relations, or fiduciary relationships. <u>Meister v. Mensinger</u>, 230 Cal. App. 4th 381, 403–04 (2014); <u>see</u> also <u>Union Bank v. Superior Ct.</u>, 31 Cal. App. 4th 573, 593 (1995) ("The grounds alleged in the accounting cause of action were that: there was a breach of fiduciary duty; the accounts were complicated; and fraud. These are proper grounds for an accounting.").

Kedrin, as a director and majority shareholder of ATA and SDI, and the D&O Defendants, owe fiduciary duties to Plaintiff. (4AC ¶¶ 1, 22, 26.) Kedrin, in her roles as CEO, director, and controlling member of Adelaida, directed the D&O Defendants to approve self-dealing transactions between Adelaida, ATA, ATA Ranches, and SDI, to the detriment of Plaintiff and other minority shareholders. Kedrin and the D&O Defendants have paid themselves distributions from ATA while preventing ATA from making distributions to its minority shareholders. (<u>Id.</u> ¶¶ 7–10, 12, 15–16, 19, 22.)

For the second element, Plaintiff can demonstrate that ATA, ATA Ranches, and SDI's convoluted, surreptitious dealings with Adelaida triggered breaches of fiduciary duties owed to Plaintiff and other minority shareholders, the balance of which can only be ascertained by an accounting. Plaintiff alleges Defendants failed to account for improper subsidies the corporate entities rendered to Kedrin and Adelaida.

For example, Defendants entered into unconscionable arrangements benefiting Adelaida at ATA and SDI's expense. (<u>Id.</u> ¶¶ 19, 73–75, 78, 82.) These arrangements include ATA providing to Adelaida financial, tax, legal, human resources, training, construction and maintenance, IT support, and other services *that have yet to be identified*, at far below their market value, in breach of Defendants' ongoing fiduciary,

*PLAINTIFF'S TRIAL BRIEF*

contractual, and statutory duties owed to ATA, SDI, ATA Ranches, and their shareholders. Defendants hid from Plaintiff the financial details of these illicit arrangements and stonewalled or frustrated (by providing belated and incomplete discovery productions and by funneling or otherwise shifting assets through illicitly created, spun-off entities) Plaintiff's efforts to obtain an accounting of many, if not all, of these arrangements that constituted breaches of Defendants' fiduciary duties. (Id. ¶¶ 73–76, 81–83, 93.) Accordingly, it is impossible for Plaintiff to calculate the extent of damages owed without an accounting remedy.

As Defendants have resisted Plaintiff's statutory inspection rights and made records of fiduciary breaches impenetrable through complex self-dealings, the Court should impose an equitable accounting to reveal the sums owed to Plaintiff. Verdier, 88 Cal. App. 2d at 530 ("An action for an accounting, as instituted herein, is a proceeding in equity for the purpose of obtaining a judicial settlement of the accounts of the parties in which proceeding the court will adjudicate the amount due, administer full relief and render complete justice.").

## VII.  ATTORNEY'S FEES

Upon prevailing on his claim for an order compelling the production of corporate records, Plaintiff will seek an award of attorneys' fees pursuant to Section 1604 of the California Corporations Code. This section states that the court may "award an amount sufficient to reimburse the shareholder . . . for the reasonable expenses incurred by such holder, including attorneys' fees[.]" Cal. Corp. Code § 1604. Plaintiff's request for attorneys' fees will be based on post-trial briefing according to the relevant standards, with an evidentiary hearing if the Court believes one is necessary.

## VIII.  ABANDONMENT OF ISSUES

Plaintiff agreed to stipulate to remove that portion of Plaintiff's prayer to remove Kedrin Van Steenwyk as successor trustee of the Survivor's Trust of the Donald H. Van Steenwyk and Elizabeth A. Van Steenwyk 1996 Trust. In the MSJ Order, the Court struck this portion of Plaintiff's Complaint. (MSJ Order at 36, ECF No. 342.) None of

Plaintiff's other claims have been abandoned, and he will pursue all of them at trial. Any affirmative defenses not identified in Defendants' proposed jury instructions will have been abandoned.

Dated: June 17, 2024                    **UMHOFER, MITCHELL & KING LLP**

                                        */s/ Matthew Donald Umhofer*
                                        Matthew Donald Umhofer
                                        J. Anthony King
                                        Diane H. Bang

                                        *Attorneys for Plaintiff*

*PLAINTIFF'S TRIAL BRIEF*

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Matthew D. Van Steenwyk, certifies that this brief contains 6,934 words, which complies with the word limit of L.R. 11-6.1.

Dated: June 17, 2024                    **UMHOFER, MITCHELL & KING LLP**

*/s/ Matthew Donald Umhofer*
Matthew Donald Umhofer