1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10

11   MATTHEW D. VAN STEENWYK,          Case No. 2:20-cv-02375-FLA (AJRx)

12                 Plaintiff.          **FINAL PRETRIAL CONFERENCE
                                       ORDER**
13
                       v.
14
15   KEDRIN E. VAN STEENWYK, *et al.*,

16                 Defendants.

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

I.  THE PARTIES AND PLEADINGS ........................................................................ 3

II. JURISDICTION ..................................................................................................... 4

III. TRIAL DURATION .............................................................................................. 4

IV. JURY TRIAL ........................................................................................................ 4

V.  ADMITTED FACTS ............................................................................................. 4

VI. STIPULATED FACTS ......................................................................................... 11

VII. PARTIES' CLAIMS AND DEFENSES ............................................................. 14

VIII. REMAINING TRIABLE ISSUES ..................................................................... 27

IX. DISCOVERY ...................................................................................................... 28

X.  DISCLOSURES AND EXHIBIT LIST .............................................................. 28

XI. WITNESS LISTS ................................................................................................ 28

XII. MOTIONS IN LIMINE ..................................................................................... 28

XIII.   BIFURCATION ............................................................................................. 28

XIV.   ADMISSIONS ................................................................................................ 29

Following pre-trial proceedings and pursuant to Fed. R. Civ. P. 16 and Local Rule 16, the court hereby ORDERS:

## I.     THE PARTIES AND PLEADINGS

The parties are:

(a)     Plaintiff Matthew D. Van Steenwyk, Individually and Derivatively on behalf of Nominal Defendants Applied Technologies Associates, Inc., Scientific Drilling International, Inc., and ATA Ranches, Inc.;

(b)     Defendant Kedrin E. Van Steenwyk as: (1) an Individual; (2) in her capacity as the Executor of Elizabeth Van Steenwyk's Estate; and (3) and in her capacity as the Successor Trustee of the Survivor's Trust;

(c)     Defendant Pamela Pierce;

(d)     Defendant Phillip Gobe;

(e)     Defendant Philip Longorio;

(f)     Defendant Gene Durocher;

(g)     Defendant Daniel Carter;

(h)     Defendant Joseph McCoy;

(i)     Defendant Kieran Duggan;

(j)     Defendant Adelaida Cellars, Inc.;

(k)     Nominal Defendant Applied Technologies Associates, Inc. ("ATA");

(l)     Nominal Defendant Scientific Drilling International, Inc. ("SDI"); and

(m)     Nominal Defendant ATA Ranches, Inc.

All defendants have been served and have appeared.

The pleadings that raise the issues are:

1.     Plaintiff's Fourth Amended Complaint (Dkt. 179);

2.     Defendants Kedrin E. Van Steenwyk and Adelaida Cellars, Inc.'s Answer (Dkts. 190, 194);

3.     The ATA Defendants' Answer (Dkt. 191);

4.     Defendant SDI's Answer (Dkt. 198); and

1        5.    Defendant Kieran Duggan's Answer (Dkt. 340).

## II.    JURISDICTION

The court has subject matter jurisdiction over this action under 28 U.S.C. § 1332.
Venue is proper in this court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial
number of events or omissions giving rise to the claims occurred in the Central District of
California.

## III.    TRIAL DURATION

The trial is estimated to take approximately six days from jury selection to closing
arguments.  Each side shall have 15 hours for opening statements, examinations, and
closing arguments.  *Voir dire* shall not count against the parties' time.

## IV.    JURY TRIAL

The trial will be by jury.  However, the equitable claims, defenses, and remedies,
including accounting, declaratory relief, and injunctive relief, will be tried by the court.
The parties have filed their proposed verdict form and jury instructions in accordance
with the court's Standing Orders and the Local Rules.

## V.    ADMITTED FACTS

The following facts are admitted and require no proof:

| | CORPORATE STRUCTURE AND OWNERSHIP |
|---|---|
| 1 | Applied Technologies Associates, Inc. ("ATA") was incorporated under the laws of the State of California and has its principal place of business in the State of California. |
| 2 | ATA is a technology development and sales organization founded in the late 1960's. The company develops and markets drilling navigation systems for the oil and gas industry. |
| 3 | Scientific Drilling International, Inc. ("SDI") was incorporated under the laws of the State of Texas.  SDI is headquartered in Houston, Texas and conducts substantial operations in California. |
| 4 | SDI is a closely held corporation as defined by Texas Business Organizations Code section 21.563. |
| 5 | ATA is a sister company of SDI. |
| 6 | ATA and SDI are engaged in the business of providing services and equipment to individuals and companies involved in oil and gas exploration.  ATA historically |

| | |
|---|---|
| | has researched and developed tools and technologies for its own use and the use of SDI. |
| 7 | SDI and ATA operate under common ownership and management, and conduct board meetings together. With some exceptions, all officers and directors of ATA are also officers and directors of SDI. |
| 8 | ATA Ranches, Inc. ("ATA Ranches") was incorporated in Delaware. Its principal place of business is California, and it is a wholly owned subsidiary of ATA. |
| 9 | ATA Ranches was created for the purpose of owning HMR Ranch and Viking Ranch. ATA Ranches is funded by ATA. |
| 10 | ATA Ranches was created in part for the purpose of facilitating the potential sale of ATA to a third party. Jackson Walker LLP offered opinions about the tax implications of the spin-off of ATA Ranches. |
| 11 | Adelaida Cellars, Inc. ("Adelaida") is a winery located in Paso Robles, California. |
| 12 | Adelaida was incorporated in California. |
| 13 | Donald and Elizabeth Van Steenwyk, Plaintiff's parents, purchased Adelaida in 1990 and, thereafter, transferred ownership of the winery to ATA. |
| 14 | Prior to January 2013, ATA owned Adelaida and its wine operations, as well as HMR Ranch and Viking Ranch, where the grapes Adelaida used to make wine were grown. |
| 15 | KMBG, LLC ("KMBG") is a Colorado company that was owned almost entirely by Elizabeth Van Steenwyk through her trusts. |
| 16 | KMBG purchased 100 percent of Adelaida's stock in 2013. |
| 17 | KMBG owns 100% of the issued and outstanding stock of Adelaida. |
| 18 | ATA and SDI issued two classes of shares to its shareholders – Class A voting shares and Class B capital shares. Class A shares have voting rights. Class B shares do not have voting rights. |
| 19 | The Donald H. Van Steenwyk and Elizabeth A. Van Steenwyk 1996 Revocable Trust (the "1996 Revocable Trust") owned all 50,000 Class A shares of ATA. |
| 20 | The ATA Class A shareholders determine who is elected to ATA's Board of Directors. |
| 21 | The ATA Class A shareholders owe fiduciary duties to ATA's Class B shareholders. |
| 22 | Elizabeth Van Steenwyk ("Elizabeth") was a citizen of California. |
| 23 | Elizabeth was the original trustee of the Survivor's Trust of the 1996 Revocable Trust. Elizabeth, through the 1996 Revocable Trust and other trusts, was the owner of all issued and outstanding ATA and SDI Class A voting shares. |
| 24 | Elizabeth was the beneficial owner of a controlling interest in KMBG. |

| 25 | Kedrin Van Steenwyk ("Kedrin"), through her power of attorney over Elizabeth Van Steenwyk, was the controlling shareholder of ATA. |
| 26 | Kedrin is the managing member of KMBG. |
| 27 | Until her passing, Elizabeth, through her trusts, was the owner of all ATA and SDI Class A voting shares. |
| 28 | Plaintiff owns 23.75% of the Class B shares of ATA through his Trusts, has continuously owned ATA Class B shares at all times relevant to this case, and continues to be an ATA shareholder. |
| 29 | Plaintiff, through his trusts, has an approximately 0.17% ownership interest in KMBG. |
| 30 | Plaintiff's Trusts have been Class B shareholders of ATA at all times since the Director Defendants were elected to ATA's Board of Directors. |
| 31 | Gretchen Van Steenwyk's ("Gretchen") Trusts have been Class B shareholders at all times since the Director Defendants were elected to ATA's Board of Directors. |
| 32 | Gretchen's Trusts do not own any interest in KMBG. |
| 33 | Kedrin owns 23.75% of the Class B shares of ATA through her trusts, holds a power of attorney over Elizabeth Van Steenwyk, is Successor Trustee of the 1996 Trust, and is a director of ATA. |
| 34 | Kedrin, through her trusts, owns Class B shares of ATA. |

| **SALE OF ADELAIDA TO KMBG** | |
|---|---|
| 35 | The general manager of Adelaida made a request for funding for improvements to the winery.  The general manager was on ATA's payroll. |
| 36 | ATA owned all outstanding shares of Adelaida before the sale of Adelaida stock to KMBG in 2013. |
| 37 | KMBG purchased ATA's stock in Adelaida in 2013, but did not purchase the HMR Ranch and Viking Ranch in 2013. |
| 38 | ATA's Board of Directors authorized the sale of ATA's shares in Adelaida to KMBG in January 2013. |
| 39 | The Adelaida stock sale transaction was for approximately $3,100,000. |
| 40 | KMBG issued a promissory note (the "2013 Promissory Note") as consideration for the Adelaida stock sale, and the interest rate on the note was 0.95 percent. |
| 41 | No appraisal was performed to determine the value of ATA's shares of Adelaida at the time of ATA's stock sale to KMBG. |
| 42 | KMBG made no payment at the time of its purchase of ATA's stock in Adelaida. |

| 43 | ATA's Board of Directors approved the sale of ATA's stock in Adelaida to KMBG on terms that required KMBG to make installment payments under a promissory note that bore interest at less than 1% per annum. |
| 44 | After ATA sold its stock in Adelaida to KMBG in 2013, ATA had no remaining ownership interest in Adelaida. |
| 45 | Plaintiff's Trusts owned a *de minimis* interest of 0.17% in KMBG at the time ATA sold its stock in Adelaida to KMBG. |
| 46 | Gretchen's Trusts did not own an interest in KMBG at the time of ATA's sale of its stock in Adelaida to KMBG. |
| 47 | Following 2013, all transactions between Adelaida and ATA were required to be conducted at arm's length and for fair value, and Defendants were advised and aware of this requirement. |
| 48 | The 2013 Promissory Note was assigned by ATA to SDI in December 2015. |

| **SERVICES AGREEMENTS** | |
|:---:|---|
| **ADMISSION** | |
| 49 | ATA entered into an Agreement for Services with Adelaida and KMBG. |
| 50 | Daniel Carter ("Carter") prepared the Agreement for Services, dated April 1, 2016. |
| 51 | Carter signed the 2016 Agreement for Services on behalf of ATA. |
| 52 | Kedrin and Carter executed a new Agreement for Services in 2017, that is similar to the 2016 Agreement for Services and has a $1,500 per month fee. |
| 53 | Carter prepared the 2017 Agreement for Services. |
| 54 | Carter reviewed and approved the 2017 Agreement for Services. |
| 55 | Carter was a director of Adelaida on the date he signed the 2017 Agreement for Services on behalf of ATA. |
| 56 | Kedrin was a director of ATA on the date she signed the 2017 Agreement for Services on behalf of Adelaida. |
| **STONEWAY PROPERTIES** | |
| 57 | Roy Ogden's ("Ogden") letter to Martin Moroski, dated November 1, 2019, states the following: "F. Stoneway Properties – Stoneway is a dba used by Mrs. Van Steenwyk since 2011 in connection with her oversight of the ranches and KMBG's properties. The Stoneway dba was used rarely and predominantly by Mrs. Van Steenwyk…" |

| | **KEDRIN BECOMES SUCCESSOR TRUSTEE** |
|---|---|
| 58 | Until June 2016, Elizabeth was the Trustee of the 1996 Revocable Trust, owned all Class A voting shares in ATA and SDI as a result, and had a majority ownership interest in Adelaida through KMBG. |

| | **FINANCIAL SUMMIT** |
|---|---|
| 59 | A meeting – that was referred to in a Power Point presentation as a "financial summit" – was held at Adelaida in August 2016 (the "Financial Summit"). |
| 60 | At the August 2016 Financial Summit, Adelaida and ATA Ranches' finances were discussed. |
| 61 | Carter and Kieran Duggan ("Duggan") attended the Financial Summit. |
| 62 | Duggan sits on Adelaida's board of directors and is the Corporate Accounting Director, Treasurer, and Assistant Secretary of ATA and SDI. |

| | **GRAPE PURCHASE AGREEMENT** |
|---|---|
| 63 | ATA sold grapes to Adelaida. |
| 64 | Adelaida and ATA entered into a Grape Purchase Agreement in December 2016. Kedrin executed the agreement on behalf of Adelaida. |

| | **CREATION OF ATA RANCHES** |
|---|---|
| 65 | Kedrin explored potentially purchasing HMR Ranch and Viking Ranch from ATA in 2018. |
| 66 | Kedrin made an offer to purchase HMR Ranch and Viking Ranch in 2018. |
| 67 | HMR Ranch and Viking Ranch were transferred to ATA Ranches. |

| | **OTHER SUBSIDIES** |
|---|---|
| 68 | According to a disclosure certificate dated June 30, 2016, and signed by ATA's Senior Vice President and Chief Financial Officer Dana Armstrong, ATA, "in its ordinary course of business, advances funds to KMBG, LLC and Adelaida Cellars … to fund such entities to pay their respective operating costs." The disclosure certificate also states that the following amounts were owed to ATA as of April 30, 2016: $552,141.19 by KMBG, and $2,139,838.68 by Adelaida. |
| 69 | ATA's financial statements reflect a loss of $1,145,441 in 2016, related to the ownership and operating costs of HMR Ranch and Viking Ranch. |

| 70 | ATA's financial statements reflect a loss of $1,315,451 in 2017, related to the ownership and operating costs of HMR Ranch and Viking Ranch. |
| 71 | ATA's financial statements reflect a loss of $1,367,571 in 2018, related to the ownership and operating costs of HMR Ranch and Viking Ranch. |
| 72 | ATA lost money owning and operating HMR Ranch and Viking Ranch in 2019. |
| 73 | ATA lost money owning and operating HMR Ranch and Viking Ranch in 2020. |

| | **INDIVIDUAL DEFENDANT'S ROLES** |
|---|---|
| 74 | Kedrin has served as a director of ATA at all times since 2013. |
| 75 | Phillip Gobe ("Gobe") is a citizen of Texas, and previously served as a director of and received compensation. |
| 76 | Phillip Longorio ("Longorio") is a citizen of Texas, previously served as a director, Chief Executive Officer, and president of ATA, and received compensation from ATA. |
| 77 | Gene Durocher ("Durocher") is a citizen of Texas, has served as a director of ATA, and receives compensation. |
| 78 | Joseph McCoy ("McCoy") is a citizen of Texas, has served as a director of ATA, and receives compensation. |
| 79 | Carter is a citizen of Texas, has served as secretary and general counsel for ATA, receives compensation from ATA, and serves as a director of ATA Ranches and Adelaida. |
| 80 | Carter has served as ATA's corporate secretary and general counsel since January 2013 through the present. |
| 81 | Carter has served as a director of Adelaida since 2016. |
| 82 | Carter has served as a director of ATA Ranches since ATA Ranches was formed in 2018. |
| 83 | Duggan is a citizen of Texas, has served as Corporate Accounting Director, Treasurer, and Assistant Secretary of ATA and SDI, and receives compensation. Duggan was appointed a director of Adelaida and is the Chief Financial Officer of ATA Ranches. |
| 84 | Kedrin has served as KMBG's managing member at all times since she became the successor trustee of the 1996 Revocable Trust and Elizabeth's attorney in fact. |
| 85 | Kedrin has been the Chief Executive Officer of Adelaida at all times since she became the successor trustee of the 1996 Revocable Trust and Elizabeth's attorney in fact. |

| CORPORATIONS CODE SECTION 1601 REQUEST | |
| --- | --- |
| 86 | Carter and Sabrina McTopy ("McTopy") were involved in record gathering and the response to Plaintiff's demand for corporate records. |

| PRIOR LAWSUIT | |
| --- | --- |
| 87 | Plaintiff filed a lawsuit against ATA and SDI in Texas. |
| 88 | One negotiated term of the resolution of that lawsuit was that ATA, SDI, and its board of directors adopt a corporate Code of Conduct. |

## VI.    STIPULATED FACTS

The following facts, though stipulated, shall be admitted without prejudice to any evidentiary objection:

1.    ATA and SDI had a common board of directors from at least 2010 until August 2023.

2.    Prior to 2013, ATA owned Adelaida, which operated a winery in Paso Robles.

3.    ATA Ranches owns two ranch properties (HMR Ranch and Viking Ranch, collectively the "Ranches") that produced grapes.

4.    KMBG is a company that was almost exclusively owned and controlled (holding 99% of the shares) by Elizabeth through her trusts until June 2016.

5.    Kedrin is the managing member of KMBG.

6.    Kedrin serves as the Chief Executive Officer of KMBG.

7.    Kedrin is a director of Adelaida.

8.    Kedrin is an officer of Adelaida.

9.    At all times relevant to the allegations in the Fourth Amended Complaint (the "Complaint"), Plaintiff and Gretchen's Trusts each owned 23.75% of the non-voting Class B shares in ATA.

10.    At all times relevant to the allegations in the Complaint, Plaintiff's Trust's owned 22.3% of the Class B shares of SDI and Gretchen's Trusts owned 22.6% of the Class B shares of SDI.

11.    Pamela Pierce ("Pierce") has served as a director of ATA and SDI since 2011.

12.    From May 15, 2020, to December 31, 2021, Pierce served as Interim Chief Executive Officer of ATA and SDI.

13.    Gobe served as a director of ATA and SDI from 2010 to September 2020.

14.    Longorio served as a director of ATA and SDI from 2014 to May 2020.

15.    Longorio served as the Chief Executive Officer and President of ATA and SDI from 2014 to May 2020.

16.    Durocher served as a director of ATA and SDI from 2010 to 2021.

17.    McCoy served as a Director of ATA and SDI from 2011 to August 2023.

18.    Carter has served as Senior Vice President, Secretary and General Counsel of ATA and SDI from 2011 to the present.

19.    Carter was elected a director of Adelaida in August 2016.

20.    Carter has served as a director and officer of ATA Ranches since 2018.

21.    Duggan was appointed Treasurer and Assistant Secretary of ATA and SDI in July 2020.

22.    Duggan currently serves as Chief Financial Officer of ATA and SDI.

23.    Duggan has served as a director of Adelaida since May 2018.

24.    Duggan has served as an officer of ATA Ranches since at least 2020.

25.    Duggan served as Corporate Accounting Manager of SDI beginning in 2015, and became the Corporate Accounting Director in 2018.

26.    ATA Ranches is a Delaware corporation.

27.    Carter serves as Secretary of ATA Ranches.

28.    Duggan is the Chief Financial Officer of ATA Ranches.

29.    Carter executed the 2016 Agreement for Services on behalf of ATA that provided Adelaida and KMBG with IT, human resources, accounting, and legal services.

30.    On October 17, 2019, Plaintiff (through counsel) sent a letter to the ATA Board of Directors demanding corrective action pursuant to California Corporations Code section 800.

31.    ATA did not appoint a special committee to investigate Plaintiff's claims in response to Plaintiff's October 17, 2019, letter.

32.    ATA did not bring the claims asserted in this action.

33.    In October 2012, ATA's directors voted unanimously to sell Adelaida to KMBG.

34.    ATA agreed KMBG could finance the entire purchase price of Adelaida with a promissory note (the "2013 Promissory Note").

35.    KMBG received $5.3 million for the sale of five properties to ATA and SDI.

36.    Under the 2013 Promissory Note, KMBG's payments extended over a four-year period at an interest rate of .95%.

37.    From December 2014 to 2020, ATA and SDI's business suffered a major downturn due to the declining oil and gas drilling market.

38.    In exchange for the services provided under the Services Agreements, Adelaida paid ATA $1,000 monthly from 2013 to 2016, $2,000 from 2016 to 2017, and $1,500 from 2017 to the present.

39.    Adelaida and KMBG paid a total of approximately $150,000 for services under the Services Agreements from 2013 to 2021.

40.    Elizabeth signed the 2013 and 2016 Services Agreements on behalf of Adelaida.

41.    Defendants never provided KMBG with a notice of default on the 2013 Promissory Note.

42.    On May 3, 2019, Plaintiff (through counsel) sent a letter to Longorio, ATA's then Chief Executive Offier, requesting an inspection of company books and records pursuant to California Corporations Code section 1601 (the "1601 Request").

43.    On July 24, 2019, Plaintiff (through counsel) sent a follow-up letter to the 1601 Request, to outside company counsel McTopy, requesting an inspection of books and records pursuant to California Corporations Code section 1601.

44.    On September 12, 2019, Plaintiff (through counsel) sent a follow-up letter to the 1601 Request, to outside company counsel McTopy.

45.    On September 20, 2019, Plaintiff (through counsel) sent a follow-up letter to the 1601 Request, to outside company counsel Ogden.

## VII.  PARTIES' CLAIMS AND DEFENSES

### Plaintiff's Claims:

(a)    Plaintiff plans to pursue the following claims against Defendants:

**Claim 1:**    **Derivative Claim for Breaches of Fiduciary Duty**

Defendants violated and are continuing to violate their fiduciary duties to ATA, SDI, ATA Ranches, and their shareholders, including, without limitation, their duties of care, good faith, honesty, and loyalty.  The court has held that Elizabeth and Kedrin "breached fiduciary duties owed to ATA and its minority shareholders, in connection with the [2013] Adelaida Sale Agreement and ATA [Grape] Purchase Agreement, respectively."  Dkt. 342 ("MSJ Order") at 15.

**Claim 2:**    **Derivative Claim for Corporate Waste**

Defendants have caused ATA to waste valuable corporate assets.

**Claim 3:**    **Derivative Claim for Accounting**

Defendants failed and refused to provide the requested accounting of the transactions and occurrences about which Plaintiff complains.  Plaintiff seeks a court order compelling production of the requested accounting.

**Claim 4:**    **Derivative Claim for Declaratory Relief**

Plaintiff contends the 2016 Agreement for Services, the 2017 Agreement for Services, and the ATA Grape Purchase Agreement were and are invalid and unenforceable or, at least, voidable.  Plaintiff seeks a judicial determination of, and declaration on, this issue.

**Claim 5:**    **Direct Claim for Breach of Fiduciary Duty by Controlling Shareholder**

The court has granted summary judgment against Defendants Kedrin and Elizabeth, and in favor of Plaintiff, on this claim.  MSJ Order at 8–15.

**Claim 6:**     **Direct Claim for Aiding and Abetting Breach of Fiduciary Duty by Controlling Shareholder**

The court has granted summary judgment against Defendant Carter, and in favor of Plaintiff, on this claim.  MSJ Order at 19.

The liability of the other directors and officers, as well as Adelaida, remains to be tried.  Adelaida knew that it was reliant on ATA's funding to survive; thus, ATA's officers and directors, namely Elizabeth, Kedrin, Carter, and Duggan, and employees actively worked to ensure that ATA's funding of Adelaida's expenses continued to flow despite causing ATA to lose over one million dollars per year.  Likewise, the Director Defendants helped facilitate the flow of funds from ATA to the ATA Ranches, and for other expenses, that benefitted entities owned by the controlling shareholders, Adelaida, and KMBG.

**Claim 7:**     **Direct Claim for Order Compelling Production of Corporate Records**

Plaintiff made multiple written requests to Defendants to inspect ATA and Adelaida's corporate records pursuant to California Corporations Code section 1601. Defendants did not produce the requested documents.

(b)     The elements required to establish Plaintiff's claims are:

**Claim 1:**     **Derivative Claim for Breaches of Fiduciary Duty**

For Plaintiff to prove a claim for breach of fiduciary duty, Plaintiff must prove the following by a preponderance of the evidence:

a.     A fiduciary relationship existed at the time of the occurrence of the events that gave rise to this litigation;

b.     One or more Defendants breached their fiduciary duty; and

c.     Damages or losses proximately caused by Defendants' breach of that duty.

*See City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 68 Cal. App. 4th 445 (1998), *as modified on denial of reh'g* (Jan. 6, 1999) ("The elements of a cause of action for breach of fiduciary duty are the existence of a fiduciary relationship, its breach,

and damage proximately caused by that breach."); *Beard Rsch., Inc. v. Kates*, 8 A.3d 573,
601 (Del. Ch.), *aff'd sub nom. ASDI, Inc. v. Beard Rsch., Inc.*, 11 A.3d 749 (Del. 2010)
("A claim for breach of fiduciary duty requires proof of two elements: (1) that a fiduciary
duty existed and (2) that the defendant breached that duty."); *Jones v. Blume*, 196 S.W.3d
440, 447 (Tex. App. 2006) ("The elements of a breach of fiduciary duty claim are: (1) a
fiduciary relationship between the plaintiff and defendant; (2) the defendant must have
breached his fiduciary duty to the plaintiff; and (3) the defendant's breach must result in
injury to the plaintiff or benefit to the defendant.").[1]

**Claim 2:**    **Derivative Claim for Corporate Waste**

To recover on a claim of corporate waste, Plaintiff must prove that the exchange
was so one-sided that no business person of ordinary, sound judgment could conclude
that the corporation received adequate consideration.  *See Swingless Golf Club Corp. v.
Taylor*, 679 F. Supp. 2d 1060, 1070 (N.D. Cal. 2009) ("To recover on a claim of
corporate waste, [the claimant] must shoulder the burden of proving that the exchange
was so one sided that no business person of ordinary, sound judgment could conclude
that the corporation has received adequate consideration."); *In re ECS Ref., Inc.*, 625 B.R.
425, 453 (Bankr. E.D. Cal. 2020) ("The absence of substantial consideration received by
the corporation and the lack of good faith may form the basis of an action for waste.");
*Gaillard v. Natomas Co.*, 208 Cal. App. 3d 1250, 1273 (1989) (contract involving
interested director may be subject to claim of corporate waste); *In re Walt Disney Co.
Derivative Litig.*, 906 A.2d 27, 74 (Del. 2006) ("A claim of waste will arise only in the
rare, unconscionable case where directors irrationally squander or give away corporate
assets.  This onerous standard for waste is a corollary of the proposition that where
business judgment presumptions are applicable, the board's decision will be upheld
unless it cannot be attributed to any rational business purpose."); *Gearhart Indus., Inc. v.*

---

[1] California, Texas, and Delaware law are cited because ATA is a California corporation,
SDI is a Texas corporation, and ATA Ranches is a Delaware corporation.

*Smith Int'l, Inc.*, 741 F.2d 707, 720 (5th Cir. 1984) ("If the director is found to have committed fraud, over-reaching, or waste of corporate assets, the transaction will be set aside.").

**Claim 3:** **Derivative Claim for Accounting**

The duty to account arises where there is a special relationship between the parties, such as a fiduciary relationship, or other circumstances that require an accounting in equity, and an unknown balance is due that cannot be ascertained without an accounting. *See Sass v. Cohen*, 10 Cal. 5th 861, 869 (2020) ("An action for an accounting has two elements: (1) 'that a relationship exists between the plaintiff and defendant that requires an accounting' and (2) 'that some balance is due the plaintiff that can only be ascertained by an accounting.'"); *Meister v. Mensinger*, 230 Cal. App. 4th 381, 403–04 (2014) ("The right to an accounting will often arise where the defendant has abused a special relationship with the plaintiff, such as in cases involving … fiduciary relationships."); *Pan Am. Trade & Inv. Corp. v. Commercial Metals Co.*, 94 A.2d 700, 701 (Del. Ch. 1953) (equity will take jurisdiction in an action for an accounting where (1) there are mutual accounts between the parties, (2) the accounts are held by one side and "there are circumstances of great complication" and (3) a fiduciary relationship exists among the parties and the defendants have a duty to render an accounting); *Wolfe & Pittenger* § 12-6[a] ("[A]n accounting may be an appropriate remedy for breach of fiduciary duty by a corporate director or officer, for example, where ... the fiduciary has directed corporate funds to his or her benefit or has personally profited from the improper use of corporate property ....").

**Claim 4:** **Derivative Claim for Declaratory Relief**

This claims seeks a declaration that the 2016 Agreement for Services and the 2017 Agreement for Services, entered into by Adelaida and ATA/SDI, are invalid, and a declaration that the Grape Purchase Agreement entered into by Adelaida and ATA are invalid. "In a case of actual controversy within its jurisdiction, … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal

relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a); *Societe de Conditionnement en Aluminium v. Hunter Eng'g Co.*, 655 F.2d 938, 942 (9th Cir. 1981) ("The Declaratory Judgment Act (the Act) permits a federal court to 'declare the rights and other legal relations' of parties to 'a case of actual controversy.'").

**Claim 5:**    **Direct Claim for Breach of Fiduciary Duty by Controlling Shareholder**

The court has found the controlling shareholders liable for breach of fiduciary duty. MSJ Order at 8–15.

**Claim 6:**    **Direct Claim for Aiding and Abetting Breach of Fiduciary Duty by Controlling Shareholder**

One or more of the Defendants may be responsible as an aider and abettor if Plaintiff proves the following:

a.    That the D&O Defendants and/or Adelaida knew that controlling shareholders Kedrin and Elizabeth owed fiduciary duties to ATA and SDI's minority shareholders and were breaching those fiduciary duties;

b.    That the D&O Defendants and/or Adelaida gave substantial assistance or encouragement to Kedrin and Elizabeth in paying themselves constructive dividends in violation of their fiduciary duties, or that the D&O Defendants gave substantial assistance or encouragement to Kedrin and Elizabeth by failing to take action to prohibit the serial breaches of fiduciary duty by the controlling shareholders; and

c.    That the conduct of the D&O Defendants and/or Adelaida was a substantial factor in causing harm to the minority shareholders of ATA.

*See Nasrawi v. Buck Consultants LLC*, 231 Cal. App. 4th 328, 343–44 (2014); *Am. Master Lease LLC v. Idanta Partners, Ltd.*, 225 Cal. App. 4th 1451, 1478 (2014); Cal. Civ. Jury Instns. (CACI) (2014) No. 3610; *Beard Research, Inc. v. Kates*, 8 A.3d 573, 603 (Del. Ch. 2010) ("a third party may be liable for aiding and abetting a breach of fiduciary duty if the third party 'knowingly participates' in the breach," meaning that the

third party acts "with the knowledge that the conduct advocated or assisted constitutes such a breach"); *In re Rural Metro Corp.*, 88 A.3d 54, 99 (Del. Ch.), *decision clarified on denial of re-argument sub nom In re Rural Metro Corp. S'holders Litig.* (Del. Ch. 2014) (defendant knowingly participated in the board's breach of its duty of care by creating the informational vacuum that misled the board).

**Claim 7:** **Direct Claim for Order Compelling Production of Corporate Records**

The following elements are required to establish a violation of Section 1601 of the California Corporations Code:

    a.    Plaintiff was a shareholder of the corporation;

    b.    Plaintiff made a written demand on the corporation to inspect the accounting books and records of the corporation; and

    c.    The written demand was for a purpose reasonably related to the plaintiff's interest.

*See* Cal. Corp. Code § 1601(a).

    (c)    The key evidence Plaintiff relies on for each claim is:

**Claim 1:** **Derivative Claim for Breaches of Fiduciary Duty**

The evidence will demonstrate Defendants engaged in conduct that breached their fiduciary duties to Plaintiff and ATA. The evidence as to this claim will include:

- The testimony of Plaintiff, as well as his brother Brett Van Steenwyk ("Brett") and sister Gretchen, concerning:
  - the history of ATA and the winery and ranches upon which grapes are grown;
  - their minority shareholder status in ATA and SDI;
  - the conduct of Elizabeth and Kedrin in financially supporting the winery and ranches upon which the grapes are grown;
  - the concealment of various winery subsidization schemes;
  - Kedrin's efforts to have Elizabeth declared incompetent; and

o  the damage to ATA arising out of the winery subsidization scheme.

- Testimony by Defendants, including Kedrin, Carter, and the Director Defendants concerning their participation in, and facilitation of, the winery subsidization scheme, their failure to comply with their fiduciary duties to the companies and the minority shareholders, and their facilitation of the winery subsidization scheme.

- Testimony from former officers confirming the subsidization of the winery by ATA.

- Contemporaneous documents and communications, including emails among the defendants, accounting records, and board materials, which confirm the existence of the winery subsidization scheme and its concealment from Plaintiff.

- Expert testimony from Robin Baggett and Chelsea Cameron concerning the subsidization of the winery through heavily discounted grapes sold to the winery by ATA-owned ranches, and the unusual nature of the agreements that governed those discounted sales.

- Expert testimony from Steven J. Hazel concerning the true value of services provided to the winery by ATA at a massive discount.

- Expert testimony from Max Knupper and Peter Dakin concerning the valuation of the ranches, and the flaws in Defendants' appraisals of the ranches.

- Expert testimony from Clifford Wright about the officers and board members' self-dealing and failure to meet with the standards of care concerning transactions involving related entities and their impact on minority shareholders.

- Expert testimony from William Buckley concerning the amount of damages suffered by ATA as a result of the winery subsidization scheme.

**Claim 2:**     **Derivative Claim for Corporate Waste**

The same evidence that shows the violation of fiduciary duties also shows that Defendants engaged in corporate waste.  The testimony of the D&O Defendants and former officers, as well as contemporaneous documentation and communications, will

confirm that ATA received little to no consideration in exchange for the substantial subsidization of the winery.

### Claim 3:    Derivative Claim for Accounting

The same evidence that shows that Defendants violated their fiduciary duties and engaged in corporate waste also shows that Defendants had a duty to provide an accounting and failed to provide that accounting prior to the initiation of this lawsuit.

### Claim 4:    Derivative Claim for Declaratory Relief

The same evidence that establishes a violation of fiduciary duty also demonstrates that the services agreements and the Grape Purchase Agreement were invalid.  In particular, the expert testimony of Robin Baggett and Chelsea Cameron will confirm that the Grape Purchase Agreement resulted in ATA receiving far less than the fair market value of the grapes sold to Adelaida.

### Claim 6:    Direct Claim for Aiding and Abetting Breach of Fiduciary Duty by Controlling Shareholder

The evidence that establishes the breaches of fiduciary duty proves that the D&O Defendants and/or Adelaida aided and abetted Elizabeth and Kedrin's breaches of fiduciary duty.

### Claim 7:    Direct Claim for Order Compelling Production of Corporate Records

The evidence that establishes the failure to produce corporate records and the need for an order compelling the production of corporate records includes:

- Emails and letters reflecting legitimate and repeated demands for inspection of corporate records.
- Emails and letters reflecting delays, obstructions, and inadequate responses to demands for inspection of corporate records.
- The testimony of Plaintiff concerning his demands for inspection of corporate records, his purpose in making those demands, and the lack of meaningful responses to those requests.

- The testimony of Daniel Carter concerning the demand for inspection of corporate records and the companies' responses.

**Defendant's Affirmative Defenses:**

(a) Defendants plan to assert the following affirmative defenses:

1. Statute of limitations;

2. The business judgment rule;

3. Plaintiff's lack of standing to bring some or all of the claims he alleges in the Fourth Amended Complaint;

4. The doctrine of unclean hands;

5. Waiver, as Plaintiff has been fully aware of the facts and circumstances giving rise to the claims he asserts for years yet he failed to take action or raise objection;

6. Plaintiff's failure to make an adequate pre-suit demand pursuant to Corporations Code section 800; and

7. Laches.

(b) The elements required to establish Defendants' defenses are:[2]

**Defense 1:  Statute of Limitations**

The statute of limitations for breach of fiduciary duty is three or four years, depending on whether the breach is fraudulent or nonfraudulent. *See Fuller v. First Franklin Financial Corp.*, 216 Cal. App. 4th 955, 963 (2013) ("limitations period is three years ... for a cause of action for breach of fiduciary duty where the gravamen of the claim is deceit, rather than the catchall four-year limitations period that would otherwise apply …."); *William L. Lyon & Associates, Inc. v. Superior Court*, 204 Cal. App. 4th 1294, 1312 (2012) ("Breach of fiduciary duty not amounting to fraud or constructive fraud is subject to the four-year 'catch-all statute' of Code of Civil

---

[2] Defendants failed to submit the elements required to establish the affirmative defenses of lack of standing, waiver, and adequate pre-suit demand.

Procedure section 343"); *City of Vista v. Robert Thomas Securities, Inc.*, 84 Cal. App. 4th 882, 889 (2000) (four-year statute of limitations applies to breach of fiduciary duty, unless the gravamen of the claim is actual or constructive fraud, in which case the statute of limitations is three years).)

Under California law, "[w]here a fiduciary obligation is present, the courts have recognized a postponement of the accrual of the cause of action until the beneficiary has knowledge or notice of the act constituting a breach of fidelity." *Eisenbaum v. Western Energy Resources, Inc.*, 218 Cal. App. 3d 314, 324 (1990). This does not mean, however, that a plaintiff can be willfully ignorant when he has knowledge of facts that would lead him to inquire about a potential claim. *See Bedolla v. Logan & Frazer*, 52 Cal. App. 3d 118, 130–31 (1975); *Marsicano v. Bank of America, N.A.*, 2016 WL 10968664 (C.D. Cal. Dec. 19, 2016).

A fiduciary relationship extends accrual of the statute of limitations until "the plaintiff becomes aware of facts which would make a reasonably prudent person suspicious." *Bedolla*, 52 Cal. App. 3d at 131; *accord Miller v. Bechtel Corp.*, 33 Cal. 3d 868, 875 (1983). At that point, "the duty to investigate arises and the plaintiff may then be charged with the knowledge of facts which would have been discovered by such an investigation." *Bedolla*, 52 Cal. App. 3d at 131; *accord Miller*, 33 Cal. 3d at 875. "The fact that a confidential ... relationship exists does not excuse a party who has notice of facts from investigating those facts. If he fails to pursue those facts of which he has notice, he is nevertheless held to have knowledge of each and every fact that he would have discovered had he pursued the facts [of which] he did have knowledge." *Bedolla*, 52 Cal. App. 3d at 131 n. 12. Thus, "if [plaintiff] became aware of facts which would make a reasonably prudent person suspicious, [plaintiff] had a duty to investigate further, and [plaintiff] was charged with knowledge of matters which would have been revealed by such an investigation." *Miller*, 33 Cal. 3d at 875. The standard that applies is that of a "reasonably prudent person." *See also Fox v. Ethicon Endo-Surgery, Inc*., 35 Cal. 4th 797, 807 (2005) ("The discovery rule only delays accrual until the plaintiff has,

1  or should have, inquiry notice of the cause of action.").  As such, a plaintiff's subjective

2  beliefs or suspicions, or lack thereof, are irrelevant to this inquiry.

3      **Defense 2:**   **The Business Judgment Rule**

4       "The business judgment rule is 'a judicial policy of deference to the business

5  judgment of corporate directors in the exercise of their broad discretion in making

6  corporate decisions.'"  *Lee v. Interinsurance Exchange*, 50 Cal. App. 4th 694, 711

7  (1996) (internal citations omitted).  "The business judgment rule sets up a presumption

8  that directors' decisions are made in good faith and are based upon sound and informed

9  business judgment." *Id.* at 715.  The business judgment rule is codified in California

10  Corporations Code section 309 and also exists in common law.  "A hallmark of the

11  business judgment rule is that a court will not substitute its judgment for that of the

12  board if the latter's decision can be 'attributed to any rational business purpose.'"  *Katz*

13  *v. Chevron Corp.*, 22 Cal. App. 4th 1352, 1366 (1994) (citing *Unocal v. Mesa Petroleum*

14  *Co.*, 493 A.2d 946, 954 (Del.1985)).  "[U]nder the business judgment rule[,] director

15  liability is predicated upon concepts of gross negligence." *Id.* (internal citations omitted).

16      Section 309 of the California Corporations Code sets forth the applicable

17  standard:

18      309. (a). A director shall perform the duties of a director, including duties as
19      a member of any committee of the board upon which the director may serve,
       in good faith, in a manner such director believes to be in the best interests of
20      the corporation and its shareholders and with such care, including reasonable
21      inquiry, as an ordinarily prudent person in a like position would use under
       similar circumstances.

22      (b) In performing the duties of a director, a director shall be entitled to rely
23      on information, opinions, reports or statements, including financial
       statements and other financial data, in each case prepared or presented by
24      any of the following:

25          (1) One or more officers or employees of the corporation whom the
26          director believes to be reliable and competent in the matters presented.

27          (2) Counsel, independent accountants or other persons as to matters
28          which the director believes to be within such person's professional or
           expert competence.

24

(3) A committee of the board upon which the director does not serve, as to matters within its designated authority, which committee the director believes to merit confidence, so long as, in any such case, the director acts in good faith, after reasonable inquiry when the need therefor is indicated by the circumstances and without knowledge that would cause such reliance to be unwarranted.

(c) A person who performs the duties of a director in accordance with subdivisions (a) and (b) shall have no liability based upon any alleged failure to discharge the person's obligations as a director….

"Under California law, a *prima facie* showing of good faith and reasonable investigation is established when a majority of the board is comprised of outside directors and the board has received the advice of independent consultants." *F.D.I.C. v. Castetter*, 184 F.3d 1040, 1045 (9th Cir. 1999) (internal quotation marks and citation omitted).

### Defense 4:   Unclean Hands

The doctrine of unclean hands stems from the legal maxim that one who comes to court seeking equity must do so with clean hands. *Blain v. Doctor's Co.*, 222 Cal. App. 3d 1048, 1059 (1990). "The [unclean hands] doctrine demands that a plaintiff act fairly in the matter for which he seeks a remedy. He must come into court with clean hands, and keep them clean, or he will be denied relief, regardless of merits of his claim." *Lexington Ins. Co. v. Energetic Lath & Plaster, Inc.*, 2015 U.S. Dist. LEXIS 123123, at *35–36 (E.D. Cal. Sept. 14, 2015) (citing *Brown v. Grimes*, 192 Cal. App. 4th 265, 282 (2011). Unclean hands can be invoked as an affirmative defense where a plaintiff has engaged in inequitable conduct in connection with the matter in controversy. *Id; Dickson, Carlson & Campillo v. Pole*, 83 Cal. App. 4th 436, 446 (2000).

### Defense 7:   Laches

The doctrine of laches imposes an equitable time limitation on a plaintiff to bring suit. The affirmative defense requires the defendant to prove both an unreasonable delay or lack of diligence by the plaintiff in pursuing his claims and prejudice to the defendant as a result of the delay. *Ocean Advocates v. United States Army Corps of Eng'rs*, 361 F.3d 1108, 1122 (9th Cir. 2003).

(c)     The key evidence Defendants rely on for each defense are:[3]

**<u>Defense 1:</u>   Statute of Limitations**

- The initial Complaint in this action;
- ATA Board Meeting Minutes and packets relating to the sale of Adelaida by ATA to KMBG in 2013;
- Emails between Bill Wade or ATA to Plaintiff sending Plaintiff ATA Board Meeting Minutes and packets;
- 2013 ATA Financials;
- Testimony of Bill Wade and Daniel Carter regarding Plaintiff being sent the ATA/SDI Board Meeting Minutes and materials;
- Testimony of ATA directors;
- Promissory Note with KMBG;
- 2014 ATA Financial Statements;
- 2015-18 Combined Financial Statements;
- Plaintiff's testimony regarding his management of Adelaida in the late 1990s;
- Annual Shareholder Meeting Minutes;
- Expert Reports;
- Pre-2013 Combined Financial Statements; and
- Grape Purchase Agreements and Services Agreements at issue.

**<u>Defense 2:</u>   Business Judgment Rule**

- ATA Board Meeting Minutes and Packets;
- Testimony of Trenton Thornock regarding the board presentation and sale of Adelaida in 2013;

---

[3] Defendants failed to submit key evidence for Defenses 3 through 7.

- Testimony of directors to show the elements of the business judgment rule were met and to show the information upon which they relied in making their decisions;
- April 29, 2014 Annual Shareholder meeting minutes;
- 2013 ATA Financials;
- 2014 ATA Financial Statements;
- 2015–18 Combined Financial Statements;
- 2013–20 ATA and SDI Audited Combined Financial Statements; and
- Expert Reports.

## VIII. REMAINING TRIABLE ISSUES

In view of the admitted facts and the elements required to establish the claims and affirmative defenses, Plaintiff asserts the following issues remain to be tried.

1. Whether Defendants breached their fiduciary duties to Plaintiff and the companies.

2. Whether Defendants Kedrin, Elizabeth, Pierce, McCoy, Gobe, and Longorio, as directors of ATA and SDI, committed corporate waste.

3. Whether Plaintiff is entitled to an accounting.

4. Whether the 2016 Services Agreement, the 2017 Services Agreement, and the ATA Grape Purchase Agreement, were and are invalid and unenforceable or, at least, voidable.

5. Whether Defendants Pierce, McCoy, Gobe, Longorio, Duggan, and Adelaida aided and abetted Kedrin and Elizabeth in their breaches of fiduciary duties to Plaintiff.

6. Whether Defendants ATA, Kedrin, Elizabeth, Pierce, McCoy, Gobe, and Longorio, as directors of ATA, are in violation of California Corporations Code section 1601.

a)    If so, whether Plaintiff should be awarded an amount sufficient to reimburse him for the reasonable costs incurred by Plaintiff, including attorneys' fees. *See* Cal. Corp. Code § 1604.

7.    Whether Plaintiff is entitled to punitive damages based on Defendants' conduct and the amount.

8.    Whether Plaintiff's claims are barred by the relevant statutes of limitations.

9.    Whether Plaintiff's claims are barred by the business judgment rule.

10.    Whether Plaintiff lacks standing to bring some or all of the claims he alleges in the Complaint.

11.    Whether Plaintiff's claims are barred by the doctrine of unclean hands.

12.    Whether Plaintiff waived his claims for failing to act or raise objection.

13.    Whether Plaintiff's claims are barred because he did not make an adequate pre-suit demand pursuant to Cal. Corp. Code § 800.

14.    Whether Plaintiff's claims are barred by laches.

## IX.   DISCOVERY

All discovery is complete. *See* Dkt. 410.

## X.   DISCLOSURES AND EXHIBIT LIST

All disclosures under Fed. R. Civ. P. 26(a)(3) have been made. The parties' joint exhibit list has been filed. Dkt. 354.

## XI.   WITNESS LISTS

Witness lists of the parties have been filed with the court. Dkts. 430, 434. Only the witnesses identified on the lists will be permitted to testify (other than solely for impeachment).

## XII.  MOTIONS IN LIMINE

Motions in limine were filed and the court has ruled on them. *See* Dkts. 406, 408.

## XIII. BIFURCATION

The court granted Defendants' motion, Dkt. 411, over Plaintiff's objection, Dkt. 418, and ordered bifurcation of evidence of Defendants' net worth, including assets and

liabilities.  In the event the jury finds one or more Defendants liable for punitive damages, the amount of such damages will be determined during the second phase of the jury trial.  Phase one of the trial will be limited to evidence of liability, compensatory damages, and whether punitive damages should be awarded.

## XIV. ADMISSIONS

The foregoing admissions having been made by the parties, and the parties having specified the foregoing issues remaining to be litigated, this Final Pretrial Conference Order shall supersede the pleadings and govern the course of the trial of this case, unless modified to prevent manifest injustice.


IT IS SO ORDERED.


Dated: June 24, 2024

FERNANDO L. AENLLE-ROCHA
United States District Judge