MATTHEW DONALD UMHOFER (SBN 206607)
matthew@umklaw.com
J. ANTHONY KING (SBN 297279)
anthony@umklaw.com
DIANE H. BANG (SBN 271939)
dbang@umklaw.com
**UMHOFER, MITCHELL & KING LLP**
767 S. Alameda St., Suite 270
Los Angeles, CA 90021
Telephone: (213) 394-7979
Facsimile: (213) 529-1027

CHASE W. MARTIN (SBN 260444)
cmartin@ammcglaw.com
**ADAMSKI MOROSKI MADDEN
CUMBERLAND & GREEN LLP**
Post Office Box 3835
San Luis Obispo, California 93403-3835
Telephone: (805) 543-0990
Facsimile: (805) 543-0980

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW D. VAN STEENWYK, Individually, as Trustee and Beneficiary of The Matthew Van Steenwyk GST Trust and The Matthew Van Steenwyk Issue Trust, and as Co-Trustee of The Gretchen Marie Van Steenwyk-Marsh GST Trust and The Gretchen Marie Van Steenwyk-Marsh Issue Trust and derivatively on behalf of Nominal Defendants APPLIED TECHNOLOGIES ASSOCIATES, INC., SCIENTIFIC DRILLING INTERNATIONAL, INC. and ATA RANCHES, INC., <br><br> Plaintiff, <br><br> vs. <br><br> KEDRIN E. VAN STEENWYK, et al., <br><br> Defendants, <br><br> and <br><br> APPLIED TECHNOLOGIES ASSOCIATES, INC., SCIENTIFIC DRILLING INTERNATIONAL, INC., and ATA RANCHES, INC., <br><br> Nominal Defendants. | Case No.: 2:20-cv-02375-FLA-AJRx <br><br> *Hon. Fernando L. Aenlle-Rocha* <br><br> **PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S REQUEST FOR ENTRY OF JUDGMENT ON EQUITABLE CLAIMS** <br><br><br> Trial Date: June 24, 2024 <br> Time: 8:30 a.m. <br> Place: Courtroom 6B |

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................ i

TABLE OF AUTHORITIES ................................................................................ ii

I.      INTRODUCTION .................................................................................... 1

II.     ARGUMENT ............................................................................................ 2

    A.   Declaratory Relief Is Warranted to Void the 2017 Services Agreement ........ 3

    B.   Directors and Officers Breaches of Their Fiduciary Duties Warrant Their
         Removal From ATA and SDI ................................................................... 7

        1.   The Court Has Authority to Remove Directors Under California and
              Texas Law ..................................................................................... 7

        2.   The Court Found Defendants Breached Their Fiduciary Duties .......... 8

            a.  2013 Sale of Adelaida ..................................................................... 9

            b.  2016 Grape Purchase Agreement ................................................. 10

        3.   The Jury's Verdict Supports Removal of Directors .......................... 11

        4.   Defendants' Trial Testimony and Evidence Presented at Trial Shows
              Removal of Directors Is Warranted ................................................. 12

    C.   Permanent Injunction Is Critical to Prevent Future Harm ........................... 13

III.    CONCLUSION ...................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Am. Ctr. for Educ., Inc., v. Cavnar,
   80 Cal. App. 3d 476 (1978).......................................................................... 7

Am. States Ins. Co. v. Kearns,
   15 F.3d 142 (9th Cir. 1994) ........................................................................ 4

Art Movers, Inc. v. Ni West, Inc.,
   3 Cal. App. 4th 640 (1992).........................................................................14

Ass'n for Los Angeles Deputy Sheriffs v. Macias,
   63 Cal. App. 5th 1007, 278 Cal. Rptr. 3d 487 (2021) ...............................14

Benson v. Comm'r,
   560 F.3d 1133 (9th Cir. 2009) ...................................................................15

Brillhart v. Excess Ins. Co.,
   316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942) .................................. 5

Brown v. N. Ventura Rd. Dev. Co.,
   216 Cal. App. 2d 227 (Ct. App. 1963)....................................................7, 8

Burnett v. Smith,
   240 S.W. 1007 (Tex. Civ. App. 1922)........................................................ 8

C & K Eng'g Contractors v. Amber Steel Co.,
   23 Cal. 3d 1 (1978) ....................................................................................14

Cent. Laborers' Pension Fund v. McAfee, Inc.,
   17 Cal. App. 5th 292, 225 Cal. Rptr. 3d 249 (2017) .................................14

Challenge Mfg. Co. v. Comm'r,
   37 T.C. 650 (1962).....................................................................................15

Comm'r v. Riss,
   374 F.2d 161 (8th Cir. 1967) .....................................................................15

ii

Cont'l W. Ins. Co. v. ASAP Hauling, LLC,
   No. 20-cv-04063, 2021 WL 150017 (W.D. Mo. Jan. 15, 2021)................................ 5

DeGarmo v. Goldman,
   19 Cal. 2d 755 (1942) .............................................................................................7, 8

Feuer v. Thompson,
   Nos. 10-CV-00279, 12-CV-00203, 2013 WL 2950667 (N.D. Cal. June 14, 2013)... 8

Foothill Church v. Watanabe,
   654 F. Supp. 3d 1054 (E.D. Cal. 2023) ....................................................................15

Gov't Emps. Ins. Co. v. Dizol,
   133 F.3d 1220 (9th Cir. 1998)....................................................................................5

Grail Semiconductor, Inc. v. Mitsubishi Elec. & Elecs. USA, Inc.,
   225 Cal. App. 4th 786 (2014)...................................................................................14

In re NVIDIA Corp. Derivative Litig.,
   Master File No. C-06-06110, 2008 WL 5382544 (N.D. Cal. Dec. 22, 2008)........... 8

Inland Asphalt Co. v. Comm'r,
   756 F.2d 1425 (9th Cir.1985)...................................................................................15

Johnson v. Couturier,
   572 F.3d 1067 (9th Cir. 2009)..................................................................................16

Johnson v. Tago, Inc.,
   188 Cal. App. 3d 507 (1986)....................................................................................14

Kane v. PaCap Aviation Fin., LLC,
   No. CV 19-00574 JAO-RT, 2023 WL 5499994 (D. Haw. Aug. 25, 2023) .............. 3

Koshaba v. Koshaba,
   56 Cal. App. 2d 302, 132 P.2d 854 (1942) ................................................................7

L.A. Police Protective League v. Gates,
   995 F.2d 1469 (9th Cir. 1993)................................................................................... 3

La Quinta Worldwide, LLC v. Q.R.T.M., S.A. de C.V.,
   762 F.3d 867 (9th Cir. 2014).....................................................................................15

Lamb-Weston, Inc. v. McCain Foods, Ltd.,
   941 F.2d 970 (9th Cir. 1991).....................................................................................15

iii

*PLAINTIFF'S MEMO OF LAW RE EQUITABLE CLAIMS*

McGraw–Edison Co. v. Preformed Line Prods. Co.,
   362 F.2d 339 (9th Cir. 1966) ................................................................... 6

Meister v. Mensinger,
   230 Cal. App. 4th 381 (2014) .................................................................14

Miller v. Fairchild Indus.,
   885 F.2d 498 (9th Cir. 1989) ................................................................... 3

Monster Energy Co. v. Vital Pharms., Inc.,
   No. EDCV181882JGBSHKX, 2023 WL 8168854 (C.D. Cal. Oct. 6, 2023) ...........14

Patton v. Sherwood,
   152 Cal. App. 4th 339 (2007) ................................................................. 8

Principal Life Ins. Co. v. Robinson,
   394 F.3d 665 (9th Cir. 2005) ...............................................................4, 5

Rilcoff v. Superior Ct. of Los Angeles Cnty.,
   50 Cal. App. 2d 503, 123 P.2d 540 (1942) ...............................................16

Shell Gulf of Mex., Inc. v. Ctr. for Biological Diversity, Inc.,
   771 F.3d 632 (9th Cir. 2014) ................................................................... 6

Simmons v. Superior Ct. in & for Los Angeles Cnty.,
   96 Cal. App. 2d 119, 214 P.2d 844 (1950) ...............................................16

t'Bear v. Forman,
   No. 17-CV-00796-JSC, 2020 WL 703888 (N.D. Cal. Feb. 12, 2020)...................4, 5

Teutscher v. Woodson,
   835 F.3d 936 (9th Cir. 2016) ...............................................................2, 3

United States v. Laerdal Mfg. Corp.,
   73 F.3d 852 (9th Cir. 1995) ..................................................................16

Wells Fargo Bank, N.A. v. Sharma,
   642 F. Supp. 2d 242 (S.D.N.Y. 2009) ..................................................... 6

Wickersham v. Crittenden,
   93 Cal. 17 (1892) ...............................................................................14

Wickland Oil Terminals v. ASARCO, Inc.,
   792 F.2d 887 (9th Cir.1986)................................................................... 4

iv

*PLAINTIFF'S MEMO OF LAW RE EQUITABLE CLAIMS*

<u>Wilton v. Seven Falls Co.,</u>
  515 U.S. 277 (1995) .................................................................................. 6

<u>Yamauchi v. Cotterman,</u>
  84 F. Supp. 3d 993 (N.D. Cal. 2015) ....................................................... 6

<u>ZF Micro Sols., Inc. v. TAT Cap. Partners, Ltd.,</u>
  82 Cal. App. 5th 992 (2022) ....................................................................14

**Statutes**

28 U.S.C. § 2201(a) ..................................................................................... 4

Cal. Civ. Code § 3422 .................................................................................15

Cal. Corp. Code § 317(c) ............................................................................16

California Corporations Code section 304 .................................................. 7

California Corporations Code section 317(b) .............................................16

*PLAINTIFF'S MEMO OF LAW RE EQUITABLE CLAIMS*

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

Based upon the overwhelming evidence of Defendants' breaches of their fiduciary duty that was presented in this case, Plaintiff requests that the Court enter judgment in favor of Plaintiff on his equitable relief claims and (i) void the 2017 Services agreement; (ii) remove Defendants found liable for breach of fiduciary duty from their positions as directors and officers of ATA and SDI; and (iii) issue a permanent injunction preventing further breaches of fiduciary duty, and enjoining Defendants from causing ATA and SDI to indemnify any Defendant found liable by the jury.

Following a two-week trial, the jury reached a verdict finding:

(i)     Defendants were found to have breached their fiduciary duties to ATA and SDI;

(ii)    Defendant Elizabeth Van Steenwyk was found liable to ATA and SDI for corporate waste;

(iii)   Defendants Elizabeth Van Steenwyk and Kedrin Van Steenwyk were found to have breached their fiduciary duties to Plaintiff as a minority shareholder; and

(iv)    Defendant Adelaida Cellars, Inc., was found to have aided and abetted Defendants Elizabeth Van Steenwyk and Kedrin Van Steenwyk in breaching their fiduciary duties to minority shareholders.

While the jury awarded Plaintiff substantial derivative and direct damages because of the magnitude of the grift committed by Defendants using minority shareholder funds to line their own pockets, equitable relief is essential to prevent further breaches of fiduciary duty and harm to ATA, SDI, and Plaintiff.

Indeed, absent an injunction and other equitable relief from this Court, it is clear that Defendants have no intention of changing their unlawful course of conduct or refraining from future conduct that will cause irreparable harm to ATA, SDI, and

*PLAINTIFF'S MEMO OF LAW RE EQUITABLE CLAIMS*

Plaintiff. Despite facing a jury award in excess of $21 million in damages, on July 13, 2024 – just days after the jury verdict in this case – the board of ATA and SDI elected to reaffirm the director and officer positions of Defendants Kedrin Van Steenwyk, Pam Pierce, Daniel Carter, and Kieran Duggan at ATA and SDI. (Declaration of Matthew D. Umhofer in Support of Plaintiff's Motion re Entry of Judgment on Equitable Claims ("Umhofer Decl.") ¶ 3.) This type of brazen conduct, continuing to empower and reward the very Defendants who have already been found to have harmed ATA and SDI, shows the urgent and immediate need for equitable relief in this matter.

Given that Defendant Kedrin Van Steenwyk remains in complete voting control of ATA and SDI through her control of the Class A shares and Defendants Pamela Pierce, Daniel Carter, and Kieran Duggan remain in their position as directors and officers of ATA and SDI, such equitable relief is necessary in addition to the damages awarded by the jury to prevent ongoing and irreparable harm to ATA, SDI, or the minority shareholders.

Fortunately, the Court has formidable equitable powers in this arena and, based on the evidence presented during trial and the jury's findings, the Court may fashion appropriate injunctive relief based on Plaintiff's equitable claims to prevent further harm to ATA, SDI, and their minority shareholders. Under California law, both statutory and equitable, the Court is empowered to remove the offending directors and officers that remain at ATA and SDI (i.e., Kedrin, Pierce, Carter, and Duggan) from their positions. As discussed below, the evidence overwhelmingly shows that removal is necessary to prevent further harm to the companies and Plaintiff. Further, the Court should also enjoin ATA and SDI from indemnifying all Defendants that were found to have harmed them.

## II.    ARGUMENT

The Court may enter judgment on Plaintiff's equitable claims for relief following the jury's verdict at the conclusion of trial, based on the evidence and testimony presented at trial and the clear factual findings from the jury. Teutscher v. Woodson, 835 F.3d 936, 945 (9th Cir. 2016). "[I]n a case where legal claims are tried by a jury and

equitable claims are tried by a judge, and [those] claims are based on the same facts, the trial judge must follow the jury's implicit or explicit factual determinations in deciding the equitable claims." Teutscher, 835 F.3d 936, 944 (9th Cir. 2016) (quoting L.A. Police Protective League v. Gates, 995 F.2d 1469, 1473 (9th Cir. 1993); Miller v. Fairchild Indus., 885 F.2d 498, 507 (9th Cir. 1989); internal quotations omitted). "In this way, the trial judge avoids impairing the jury right for legal claims when adjudicating the equitable claims in cases with intertwined factual underpinnings." Kane v. PaCap Aviation Fin., LLC, No. CV 19-00574 JAO-RT, 2023 WL 5499994, at *3 (D. Haw. Aug. 25, 2023); see also L.A. Police Protective League v. Gates, 995 F.2d 1469, 1475 (9th Cir. 1993) ("[T]the district court erred in engaging in factfinding contrary to the implicit findings of the jury verdict. Such finding cannot stand as a reason for rejecting equitable relief.").

Further, entry of a judgment in favor of Plaintiff on the equitable claims, declaratory relief, removal of directors and officers, and an injunction to prevent further breaches of fiduciary duty including through indemnification will avoid duplicative litigation.

Plaintiff seeks declaratory and injunctive relief from this Court, specifically that the Court:

(i)    void the 2017 Services Agreement;

(ii)   order the removal directors and officers found to have committed breaches of fiduciary duty that remain in their positions, specifically Kedrin Van Steenwyk, Pamela Pierce, Daniel Carter, and Kieran Duggan; and

(iii)  enjoining ATA and SDI Defendants from indemnifying any Defendant from the jury's award of damages.

**A.    Declaratory Relief Is Warranted to Void the 2017 Services Agreement**

Plaintiff seeks declaratory relief from this Court, declaring that the 2017 services agreement between Adelaida Cellars, Inc./KMBG, LLC and ATA/SDI (the "Services Agreement") is invalid. The Services Agreement provided Adelaida and KMBG with

3

human resources, accounting, legal, IT and other services conducted by SDI employees for the paltry sum of $1,500 per month.  This one-sided contract is still in effect today. (Umhofer Decl. ¶4, **Ex. 1**, Trial Day 3 28:1-6.)

The Declaratory Judgment Act provides that "[in] a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). Courts generally employ a three-part test to determine whether declaratory relief is warranted, which Plaintiff has satisfied.

*First*, "the court must inquire whether there is a case of actual controversy within its jurisdiction. Jurisdiction to award declaratory relief exists only in a case of actual controversy." Am. States Ins. Co. v. Kearns, 15 F.3d 142, 143 (9th Cir. 1994) (quoting Wickland Oil Terminals v. ASARCO, Inc., 792 F.2d 887, 893 (9th Cir.1986)). The Ninth Circuit has held that this requirement "is identical to Article III's constitutional case or controversy requirement." t'Bear v. Forman, No. 17-CV-00796-JSC, 2020 WL 703888, at *15 (N.D. Cal. Feb. 12, 2020) (quoting Am. States Ins. Co. v. Kearns, 15 F.3d 142, 143 (9th Cir. 1994)). An actual controversy exists between Plaintiff and Defendants regarding the ongoing improper subsidization of Adelaida through a money-losing services agreement that requires ATA and SDI to provide administrative support at below cost.

*Second*, "[t]he Court must next determine whether the case is 'ripe for review.'" t'Bear v. Forman, No. 17-CV-00796-JSC, 2020 WL 703888, at *15 (N.D. Cal. Feb. 12, 2020) (quoting Principal Life Ins. Co. v. Robinson, 394 F.3d 665, 671 (9th Cir. 2005)). "A case is ripe where the essential facts establishing the right to declaratory relief have already occurred." Wickland Oil Terminals v. Asarco, Inc., 792 F.2d 887, 893 (9th Cir. 1986).

Invalidation of the 2017 services agreement is ripe for review. The jury has found that Defendants breached their fiduciary duties to ATA and SDI. The service

agreements, and specifically the 2017 version which is still in effect today, was featured heavily in Plaintiff's case to the jury. The harm to Plaintiff and minority shareholders of ATA and SDI as a result of the services agreement is ongoing.

**Third**, once the Court determines that it has jurisdiction, "the court must decide whether to exercise its jurisdiction by analyzing the factors set out in Brillhart v. Excess Ins. Co., 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942), and its progeny." Principal Life Ins. Co. v. Robinson, 394 F.3d 665, 669 (9th Cir. 2005). "Under Brillhart, district courts should: (1) 'avoid needless determination of state law issues'; (2) 'discourage litigants from filing declaratory actions as a means of forum shopping'; and (3) 'avoid duplicative litigation.'" t'Bear v. Forman, No. 17-CV-00796-JSC, 2020 WL 703888, at *16 (N.D. Cal. Feb. 12, 2020) (quoting Gov't Emps. Ins. Co. v. Dizol, 133 F.3d 1220, 1225 (9th Cir. 1998)). "[W]hen other claims are joined with an action for declaratory relief (e.g., bad faith, breach of contract, **breach of fiduciary duty**, rescission, or claims for other monetary relief), the district court should not, as a general rule, remand or decline to entertain the claim for declaratory relief." Gov't Emps. Ins. Co. v. Dizol, 133 F.3d 1220, 1225 (9th Cir. 1998) (emphasis added); see also Cont'l W. Ins. Co. v. ASAP Hauling, LLC, No. 20-cv-04063, 2021 WL 150017, at *4 (W.D. Mo. Jan. 15, 2021) ("District courts entertain declaratory judgment actions brought for the determination of tort claims, *including claims for breach of fiduciary duty*.") (emphasis added). The Brillhart factors favor a declaratory judgment regarding the 2017 services agreement. Deciding the issue now that the jury has already rendered a verdict on Defendants' breaches of fiduciary duty does not needlessly implicate state law issues will, presents no forum shopping concerns, and will obviate the need for future litigation.

The Court may grant relief given the substantial controversy between the parties regarding the fiduciary duties Defendants owed to Plaintiff and Defendants' breaches of those duties through their complex, self-interested business dealings, which have harmed and will continue to harm Plaintiff absent declaratory relief.

*PLAINTIFF'S MEMO OF LAW RE EQUITABLE CLAIMS*

Moreover, the Court has discretion to grant declaratory relief in cases involving claims for breaches of fiduciary duties. The Act "expands the remedies available in federal courts" so parties can "determine whether they have any legal obligations to their potential adversaries." Shell Gulf of Mex., Inc. v. Ctr. for Biological Diversity, Inc., 771 F.3d 632, 635 (9th Cir. 2014); see also Yamauchi v. Cotterman, 84 F. Supp. 3d 993, 105 (N.D. Cal. 2015) ("The Declaratory Judgment Act places a 'remedial arrow in the district court's quiver.'") (citing Wilton v. Seven Falls Co., 515 U.S. 277, 288 (1995)). The Ninth Circuit guides this Court to consider declaratory judgments when (1) they clarify and settle the legal relations at issue; and (2) they afford relief from the controversy giving rise to the proceeding. See McGraw–Edison Co. v. Preformed Line Prods. Co., 362 F.2d 339, 342 (9th Cir. 1966).

The prerequisites of the Declaratory Judgment Act are met here, and other district courts have granted similar relief in fiduciary duty cases. The Services Contract is clearly a one-sided deal heavily favoring Adelaida and KMBG at the expense of SDI and ATA. Indeed, as expert Steve Hazel testified, the services provided by SDI and ATA were worth over $1 million more than Adelaida and KMBG paid for them. (Umhofer Decl. ¶5, **Ex. 2**, Trial Day 5 20:9-10.) Nor did Defendants provide any evidence or testimony that analyzed and rebutted Mr. Hazel's valuation. (Umhofer Decl. ¶6, **Ex. 3**, Trial Day 7 65:19-22.) Accordingly, this Court should declare that the 2017 Services Agreement between the parties is void.  See Wells Fargo Bank, N.A. v. Sharma, 642 F. Supp. 2d 242, 247 (S.D.N.Y. 2009) ("[A] dispute over the validity and enforceability of a contract that, in turn, depends on the resolution of defendant's breach of fiduciary duty and fraud claims" is an appropriate "invocation of the Declaratory Judgment Act.")

//

//

//

//

//

*PLAINTIFF'S MEMO OF LAW RE EQUITABLE CLAIMS*

**B.**    **Directors and Officers Breaches of Their Fiduciary Duties Warrant Their Removal From ATA and SDI**

    **1.**    **The Court Has Authority to Remove Directors Under California and Texas Law**

Plaintiff requests that the Court order the removal of ATA and SDI's directors and officers found by the jury to have engaged in wrongdoing. California law and broad equitable principles support this Court's power to intercede especially in cases of systemic abuses and serial misconduct by the board.

California Corporations Code section 304, vests courts statutory authority to remove corporate directors: the Court may "at the suit of shareholders holding at least 10 percent of the number of outstanding shares of any class, remove from office any director in case of fraudulent or dishonest acts or gross abuse of authority or discretion with reference to the corporation and may bar from reelection any director so removed for a period prescribed by the court." Cal. Corp. Code § 304. Where there has been a finding of breach of fiduciary duty, the record "amply sustains the trial court's removal" of a director. Brown v. N. Ventura Rd. Dev. Co., 216 Cal. App. 2d 227, 232 (Ct. App. 1963). Where a director has been found to have diverted the assets of a corporation, "[i]t needs no citation of authority that the trial court possesses power to remove a director guilty of such defalcations and misdeeds." Koshaba v. Koshaba, 56 Cal. App. 2d 302, 309, 132 P.2d 854, 859 (1942).

Apart from statutory authority, California courts have inherent equitable power to remove directors for fiduciary breaches. Because "directors hold a position of trust, judicial power to remove them exists independent of statute." Brown v. N. Ventura Rd. Dev. Co., 216 Cal. App. 2d 227, 232 (Ct. App. 1963); see also DeGarmo v. Goldman, 19 Cal. 2d 755, 761 (1942) (broad concept of equitable jurisdiction justified historically and required presently for protecting rights); see also Am. Ctr. for Educ., Inc., v. Cavnar, 80 Cal. App. 3d 476, 499 (1978) (courts have equitable power to remove directors independent of statutory authorization), superseded by statute on other grounds by

Patton v. Sherwood, 152 Cal. App. 4th 339 (2007) (citing De Garmo v. Goldman, 19 Cal. 2d 755, 760 (1942); Brown v. N. Ventura Rd. Dev. Co., 216 Cal. App. 2d 227 (Ct. App. 1963)).

Texas law similarly provides courts with equitable power to remove directors for breaches of fiduciary duty. See Burnett v. Smith, 240 S.W. 1007, 1010 (Tex. Civ. App. 1922) ("[A] court of equity has power to remove trustees upon a proper showing of fraud or unfitness on their part. It cannot be doubted that, although no power was reserved by the shareholders in the association to remove the trustees, yet a court of equity has jurisdiction to do so upon a proper showing.").

Ninth Circuit courts recognize the value of corporate governance reforms, such as the removal of offending directors and officers. See Feuer v. Thompson, Nos. 10-CV-00279, 12-CV-00203, 2013 WL 2950667, at *2 (N.D. Cal. June 14, 2013) ("Courts have recognized that corporate governance reforms provide valuable benefits' to corporations and their shareholders.") (citations omitted); see also In re NVIDIA Corp. Derivative Litig., Master File No. C-06-06110, 2008 WL 5382544, at *3 (N.D. Cal. Dec. 22, 2008) ("As corporate debacles such as Enron, Tyco and WorldCom demonstrate, strong corporate governance is fundamental to the economic well-being and success of a corporation.").

Removing directors and officers found liable for breach of fiduciary duty will not only vindicate Plaintiff but also rehabilitate shareholder trust and detoxify the boardroom, safeguarding the future of these companies.

### 2.     The Court Found Defendants Breached Their Fiduciary Duties

On March 28, 2024, the Court issued its ruling on the parties' motions for summary judgment finding that: (i) Elizabeth breached fiduciary duties in connection with ATA's sale of Adelaida Cellars winery to an entity that she almost entirely owned (KMBG) and at terms that were highly favorable to her; (ii) Kedrin breached fiduciary duties she owed to ATA by directing it to enter into the 2016 ATA Grape Purchase Agreement ("Grape Purchase Agreement") that forced ATA to sell grapes to Adelaida

at a fraction of their true value; and (iii) Carter aided and abetted Kedrin's breaches in connection by facilitating the Grape Purchase Agreement. (ECF No. 342, at 15:14-17; 19:20-21.) The same evidence was also presented at trial. In making these determinations, the Court relied on the following undisputed pieces of evidence for these transactions:

### a.   2013 Sale of Adelaida

In 2013, Elizabeth Van Steenwyk engineered the sale of Adelaida Cellars winery from ATA (an entity in which she owned a small percentage) to an entity that she almost wholly owned (over 99% ownership). (ECF No. 143, ¶¶ 5, 56.) The Board rubber stamped a sweetheart deal for Elizabeth in which she received Adelaida for a below market price, without having to make a down payment, and was loaned the money at an artificially low 0.95% interest rate. (Umhofer Decl., ¶7, **Ex. 4**, Trial Ex. 5.) In its summary judgment decision, the Court noted the following facts as being critical to its finding of a breach of fiduciary duty by Elizabeth:

- Elizabeth failed to disclose that she held a greater proportionate ownership interest in KMBG than in ATA, before ATA's board approved the Adelaida Sale Agreement. (ECF No. 342, at 15:1-4.)

- ATA sold Adelaida to KMBG in exchange for a promissory note, but KMBG did not make scheduled payments as required by the note. And despite this nonpayment, ATA did not provide KMBG with a notice of default which would have triggered a higher interest rate and allowed ATA to declare the unpaid principal balance and interest accrued immediately due. (ECF No. 342, at 11:9-15.)

- Elizabeth, as a director and the controlling shareholder of both ATA and KMBG, failed to ensure KMBG made timely payments on the note. The Court concluded that this failure to enforce ATA's rights under the Adelaida Purchase Agreement was inherently unfair and not in the best interests of ATA and its minority shareholders. (ECF No. 342, at 11:22-27.)

9

### b.  2016 Grape Purchase Agreement

In August 2016, Adelaida held a financial summit in which Kedrin, Carter, and other attendees discussed whether Adelaida could pay a discounted rate for the grapes grown by ATA's vineyard properties (the "Ranches"). (Umhofer Decl., ¶8, **Ex. 5**, Trial Ex. 29.) A few months later, in November 2016, Kedrin signed two separate grape purchase agreements—one for grapes grown by KMBG and sold to Adelaida (the "KMBG Purchase Agreement") and one for grapes grown by ATA's Ranches and sold to Adelaida (the "ATA Purchase Agreement"). (Umhofer Decl., ¶9, **Ex. 6**, Trial Ex. 14.) The ATA Purchase Agreement provided for a 6% sale discount for the grapes grown by ATA and sold to Adelaida. Notably, the KMBG Purchase Agreement contained no such discount. (Id.)

In its summary judgment ruling, the Court found no evidence establishing that the ATA Purchase Agreement was the result of arm's length negotiations between Adelaida and ATA. (ECF No. 342, at 12:13-15.) Given the greater proportional interest in KMBG and Adelaida, the Court concluded that Kedrin failed to ensure that this self-interested transaction was inherently fair and in the best interests of ATA and its minority shareholders. (ECF No. 342, at 13:1-4.)

As to the Court's finding that Carter aided and abetted Kedrin's breaches in connection with the ATA Purchase Agreement, the Court focused on the following pieces of undisputed evidence:

- Carter, as general counsel for ATA and SDI, knew or should have known Kedrin owed ATA and its minority shareholders fiduciary duties as its controlling shareholder and director. (ECF No. 342, at 18:8-10); see also (Umhofer Decl., ¶10, **Ex. 7**, Trial Ex. 22.)

- Carter received communications which indicated that ATA continued to subsidize Adelaida even after it was sold to KMBG. For example, Carter received an email in April 2016 from SDI's former CFO, Dana Armstrong, in which she writes: "Wondering if it's appropriate for SDI/ATA to be 'funding'

10

KMBG/Adelaida routinely with no concrete plans to get paid back." (Umhofer Decl., ¶11, **Ex. 8**, Trial Ex. 57.)

- Even despite concerns like the above, expressed by other ATA and SDI officers, Carter became a director Adelaida in August 2016. (ECF No. 286, ¶ 34.) He also attended the financial summit where the board decided to lower grape costs for the now separately owned Adelaida winery. (Umhofer Decl., ¶8, **Ex 5**, Trial Ex. 29.) And Carter subsequently drafted the ATA and KMBG Purchase agreements which allowed Adelaida to pay ATA for grapes at 6% discount from the weighted average of the appellation—grapes that Adelaida would turn around and sell to other wineries for double what it paid ATA. (Umhofer Decl., ¶9, **Ex 6**, Trial Ex. 14.)

- In conclusion, the Court found that this undisputed evidence established that Carter knew Kedrin was breaching her fiduciary duties by engineering the self-interested ATA Purchase Agreement that favored Adelaida, and that he gave her substantial assistance or encouragement to act. (ECF No. 342, at 18:25-28.)

### 3.    The Jury's Verdict Supports Removal of Directors

As reflected by the verdict forms, the jury's factual findings support equitable relief sought. The jury specifically found that Defendants Elizabeth Van Steenwyk, Kedrin Van Steenwyk, Pamela Pierce, Phillip Gobe, Gene Durocher, Joseph McCopy, Philip Longorio, Daniel Carter, and Kieran Duggan were liable to ATA and SDI for breach of fiduciary duty. (ECF No. 485, at pp. 2-3.) The jury specifically found that Defendants Elizabeth Van Steenwyk and Kedrin Van Steenwyk were liable to Plaintiff for breach of fiduciary duty. (ECF No. 485, at p. 4.) The jury specifically found that Defendant Adelaida Cellars, Inc. was liable to Plaintiff for aiding and abetting the controlling shareholder's breach of fiduciary duty. (ECF No. 485, at p. 5.) Finally, the jury specifically found that Defendant Elizabeth Van Steenwyk was liable to ATA and SDI for corporate waste. (ECF No. 489, at p. 2.)

*PLAINTIFF'S MEMO OF LAW RE EQUITABLE CLAIMS*

4. **Defendants' Trial Testimony and Evidence Presented at Trial Shows Removal of Directors Is Warranted**

Defendants' trial testimony reflects their knowing breaches of their fiduciary duty and supports their removal from ATA and SDI.

Defendant Kedrin Van Steenwyk testified that she requested $500,000 in capital expenditures for the vineyards from ATA and that without "outside funding" from ATA "truly necessary stuff will go by the wayside." (Umhofer Decl., ¶12, **Ex. 9**, Trial Day 2 139:18-140:11.) Kedrin confirmed that what Adelaida paid ATA for the grapes was not even a third of ATA's costs to farm the grapes. (Umhofer Decl., ¶12, **Ex. 9**, Trial Day 2 145:3-11.) Kedrin testified that she felt like she did not have a choice but to spend ATA money to make her mother's "dream of a tasting room" a reality while ATA and SDI were simultaneously laying off employees in January 2016. (Umhofer Decl., ¶12, **Ex. 9**, Trial Day 2 189:21-190:11.)

Defendant Dan Carter confirmed that an auditor's report informed Defendants that ATA and SDI were losing between $1 million and $2 million annually on the ranches that grew grapes for Adelaida and that over ten years that amount would equal $15 million to $20 million in losses. (Umhofer Decl., ¶12, **Ex. 9**, Trial Day 2 52:20-53:8.) Carter further confirmed that even though ATA and SDI were spending $1-2 million annually and ATA personnel were doing work on the ranches, the services agreement in place only provided for $1,000 - $2,000 monthly. (Umhofer Decl., ¶12, **Ex. 9**, Trial Day 2 69:19-70:4; 70:14-22.) Carter even acknowledged that Adelaida paid less for better quality grapes as a result of the grape purchase agreement. (Umhofer Decl., ¶12, **Ex. 9**, Trial Day 2 40:18-20.)

Defendant Kieran Duggan testified about transferring a $2 million capital contribution to ATA Ranches, money that was not going to ATA's actual business of oil field services. (Umhofer Decl., ¶12, **Ex. 9**, Trial Day 2 103:17-104:4.). Duggan also testified that ATA was paying for expenses that KMBG and Adelaida – two companies with no relation to ATA and SDI – were incurring. (Umhofer Decl., ¶12, **Ex. 9**, Trial

Day 2 90:21-24.) Duggan testified that for five years, from 2013 to 2018, Adelaida was not making timely payments to ATA and SDI for the payroll expenses they incurred. (Umhofer Decl., ¶12, **Ex. 9**, Trial Day 2 99:17-19.) Duggan confirmed that in 2016, ATA wrote off $1.1 million in debt Adelaida owed to ATA. (Umhofer Decl., ¶12, **Ex. 9**, Trial Day 2 104:19-105:3.) Duggan testified that another $600,000 was written off related to the sale of Adelaida to KMBG. (Umhofer Decl., ¶12, **Ex. 9**, Trial Day 2 108:21-24.)

Likewise, Defendant Pierce admitted that she did not even know who owned KMBG, yet voted to sell Adelaida to KMBG (i.e., Elizabeth) on terms that were slanted heavily against ATA and were extremely favorable to Elizabeth and KMBG. (Umhofer Decl., ¶13, **Ex. 10**, Trial Day 4 29:21; Umhofer Decl., ¶14, **Ex. 11**, P. Pierce Designated Deposition Transcript, 43:16-43:19.)

Defendants again and again admitted to spending ATA and SDI money and assets for the benefit of KMBG and Adelaida. And despite knowing the immense cash outlays that ATA was being forced to make for the benefit of Adelaida at a time when they were laying off employees, Kedrin, Carter, and Duggan increased the spending—so much so that Duggan marveled at the amounts of money being spent. (Umhofer Decl. ¶¶ 15-16, **Exs. 12, 13**, Trial Exs. 243, 244.)

These admissions support an order for their removal from the board and operations of ATA and SDI.  Given the Courts' clear equitable powers to enact corporate governance reforms and remove Kedrin, Pierce, Carter, and Duggan from the boardroom and c-suite of ATA and SDI, as recognized by California and Ninth Circuit courts, and the necessity due to Defendants' conduct, Plaintiff's prayer for relief should be granted.

### C.    Permanent Injunction Is Critical to Prevent Future Harm

Plaintiff is entitled to injunctive relief to prevent ongoing breaches of fiduciary duty by Defendants. This is especially so given that Defendant Kedrin Van Steenwyk remains the controlling shareholder and is capable of unilaterally affecting the actions of ATA and SDI. "Minority shareholders are not in privity with directors, and faithless

directors can often contrive to make swindles appear facially legitimate through the operation of corporate mechanisms such as voting at board meetings." ZF Micro Sols., Inc. v. TAT Cap. Partners, Ltd., 82 Cal. App. 5th 992, 1000 (2022) (citing Wickersham v. Crittenden, 93 Cal. 17, 24 (1892)).

California's equitable jurisdiction extends beyond removing directors, as "[a] trial court's equity powers are *formidable*." Johnson v. Tago, Inc., 188 Cal. App. 3d 507, 518 (1986) (emphasis added). California courts have held that while damages are a remedy at law, the "nature of the rights involved in a shareholder breach of fiduciary duty action against the corporate directors is generally viewed as a determination of rights in equity. Where a breach of fiduciary duty occurs, **a variety of equitable remedies are available**…" Cent. Laborers' Pension Fund v. McAfee, Inc., 17 Cal. App. 5th 292, 347, 225 Cal. Rptr. 3d 249, 296 (2017) (quoting C & K Eng'g Contractors v. Amber Steel Co., 23 Cal. 3d 1, 9 (1978); Meister v. Mensinger, 230 Cal. App. 4th 381, 396 (2014)) (internal quotations omitted; emphasis added).

"A permanent injunction is an equitable remedy for certain torts or wrongful acts of a defendant where a damage remedy is inadequate. A permanent injunction is a determination on the merits that a plaintiff has prevailed on a cause of action for tort or other wrongful act against a defendant and that equitable relief is appropriate." Grail Semiconductor, Inc. v. Mitsubishi Elec. & Elecs. USA, Inc., 225 Cal. App. 4th 786, 800 (2014) (quoting Art Movers, Inc. v. Ni West, Inc., 3 Cal. App. 4th 640, 646 (1992)). The California Court of Appeal has held that where "evidence showed defendants caused substantial detriment to the organization, and the equitable relief granted is directly tied to the facts and breaches of fiduciary duty established at trial.[,]" a permanent in junction is appropriate. Ass'n for Los Angeles Deputy Sheriffs v. Macias, 63 Cal. App. 5th 1007, 1040, 278 Cal. Rptr. 3d 487, 515 (2021)

Under California law, "a final junction may be granted '[w]here pecuniary compensation would not afford adequate relief' and '[w]here the restraint is necessary to prevent a multiplicity of judicial proceedings[.]'" Monster Energy Co. v. Vital

Pharms., Inc., No. EDCV181882JGBSHKX, 2023 WL 8168854, at \*16 (C.D. Cal. Oct. 6, 2023) (quoting Cal. Civ. Code § 3422). "The court considers the totality of the circumstances when determining if a permanent injunction is appropriate." Foothill Church v. Watanabe, 654 F. Supp. 3d 1054, 1057 (E.D. Cal. 2023) (citing La Quinta Worldwide, LLC v. Q.R.T.M., S.A. de C.V., 762 F.3d 867, 880 (9th Cir. 2014)). "A district court has considerable discretion in fashioning suitable relief and defining the terms of an injunction." Lamb-Weston, Inc. v. McCain Foods, Ltd., 941 F.2d 970, 974 (9th Cir. 1991).

A permanent injunction against future breaches of fiduciary duty is necessary to prevent irreparable harm from potential civil and criminal tax penalties triggered by ATA and SDI's payment of and failure to report constructive dividends to Kedrin Van Steenwyk. ATA and SDI, by providing subsidized services and cash infusions to Adelaida Cellars have effectively paid constructive dividends to Kedrin.

"Where a corporation provides an economic benefit to a shareholder with no expectation of reimbursement, the benefit is a 'constructive dividend' and is taxable income." Benson v. Comm'r, 560 F.3d 1133, 1134 (9th Cir. 2009) (citing Inland Asphalt Co. v. Comm'r, 756 F.2d 1425, 1429 (9th Cir.1985). "A taxpayer who is a stockholder has been held to have received constructive dividends in many situations where he has received an economic benefit as a result of the payment made to him or for his benefit by the corporation." Comm'r v. Riss, 374 F.2d 161, 167 (8th Cir. 1967). This includes "personal use of corporate property by a shareholder." Comm'r v. Riss, 374 F.2d 161, 167 (8th Cir. 1967) (citing Challenge Mfg. Co. v. Comm'r, 37 T.C. 650, 650 (1962), acq., IRS Announcement Relating to: Castendyck, Challenge Mfg. Co. (IRS ACQ Dec. 31, 1962)).

The Court's order on the motion for summary judgment and the jury's verdict now puts all Defendants on notice of the unlawfulness of their conduct in paying constructive dividends. To the extent Defendants intend to continue this course of conduct such breaches and failure to report constructive dividends would be knowing

and willful in the future. Based on their election to allow Kedrin, Pierce, Carter, and Duggan to remain in their positions and potential for unlawful indemnification payments, such future breaches are eminent and likely. If Defendants are not enjoined from future breaches of fiduciary duty, the potential civil and criminal penalties that accrue to ATA and SDI will be an irreparable harm.

The remedy should be exercised where it is reasonably probable the acts complained of will recur. United States v. Laerdal Mfg. Corp., 73 F.3d 852, 856 (9th Cir. 1995) (a defendant's repeated self-justification is sufficient to show a likelihood of future violations, regardless of intent, as continued justification of past violations "is an important factor in deciding whether future violations are sufficiently likely to warrant an injunction."); Id. at 855 (holding that where a court has found a cognizable danger of recurrent future violations, an injunction can be utilized even without a showing of past wrongs). "Equity abhors a multiplicity of actions. It is the policy of the law to reduce to the minimum the number of actions which may subsist between the same parties." Simmons v. Superior Ct. in & for Los Angeles Cnty., 96 Cal. App. 2d 119, 130, 214 P.2d 844, 852 (1950) (quoting Rilcoff v. Superior Ct. of Los Angeles Cnty., 50 Cal. App. 2d 503, 506, 123 P.2d 540, 542 (1942).

While California law allows for corporations to indemnify directors and officers who are made party to an action "by reason of the fact that the person is or was an [officer or director] of the corporation" under California Corporations Code section 317(b), the statute is clear that no indemnification shall be made "[i]n respect of any claim, issue or matter as to which the person shall have been adjudged to be liable to the corporation in the performance of that person's duty to the corporation and its shareholders…" Cal. Corp. Code § 317(c). Here, an injunction preventing indemnification would serve to prevent a multiplicity of judicial proceedings. Additionally, courts have found that payment by a corporation of director defense costs to which they are not entitled is a sufficient likelihood of irreparable injury for the purposes of issuing a preliminary injunction. See Johnson v. Couturier, 572 F.3d 1067, 1081 (9th Cir. 2009)

*PLAINTIFF'S MEMO OF LAW RE EQUITABLE CLAIMS*

There can be no question that further breaches will recur absent an injunction. Indeed, Defendants have engaged in ongoing misconduct for over a decade thus proving that they are incapable of reform if left to their own devices. For instance, in 2009, Plaintiff filed a lawsuit that alleged breaches of fiduciary duty by the directors and controlling shareholder. As part of the settlement of that lawsuit, Plaintiff demanded corporate governance reforms to protect against further breaches of fiduciary duty. (Umhofer Decl., ¶17, **Ex. 14**, Trial Ex. 159.) However, the controlling shareholders evaded those reforms by once again dominating the board room, selecting directors from the same circle of friends that they knew would not challenge them, and putting the controlling shareholder's stepson, Mr. Duggan, in charge of the money at ATA/SDI and Adelaida to make facilitation of these illicit transactions easier.

After Plaintiff discovered that something was clearly afoot at the ranches in 2018 and asked for an investigation, Defendants steadfastly refused his request and instead shoveled millions more into the Ranches for Adelaida and Kedrin's benefit. In the February 2024 meeting minutes, the Board even approved an additional $200k in spending on the Ranches.

In fact, even after the jury's recent verdict, the current CEO and director of ATA/SDI informed Plaintiff that Defendants Kedrin Van Steenwyk, Dan Carter, Kieran Duggan, and Pamela Pierce would continue serving in their positions of authority at ATA/SDI as if nothing happened. (Umhofer Decl., ¶ 3.) Thus, there can be no doubt that only a removal of Kedrin, Pierce, Carter, and Duggan from their positions as directors and officers and an injunction will halt the continued grift by Defendants.

**III.      CONCLUSION**

Plaintiff respectfully requests the Court enter a judgment in Plaintiff's favor on his equitable relief claims and order the removal of Defendants Kedrin Van Steenwyk, Pamela Pierce, Daniel Carter, and Kieran Duggan as directors and officers of ATA and SDI and issue a permanent injunction prohibiting ATA and SDI from indemnifying Defendants Elizabeth Van Steenwyk, Kedrin Van Steenwyk, Pamela Pierce, Phillip

Gobe, Gene Durocher, Joseph McCoy, Philip Longorio, Daniel Carter, and Kieran
Duggan from the judgment entered by the jury.


Dated: July 24, 2024                    **UMHOFER, MITCHELL & KING LLP**

                                        /s/ *Matthew Donald Umhofer*
                                        Matthew Donald Umhofer, Esq.
                                        J. Anthony King, Esq.
                                        Diane H. Bang, Esq.
                                        *Attorneys for Plaintiff*

*PLAINTIFF'S MEMO OF LAW RE EQUITABLE CLAIMS*