| | |
|---|---|
| 1 | Jonathan M. Weiss (SBN 250307) |
| | jweiss@proskauer.com |
| 2 | **PROSKAUER ROSE LLP** |
| | 2029 Century Park East, Suite 2400 |
| 3 | Los Angeles, CA 90067-3010 |
| | Telephone: 310.557.2900 |
| 4 | Facsimile: 310.557.2193 |
| 5 | Kevin Abikoff |
| | kabikoff@proskauer.com |
| 6 | Mark D. Harris |
| | mharris@proskauer.com |
| 7 | Emily H. Kline |
| | ekline@proskauer.com |
| 8 | **PROSKAUER ROSE LLP** |
| | Eleven Times Square |
| 9 | New York, NY 10036-8299 |
| | Telephone: 212.969.3000 |
| 10 | Facsimile: 212.969.2900 |
| 11 | *Attorneys for Defendants Pamela Pierce,* |
| | *Phillip Gobe, Gene Durocher, and Joseph* |
| 12 | *McCoy* |

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW D. VAN STEENWYK, Individually, as Trustee and Beneficiary of The Matthew Van Steenwyk GST Trust and The Matthew Van Steenwyk Issue Trust, and as Co-Trustee of The Gretchen Marie Van Steenwyk-Marsh GST Trust and The Gretchen Marie Van Steenwyk-Marsh Issue Trust and derivatively on behalf of Nominal Defendants APPLIED TECHNOLOGIES ASSOCIATES, INC., SCIENTIFIC DRILLING INTERNATIONAL, INC. and ATA RANCHES, INC., <br><br> Plaintiff, <br><br> vs. <br><br> KEDRIN E. VAN STEENWYK, et al., <br><br> Defendants, <br><br> and | Case No. 2:20-cv-02375-FLA-AJR <br><br> *Hon. Fernando L. Aenlle-Rocha* <br><br> **DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO STRIKE AND REQUEST FOR SANCTIONS** |

*DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO STRIKE AND REQUEST FOR SANCTIONS*

APPLIED TECHNOLOGIES ASSOCIATES, INC., SCIENTIFIC DRILLING INTERNATIONAL, INC., and ATA RANCHES, INC.,

        Nominal Defendants.

*DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO STRIKE AND REQUEST FOR SANCTIONS*

**PRELIMINARY STATEMENT**

Despite being offered a chance to walk back the improper seizure of assets from the Director Defendants—after being made clearly aware that at least one Director Defendant needed access to the funds for medical care—Plaintiff doubles-down on his callous behavior by now seeking without foundation to strike the needed relief requested by the Director Defendants. Plaintiff's assertion that he was wholly unaware of Defendants' intention to file for emergency temporary injunctive relief is contradicted by fact and disingenuous and, like the motion to strike itself, an inappropriate effort to delay and divert the Court from addressing the merits of the Director Defendants' application for *ex parte* relief. Further, Plaintiff's efforts to threaten sanctions are a mere distraction from his own alarming conduct. This Court should deny Plaintiff's motions to strike and for sanctions and grant Defendants' *Ex Parte* Application.

**ARGUMENT**

**I.  PLAINTIFF WAS GIVEN PROPER NOTICE OF THE *EX PARTE* APPLICATION UNDER L.R. 7-19.1.**

Plaintiff baselessly argues that Defendants failed to provide him with proper notice of their *Ex Parte* Application pursuant to Local Rule 7-19.1. Opp. 2. Under Local Rule 7-19.1, a party filing an application for an *ex parte* order is required "(a) to make reasonable, good faith efforts orally to advise counsel for all other parties, if known, of the date and substance of the proposed *ex parte* application and (b) to advise the Court in writing and under oath of efforts to contact other counsel and whether any other counsel, after such advice, opposes the application." *See* Local Rule 7-19.1. The Local Rules explicitly acknowledge that the notice requirement is more relaxed in the context of filing a request for a temporary restraining order than in ordinary circumstances. *See* LR. 7-3 ("In all cases . . . except in connection with . . . applications under F. R. Civ. P. 65 for temporary restraining orders or preliminary injunctions,

counsel contemplating the filing of any motion must first contact opposing counsel to discuss thoroughly, preferably in person, the substance of the contemplated motion and any potential resolution.") (emphasis added).  At least one court has held that under Local Rule 7-19.2, the judge may waive the notice requirement in the interest of justice. *Free-Free (USA) Inc. v. Housewares Int'l Inc.*, No. 2:18-CV-03142-SJO-E, 2019 WL 4194307, at *5 (C.D. Cal. Apr. 23, 2019).

Defendants did exactly what the Local Rules require.  On Monday, December 9, 2024, Plaintiff's counsel and Defendants' counsel participated in a meet and confer which had been scheduled the previous week.  Kajbaf Decl. ¶ 3.  The original purpose of the meet and confer was to discuss Defendants' anticipated Motion to Dismiss Plaintiffs' First Amended Complaint in connection with the lawsuit Plaintiff and his sister, Gretchen Van Steenwyk-Marsh, filed against Defendants this year.  *See* Kajbaf Decl. ¶ 4.  But given that Plaintiff had frozen several of the Defendants' bank accounts on the preceding Friday, counsel for Defendants Pamela Pierce, Phillip Gobe, Gene Durocher, and Joseph McCoy (the "Director Defendants") raised the issue with Plaintiff's counsel.  Specifically, Kevin Abikoff informed Plaintiff's counsel that he had learned of Plaintiff's decision to enforce the writs of execution against his clients, and that this had left one of his elderly clients without access to the funds that he needed to pay for essential medical care.  Kajbaf Decl. ¶ 5.  Plaintiff's counsel were indifferent to this point.  Kajbaf Decl. ¶ 5.  The Director Defendants' counsel then asked Plaintiff's counsel why they were enforcing the writs of execution with several motions challenging the writs pending, to which Plaintiff's counsel responded that it was because their client had a judgment (notwithstanding that the judgment is not final and enforceable under federal law).  Kajbaf Decl. ¶ 5.  The Director Defendants' counsel indicated that motions challenging the validity of the writs of execution were pending with the Court, and that Plaintiff did not have a final judgment to support the writs of execution.  Kajbaf Decl. ¶ 6.  Without any effort to work toward a resolution, Plaintiff's counsel simply stated that he disagreed with the Director Defendants' position.  Kajbaf

Decl. ¶ 6. The Director Defendants' counsel then asked whether Plaintiff planned to cease or undo his collection efforts. Kajbaf Decl. ¶ 7. After Plaintiff's counsel conveyed that no such plan existed, the Director Defendants' counsel conveyed that he and his team will seek the appropriate relief in response to Plaintiff's recent actions and stated, "consider this your notice." Kajbaf Decl. ¶ 7. Plaintiff's counsel acknowledged that notice. Kajbaf Decl. ¶ 7. Notably, Plaintiff's counsel did not ask questions as to the relief the Director Defendants' counsel was referring to and counsel for the Director Defendants reasonably assumed that it was clear in context among sophisticated counsel what relief must be sought under the circumstances. Kajbaf Decl. ¶ 8. Given this lack of inquiry, together with the context of the discussion, sophistication of the parties, and narrow universe of potential relief available from Plaintiff's conduct, it is unreasonable for Plaintiff to now argue that the first he heard of the possibility of the *Ex Parte* Application was when he received the ECF notification.[1] But even in this the Plaintiff does not tell the complete or accurate story.

At 1:20 pm (pacific) on December 11, 2024, Diana Bang (counsel for Plaintiff) indicated that she had received an ECF notification regarding the TRO request. That EFC notification, was a motion to *withdraw* an application that had been erroneously filed due to a vendor mistake. ECF No. 631. An email dialogue between counsel then

---

[1] Further—and unique to notice requirements for *ex parte* applications—even if Plaintiff did not understand the Director Defendants' notice, that does not result in noncompliance with L.R. 7-19.1. *Free-Free (USA) Inc. v. Housewares Int'l Inc.* is on point. No. 2:18-CV-03142, 2019 WL 4194307 (C.D. Cal. Apr. 23, 2019). There, this Court reached the merits of the party's *ex parte* application despite ambiguity as to whether the Plaintiff had actual notice of the application beforehand. *Id.* at *5. The defendant had left a voicemail for the plaintiff purportedly discussing the substance of the incoming *ex parte* application, but neither party had submitted evidence revealing the substance of the voicemail. Ambiguity as to whether the defendant succeeded in notifying the plaintiff did not stop this Court from reaching the merits. In fact, this Court rejected the "[p]laintiff's understanding that Local Rule 7-19 **requires** Defendant to provide oral notice. Instead, Local Rule 7-19 requires counsel to 'make **reasonable, good faith efforts**' to orally advise Plaintiff of the *ex parte* application." *Id*. (emphasis in original).

1  ensued wherein counsel for the Director Defendants reminded Plaintiff's counsel of the
2  clear communication in the meet and confer and, more importantly, indicated that if "if
3  you agree to voluntarily withdraw the levies and quash the writs of execution – as the
4  law requires – we would be prepared to consider withdrawal of the TRO." *See* Opp.
5  Ex. 1 at 2.  At 3:22 pm (pacific), Plaintiff's counsel responded in clear terms: "We will
6  not withdraw the levies or the writs of execution." *Id*.

7      Accordingly, Plaintiff had absolute notice of the relief being sought by the
8  Director Defendants and an offer that such relief would be withdrawn if they agreed to
9  withdraw the writs of execution.  But Plaintiff rejected that offer.  In these
10 circumstances, the notice requirement was not only technically fulfilled (as per the
11 above) but as a practical matter the purpose of the rule was also utterly fulfilled.  At
12 best, Plaintiff seeks to elevate their sense of form over substance in a Hail Mary effort
13 to distract the Court from the failed substance and outright callousness of his conduct.
14 This effort should be rejected.  *Darling v. Mese*, No2:11-CV-07086, 2014 WL
15 12967991, at *3 (C.D. Cal. Sept. 3, 2014) (disregarding noncompliance with Local
16 Rule where noncompliance was harmless); *see also See Francis W. Yomi v. Dep't. of
17 Health and Hum. Servs., at al.*, No. 2:23-CV-01740, 2024 WL 4755601, at *1 (C.D.
18 Cal. Oct. 22, 2024) ("[I]n the interests of avoiding further delay, the Magistrate Judge
19 will reach the merits of the Motion notwithstanding any possible failure to comply fully
20 with Local Rule 37[.]").

21 **II.   PLAINTIFF'S MOTION TO STRIKE IS WITHOUT MERIT AND IS**
22       **FACIALLY A THIN VEIL FOR THE UTTER WEAKNESS OF THEIR**
23       **ARGUMENT ON THE MERITS**

24     Plaintiff fails to cite any legal authority or standard for their motion to strike.
25 Under FRCP Rule 12(f) the standard for reviewing a motion to strike is whether the
26 allegations in a pleading are "redundant, immaterial, impertinent or scandalous."
27 *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010)  Not only does
28 Plaintiff fail to allege that these standards are met (and leaving aside that such a motion

is meant to be in the context of a pleading—which this is not)[2] but rather his motion bespeaks the very reason motions to strike are disfavored: it seeks merely to delay and divert. *See Soper v. Travelers Prop. Casualty Ins. Co.* 2009 WL 10675968 (C.D. Cal. 2009).

But even a cursory review of the Plaintiff's arguments in opposition to the Director Defendants *Ex Parte* Application imparts the real purpose of Plaintiff's motion to strike and for sanctions. The former is a desperate attempt to avoid having this Court examine the merits of the *Ex Parte* Application and the latter an improper and baseless effort at intimidation designed as an attempt to cow the Director Defendants from asserting their rights. Weaknesses in the Plaintiff's motion can be readily highlighted with the following:

- Plaintiff's failed effort to mislabel the need for medical care as failing to show the requisite 'extraordinary' circumstances warranting emergency relief," Opp. 4, and to establish irreparable harm. As a direct result of Plaintiff's conduct, an elderly couple in declining and fragile health and their two disabled children that they support have lost access to the funds that pay for their necessary medical care.[3] These and the other

---

[2] *See Casavelli v. Johanson*, No. 2:20-CV-00497, 2020 WL 3035959 (D. Ariz. June 5, 2020) (denying a motion to strike defendant's motion to dismiss because motions to strike under FRCP 12(f) are limited to pleadings).

[3] Plaintiff's caselaw does nothing to advance their argument. For example, *Mission Power Engineering Co. v. Continental Casualty Co.* involved a party who filed seven *ex parte* applications in just two months and did so the final time to avoid a motion to compel. 883 F. Supp. 488, 489 (C.D. Cal. 1995). *In re Intermagnetics America, Inc.* involved an *ex parte* application for sanctions, and the Court explained that "the *ex parte* application for sanctions in this case [was] based on neither any real urgency nor on the danger that defendant will flee, destroy evidence, or secrete assets. There is thus no reason why plaintiff's application for sanctions should be heard *ex parte*." 101 B.R. 191, 194 (C.D. Cal. 1989). And *Moore v. Chase, Inc.* involved an *ex parte* application for a temporary restraining order to prevent enforcement of a subpoena, and the Court rejected the application because "the proper procedure for accomplishing Defendant's

circumstances noted in Defendants' *Ex Parte* Application adequately satisfy both standards.

- Plaintiff seeks to suggest that the Director Defendants slept on their right by delaying the filing for *ex parte* relief with reference to the entry of judgment. Opp. 8. But Plaintiff ignores the fact that the Director Defendants timely moved to quash the writs of execution and that the emergency was only created (justifying the need for emergency relief) when assets were seized last Friday, December 6.[4]

- Plaintiff concedes that FRCP 54(b) requires a finding that no just cause for delay exist but argues against the clear language of the rule that the finding needs to be explicit. Opp. 6; *see also* Fed. R. Civ. P. 54(b) ("[T]he court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties *only if* the court *expressly* determines that there is no just reason for delay.") (emphasis added).

- Plaintiff argues that the "one final judgment rule" governs appealability, Opp. 6-7, but he ignores caselaw that demonstrates that it also governs when a writ of execution can be entered. *See Newstart Real Est. Inv. LLC v. Huang*, 37 Cal. App. 5th 159, 164 (2019) (affirming a trial court's

---

goal was to serve written objections on Plaintiff or file a regularly noticed motion to quash or modify the subpoena[.]" No. 1:14-CV-01178, 2015 WL 4636750, *3 (C.D. Cal. 2015).

[4] Indeed, Plaintiff froze Defendants assets on Friday, December 6, and Defendants filed their *Ex Parte* Application on Wednesday December 9, after first meeting with Plaintiff and asking if he will cease his collection efforts. Kajbaf Decl. ¶ 7. Plaintiff's citation to cases explaining that three-month and five-month delays undermine the urgent need for relief has no relevance here. Opp. 8 (citing *First Franklin Fin. Corp. v. Franklin First Fin., Ltd.*, 356 F. Supp. 2d 1048, 1055 (N.D. Cal. 2005) (holding that a three month delay "undercuts ... claims of urgency and irreparable harm"); *Playboy Enters., Inc. v. Netscape Commc'ns Corp.*, 55 F. Supp. 2d 1070, 1090 (C.D. Cal. 1999) (holding that five month delay "in seeking injunctive relief further demonstrates the lack of any irreparable harm")).

6
DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO STRIKE AND REQUEST FOR SANCTIONS

decision to grant the defendants' motion to quash the writ of execution because the underlying judgment was not final as some claims remained pending and thus there lacked "one final judgment").

- Plaintiff's baseless suggestion that the Director Defendants have "unclean hands" because they engaged in the underlying conduct misses entirely the point that the *ex parte* test looks for any fault in connection with the *actions related to the need for the ex parte relief*.[5] *Hanna v. Stinn*, No. 2:24-CV-00546, 2024 WL 3914480, at *1–2 (C.D. Cal. June 18, 2024) (quoting *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995)).  The Director Defendants have done all they can to fight the writs of execution and none of the harm from the execution of the writs is their fault.  Plaintiff either entirely misunderstands and misapplies the unclean hands doctrine or is engaged in a slight of hand that could not fool even the weak minded.

## III. SANCTIONS ARE UNWARRANTED.

Plaintiff's effort to seek sanctions under Local Rule 83-7 are entirely baseless and can only be seen as an effort to intimidate the Director Defendants and their counsel.  Such an effort is unsupported in the law and should not be countenanced but itself deserves censure.

Local Rule 83-7 provides for sanctions in the case of misconduct that is "willful, grossly negligent or reckless."  Plaintiff does not make any serious effort to set forth conduct that meets this standard but rather alleges (without foundation or merit) a failure of technical compliance with Local Rule 7-19.1.  In the face of both the discussions among counsel directly related to the *Ex Parte* Application and the follow-

---

[5] The crisis here is not that there was a judgment against Defendants.  The crisis is that Plaintiff enforced a writ of execution prior to securing a final judgment and that this has resulted in Defendants losing access to critical assets.  And Defendants played no part in Plaintiff's abrupt decision to enforce the writs prematurely.

on written communications, there is utterly no basis that the standards for sanctions have been met even if technical compliance with Rule 7-19.1 is not found (a finding with which the Director Defendants' would vehemently disagree). *Cf. Theodoropoulous v. Cnty. of Los Angeles*, No. 2:12-CV-07938, 2014 WL 10987003, at *3 (C.D. Cal. Sept. 18, 2014) (finding sanctions where the attorney "(1) [] failed to conform to Local Rule 7–3 concerning his meet and confer obligations, which necessitated the filing of the motion to compel and frustrated opposing counsel's ability to file the summary judgment motion; (2) [] failed to abide by Local Rule 79 requiring him to file an opposition to a motion on at least three occasions; (3) [] failed to appear at the hearing on the motion to compel in violation of Local Rule 7–14; and (4) [] failed to obey [the judge's] order requiring answers to interrogatories and production of documents.").

## CONCLUSION

Based on the foregoing, Plaintiff's motion to strike and for sanctions should be denied and Defendants' *Ex Parte* Application should be granted.

DATED: December 13, 2024          PROSKAUER ROSE LLP

By:  /s/ Kevin Abikoff

Jonathan M. Weiss
Kevin Abikoff
Mark D. Harris
Emily H. Kline

*Attorneys for Defendants Pamela Pierce, Phillip Gobe, Gene Durocher, and Joseph McCoy*

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel for Defendants Pamela Pierce, Phillip Gobe, Gene Durocher, and Joseph McCoy, certifies that this brief contains 2,701 words, which complies with the word limit of L.R. 11-6.1.

December 13, 2024

By: */s/ Kevin Abikoff*
Kevin Abikoff

**CERTIFICATE OF SERVICE**

The undersigned certifies that Defendants' Opposition to Plaintiff's Supplemental Brief re Equitable Claims was filed electronically with the Clerk of the Court via the CM/ECF system, which effectuates service to all parties registered and designated for the CM/ECF system in this action. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America and the laws of the State of California that the foregoing is true and correct.

Executed on December 13, 2024 at Los Angeles, California.

By: */s/ Kevin Abikoff*
    Kevin Abikoff