# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW D. VAN STEENWYK, Individually, as Trustee and Beneficiary of The Matthew Van Steenwyk GST Trust and The Matthew Van Steenwyk Issue Trust, and as Co-Trustee of The Gretchen Marie Van Steenwyk-Marsh GST Trust and The Gretchen Marie Van Steenwyk-Marsh Issue Trust and derivatively on behalf of Nominal Defendants APPLIED TECHNOLOGIES ASSOCIATES, INC., SCIENTIFIC DRILLING INTERNATIONAL, INC. and ATA RANCHES, INC., <br><br>      Plaintiff, <br>  v. <br><br>KEDRIN E. VAN STEENWYK, et al., <br><br>      Defendants, <br><br>and <br><br>APPLIED TECHNOLOGIES ASSOCIATES, INC., SCIENTIFIC DRILLING INTERNATIONAL, INC., and ATA RANCHES, INC., <br><br>      Nominal Defendants. | No. 2:20-cv-02375-FLA-AJR <br><br>**AMENDED MEMORANDUM DECISION AND ORDER GRANTING IN PART PLAINTIFF'S MOTION TO COMPEL JUDGMENT DEBTOR DISCOVERY (DKT. 846)** |

# I.

# INTRODUCTION

This is a shareholder derivative lawsuit filed by Plaintiff Matthew D. Van Steenwyk ("Plaintiff") on behalf of Nominal Defendants Applied Technologies Associates, Inc. ("ATA"), Scientific Drilling International, Inc. ("SDI"), and ATA Ranches, Inc. (collectively, the "Nominal Defendants") against Defendants Kedrin E. Van Steenwyk ("Kedrin"), Pamela Pierce, Phillip Gobe, Philip Longorio, Gene Durocher, Daniel Carter, Joseph McCoy, and Kieran Duggan (collectively, the "Director Defendants") for violations of California common law setting forth the duties of corporate officers and directors. (Dkt. 179 at 2-3.) Plaintiff also brought direct claims as owner of Class A Shares in ATA against Elizabeth A. Van Steenwyk ("Elizabeth") and Kedrin, as Trustee and Successor Trustee of the Donald H. Van Steenwyk and Elizabeth A. Van Steenwyk 1996 Revocable Trust, for violations of their duties as the holders for all voting shares in ATA. (Id. at 3.) Plaintiff brought additional direct claims against Elizabeth, Kedrin, the Director Defendants, and Defendant Adelaida Cellars, Inc. for breach of fiduciary duties owed by ATA's controlling shareholders to Plaintiff, or for the aiding and abetting of those breaches owed to Plaintiff. (Id.)

On June 24, 2024, a concurrent jury and bench trial commenced on Plaintiff's legal and equitable claims, respectively. (Dkt. 443.) On July 10, 2024, the jury returned a verdict in favor of Plaintiff against the Director Defendants as well as Elizabeth and awarded over $21 million in damages. (Dkts. 485, 489.) On February 24, 2025, the District Judge issued an Order Granting in Part and Denying in Part Plaintiff's Motion for Equitable Relief After Jury Trial, which permanently enjoined ATA and SDI from paying, advancing, or reimbursing any attorneys' fees or costs incurred by any of the defendants. (Dkt. 692.) On March 7, 2025, the Court entered a Final Judgment in the action. (Dkt. 707.)

Presently before the Court is a dispute over post-judgment discovery. On September 8, 2025, the Court held an informal discovery conference to discuss this dispute. (Dkt. 840.) Based on the discussion with the parties at the informal discovery conference, the Court identified a number of gating issues that needed to be resolved so that the parties could further meet and confer in an attempt to resolve the remaining disputes. (Id.) Therefore, the Court directed the parties to brief only specific gating issues for resolution and to continue informal efforts to resolve the remaining disputes. (Id.)

On September 16, 2025, Plaintiff filed a Motion to Compel Judgment Debtor Discovery (the "Motion to Compel"). (Dkt. 846.) On September 30, 2025, Kedrin filed an Opposition to the Motion to Compel (the "Opposition"). (Dkt. 847.) On October 7, 2025, Plaintiff filed a Reply in Support of the Motion to Compel (the "Reply"). (Dkt. 848.) On October 28, 2025, the Court issued a Memorandum Decision and Order Granting in Part Plaintiff's Motion to Compel Judgment Debtor Discovery (the "October 28, 2025 Order"). (Dkt. 849.)

On November 3, 2025, Kedrin filed an *Ex Parte* Application to Stay October 28, 2025 Order (the "*Ex Parte* Application"). (Dkt. 854.) The *Ex Parte* Application sought reconsideration and a stay of the Court's October 28, 2025 Order. (Dkt. 849.) On November 4, 2025, Plaintiff filed an Opposition to the *Ex Parte* Application (the "Opposition"). (Dkt. 857.) On November 5, 2025, the Court held an informal discovery conference to discuss the *Ex Parte* Application with the parties. For the reasons stated on the record at the informal discovery conference, and as addressed in a separate Order, the Court GRANTS IN PART the *Ex Parte* Application. Specifically, the Court grants the *Ex Parte* Application by VACATING the October 28, 2025 Order and replacing it with this Amended Order. As set forth below, the substance of the October 28, 2025 Order remains the same, but the "Conclusion" section has been changed to remove any finding of waiver. As set forth below, the Court still GRANTS IN PART Plaintiff's Motion to Compel.

(Dkt. 846.)

## II.

## LEGAL STANDARD

Federal Rule of Civil Procedure 69(a)(2) provides that "[i]n aid of the judgment or execution, the judgment creditor or a successor in interest whose interest appears of record may obtain discovery from any person—including the judgment debtor—as provided in these rules or by the procedure of the state where the court is located." "Generally, the scope of post-judgment discovery is broad." Ryan Inv. Corp. v. Pedregal de Cabo San Lucas, 2009 WL 5114077, at *1 (N.D. Cal. Dec. 18, 2009). "[T]he judgment creditor must be given the freedom to make a broad inquiry to discover hidden or concealed assets of the judgment debtor." 1ST Tech., LLC v. Rational Enters. Ltda, 2007 WL 5596692, at *4 (D. Nev. Nov. 13, 2007) (internal quotation marks omitted). "Further, due to its broad scope, a party is free to use any means of discovery allowable under the Federal Rules of Civil Procedure." Ryan Inv. Corp., 2009 WL 5114077, at *1; see Fed. R. Civ. P. 69 advisory committee's note to 1970 Amendment ("The amendment assures that, in aid of execution on a judgment, all discovery procedures provided in the rules are available and not just discovery via the taking of a deposition.").

Where a party fails to provide a discovery response, the requesting party may move to compel a response under Rule 37(a). "Upon a motion to compel discovery, the movant has the initial burden of demonstrating relevance." Nguyen v. Lotus by Johnny Dung Inc., 2019 WL 3064479, at *2 (C.D. Cal. June 5, 2019) (internal quotation marks omitted). "Thereafter, the party opposing discovery has the burden of showing that the discovery should be prohibited, and the burden of clarifying, explaining or supporting its objections." Garces v. Pickett, 2021 WL 978540, at *2 (E.D. Cal. Mar. 16, 2021). "The opposing party is required to carry a heavy burden of showing why discovery was denied." Id. (internal quotation marks omitted).

## III.

## THE DISCOVERY AT ISSUE

On April 8, 2025, Plaintiff served post-judgment discovery on Kedrin and Elizabeth pursuant to Rule 69(a)(2) consisting of interrogatories and requests for production of documents. (Dkt 846 at 10; Dkt. 846-2; Dkt. 846-3; Dkt. 846-4; Dkt. 846-5.) The interrogatories seek a broad range of financial information, including information related to current assets and liabilities. (Dkt. 846-2; Dkt. 846-3.) The requests for production similarly seek a broad range of financial documents including tax returns and Forms 1099. (Dkt. 846-4; Dkt. 846-5.)

Both Kedrin and Elizabeth generally objected to all of the discovery on numerous grounds, including the probate exception to federal jurisdiction. (Dkt. 846-2 at 5-6; Dkt. 846-3 at 4-5; Dkt. 846-4 at 5-6; Dkt. 846-5 at 4-5.) Kedrin and Elizabeth also specifically objected to the requests for production seeking tax returns and Forms 1099 on the grounds that these documents are privileged under California law. (Dkt. 846-4 at 69-73, 117-21; Dkt. 846-5 at 31-32, 48-50.)

## IV.

## DISCUSSION

Kedrin contends that Plaintiff's Motion to Compel should be denied for three reasons. (Dkt. 847 at 7.) First, Kedrin contends that the probate exception to federal jurisdiction applies here and therefore Plaintiff must proceed in state court. (Id.) Second, Kedrin contends that even if the probate exception does not apply, California procedural rules do not permit post-judgment discovery. (Id.) Third, Kedrin contends that even if post-judgment discovery is permitted, tax returns and related documents are privileged under California law. (Id.) For the reasons set forth below, the Court rejects Kedrin's arguments related to Plaintiff's post-judgment discovery generally, but agrees with Kedrin's arguments as to tax returns and related documents specifically. Accordingly, the Court GRANTS IN PART

Plaintiff's Motion to Compel. (Dkt. 846.)

A. **Plaintiff Has Met His Initial Burden Of Demonstrating Relevance.**

As an initial matter, Kedrin does not contest the relevance of the discovery sought by Plaintiff. (Dkt. 847 ("Importantly, Matthew's motion does not present a dispute over the scope of discovery . . . .").) Thus, the Court will address relevance only briefly, but has reviewed the discovery requests at issue and finds that the requests seek information and documents relevant to collecting on the Final Judgment in this action. See, e.g., Ryan Inv. Corp., 2009 WL 5114077, at *1 ("A judgment creditor is therefore ordinarily entitled to a very thorough examination of a judgment debtor with respect to its assets, including discovery of the identity and location of any of the judgment debtor's assets, wherever located." (internal quotation marks and brackets omitted)). Because Plaintiff has met his initial burden of establishing relevance, the Court must next determine whether Kedrin has met her "heavy burden" of showing why the discovery sought should be denied. See Garces, 2021 WL 978540, at *2 (internal quotation marks omitted).

B. **The Probate Exception To Federal Jurisdiction Does Not Apply Here.**

Kedrin contends that any post-judgment discovery in federal court is improper because the probate exception to federal jurisdiction requires Plaintiff to pursue discovery in state court. (Dkt. 847 at 8-9.) The U.S. Supreme Court has explained that "the probate exception reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court." Marshall v. Marshall, 547 U.S. 293, 311-12 (2006). "But it does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction." Id. at 312. Following Marshall, the Ninth Circuit has held "that the probate exception is limited to cases in which the federal courts would be called on to (1) probate or annul a will, (2) administer a decedent's estate, or (3) assume *in rem* jurisdiction over property that is in the custody of the

probate court." Silk v. Bond, 65 F.4th 445, 450 (9th Cir. 2023) (internal quotation marks omitted).

Here, Kedrin does not contend that Plaintiff's discovery would require this Court to probate or annul a will, but instead contends the discovery "invites this federal court to exercise jurisdiction in a way that would dispose of trust and estate property." (Dkt. 847 at 11; id. at 10 ("Matthew asks this Court to direct the disposition of estate and trust assets.").)  However, Kedrin's arguments are focused on the notice of levy and writs of execution that are the subject of other motions pending before the District Judge.[1]  (Id. at 10-11.)  Moreover, the Ninth Circuit has explained that "the question is not whether [the federal court] would somehow be duplicating the function of the probate court, or deciding a question the probate court will (or might) need to decide," or even whether the federal court "would be interfering with the probate court." Silk, 65 F.4th at 452 (internal quotation marks and brackets omitted).  "If the district court would neither be probating or annulling a will (it wouldn't be here), or administering a decedent's estate (and again, it wouldn't be here), the only question is whether it would be assuming *in rem* jurisdiction over property that is in the custody of the probate court, including by endeavoring to dispose of such property." Id.  The Court easily concludes that Plaintiff's discovery does not require the assertion of *in rem* jurisdiction over any property or dispose of any property.

---

[1] Kedrin relies on Kibbey v. Kibbey, 2021 WL 5798049 (C.D. Cal. Dec. 7, 2021), and Ehret v. Sanchez, 2013 WL 4807165 (C.D. Cal. Sept. 4, 2013), for the proposition that "courts have applied the probate exception where administration or disposition of trust or estate assets was implicated by a proposed federal action." (Dkt. 847 at 8-9.)  However, both cases are clearly distinguishable from the present circumstances where Plaintiff merely seeks discovery.  In Kibbey, the court concluded that the probate exception applied because the plaintiff sought "a determination as to whether the current Trustee [wa]s fit to serve in his role as well as other administrative directives." Kibbey, 2021 WL 5798049, at *2.  In Ehret, the court concluded that the probate exception applied because the plaintiff sought the disposition of trust property. See Ehret, 2013 WL 4807165, at *3.

Kedrin relies on Wilmington Tr., N.A., v. Gonzalez, 2018 WL 10159760, at *2 (S.D. Fla. Sept. 19, 2018), for the proposition that there is "no post-judgment discovery allowed where the probate exception applies." (Dkt. 847 at 11.) However, in Wilmington Tr., N.A., the court exercised its inherent authority to temporarily stay post-judgment discovery in federal court because such discovery would have been duplicative of discovery that could be served in proceedings before the probate court. See Wilmington Tr., N.A., 2018 WL 10159760, at *3 ("To allow parallel discovery in both forums would result in duplication of effort, inefficiencies, a potential for inconsistent results, and a waste of judicial resources."). By contrast here, Kedrin has made no showing that Plaintiff's discovery before this Court would be duplicative of any discovery that could be served in proceedings before the probate court. In fact, Kedrin argues that post-judgment discovery is not permitted before the probate court. (Dkt. 847 at 11 ("Enforcement Against Estate And Trust Assets Should Follow State Procedure, Which Means No Post-Judgment Discovery." (bold omitted)).) Therefore, the Court declines to limit Plaintiff's right to post-judgment discovery in federal court based on the potential for duplication of discovery in state court.

In sum, the Court concludes that the probate exception to federal jurisdiction does not apply to Plaintiff's post-judgment discovery because the discovery does not require this Court to probate or annul a will, administer a decedent's estate, or assume *in rem* jurisdiction over property that is in the custody of the probate court. See Silk, 65 F.4th at 450. Because the probate exception does not apply, the Court cannot decline jurisdiction over Plaintiff's post-judgment discovery. See Marshall, 547 U.S. at 298–99 ("We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." (internal quotation marks omitted)).

C. **Rule 69(a)(2) Permits Discovery Under The Federal Rules Or State Law.**

Kedrin argues that even if the probate exception does not apply, Plaintiff's

discovery requests should still be denied because Plaintiff must follow state procedure "which does not involve post-judgment discovery." (Dkt. 847 at 11.) Once again, however, Kedrin's arguments focus on judgment execution methods and procedures, not on post-judgment discovery, which is the only thing Plaintiff seeks in the instant Motion to Compel. (Id. at 11-13.) Indeed, Rule 69 itself specifically distinguishes between judgment execution methods and procedures in subsection (a)(1) and post-judgment discovery in subsection (a)(2). Under Rule 69(a)(1), "[t]he procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—<u>must accord with the procedure of the state where the court is located</u>, but a federal statute governs to the extent it applies." Fed. R. Civ. P. 69(a)(1) (emphasis added). By contrast, under Rule 69(a)(2), "the judgment creditor or a successor in interest whose interest appears of record may obtain discovery from any person—including the judgment debtor—<u>as provided in these rules or by the procedure of the state where the court is located</u>." Fed. R. Civ. P. 69(a)(2) (emphasis added).

      Several courts have recognized that "[t]here is an internal tension between Rule 69(a)(1), which instructs that state procedures *must* be followed, and Rule 69(a)(2), which grants judgment creditors a choice of law." Pabban Dev., Inc. v. Sarl, 2015 WL 12731928, at *3 (C.D. Cal. Mar. 10, 2015) (citing cases). "Courts have resolved this tension by interpreting Rule 69(a)(1) and (2) to describe two separate parts of the judgment enforcement process." Id. (citing cases). "Part one relates to the execution *procedures* available to the creditors, while part two controls post-judgment *discovery* in aid of execution." Id. "Execution methods and procedures must comply with state law, unless they are preempted by a federal statute. When conducting post-judgment discovery, however, judgment creditors can rely on either state or federal law." Id. (citation omitted).

      Here, Plaintiff has served interrogatories and requests for production in compliance with the Federal Rules of Civil Procedure. (Dkt. 846-2; Dkt. 846-3;

Dkt. 846-4; Dkt. 846-5.)  Rule 69(a)(2) expressly permits this post-judgment discovery regardless of the applicable procedures for execution of the judgment under state law.  See Fed. R. Civ. P. 69(a)(2); Pabban Dev., Inc., 2015 WL 12731928, at *3 ("[T]o the extent a judgment creditor elects to conduct post-judgment *discovery*, Rule 69(a)(2) permits the judgment creditor to choose between the state and federal rules."); El Salto, S. A. v. PSG Co., 444 F.2d 477, 484 n.3 (9th Cir. 1971) ("A judgment creditor proceeding under Rule 69(a) may utilize either state practice or the Federal Rules for taking depositions.").  Accordingly, the Court concludes that Plaintiff's interrogatories and requests for production are permissible post-judgment discovery authorized by Rule 69(a)(2).

**D.  Plaintiff Has Not Met His Burden To Demonstrate That An Exception To California's Tax Privilege Applies At This Time.**

As set forth above, the Court has rejected Kedrin's arguments against Plaintiff's discovery as a whole.  Therefore, the Court now turns to Plaintiff's argument against producing tax returns and related documents in particular.  (Dkt. 847 at 14-15.)  Specifically, Kedrin argues that even if Plaintiff is permitted to conduct post-judgment discovery, tax returns and related documents are privileged under California law.  (Id.)  Indeed, under Federal Rule of Evidence 501, state privilege law applies where a federal court sits in diversity jurisdiction, as the Court does here.  See, e.g., Iroquois Master Fund, Ltd. v. Glob. ePoint, Inc., 2018 WL 6929337, at *4-9 (C.D. Cal. Jan. 9, 2018) (holding that under Federal Rule of Evidence 501, state privilege law applies to post-judgment discovery where the court sits in diversity).  Thus, the Court concludes that California's privilege for tax returns applies here.

California courts "have interpreted state taxation statutes as creating a statutory privilege against disclosing tax returns."  Li v. Yan, 247 Cal. App. 4th 56, 66 (2016).  This privilege extends to "information contained in the returns."  Sav-On Drugs, Inc. v. Superior Ct., 15 Cal. 3d 1, 7 (1975); Brown v. Superior Ct., 71 Cal.

App. 3d 141, 143–44 (1977) ("The W-2 forms, which are required to be attached to a taxpayer's state and federal income tax returns, constitute an integral part of the return and qualify as 'information contained in the returns' within the meaning of Sav-On Drugs, Inc., v. Superior Court, *supra*."). "The purpose of the privilege is to encourage voluntary filing of tax returns and truthful reporting of income, and thus to facilitate tax collection." Li, 247 Cal. App. 4th at 66. However, "the privilege is not absolute." Id. at 67 (internal quotation marks omitted). Instead, "the privilege will not be upheld in three situations: when (1) the circumstances indicate an intentional waiver of the privilege; (2) the gravamen of the lawsuit is inconsistent with the privilege; or (3) a public policy greater than that of the confidentiality of tax returns is involved." Id. (internal quotation marks omitted). The "last exception is narrow and applies only when warranted by a legislatively declared public policy." Id. (internal quotation marks omitted).

Plaintiff "bears the burden of demonstrating that an exception to the tax privilege applies." Goro v. Flowers Foods, Inc., 334 F.R.D. 275, 280 (S.D. Cal. 2018). Plaintiff's only argument in support of an exception to the tax privilege is that "there is a strong public interest in ensuring that Plaintiff, as the prevailing party in this action, receives full redress of his injuries." (Dkt. 846 at 17.) Plaintiff relies on Hooser v. Superior Ct., 84 Cal. App. 4th 997, 1003 (2000), for the proposition that "[t]he public also has an interest in facilitating the enforcement of judgments, thus ensuring that those injured by the actionable conduct of others receive full redress of those injuries." (Id. (internal quotation marks omitted).) However, the exception to California's tax privilege is narrow and only applies when justified by a legislatively declared public policy. See Goro, 334 F.R.D. at 281. Plaintiff has not identified any legislatively declared public policy that is greater than the policy protecting tax returns. See id. at 282 ("Defendant does not argue that a public policy warrants waiver, and the assertion of damages claims that makes the financial information underlying tax returns relevant does not, without more, represent a

11

greater public policy meriting waiver of the tax privilege."). Thus, the Court concludes that Plaintiff has not met his burden to demonstrate that an exception to California's tax privilege applies at this time.

However, Plaintiff may be able to meet this burden in the future based on the California Court of Appeal's opinion in Li v. Yan.[2] In Li v. Yan, the California Court of Appeal affirmed the trial court's order compelling production of tax returns based on compelling public policy. See Li, 247 Cal. App. 4th at 67. The court of appeal cautioned that "[t]he fact that financial records are difficult to obtain or that a tax return would be helpful, enlightening or the most efficient way to establish financial worth is not enough." Id. "Likewise, standing alone, a finding of liability for punitive damages is insufficient." Id. However, the court of appeal explained that "disclosure may be ordered where a defendant has been found liable for punitive damages and the party requesting disclosure establishes (1) the defendant has refused to produce relevant nonprivileged financial records or has produced only meaningless and unreliable financial information in response to punitive damage discovery; (2) the defendant has engaged in a pattern of improperly obstructing efforts to obtain financial records through means that do not implicate the privilege and it is reasonable to assume this pattern of conduct will continue; and (3) less

---

[2] Li v. Yan is the only case cited by Plaintiff finding that an exception to California's tax privilege applies. (Dkt. 846 at 16-17; Dkt. 848 at 6.) Plaintiff cites Internet Direct Response, Inc. v. Buckley, 2010 WL 1752181, at *5 (C.D. Cal. Apr. 29, 2010), for the proposition that "[i]n post-judgment discovery proceedings to enforce a judgment in federal court, federal common law regarding privileges apply. (Dkt. 846 at 16 (internal quotation marks omitted).) In that case, the court applied federal common law regarding privileges to compel the production of tax returns from the judgment debtor's wife. See id. at *5. The court found in the alternative that "even if the Court afford[ed] some deference to California's tax return privilege, the public policy in ensuring federal judgments are enforced [would] overcome[] Mrs. Buckley's assertion of privilege in this case." Id. However, the court did not apply California privilege law and only afforded California's tax privilege "some deference." Id. By contrast here, the Court has concluded that California's tax privilege applies and therefore must be afforded more than "some deference."

intrusive methods to obtain the financial records have been unsuccessful." Id.

The Court acknowledges that the jury here did not find any defendant liable for punitive damages. (Dkts. 485, 489.) But the rationale in Li may still apply in the future if Plaintiff shows that Kedrin or some other defendant has refused to produce relevant nonprivileged financial records, engaged in a pattern of obstruction, and less intrusive methods to obtain financial records have been unsuccessful. See Li, 247 Cal. App. 4th at 67. Therefore, Plaintiff's Motion to Compel is DENIED WITHOUT PREJUDICE as to Plaintiff's discovery requests seeking information and documents protected by California's tax privilege. (Dkt. 846.)

## V.

## CONCLUSION

Consistent with the foregoing, Plaintiff's Motion to Compel is GRANTED IN PART. (Dkt. 846.) Specifically, the Court rules as follows:

Defendant Kedrin E. Van Steenwyk, individually, as Executor of the Estate of Elizabeth A. Van Steenwyk, as Trustee of the Survivor's Trust, and as Trustee of her Issue and GST Trusts, is ordered to respond to, and produce documents responsive to, Plaintiff's Requests for Production of Documents and Interrogatories, served on April 8, 2025. By granting Plaintiff's Motion to Compel, the Court has overruled Kedrin's jurisdictional objections and that state law does not authorize the discovery sought by Plaintiff. However, by denying in part Plaintiff's Motion to compel, the Court has also sustained, for now, Kedrin's objections based on California's tax privilege.

The Court intends to work with the parties to expeditiously resolve or rule on Kedrin's remaining objections and set prompt deadlines for substantive responses and document productions. In a separate Order, the Court has set deadlines for the parties to further meet and confer, and then provide further updates to the Court, as

well as for the Court to hold a further informal discovery conference.

    Finally, the Court notes that neither side sought an award of expenses with regard to this discovery dispute. (Dkts. 846, 847, 848.) Under Federal Rule of Civil Procedure 37(a)(5)(C), where a motion to compel is granted in part, the court has discretion to apportion reasonable expenses for the motion. The Court exercises its discretion to decline to award expenses for the instant Motion to Compel.

    IT IS SO ORDERED.

DATED: November 5, 2025

                                    HON. A. JOEL RICHLIN
                                    UNITED STATES MAGISTRATE JUDGE